Thiago M. Coelho (SBN 324715)
*thiago.coelho@wilshirelawfirm.com*
Chumahan B. Bowen (SBN 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach (SBN 281404)
*jennifer.leinbach@wilshirelawfirm.com*
Reuben Aguirre (SBN 319699)
*reuben.aguirre@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff
and the Proposed Classes*

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ERIC HAYDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ARCADIA CONSUMER HEALTHCARE, INC. a Delaware corporation,<br><br>Defendant. | CASE NO.: 8:24-cv-02657-JDE<br><br>**PLAINTIFF ERIC HAYDE'S OPPOSITION TO DEFENDANT ARCADIA CONSUMER HEALTHCARE INC.'S MOTION TO DISMISS "CORRECTED COMPLAINT"**<br><br>Hon. John D. Early<br><br>Date:      May 22, 2025<br>Time:      10:00 a.m.<br>Courtroom: 6A |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## **Table of Contents**

I.    Introduction ........................................................................................1

II.    Relevant Facts ..................................................................................1

III.    Argument...........................................................................................1

   A.    Rule 12(b)(6) ...........................................................................1

   B.    Fungi-Nail's Front Label is Unambiguously Misleading, Making the Back Label Irrelevant...................................................................................2

   C.    Fungi-Nail Claims it Treats Nail Fungus. ...................................3

   D.    Front Label is not Ambiguous. .......................................................4

   1.    Disclosures Cannot Cure Misrepresentations. ..............................5

   2.    Defendant's Unsupported Comparison to Another Product Fails to Undermine the Plausibility of Plaintiff's Claims...........................................6

   3.    Defendant's Authority is Inapposite Because the Front Label Is Unambiguous and Misleading on Its Face. ....................................................7

   E.    Defendant's Authority Analyzing Labels Using Context is Inapposite to Unambiguous Misrepresentation. ..........................................9

   1.    Even if Defendant's Statements Are True, They Tend to Deceive the Public...............................................................................................11

   F.    The Safe Harbor Does Not Shield Defendant's Misleading Label.............12

   G.    Express Preemption Does Not Apply........................................................14

   H.    Hayde Has Standing .................................................................16

   1.    Hayde Has Standing to Represent Purchasers of Substantially Similar Fungi-Nail Products in Pen, Spray, and Brush Applicator Methods.........16

   2.    Hayde Has Standing to Request Injunctive Relief..................................17

   3.    Hayde Has Standing to Pursue Common Law Claims Nationwide.........18

   I.    Hayde Alleges Viable Common Law Claims..............................................19

   J.    Leave to Amend is Freely Granted ...........................................20

IV.    Conclusion...........................................................................................20

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

*Alvarez v. Ashley Furniture Indus., Inc.*
No. 2:16-cv-06989-JAK-FFM
2017 WL 4785970 (C.D. Cal. Sept. 20, 2017…………………………………….6

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..................................................................................... 1

*Azoulai v. BMW of N. Am. LLC*
No. 3:16-cv-00589-BLF
2017 WL 1354781 (N.D. Cal. Apr. 13, 2017)....................................... 19

*Bailey v. Rite Aid Corp.*
No. 4:18-cv-06926-YGR
2019 WL 4260394 (N.D. Cal. Sept. 9, 2019) . ....................................... 14

*Barber v. Nestle USA, Inc.*
154 F. Supp. 3d 954 (C.D. Cal. 2015)..................................................... 14

*Becerra v. Dr. Pepper/Seven Up, Inc.*
945 F.3d 1225 (9th Cir. 2019)................................................................ 11

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)............................................................................. 1, 2

*Bell v. Publix Super Markets, Inc.*
982 F.3d 468 (7th Cir. 2020)................................................................ 2, 6

*Bird v. First Alert, Inc.*
No. 14-cv-3585-PJH
2015 WL 3750225 (N.D. Cal. June 15, 2015)….................................... 6

*Bowling v. Johnson & Johnson*
65 F. Supp. 3d 371 (S.D.N.Y. 2014)....................................................... 15

*Brady v. Bayer Corp.*
26 Cal. App. 5th 1156 (2018)................................................................... 2

*Bronson v. Johnson & Johnson, Inc.*
No. C 12-04184 CRB
2013 WL 1629191 (N.D. Cal. Apr. 16, 2013)....................................... 12

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Brown v. Hain Celestial Grp., Inc.*
913 F. Supp. 2d 881 (N.D. Cal. 201 ............................................................................... 16

*Burchfield v. Prestige Consumer Healthcare, Inc.*
534 F. Supp. 3d 1192 (C.D. Cal. 2021) ..................................................................... 15, 18

*Caldwell v. Nordic Nats., Inc.*
709 F. Supp. 3d 889 (N.D. Cal. 2024) ............................................................................ 7

*Culver v. Unilever U.S., Inc.*
No. 2:21-cv-00083
2021 WL 2943937 (C.D. Cal. June 14, 2021) ................................................................. 9

*Cytryn v. Crumbl, LLC*
No. SACV 23-01218-MWF (KESx)
2024 WL 4406924 (C.D. Cal. Aug. 23, 2024) ................................................................. 5

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) ........................................................................................ 17

*Delarosa v. Boiron, Inc.*
818 F. Supp. 2d 1177 (C.D. Cal. 2011) ........................................................................ 13

*Ebner v. Fresh, Inc.*
838 F.3d 958 (9th Cir. 2016) ........................................................................................ 13

*Fagan v. Neutrogena Corp.*
No. 5:13-cv-01316-SVW-OP
2014 WL 92255 (C.D. Cal. Jan. 8, 2014) ...................................................................... 15

*Foman v. Davis*
371 U.S. 178 (1962) ...................................................................................................... 20

*Forcellati v. Hyland's, Inc.*
876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................................................ 16

*Freeman v. Time, Inc.*
68 F.3d 285 (9th Cir. 1995) ............................................................................................ 9

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

iv

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Hairston v. S. Beach Beverage Co., Inc.*
No. CV 12-1429-JFW
2012 WL 1893818 (C.D. Cal. May 18, 2012)................................................................. 9

*Jovel v. Boiron Inc.*
No. 2:11-cv-10803-SVW-SH
2013 WL 12164622 (C.D. Cal. Aug. 16, 201............................................................... 13

*Kim v. Blue Triton Brands*
No. 2:21-cv-01347
2022 WL 17061085 (C.D. Cal. Nov. 1, 2022) ............................................................. 9

*Lanovaz v. Twinings N. Am., Inc.*
726 F. App'x 590 (9th Cir. 2018)............................................................................... 17

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
519 F.3d 1025 (9th Cir. 2008)..................................................................................... 1

*Martin v. Medtronic, Inc.*
No. 1:15-cv-00994-DAD-MJS
2017 WL 825410 (E.D. Cal. Feb. 24, 2017)............................................................... 14

*Mazza v. American Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012)....................................................................................... 18

*McGinity v. Procter & Gamble Co.*
69 F.4th 1093 (9th Cir. 2023)....................................................................................... 8

*Melendres v. Arpaio*
784 F.3d 1254 (9th Cir. 2015)..................................................................................... 18

*Mier v. CVS Pharm., Inc.*
No. 2:20-cv-01979-ODW
2021 WL 1559367 (C.D. Cal. Apr. 20, 2021............................................................... 18

*Moore v. Trader Joe's Co.*
4 F.4th 874 (9th Cir. 2021)...................................................................................... 2, 9

*Nguyen v. Lotus by Johnny Dung Inc.*
No. 8:17-cv-1317-JVS-JDE
2019 WL 1957962 (C.D. Cal. Jan. 7, 2019)............................................................... 17

v

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

*Pelayo v. Nestle USA, Inc.*
989 F. Supp. 2d 973 (C.D. Cal. 2013)........................................................................ 9

*Perez v. Kroger Co.*
No. 2:17-cv-02448-ODW-AGR
2017 WL 3601998 (C.D. Cal. Aug. 18, 2017)........................................................ 14

*Pom Wonderful LLC v. Coca Cola Co.*
No. CV 08-06237-SJO-FMO
2013 WL 543361 (C.D. Cal. Feb. 13, 2013........................................................... 14

*Robinson v. Unilever U.S., Inc.*
No. 2:17-cv-03010-DMG-AJW
2018 WL 6136139 (C.D. Cal. June 25, 2018)....................................................... 18

*Roper v. Big Heart Pet Brands, Inc.*
No. 1:19-cv-00406-DAD-BAM
2020 WL 7769819 (E.D. Cal. Dec. 30, 2020)....................................................... 17

*Ross v. Pioneer Life Ins. Co.*
545 F. Supp. 2d 1061 (C.D. Cal. 2008)................................................................ 20

*Shin v. Campbell Soup Co.*
No. 8:17-cv-01082-DOC
2017 WL 3534991 (C.D. Cal. Aug. 9, 2017)........................................................... 6

*Souter v. Edgewell Pers. Care Co.*
542 F. Supp. 3d 1083 (S.D. Cal. 2021).................................................................. 15

*Steinberg v. Icelandic Provisions, Inc.*
No. 3:20-cv-01248
2023 WL 3918257 (9th Cir. June 9, 2023)................................................................ 9

*Tarvin v. Olly Pub. Benefit Corp.*
No. 2:24-cv-06261-WLH-PD
2024 WL 4866271 (C.D. Cal. Nov. 12, 2024)........................................................... 2

*Valiente v. Simpson Imports, Ltd.*
717 F. Supp. 3d 888 (N.D. Cal. 2024)................................................................... 16

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

vi

*Whiteside v. Kimberly Clark Corp.*
108 F.4th 771 (9th Cir. 2024)................................................................ 2, 3, 5, 8

*Williams v. Gerber Prods. Co.*
552 F.3d 934 (9th Cir. 2008)................................................... 2, 4, 5, 9, 12, 19

*Yamauchi v. Cotterman*
84 F. Supp. 3d 993 (N.D. Cal. 2015)............................................................ 19

*Zeiger v. WelPet LLC*
526 F. Supp. 3d 652 (N.D. Cal. 2021)......................................................... 19

**STATUTES**

21 U.S.C. § 331………….……….................................................................. 14

21 U.S.C. § 352................................................................................................ 14

21 U.S.C. § 397r(a)......................................................................................... 14

Cal. Bus. & Prof. Code § 17500.................................................................... 14

**RULES**

Fed. R. Civ. P. 8(a)(2)..................................................................................... 1

Fed. R. Civ. P. 12(b)(6).................................................................................. 1

Fed. R. Civ. P. 15........................................................................................... 20

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

## I.    Introduction

Arcadia Consumer Healthcare Inc.'s ("Arcadia" or "Defendant") "FUNGI-NAIL" deceives and swindles a captive market—unwary nail fungus patients. Despite claiming alongside an enlarged image of toenails that it "Kills Fungus" and is "CLINICALLY PROVEN TO CURE AND PREVENT FUNGAL INFECTIONS," it does not treat nail fungi. It is just a common, over-the-counter athlete's foot treatment. For a half century, Arcadia has conned unsuspecting consumers like Plaintiff Eric Hayde ("Plaintiff" or "Hayde") into paying a price premium, reasonably believing "FUNGI-NAIL" treats nail fungi. Defendant's smoke-and-mirrors attempts to distract from the merits regarding its misleading packaging fail. As shown below, Plaintiff plausibly alleges that Fungi-Nail's label is false and misleading and Defendant's Motion to Dismiss ("MTD" Dkt. 14) should be denied in its entirety.

## II.    Relevant Facts

Plaintiff purchased a bottle of Arcadia's Maximum Strength Fungi-Nail Anti-Fungal Liquid in August 2024. Corrected Complaint, ¶¶4, 6.[1] For many months, he applied the product to his toenails to treat his nail fungus condition in reliance on the product's name, "Fungi-Nail," which he understood indicated the product was intended to treat, and was effective at treating, nail fungus. ¶16. Plaintiff's nail fungus condition did not improve, and his pain persisted. *See id.*

## III.    Argument

### A.    Rule 12(b)(6)

A complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a complaint, courts

---

[1] All "¶" references are to the Corrected Complaint. Dkt. 9.

1

must accept all factual allegations as true. *Id*. For purposes of ruling on a Rule 12(b)(6) motion, the Court must "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Rule 8(a) only requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which the complaint satisfies. Fed. R. Civ. P. 8(a)(2).

### B. Fungi-Nail's Front Label is Unambiguously Misleading, Making the Back Label Irrelevant.

In *Whiteside*, the Ninth Circuit described a framework for assessing packaging in consumer deception claims at the pleadings stage. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777-82 (9th Cir. 2024). The analysis begins with the front label because reasonable consumers are not expected to look past clearly misleading representations on the front label to verify the truth elsewhere on the packaging, particularly in the ingredients list. *Whiteside*, 108 F.4th at 778 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). "**[I]f a product's front label is plausibly misleading to reasonable consumers, then the court does not consider the back label at the pleadings stage.**" *Whiteside*, 108 F.4th at 778 (emphasis added). The front label must convey a clear and definite meaning to preclude back label consideration. *Id.* A front label is not deemed ambiguous merely because it has more than one reasonable meaning. *Id.* at 782 (citing *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1174-75 (2018)). "[A] front label may be 'unambiguously deceptive' for Rule 12(b)(6) purposes 'even if it has two possible meanings, so long as the plaintiff has plausibly alleged that reasonable consumers would view the label as having one unambiguous (and deceptive) meaning.'" *Tarvin v. Olly Pub. Benefit Corp.*, No. 2:24-CV-06261-WLH-PD, 2024 WL 4866271, at *4 (C.D. Cal. Nov. 12, 2024) (quoting *Whiteside*, 108 F.4th at 780-781). The test for front label ambiguity is not on whether a consumer "could" look beyond the front label, but on whether they *necessarily*

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

2

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

would. *Moore v. Trader Joe's Co.,* 4 F.4th 874, 882 (9th Cir. 2021). The plaintiffs need only "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. at 547. "In this case, plaintiffs' claims survive if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Bell v. Publix Super Markets*, Inc. (7th Cir. 2020) 982 F.3d 468, 476.

### C.    Fungi-Nail Claims it Treats Nail Fungus.

Fungi-Nail's front label is unambiguous, prohibiting judicial consideration of the back label at the motion to dismiss stage. The front label's most prominent text is the brand name, "FUNGI-NAIL," which expressly states a purpose related to nail fungi. ¶3. Directly beneath it, the phrase "ANTI-FUNGAL LIQUID" appears alongside an image of an applicator brush dispensing a drop of liquid, reinforcing the impression of targeted treatment. *Id*. Below this, a red box contains the bold claim: "CLINICALLY PROVEN TO CURE AND PREVENT FUNGAL INFECTIONS." *Id*. The phrase "clinically proven" suggests scientific credibility, while the unqualified use of "fungal infections" implies that Fungi-Nail treats all fungal infections, including nail fungus. Beneath the red box are two toes with large, prominent toenails, reinforcing that the product treats toenail fungus. *Id*. Placing the toenails directly below the antifungal and curative claims strengthens the connection between Fungi-Nail's curative effects and toenails. Absent from the front label are qualifiers like "for skin fungi only" or "not for nail fungi." Thus, the purposeful arrangement of the front label's imagery and words misleads consumers into believing that Fungi-Nail treats toenail fungus.



The remaining front label language is also not ambiguous. The phrase "TRIPLE ACTION FORMULA" is prominently displayed as a heading above additional product

benefits. *Id*. This, too does not specify that the product is **only** for skin fungus. "☑ Kills Fungus" is another sweeping claim with no limiting language, implying all fungi are killed by Fungi-Nail. *Id*. "☑ Stops Itching & Burning" and "☑ Restores Skin Health" (*id*.) suggest other benefits and do not exclude nail fungus as a treatment target. The front label's smallest text claims "+ Cures Most Athlete's Foot." *Id*. Nothing suggests Fungi-Nail **only** treats athlete's foot. "Most Athlete's Foot" also fails to divorce the word "Nail" from the kinds of "Fungi" the product appears to treat, as suggested by the label's other unlimited claims and toenails image.

Given the label's broad claims about killing fungus, a reasonable consumer would understand that athlete's foot is just one of the fungal infections the product treats. Even if the statement could be read as a limitation, it would only specify the amount or types of athlete's foot Fungi-Nail can treat ("Most"), without addressing nail fungus. None of the front label's language compels consumers to check the back label to determine whether Fungi-Nail treats nail fungus. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). Hayde plausibly alleges the label as having at least one unambiguous and deceptive meaning. *Whiteside*, 108 F.4th at 780-781.

**D.    Front Label is not Ambiguous.**

Defendant claims that the front label "depicts toes with red, inflamed, and cracked skin surrounding healthy toenails to show a visual representation of the area and condition it is intended to treat." MTD at 10. This argument is flawed because the image contains no text explaining that Fungi-Nail only treats the small red area and skin fungus around the toenail. ¶3. The only limitation, if any, is regarding athlete's foot because the label says it cures "Most" Athlete's Foot." ¶3. This does not disclose Fungi-Nail does treat nail fungus. MTD at 9. Without **any** explanation, the image can reasonably be interpreted in conformity with Fungi-Nail's other broad anti-fungal claims. *Supra* at 5–6. Although the Defendant's argument lacks merit, even if a reasonable interpretation of the red hue on the image's toe skin suggests a toenail-skin-only treatment, it does not create ambiguity. *Whiteside*, 108 F.4th at 781 ("Despite

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

4

these two possible interpretations, the court ruled that the defendant was precluded from relying on the back label because the plaintiff had plausibly alleged that reasonable customers would see the front label as making an unambiguous representation."). Hayde plausibly alleged that reasonable consumers would interpret the front label as making the unambiguous claim that Fungi-Nail treats nail fungus. *Supra*, at 5–6. The mere existence of another possible interpretation does not automatically render a front label ambiguous. *Cytryn v. Crumbl, LLC*, No. SACV 23-01218-MWF (KESX), 2024 WL 4406924, at *5 (C.D. Cal. Aug. 23, 2024) ("[A] 'front label is not ambiguous in a California false-advertising case merely because it is susceptible to more than one reasonable meaning.'") (citing *Whiteside*, 108 F.4th at 782). Thus, Defendant's argument that consumers must read the back label is irrelevant at this stage of the litigation. MTD at 2, 6, 9, 12-13, 16. Even so, Hayde was not confused; he was deceived. ¶¶3, 12, 14-16. The front label unambiguously claims Fungi-Nail treats nail fungi.

### 1.     Disclosures Cannot Cure Misrepresentations.

Defendant cites cases to argue "fine print" disclosures are effective when there is no contrary or false statement on the label. MTD at 13. Because Hayde adequately alleges Fungi-Nail's front label is misleading (*supra*, at 5–6), Defendant's authority is of little use. **"'[F]ront-label claims cannot be cured by contradicting back label statements as a matter of law.'"** *Meza v. Coty, Inc.*, No. 22-CV-05291-NC, 2023 WL 3082346, at *9 (N.D. Cal. Apr. 24, 2023) (citing *Williams*, 552 F.3d at 939) (emphasis added). Here, Hayde alleges that Fungi-Nail's front label falsely stated that Fungi-Nail treats nail fungi. ¶¶3, 12, 14–16. Hayde plausibly alleged that the front label made false, contrary statements that were unambiguously misleading. *Supra*, at 6-8. Thus, Defendant's authority is inapplicable.[2]

---

[2] Defendant cites *Bird v. First Alert, Inc.*, 2015 WL 3750225, at *3, *7-11 (N.D. Cal. June 15, 2015) for the position that "disclosure dispel[s] omission." MTD at 13. *Bird*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

## 2. Defendant's Unsupported Comparison to Another Product Fails to Undermine the Plausibility of Plaintiff's Claims.

Defendant's attempt to use the Dr. Luke product to deflect from its false and misleading labeling falls flat. MTD at 10. To begin, the "FUNGI-NAIL" name on Arcadia's packaging and "FUNGAL NAIL" name on Dr. Luke's packaging is nearly identical. MTD at 10; ¶3. This supports Plaintiff's allegations that Defendant's product packaging is misleading—*i.e.*, Arcadia's product name is basically the same as products that "claim to treat *toenail fungus*." MTD at 10. Defendant contends that the

is inapplicable because Plaintiff alleges the label's affirmatively false misrepresentation in contrast to the *Bird* plaintiff's omissions-based-only allegations. *Cf*. ¶¶3, 12, 14-16, *supra* at 6-8 with *Bird*, 2015 WL 3750225, at **7, 9. And *Bird* was dismissed because the plaintiff lacked standing for failure to purchase the product, *id*. at **5-6, but Hayde did purchase the product. ¶¶4, 8. *Sue Shin v. Campbell Soup Co.,* 2017 WL 3534991, at 6 (C.D. Cal. Aug. 9, 2017) is inapplicable because Fungi-Nail's front label affirmatively misleads consumers by suggesting it treats nail fungus when it does not. *Supra*, at 5–6. In *Shin* the plaintiff conceded that the front label statements on food products were truthful. *Id*. at 4 ("25% Less Sodium," "33% Less Sodium," and "98% Fat Free"). Here, Plaintiff alleges that the front label statements are false. *Supra*, at 5–6. The unqualified claims of fungal treatment combined with prominent images of toenails is a statement that Fungi-Nail treats nail fungi. *Id*. The *Shin* plaintiff argued that truthful statements about sodium and reduced fat implied the product was "healthy" or "healthful," even though those words were never used. *Shin,* 2017 WL 3534991, 2, 4. In contrast, here, the front label does contain deceptive statements: for example, "CLINICALLY PROVEN TO CURE AND PREVENT FUNGAL INFECTIONS" without any qualification, it necessarily includes nail fungal infections. ¶3. Defendant cites *Alvarez v. Ashley Furniture Indus., Inc.*, 2017 WL 4785970, at *6 (C.D. Cal. Sept. 20, 2017), *aff'd sub nom. Razo v. Ashley Furniture Indus., Inc.*, 782 F. App'x 632 (9th Cir. 2019) for the proposition that a reasonable consumer would not be deceived by prominent, unambiguous label disclosures. MTD at 13. Decided on summary judgment after discovery, *Alvarez* involved "DuraBlend," a leather-like upholstery made from leather scraps blended with synthetics. *Alvarez*, 2017 WL 4785970, at **1, 3, 6. DuraBlend's hangtag disclosed it was not 100% leather on its **front** and back, and in multiple other areas on the furniture and product materials. *Id*. Thus, the *Alvarez* court found that no jury would conclude that the label would deceive a reasonable consumer. *Id*. at *1. The disclaimer in *Alavarez* on the front label is not present here. The front label only communicates that Fungi-Nail treats nail fungi and does not disclaim it. *Supra*, at 5–6.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

photo on the front is the distinguishing factor as to whether reasonable consumers understand that the product treats nail fungus or not. Not only is this a disputed outside fact (*see* RJN opp.), but courts in the Ninth Circuit have rejected similar arguments, finding that "consumers should not be required to cross-check information on other products to discern the precise strength or potency of a product." *Caldwell v. Nordic Nats., Inc.*, 709 F. Supp. 3d 889, 902-904 (N.D. Cal. 2024) (citing cases). In *Nordic Naturals* the court nixed the defendant's argument that its product packaging was not misleading because consumers could cross reference its supplement label against the label of another product. *Id.* The *Nordic Naturals* court further reasoned:

> [I]t is not clear if another product will be available for inspection at time of purchase—rendering it less appropriate for a consumer to be expected to reference that label. Indeed, the second product could be out of stock or not carried at all by the store. As **it is not reasonable to expect a consumer to engage in this cross-referencing, Plaintiff has stated a claim, notwithstanding the possibility one could learn the truth about the product by comparing to the potency of another product**.

*Id.* at 903 (emphasis added). So too here, it is unreasonable (and without foundation) to expect that consumers are reviewing and analyzing Dr. Luke's product (or any other purported toe fungus product) at the point of sale.

### 3. Defendant's Authority is Inapposite Because the Front Label Is Unambiguous and Misleading on Its Face.

Defendant cites *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023) for the proposition that ambiguous front labels require reasonable consumers to resolve the ambiguity by reading the back labels. MTD at 12. *McGinity* is inapposite. The *McGinity* plaintiff alleged that the defendant's shampoo and conditioner label,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

which displayed "Nature Fusion" alongside an image of an avocado on a green leaf, falsely suggested the products were entirely natural despite containing synthetic ingredients. *McGinity*, 69 F.4th at 1096. The *McGinity* defendant argued that "Nature Fusion" meant the product included a mix of natural and synthetic ingredients. *Id.* at 1097. The *McGinity* plaintiff conducted a survey showing that seventy percent of respondents thought the products contained natural and synthetic ingredients. *Id.* at 1097-98. The *McGinity* court found the front label ambiguous and therefore considered the back label. *Id*. at 1098.

In contrast, Fungi-Nail's front label contains no ambiguous phrase with multiple possible meanings like the *McGinity* label. *Supra,* at 5-6. The phrases "FUNGI-NAIL," "ANTI-FUNGAL LIQUID," "CLINICALLY PROVEN," "CURE AND PREVENT FUNGAL INFECTIONS," "TRIPLE ACTION FORMULA," "Kills Fungus," "Stops Itching & Burning," "Restores Skin Health," and "Cures Most Athlete's Foot" (¶3) all have precise, fixed meanings, unlike the vague and undefined phrase "Nature Fusion" in *McGinity*. MTD at 9. These statements, combined with the toenails image, unambiguously indicate that Fungi-Nail kills fungi—including nail fungi. Unlike *McGinity*, no consumer survey here supports the claim that Fungi-Nail's front label is ambiguous. Thus, *McGinity* does not support Defendant's position and does not warrant considering the back label for the reasonable consumer analysis.

Defendant cites a string of cases where the court determined the front label was ambiguous, granting dismissal. MTD at 9-13. Defendant's authority is inapplicable to the facts here because Fungi-Nail's front label unambiguously displays multiple explicit statements and images indicating that the product kills and cures fungal infections without limitation, including, toenail fungus. *Supra*, 5-6. Unlike Fungi-Nail's, the labels in those cases are facially ambiguous.[3]

---

[3] *Brown v. Madison Reed, Inc.*, is unavailing because plaintiff claimed that "Free of" ammonia, resorcinol, and PPD implied safer substitute ingredients. The court found no

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**E.     Defendant's Authority Analyzing Labels Using Context is Inapposite to Unambiguous Misrepresentation.**

Defendant cites outdated cases such as *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) for the proposition that courts consider the context of labels "as a whole." MTD at 8. However, in *Freeman* "[t]he qualifying language appears **immediately next to** the representations it qualifies and no reasonable reader could ignore it. *Freeman*, 68 F. 3d at 290 (emphasis added). Here, there is no clear, qualifying

explicit representation of the substitute ingredients' safety and held that the back label ingredients list resolved any ambiguity. 2023 WL 8613496, at *1 (9th Cir. Dec. 13, 2023) (MTD at 12). As is *Steinberg v. Icelandic Provisions, Inc.*, 2023 WL 3918257, at *1 (9th Cir. June 9, 2023) (MTD at 12) (lower court found the phrase "Traditional Icelandic" merely described the style of production, rendering the manufacturing-location inference ambiguous.) So too is *Culver v. Unilever U.S., Inc.*, 2021 WL 2943937, at *13 (C.D. Cal. June 14, 2021) (MTD at 12) (references to France on a front label create ambiguity about a product's origin, making it reasonable for consumers to check the back label.) The same is true for *Kim v. Blue Triton Brands*, 2022 WL 17061085, at *4 (C.D. Cal. Nov. 1, 2022) (MTD at 12); the front label stated "Arrowhead® Brand 100% Mountain Spring Water," with an image of a spring beneath a generic mountain. *Id*. at *1. Plaintiff alleged consumers were misled into believing the water came from the "Arrowhead Mountain." *Id*. at *1. The court held that "Arrowhead® Brand" was merely a brand name, not a geographic reference, and that "100% Mountain Spring Water" suggested multiple sources of mountain spring water, not solely Arrowhead Mountain. *Id*. at *4. Unlike *Kim*'s non-specific imagery, Fungi-Nail's front label directly conveys **where** to apply the product—on the toenails. *Supra*, at 5-6. *Mier v. CVS Pharm., Inc.*, 2024 WL 121880, at *7 (C.D. Cal. Jan. 10, 2024) (currently on appeal Case No. 24-482) (MTD at 12) is inapposite because the court found the front label's statement, "Kills 99% of Germs" was ambiguous. The *Mier* statement included an asterisk directing consumers to the back label disclaimer: "Effective at eliminating more than 99.99% of many common harmful germs and bacteria in as little as 15 seconds." *Mier*, 2024 WL 121880, at *1. The court concluded the back label statement resolved the ambiguity and dismissed the complaint. *Id.* at 7-8. Even if *Mier* was correctly decided—a point Plaintiff disputes—the Fungi-Nail front label contains no ambiguity about the amount or type of fungi the product claims to treat, **nor does it include an asterisk or any mark** directing consumers to a qualifying statement on the back label. ¶3, *Whiteside*, 108 F.4th at 778 ("[I]f a product's front label is plausibly misleading to reasonable consumers, then the court does not consider the back label at the pleadings stage.").

9

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

language on the front label specifically stating that Fungi Nail does not treat nail fungus. *Supra*, 5–6.

Moreover, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) holds when the label is unambiguously misleading, as is the case here, courts do not consider that back panel. *See also Whiteside*, 108 F.4th at 781 (the law does not require consumers to look beyond misleading representations on the front of the box to find the truth on the side of the box).

Defendant cites *Hairston v. S. Beach Beverage Co., Inc.*, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) for the proposition that plaintiffs cannot rely on a single out-of-context phrase found in one part of a label to allege deception. MTD at 8-9. In *Hairston*, plaintiff alleged the "all natural" statement on defendant's label was deceptive because the product included synthetic ingredients. *Hairston*, 2012 WL 1893818, at *4. However, that statement was surrounded by language on the same label indicating the presence of synthetic products. *Id*. The plaintiff selectively read the label to claim deception, but the court required consideration of the entire label. *Id*. In contrast, the Plaintiff here considers Fungi-Nail's entire label, and its full context creates the deception. *Supra*, 5-6; ¶¶ 3-6, 7, 12, 14-16.

Defendant invokes *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) for the rule that the "information available to the consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging." MTD at 9. The *Moore* court considered "all the information available to consumers" in determining whether defendant's label about Manuka honey's purity was misleading. *Moore*, 4 F.4th 874 at 882. *Moore* noted that the average consumer of a niche specialty product like Manuka honey would have deeper knowledge of its production and understand that honey cannot be 100% derived from Manuka flower nectar. *Moore*, 4 F.4th 874 at 884. The court observed that the Manuka honey consumers would be aware that it was customarily higher priced, and the meaning of the purity ratings on labels. *Id.* at 883-85. Unlike a Manuka honey aficionado who

10

voluntarily learns about a specialty product, people involuntarily stricken with nail fungus will not have the same deep knowledge. Moreover, Defendant does not attempt to claim a customary premium price associated with nail fungus medicine to tip off consumers that the low price signifies it only treats skin fungus, unlike Manuka honey. ¶ 8 (Plaintiff paid $10.44); *See generally* MTD. Unlike *Moore*, no rating or mark indicates that Fungi-Nail does not treat nail fungi. *Supra*, 5-6. Thus, *Moore* is inapposite.

The same facts distinguish *Becerra*, where reasonable consumers were unlikely to be deceived that the word "diet" guarantees healthy weight loss or management because consumers commonly understand that "diet" soft drinks contain fewer calories. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-31 (9th Cir. 2019) (MTD at 9). Similarly, in *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (MTD 9), the plaintiff failed to provide an objective definition of "All Natural" that could establish that defendant's use of the phrase was misleading. *Id*. at 978–80. For this reason, the court concluded the label was ambiguous where "All Natural" also appeared on the back label next to the clarifying ingredient list. *Id*. Here, by contrast, the representation that Fungi-Nail treats nail fungi is not vague and readily ascertainable, as Plaintiff plausibly alleged. *Supra*, 5–6.

### 1. Even if Defendant's Statements Are True, They Tend to Deceive the Public.

California law proscribes not only false statements but also the use of a statement that "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (citations and quotations omitted). Even if the following statements on Fungi-Nail's front label are true, they are misleading and tend to deceive the public: "MAXIMUM STRENGTH," "ANTI-FUNGAL LIQUID," "CLINICALLY PROVEN TO CURE AND PREVENT FUNGAL INFECTIONS," "TRIPLE ACTION FORMULA," "☑ Kills Fungus," "☑ Stops Itching & Burning," "☑ Restores Skin Health + Cures Most Athlete's Foot"

11

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

¶ 3, *supra* at 5–6. Combined with images of toenails and an applicator brush, the statements falsely claim that Fungi-Nail treats nail fungi. *Id*. Defendant's assertion that the front label statements are true is irrelevant because at the pleading stage the complaint is taken in light most favorable to plaintiff. Further, the statements still mislead the public by stating Fungi-Nail treats nail fungi when it does not. Defendant cites *Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) for the proposition that when front label statements are truthful, courts may dismiss claims that those statements or depictions are misleading. MTD at 9. The *Chuang* court noted that the product contained fruit juice or puree from the fruit shown on the product's packaging. *Chuang*, 2017 WL 4286577, at *4. In contrast, Fungi-Nail is **not** meant to be applied to the toenails, contradicting the prominent name and nails image featured on the packaging. *Supra* at 6–8. Thus, Defendant's argument fails.

### F.    The Safe Harbor Does Not Shield Defendant's Misleading Label

Defendant deceptively claims it complies with the FDCA because it purportedly follows the FDA's OTC Monograph M005. MTD at 15–16. Monograph M005 does not permit the alleged false and misleading labeling, including Defendant's name "Fungi-Nail" with a photo of nails on the front label packaging *in conjunction with* misleading statements such as "Kills Fungus," and "CLINICALLY PROVEN TO CURE AND PREVENT FUNGAL INFECTIONS." *Supra*, 5–6. Indeed, M005 does not condone Defendant's misleading product name or front label photo. *Id*.

*Bronson* is instructive. *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *7 (N.D. Cal. Apr. 16, 2013). There, the defendant argued that its label claims were protected by the safe harbor because the FDA permitted it to make structure and function claims. *Id*. The Court rejected this argument, "Even if the Splenda with B Vitamin label is a permissible structure/function claim . . . Defendants overlook that **those same regulations also require that the labels not be "misleading."** *Id*. (emphasis added). Similarly, even if the FDA's Monograph M005

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

12

allows Defendant to make certain claims about fungal treatment, the monograph does *not* permit those claims to be false and misleading.

Similarly in *Delarosa* the defendant argued that "because it complied with federally-imposed requirements for labeling homeopathic drugs, a 'safe harbor' shields it from liability under the CLRA and the UCL." *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1190 n. 8 (C.D. Cal. 2011). The Court concluded that because "federal regulations do not explicitly sanction or require the 'business practice complained of,' in this case [defendant's] alleged misleading labeling, the Court concludes that Defendant is not shielded from Plaintiff's consumer protection claims." *Id.* Similarly, in *Jovel v. Boiron Inc.*, the defendants contended that California's safe-harbor doctrine shielded them from UCL liability because the product label complied with federal requirements. *Jovel v. Boiron Inc.*, No. 2:11-CV-10803-SVW-SH, 2013 WL 12164622, at *11 n. 15 (C.D. Cal. Aug. 16, 2013). The Court held that "because federal regulations do not specifically condone Defendants' labeling of Oscillo [misleading flu-relief claims], the Court concludes that Defendants cannot invoke this safe harbor." *Id.* Like the *Boiron* cases, no federal regulation specifically approved Defendant's misleading labeling, so it is not shielded from consumer protection claims.[4]

Defendant's reliance on *Ebner v. Fresh, Inc.* 838 F.3d 958 (9th Cir. 2016) is misplaced. MTD at 15. In *Ebner*, the Ninth Circuit held that the safe harbor shielded plaintiff's UCL challenge to the accurate weight statement because the defendant complied with federal and state law requiring a net weight statement on defendant's label. *Id.* at 963–64. In *Ebner*, the challenged net weight claim was "clearly permitted"

---

[4] Notably, Defendant's improper judicial notice request (Dkt. 15) does not include any document showing that the FDA reviewed Fungi-Nail's packaging and pre-approved it or found that it complies with the FDCA. *Compare with Martin v. Medtronic, Inc.*, No. 115CV00994DADMJS, 2017 WL 825410, at *15 (E.D. Cal. Feb. 24, 2017) (dismissing UCL claim that challenged conduct ***previously authorized by the FDA during the PMA ("Premarket Approval") process***, FDA approval of SynchroMed labeling brings plaintiff's claims within the California safe harbor provision) (emphasis added).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

under federal and state law requiring the weight to be stated on the label. *Ebner*, 838 F.3d at 963 (citation omitted).[5] However, the court held that compliance with net weight requirements did not shield the defendant from liability, as the law's silence on omissions about accessible product quantity did not create a safe harbor. *Id*. at 964. In contrast, the FDA has not required or condoned Defendant's misleading "Fungi-Nail" labeling.

## G.    Express Preemption Does Not Apply

Preemption is an affirmative defense; it is Defendant's burden to establish that it applies. *Bailey v. Rite Aid Corp*., No. 18-CV-06926-YGR, 2019 WL 4260394, at *5 (N.D. Cal. Sept. 9, 2019) (citing *Perez v. Kroger Co.*, No. 17-cv-02448-ODW (AGR), 2017 WL 3601998, at *7 (C.D. Cal. Aug. 18, 2017)). To prevail on its preemption defense, Defendant must show that Plaintiff's claims would impose requirements that are "different from or in addition to, or that [are] otherwise not identical with, a requirement under" the FDCA. 21 U.S.C. § 397r(a). The FDCA and California law prohibit false and misleading advertising. 21 U.S.C. § 331 ("The following acts and the causing thereof are prohibited: (a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."); 21 U.S.C. § 352 ("A drug or device shall be deemed to be misbranded [i]f its labeling is false or misleading in any particular."); California

---

[5] The *Barber* case is inapposite because there the California legislature mandated specific disclosure rules, which defendant followed. *Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954, 961 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018) ("California has spoken directly to the issue of what disclosures companies must make to customers about potential forced labor in their supply chains."). This differs from the present case, as M005 does not address misleading label claims based on a deceptive product name and photo. Defendant also cites *Pom Wonderful* to support its argument, which is a summary judgment opinion following an appeal, and involved an FDA rule that specifically addressed the product naming issue claimed to violate the Lanham Act. *Pom Wonderful LLC v. Coca Cola Co.*, No. CV 08-06237 SJO FMOX, 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013). FDA M005, again, does not specifically address Defendant's misleading product name and packaging.

14

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

Business & Professions Code § 17500 (prohibiting "untrue or misleading" advertising).

Defendant argues Plaintiff runs afoul of § 397r(a), twisting the complaint to assert that Plaintiff seeks to impose additional labeling requirements. MTD at 19. Defendant cites Corrected Complaint ¶ 31:

> Defendant could have, but chose not to, select a more accurate statement to display on the front label of their product such as naming the product "Fungi-Foot" or "Fungi-Athlete's" or "Ringworm-Fungi." By placing the word "Nail" in the products' names, selling the items in the foot care section, and stating in bright, capitalized letters that the products "KILL[] FUNGUS," Defendant purposely chose to mislead consumers to think that the products are intended to kill nail fungus.

This paragraph imposes no additional labeling requirements; it points out that Defendant purposefully made its packaging misleading to consumers. In other words:

> Plaintiff is not asking this Court to impose additional labeling requirements under state law that are "different from or in addition to" the ones that the FDCA imposes. Rather, Plaintiff is merely saying that Defendants' product labeling, as it currently stands, is *misleading*. This is a different argument, since "[t]he FDCA is not focused on the truth or falsity of advertising claims but is instead directed to protect the public by ensuring that drugs sold in the marketplace are safe, effective and not misbranded."

*Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083, 1097 (S.D. Cal. 2021).[6]

---

[6] Other caselaw in this Circuit is in accord. *See, e.g., Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192, 1204–05 (C.D. Cal. 2021) (rejecting preemption argument); *Fagan v. Neutrogena Corp.*, No. 5:13-CV-01316-SVW-OP, 2014 WL 92255, at *1 (C.D. Cal. Jan. 8, 2014) (same). Defendant's reliance on the out-of-circuit *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371 (S.D.N.Y. 2014) case is

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

Defendant's argument concerning FDA Monograph M005 is a red herring. Because Plaintiff's state law claims exist independently of federal law, it does not matter whether the FDA issued a final monograph relating to over-the-counter fungal products. Plaintiff's claims only require the Court to determine whether Defendant's product labels are false or misleading to a reasonable consumer, and those kinds of claims do not give rise to preemption. *See id.* ("because these state law claims exist independently of federal law, it would not make a difference if the FDA issued a final monograph anytime soon. Here, Plaintiff's claims only require the court to determine whether Defendants' product labels are false or misleading to a reasonable consumer, and those kinds of claims do not give rise to preemption.").

## H.   Hayde Has Standing

### 1.   Hayde Has Standing to Represent Purchasers of Substantially Similar Fungi-Nail Products in Pen, Spray, and Brush Applicator Methods

Courts routinely refuse to address product standing arguments at the motion to dismiss phase. *Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155, 1161 (C.D. Cal. 2012) (the "argument is better taken under the lens of typicality or adequacy of representation, rather than standing"). Even if the Court considers this premature argument now, it fails. Hayde can represent consumers who purchased Fungi-Nail products with different applicators (pen and spray) because the products are all substantially similar, *i.e.*, have the same active ingredient and nearly identical packaging. ¶¶2-3; *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 891 (N.D.

telling. In *Bowling*, plaintiffs alleged different claims under different state laws, including breach of warranty claims. *Id.* The FDA monograph at issue in *Bowling* permitted sodium fluoride manufacturers to include claims explaining how the product prevents tooth decay. The Court concluded that monograph preempted plaintiffs'"Restores Enamel" claim because the monograph directly regulated tooth decay claims. *Id.* at 376. Here, M005 does *not* address Defendant's misleading brand name, including its misleading graphics,as used in conjunction withits label claims.

Cal. 2012) (plaintiff had standing where the unpurchased items contained identical misrepresentations across the product line regarding whether the products were "organic"); *Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 898 (N.D. Cal. 2024) (plaintiff had standing because unpurchased tomato products had uniform and consistent labeling across various tomato products).

### 2.    Hayde Has Standing to Request Injunctive Relief

Arcadia misreads Hayde's Corrected Complaint in arguing he does not adequately request injunctive relief. MTD at 22. The Corrected Complaint alleges that Plaintiff relied on the Product's efficacy representations when making his purchase and was misled into purchasing the product under the false belief Fungi-Nail was effective at killing nail fungus. ¶¶4–7, 12, 14–16. Even if Plaintiff now knows this is false, that does not equate to knowledge that the claim will remain false in the future. Under Ninth Circuit precedent, "knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Roper v. Big Heart Pet Brands, Inc.*, 2020 WL 7769819, at *7 (E.D. Cal. Dec. 30, 2020) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F. 3d 956, 969 (9th Cir. 2018)). Accordingly, Plaintiff has sufficiently pled the likelihood of future harm and should not be barred from seeking injunctive relief.

The Ninth Circuit has held that the threat of future harm exists if the consumer plausibly alleges that: (1) "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" and (2) "she might purchase the product in the future, ... as she may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 970. The Complaint need only allege plaintiff's implied intent to purchase the product in the future. *Nguyen v. Lotus by Johnny Dung Inc.*, No. 8:17-cv-1317-JVS-JDE(x), 2019 WL 1957962, at *4 (C.D. Cal. Jan. 7, 2019) (finding plaintiffs had standing to pursue injunctive relief). The well-pled allegations give rise to Plaintiff's potential desire to purchase Fungi-Nail in the future if Arcadia made its product able to do what it claims

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

17

it does, cure nail fungi. Corrected Complaint at ¶¶8, 26, 55, 67. Moreover, nowhere in the Corrected Complaint does it allege that Plaintiff would *not* buy Fungi-Nail in the future if Arcadia removed its misleading labels. *See Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (affirming summary judgment for defendant because plaintiff stated at her deposition that she would not buy the products again, even if the company removed the allegedly misleading labels). The injunction Plaintiff seeks—requiring Defendant to remove misleading labels from Fungi-Nail products— aims to prevent future harm. It will prevent consumers from continuing to be misled. *See Mier*, 2021 WL 1559367, at *13 (finding requested injunctive relief to remove misleading hand sanitizer efficacy claims to be redressable future harm) (citing *Roper v. Big Heart Pet Brands, Inc.*, No. 1:19-cv- 00406-DAD-BAM, 2020 WL 7769819, at *8–9 (E.D. Cal. Dec. 30, 2020)).

### 3. Hayde Has Standing to Pursue Common Law Claims Nationwide

Whether Hayde's representation of nationwide claims is appropriate is an issue to be addressed at class certification. *Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192, 1206 (C.D. Cal. 2021) ("Plaintiffs have standing and any issues in representing a nationwide class are best addressed at the certification stage."); *see also Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) ("any issues regarding the relationship between the class representative and the passive class members – such as dissimilarity in injuries suffered – are relevant only to class certification, not to standing."); *Robinson v. Unilever U.S., Inc.*, No. 2:17-cv-03010-DMG-AJW, 2018 WL 6136139, at *4 (C.D. Cal. June 25, 2018) ("If and when Plaintiff moves for class certification, the Court will determine whether dissimilarities between Plaintiff's California law claims and those of non-resident putative class members preclude Plaintiff from asserting the latter in a representative capacity."). Thus, the Court should decline to assess whether Hayde has standing to represent the nationwide class at the motion to dismiss phase. *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

18

(N.D. Cal. 2012) ("Class allegations typically are tested on a motion for class certification, not at the pleading stage."); *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir.2012). *See* MTS Opp. at 3–4.

## I.  Hayde Alleges Viable Common Law Claims

Through its name, imagery, and wording, Fungi-Nail's front label states it treats nail fungi, reinforced by the prominent display of toenails. *Supra*, at 5-6. The front label's unqualified claims, such as "ANTI-FUNGAL LIQUID" and "CLINICALLY PROVEN TO CURE AND PREVENT FUNGAL INFECTIONS," combined with prominent toenail images lack any restriction to skin-only use, leading a reasonable consumer to believe **it treats toenail fungi**. *Id*. The absence of disclaimers that Fungi-Nail is not for nail fungi on the front label further supports the plausibility of consumer deception, making Hayde's claims of misleading labeling legally viable. *Id*. The false statement is that Fungi-Nail treats nail fungus. Thus, Defendant's argument that Hayde did not allege an affirmative false affirmation of fact is incorrect. MTD at 23. Defendant recycles its argument that the front label claims are true, but truthful statements that are "actually misleading or which ha[ve] a capacity, likelihood or tendency to deceive . . . the public" are still actionable. *Supra* at 15–16, *Williams*, 552 F.3d at 938 (citations and quotations omitted). Because Hayde alleges an affirmative misrepresentation, Defendant's reliance on *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015), holding negligent misrepresentation cannot be premised solely on omissions, fails. MTD at 23. For the same reason, Defendant's reliance on *Zeiger v. Wel/Pet LLC*, 526 F. Supp. 3d 652, 689 (N.D. Cal. 2021) for the same proposition also fails. MTD at 23. Hayde plausibly alleged that Fungi-Nail's front label unambiguously misled reasonable consumers into believing it treated nail fungi. *Supra* at 5–6. This defeats Defendant's conclusory, inaccurate claim that he failed to establish consumer deception. MTD at 8–13, 23. Further, Defendant cites *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *7 (N.D. Cal. Apr. 13, 2017), which requires breach of express warranty claims to meet the reasonable consumer test. MTD at 24. However,

19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor

as argued above (*supra*, 5–6), Hayde has sufficiently alleged that reasonable consumers would be deceived by Defendant's front label, making *Azoulai* inapplicable. Thus, Hayde alleged viable common law claims.

### J.  Leave to Amend is Freely Granted

If the Court finds any grounds for dismissal, Plaintiff requests leave to amend under Fed. R. Civ. P. 15. leave to amend is granted with "extreme liberality," granting leave absent undue delay, bad faith, prejudice, or futility. *Foman v. Davis*, 371 U.S. 178 (1962). Federal policy favors resolving cases on the merits. *Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061 (2008). Defendant's claim that Plaintiff already amended the complaint fails because the amendment was not substantive but merely an errata. Dkt. 9. No substantive changes were made to the complaint. *Id*. It was filed over two months before Defendant filed its responsive pleading resulting in no prejudice to Defendant. *Id*.

## IV.  Conclusion

For these reasons, Plaintiff requests that the Court deny Arcadia's motion to dismiss or, alternatively, grant leave to amend to cure any deficiencies.

Dated:  March 6, 2025

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

/s/ *Chumahan B. Bowen*
Thiago M. Coelho
Chumahan B. Bowen
Jennifer M. Leinbach
Reuben Aguirre

*Attorneys for Plaintiff and the Putative Classes*

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor

20

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned, counsel of record for Plaintiff Eric Hayde, certifies that this brief contains 6,818 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 6, 2025                    Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**


_/s/ Chumahan B. Bowen_

Thiago M. Coelho
Chumahan B. Bowen
Jennifer M. Leinbach
Reuben Aguirre

_Attorneys for Plaintiff and the Putative Classes_

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS