UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)

| | |
|---|---|
| ERIC HAYDE, | CASE NO: 8:24-cv-02657-JDE |
| Plaintiff, | CIVIL |
| vs. | Santa Ana, California |
| ARCADIA CONSUMER HEALTHCARE INC, | Thursday, December 11, 2025 |
| Defendant. | (11:07 a.m. to 12:16 p.m.) |

HEARING AND RULING RE:

DEFENDANT'S MOTION TO COMPEL PLAINTIFFS' DEPOSITIONS, TO PRODUCE DOCUMENTS, AND FOR SANCTIONS [DKT.NO.48]

BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE,
PRESIDING

APPEARANCES: SEE PAGE 2

Court Reporter: Recorded; CourtSmart

Courtroom Deputy: Amber Rodriguez

Transcribed by: Exceptional Reporting Services, Inc.
20079 Stone Oak Pkwy.
Suite 1105-237
San Antonio, TX 78258
361 949-2988

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**APPEARANCES:**

**For Plaintiff:** THIAGO MERLINI COELHO, ESQ.
Wilshire Law Firm
660 S. Figueroa St.
Sky Lobby
Los Angeles, CA 90017

**For Defendant:** JACOB MICHAEL HARPER, ESQ.
KIHYUN PETER BAE, ESQ.
Davis Wright Tremaine
350 S. Grand Ave.
27th Floor
Los Angeles, CA 90071

**Santa Ana, California; Thursday, December 11, 2025; 11:07 a.m.**

**(Call to order)**

**THE COURT:** Let's call *Eric Hayde, et al. versus Arcadia Consumer Healthcare, Inc.*, Case Number 8:24-cv-2657-JDE.

Let's take appearances from counsel starting with counsel for the Plaintiff.

**MR. COELHO:** Good morning, Your Honor. Thiago Coelho on behalf of the Plaintiffs.

**THE COURT:** Good morning, Mr. Coelho. Is that -- pronounce that right?

**MR. COELHO:** You did.

Your Honor, do you mind if I have my laptop as well?

**THE COURT:** I don't mind.

**MR. HARPER:** Morning, Your Honor. Jacob Harper on behalf of Arcadia.

**THE COURT:** Morning.

**MR. BAE:** Good morning, Your Honor. You have Kihyun Peter Bae on behalf of Arcadia, otherwise known as Peter.

**THE COURT:** Good morning, Mr. Harper and Mr. Bae. You can be seated.

So we're here for Defendant's motion to compel and for sanctions. Give me one moment, please. All right.

I have reviewed the motion, the joint stipulation, the declaration of Peter K. Bae and attachments, the

declaration of Mr. Coelho and attachments, as well as the -- it was referred to as memorandum but the Local Rule 37-2.4 supplemental memorandum filed by the moving parties.

I don't have a written tentative. I got an oral tentative. And we can spend as much or as little time here as you all would like.

**(Laughter)**

Trying to decide whether I should speak off the cuff or just tell you what my oral tentative is. I'm going to speak off the cuff.

Discovery motions, sometimes they are very important. They get to the heart of significant issues like privilege, like confidentiality, trade secrets.

Other times there's legitimate questions as to the scope of let's say contention interrogatories that could cost vast amounts of money to respond to. And there may be other issues that can come up.

Sadly, that's not the majority of discovery motions we see. The majority of the discovery motions we see are kind of like this one, motions that frankly really should have been resolved.

And so when I get the first type of motions, there's no blame. That's what I'm here for.

Second time -- type of motions, I kind of look at where things went off the rails because there are in federal

and state courts probably tens of thousands, maybe hundreds of thousands of cases litigation pending all the time.

And normally people can schedule the deposition of the named parties; not usually something you have to go to court for. Normally, parties can work out scope of document requests to the named parties.

When I get something like that, I try to figure out is there one party here that's really responsible for how we got here.

And I'll tell you that in that situation, 80 percent of the times the parties point the finger at the other party and they're both right. And that's what's happened here.

All right. Each side here is part of the reason why you're sitting here today rather than having had this deposition done months ago.

I'll jump to one thing. There's not going to be any sanctions here. There's not going to be any terminating sanctions here.

To the Plaintiffs' side, if somebody says you're required to appear at a deposition and you're not going to appear, and they say, well, we're going to go forward with it anyway, as much as I don't like it because it's more work for me, you need to come and see me. You can't just not show up. You need to come and see me. All right.

From the Defendant's standpoint, when someone gives

you deposition dates six weeks out and then you don't do anything with those dates for four weeks, and then send out a notice and the other side says, yeah, that was so 1988 of you.

I'm sorry, that was a callback to an earlier hearing.

Those dates are gone. Those dates, we gave them to you and they're gone. And don't be surprised when they say we can't accommodate it now, we have to come up with a new date.

I don't see Plaintiffs here saying we're never going to have our deposition taken. I hear and see poor communication on both sides.

But I'll also say when you go from zero to 60, when you -- when I see what's happening here, which is poor communication, there was a prior motion where it was procedurally improper, but that may have been because of the conduct of the Plaintiffs, I don't know.

But you got to do the right thing. You got to -- just because the other side isn't responding maybe in the way they should, you dot every "I" and you cross every "T." But you be reasonable about it.

When someone says, okay, we're not going to be able to show up because those dates aren't available, don't take a notice of nonappearance. That's a waste of everyone's time. It's a waste of your client's money.

I'm not going to impose -- I'm -- and then don't ask for terminating sanctions in a ostensible class action for a

failure to appear at a deposition when there's been no prior order and no prior discovery finding of either violation or misconduct.

You ratchet things from zero to 500 when you do that. And you remove any opportunity for you folks to try to work things out.

As I understand it, there are two dates that have been offered for the two Plaintiffs in this case, Mr. Hayde and Ms. Wheeler; is that correct?

**MR. COELHO:** That's right, Your Honor.

**THE COURT:** What are those dates?

**MR. COELHO:** It's January 27, 2026, and January 30th, 2026.

**THE COURT:** And the January 27th date is for who?

**MR. COELHO:** It's for Hayde.

**THE COURT:** And the January 30 is for Ms. Wheeler then.

**MR. COELHO:** Correct.

**THE COURT:** What time?

**MR. COELHO:** We did not set a time but we can start 9:00 a.m. or 10:00 a.m.

**THE COURT:** All right. And would it be at defense counsel's offices?

**MR. COELHO:** Our preference would be Zoom but it can be at my office or it can be at defense counsel's office.

**THE COURT:** Well where do they live?

**MR. COELHO:** I believe Mr. Hayde lives far away but I don't remember exactly the city. I can find out.

**THE COURT:** So you've been trying to schedule the deposition -- well, let me ask from the defense side. Is this a Zoom deposition or is this an in-person?

**MR. HARPER:** We strongly prefer an in-person.

**THE COURT:** Okay.

How do you not know where your client is located if you've been negotiating an in-person deposition for six months?

**MR. COELHO:** Your Honor, we are in agreement to do the deposition whatever manner. I just prefer Zoom. We can do it in person their office.

**THE COURT:** Well they have a right to do it in person. But my question is how do you not know where your client is located six months -- after six months of negotiating a deposition?

**MR. COELHO:** I just don't recall off the top of my head, Your Honor. I can just pull it up and tell you exactly where they live.

**THE COURT:** Well, they filed here in Orange County. It's -- any objection to a deposition proceeding in -- well, I guess Los Angeles County is where the defense counsel are located. Any objection?

**MR. COELHO:** No objections, Your Honor. I believe

it's within the mileage. I just don't remember the exact address.

**THE COURT:** Well I need to know now.

**MR. COELHO:** No objection.

**THE COURT:** All right. What time do you want to start the deposition at your office?

**MR. HARPER:** Nine a.m. please.

**THE COURT:** All right. For both?

**MR. HARPER:** Yes.

**THE COURT:** All right. Those depositions are set, for Mr. Hayde, January 27th, 2026 at 9:00 a.m. at defense counsel's office at 350 South Grand Avenue, 27th Floor, Los Angeles, California.

Ms. Wheeler's deposition at -- that's at 9:00 a.m. Ms. Wheeler's deposition is set for January 30th, 2026 at the same location at 9:00 a.m. These would be in-person depositions recorded by stenographer and a -- are they videorecorded?

**MR. HARPER:** Yes, Your Honor.

**THE COURT:** And recorded by a videographer. That's set. The motion is granted.

To the extent that the parties -- the Defendants seek an order, that is now ordered. Failure to comply now could result in sanctions beyond mere monetary sanctions.

But there are no monetary sanctions or other

sanctions awarded for the difficulties in scheduling these depositions.

With respect to the request for production of documents, Mr. Coelho, do you have the requests in front of you?

**MR. COELHO:** I have the statement itself but let me pull up the actual questions. Just one moment. But I'm very familiar with the requests, Your Honor, if you'd like --

**THE COURT:** Well, --

**MR. COELHO:** -- to continue.

**THE COURT:** -- here's my question.

**MR. COELHO:** Yeah. Go ahead.

**THE COURT:** Some of them looks like you say we don't have any; is that true?

**MR. COELHO:** That's true, Your Honor.

**THE COURT:** You're telling me as an officer of the Court that you and your client have made a reasonably diligent search and have no -- either have no responsive documents in your client's possession, custody, or control, or that you have produced all responsive documents in your clients' possession, custody, and control that are not privileged.

**MR. COELHO:** That would be correct, Your Honor, except for a few of the requests specifically.

**THE COURT:** I'm asking only about the requests where you have said on behalf of your clients either my client

doesn't have any or my client has produced everything they have.

**MR. COELHO:** That's right, Your Honor.

**THE COURT:** Okay. Any reason for me to doubt that representation?

**MR. HARPER:** Our only hesitation is they -- they're still subject to the objections and so --

**THE COURT:** No, no, no.

**MR. HARPER:** -- if he's saying unequivocally --

**THE COURT:** Did you hear my question? My question was for these requests --

**MR. HARPER:** Yeah.

**THE COURT:** -- where you have said I have produced all documents, responsive documents within my possession, custody, or control, or I have no responsive documents in my possession, custody, or control, he's made that representation as an officer of the Court.

That's not subject to any objections. That is simply that's it. Any reason for me to doubt that?

**MR. HARPER:** Except for the request as to the retainer agreement, I just don't remember if he said that was going to produce that.

**THE COURT:** Well tell me if he did. I don't -- I seem to recall that he said that he was objecting to that, that that was not something he was --

**MR. HARPER:** Then, no, --

**THE COURT:** -- going to produce.

**MR. HARPER:** -- I don't have any reason right now.

**THE COURT:** All right. So making a global ruling because the law is unless there's something beyond mere speculation, when a party says, I don't have any responsive documents, or I've given you everything I have, what do I do? I really mean it, look again. No, that's the end.

So the motion is denied as to every request for which that statement of compliance was made and has now been confirmed by an officer of the Court.

Now, let me be very clear to Plaintiffs' side. You have an ongoing obligation under Rule 26 to produce documents if they come into your possession after the fact. And you're now stuck with it, okay.

If you suddenly want to come forward at trial -- and the nice thing about me doing the discovery in my own cases, I'll remember this hearing.

And you say here is a label that was attached to the product that I bought, and they tell me, well, that was never produced in discovery, and I say to you, was it, and you say, we just found it, guess what? It's not coming in. Understood?

**MR. COELHO:** Understood, Your Honor.

**THE COURT:** All right.

**MR. COELHO:** I think the facts in this case are

fairly simple --

**THE COURT:** We don't -- as long as we're on the same page.

**MR. COELHO:** We're on the same page.

**THE COURT:** So let's get now into the actual requests that you haven't agreed to produce. And maybe I think the simplest thing is just go through the joint stip. and --

**MR. HARPER:** Yes, Your Honor. And what we've been doing, for your reference, Your Honor's reference, is looking at the supplemental memorandum as well because it summarizes in fairly short order the documents, the categories of documents.

**THE COURT:** Well which part of the supplemental?

**MR. HARPER:** Starting at page two, line two, going through page four, line 25.

**THE COURT:** All right. Well, not -- so the problem is I'm not sure all of these tell me what they said because you're arguing about things.

It's the classic example of -- I'm a history buff -- of the battle of New Orleans which was fought after the war of 1812 was over. Okay.

A lot of these -- you're fighting about objections when he said I've given you everything I have and then you still fight about objections. So --

**MR. HARPER:** Fair enough.

**THE COURT:** -- I want to make sure we're looking at

if you're telling me this tells me that, --

**MR. COELHO:** Your Honor, I suggest we go through the actual statement itself.

**THE COURT:** All right. So request number 11 to Mr. Hayde, all right, --

**MR. COELHO:** That should be the criminal records, Your Honor.

**THE COURT:** Yes. That is the -- with the "A" through "M" subparts. And it looks like it's just a straight objection; is that correct?

**MR. COELHO:** That's right, Your Honor.

**THE COURT:** All right. How difficult would it be for him to search for and find just in his possession, custody, or control these records?

**MR. COELHO:** Maybe impossible --

**THE COURT:** Maybe impossible?

**MR. COELHO:** -- for some of them. Yeah, for some of them they -- he just doesn't have them in his possession at all.

**THE COURT:** That's my point.

**MR. COELHO:** Yes.

**THE COURT:** Okay. I'm asking how difficult it would be for him to find them. I don't know. Proportionality, undue burden. The burden's on you --

**MR. COELHO:** Correct.

**THE COURT:** -- for undue burden. Proportionality could go either way.

Is it relevant? Arrests generally are not relevant. But arrests could lead to the -- could lead to information about things that could be relevant.

So is there a high showing of relevance here? Absolutely not. Very low, very minimal. But I have to do a balancing, okay.

I can't say for a certainty that it's completely irrelevant. Your client has been convicted of several offenses.

They have -- the Defendants have made it -- I want to be careful. Have made it a point to highlight usually in the first paragraph of every brief they filed in front of me your client's criminal history. So they think it's important.

I want to know how difficult it would be for your client to search for and produce information about these things.

**MR. COELHO:** Understood, Your Honor.

Some of these documents are from 1993, I believe.

**THE COURT:** So does he have them?

**MR. COELHO:** He does not have them.

**THE COURT:** Then it's easy.

**MR. COELHO:** It's easy. I guess it's possible that we could try to go to the Clerk and see if --

**THE COURT:** No, no, no, no, you don't have to do anything. A request for production asks for what's in your client's possession, custody, or control. He doesn't have to go research and find things.

The question is, what does he have? How hard would it be for him to produce --

**MR. COELHO:** Yeah, --

**THE COURT:** -- responsive documents?

**MR. COELHO:** -- I do know that the client would have one of the parole documents that would be his possession. That potentially could be something that we could produce.

Although I would like to address the relevant section as well.

**THE COURT:** Well, the probation terms is a separate request, right. But I guess it --

**MR. COELHO:** Yeah.

**THE COURT:** -- falls within this as well. But we can address those two together. Same thing. Extraordinarily marginal relevance. But I could see relevance.

For instance, someone who's on probation or parole may be limited in what they can do, where they can travel, who they can meet with.

This person is being proffered as a potential representative of a class. In determining whether that person is an appropriate representative, travel limitations, other

limitations.

There may be depositions in other states in this case. I have seen it where named representatives go to depositions because they consider it and say, it's my responsibility, too, to adequately protect the class.

If he can't leave the state, that might be an issue that they want to bring up on a motion to deny class -- or opposition to a motion for class certification.

I don't know what's out there so that's my point. Is there some potential relevance? Yeah. So then the question is, how hard is it?

**MR. COELHO:** We can certainly produce that document that we have in our possession, Your Honor.

But just address that relevant section -- and your point is well-taken -- I would say that there's -- it's public information that there's no limitations on Mr. Hayde's ability to travel. The document -- the case itself is public record. So I don't think that would make a fact more or less likely --

**THE COURT:** Well why should they have to go search through state court files? You ever search through state court criminal files?

**MR. COELHO:** Well, Your Honor, --

**THE COURT:** It's not easy.

**MR. COELHO:** -- seems that they already did.

**THE COURT:** They might be able to find felony

convictions. That's easier to find.

To find conditions of probation, not always as easy to find. Why should they have to go through that when your client could just simply produce it?

Now, I agree with you, is it -- is this going to make or break the case what his terms of probation are? No. But the definition of relevance is broad, okay.

And not knowing what's in it means I can't say that it's not relevant. I can say that it is at the edges of relevance. But I can't say that it's not relevant.

So then I do a balancing and Rule 26(b)(1) proportionality. It's -- the analogy I use on people use like weighing. It's not really like weighing. It's like -- I don't know if you have kids.

This came after my time. My kids had this thing that was like a ball and a platform wrapped around the ball, and you --

**MR. HARPER:** Labyrinth.

**THE COURT:** What's it called?

**MR. HARPER:** Labyrinth.

**THE COURT:** Lab ring?

**MR. HARPER:** Yeah. Has a metal ball and it --

**THE COURT:** No, no, no, no, you --

**MR. HARPER:** Oh, --

**THE COURT:** -- stand on it.

**MR. HARPER:** Different. All right.

**MR. COELHO:** Balancing thing.

**THE COURT:** You stand on it.

**MR. COELHO:** Yeah.

**THE COURT:** It's a -- you balance.

**MR. COELHO:** Yeah.

**MR. HARPER:** Okay.

**THE COURT:** But it's not like a weighing of two things where is this heavier or is this heavier. You're checking a lot of -- you have to monitor your balance in all directions.

So proportionality, cost is one thing. Strength, relevance is another thing. Relevant access to the information, meaning your client has it, they have to go to court to get it.

Relative resources of the parties. Well, we have a corporate defendant, we have individual plaintiffs. But we have individual plaintiffs wanting to act as class representatives and have counsel on their -- I'm taking this all into account.

Is any of this stuff relating to the criminal history monumentally relevant? No. It's not. Has to -- potentially has to deal with class.

But it's one of those things, the information they already have is felony convictions. I think you said just got

out of prison.

I'm not sure what an arrest in February, 1991, how that really adds to the mix. Or an arrest on May 16, 1998, unknown charge, an arrest May 7th -- or I'm sorry, December 7th, 1998, unknown charge, arrest February 1, 2000, unknown charge.

I don't really know how that factors in. Minimally. But now I need to know how hard is it for him to say I don't have anything anymore?

**MR. COELHO:** Your Honor, it's not hard. We can say that for some of the documents. I can also have him look and see if there's additional documents he can readily find.

I will say I don't think that any of this has anything to do with the case. But it's well-taken, the point that maybe there is some limitation traveling that I'm happy to --

**THE COURT:** Well, some limitation traveling. And then there's these arrests that don't have a -- so there -- here's an arrest for contempt of court. And then there's some other things.

Well, if he wants to be a class representative and there's a finding of failure to follow an order of the Court in a prior instance, whether it was one year ago or ten years ago, that might be something that I'd want to know about in making an assessment of whether this person is an appropriate

representative of the class.

So I'm inclined to say unless you tell me it's impossible, or you tell me it's going to be very expensive or difficult for him to look at request number 11 and give whatever records he's got, excluding obviously privileged communications with counsel, I'm assuming you don't even want a privilege log of those; is that correct on behalf of the defense?

**MR. HARPER:** Yes.

**THE COURT:** All right. Good answer. We're going to be reasonable.

I don't think it's hard for him to look for this stuff. I don't think it's particularly relevant. Look for it. And if he's got something and it's not privileged, produce it.

**MR. COELHO:** And just to be clear, Your Honor, this does -- just for the record, this does not require him going to a clerk or us --

**THE COURT:** No. It's what --

**MR. COELHO:** -- going to a clerk and --

**THE COURT:** -- in his possession.

**MR. COELHO:** Fair enough.

**THE COURT:** What's in his possession, custody, or control.

**MR. COELHO:** Not a problem, Your Honor.

**THE COURT:** All right. So request number 11 is

granted. Nonprivileged documents in your client's possession, custody, or control are directed to be produced seven days before the deposition.

**MR. HARPER:** Before the first deposition, Your Honor.

**THE COURT:** Before his deposition.

**MR. HARPER:** Okay.

**THE COURT:** Whoever -- whichever party we're dealing with, seven days before that party's deposition.

**MR. HARPER:** Fair enough. Thank you, Your Honor.

**THE COURT:** Otherwise -- so we're done with the objections. He's just going to produce what he has, excluding privileged communications.

Let's turn to request number 13, conditions of parole. Let me say this. That refer or relate to the terms and conditions of parole, it's just going to be we're going to strike that.

All documents containing the terms or conditions of any parole, probation, or supervised release that you are subject to.

There's no relevance to what conditions he may have been subject to in 1998. All right. That he's currently under, that potentially is relevant to the adequacy of him as a class representative. Prior conditions is not relevant.

All right. Any -- but I'll hear from you, from either side. Based on my limitations, do you have any

objection to my limitations on behalf of the Defendant?

**MR. HARPER:** No. Your -- I have one point to make only, and that's with respect to prior convictions and parole, one element that is directly relevant to adequacy of counsel, it's not just the fact that, you know, he's been convicted or whatever.

It's in particular it's -- the case law is clear that if a class rep or putative class rep has been engaging or has been found to engage in conduct that's dishonest, that goes directly to the putative class rep's ability to serve as a -- in his fiduciary capacity as a class rep, which is -- there's -- in my view, there's a little bit more to it than just, well, it's if he's been convicted, maybe he's not an adequate class rep. And I think Your Honor touched on that.

I say that now with reference to prior conditions of parole because if he broke those prior conditions of parole --

**THE COURT:** Well, this doesn't ask whether he broke prior conditions of control (sic). It asks for all -- so here's what I'm going to warn you, all right.

Normally in a motion to compel, all right, you folks are building a house. What's that house? It's trial. You're getting ready for trial or class certification motion.

You're going to have to work together, what you're fashioning it, you're deciding the lumber, you're deciding the layout, you're deciding what it looks like.

When you have a dispute, you come to me. And you know what I do? It's binary, I either grant or deny the motion. I hammer a nail or I don't hammer a nail. It's your blueprint, it's your house.

You say we have a dispute, Judge, either hammer -- you want me to hammer the nail and you don't. And in that situation, what I normally do is I will read the request.

And if it's facially overbroad, if it's facially doesn't describe with reasonable particularity what it's looking for, Rule 34 says it has to describe with reasonable -- I don't even need an objection.

I can on my own say whether something describes with reasonable particularity what we're looking for.

So if I read this out loud, I think there's a good chance I'm going to not hammer the nail and I'm going to say denied if you want me to stick to it as worded, which is all documents, all caps, a defined term, that refer or relate to all docs or all caps are defined term that I have to go figure out what that means.

The terms or conditions of any parole, probation, or supervised release that you are or have been subject to, okay. That's an extraordinarily broad request, particularly with all documents that refer or relate to a probation that you are or have been related to.

You said, well, it's not just a felony conviction,

it's also prior instances of lying, prior instances of not being truthful, prior instances of dishonesty.

The term or condition of Mr. Hayde's potential -- and I don't know -- parole or probation from February 14th, 1991, you want him to go search and see if he has his conditions, anything that refers to -- if he made a note that said, I had to check in with my probation officer today in my diary, you want him to go search for that? This says he has to.

I'm not going to order him to do that. So if you want me to just rule on it as worded, I'm going to deny it. Do you want me to rule on it has worded?

**MR. HARPER:** I'll take what I can get, Your Honor.

**THE COURT:** Okay. So limited to documents containing the terms or conditions of any parole, probation, or supervised release that you are subject to. What's the burden to your client to produce that, Mr. Coelho?

**MR. COELHO:** The burden would be it -- you're talking about request number 14, right?

**THE COURT:** Number 13.

**MR. COELHO:** We can search and see what we can find, Your Honor. To the extent it's in his possession, the burden would be low.

**THE COURT:** Okay. So I'm going to order him to produce that. Understood?

**MR. COELHO:** Understood.

**THE COURT:** All right.

**MR. COELHO:** Thank you, Your Honor.

**THE COURT:** So that'll be the ruling on number 13.

**(Pause)**

**MR. COELHO:** Your Honor, may we just briefly just address the point that counsel raised about adequacy?

**THE COURT:** Let's keep moving. We'll deal with it if it comes up later.

**MR. COELHO:** That's fine.

**THE COURT:** All right. Number 14 to Mr. Hayde, all documents that refer or relate to the manner in which you became a party to this action including, but not limited to, advertisements or news articles, solicitations, emails, notices, or correspondence to which you responded. And I'm not sure what your actual final position was on that.

**MR. COELHO:** Your Honor, we tried to meet-and-confer with counsel. We asked them if they could narrow the request in a way that would be more feasible for us to potentially respond. As it was portrayed, it seemed to be too broad.

I believe I mentioned that, you know, to the extent it's not all documents that potentially exist in -- related to this request, then we could potentially produce some of these documents, meaning the document for which the class representative potentially may have seen prior to retaining our law firm.

**THE COURT:** All right. I have to be honest. I'm confused what you're looking for here because one could certainly say, well, I saw it an online ad for the product and I bought it. And the product was defective or the product misled me in what it contained.

Well, that's a document that -- and as a result, I contacted attorney and started an action. That's certainly a relevant document. And you certainly would be entitled to it.

But it's also a document refer or relates to the manner in which you became a party to the action including, but not limited to, advertisements or news articles, solicitations, emails.

Are you asking for what he saw that caused him to purchase the product or are you asking how he got hooked up with his current counsel?

**MR. HARPER:** The second, Your Honor.

**THE COURT:** Why is that relevant?

**MR. HARPER:** It goes to -- it -- this is a mislabeling action where reliance is an issue. He's again seeking class relief, seeking to represent a class. And historically these have been relevant and useful documents for depositions of class representatives.

**THE COURT:** I'm trying to understand what are you trying to get at?

**MR. HARPER:** We're trying --

**THE COURT:** Are you saying that the law firm did an advertisement that said, hey, did you ever buy this, we're looking for plaintiffs; is that where you're looking for?

**MR. HARPER:** That would be something that we're looking for, yes.

**THE COURT:** Okay. So were it a public document in a newspaper or something like that, I don't see a problem with that; do you?

**MR. COELHO:** Your Honor, I just don't see the relevance. But otherwise no problem.

**THE COURT:** Okay. Now, so is -- and I'm trying to understand, I'm trying to help --

**MR. HARPER:** Sure.

**THE COURT:** -- you because --

**MR. HARPER:** Yeah.

**THE COURT:** -- left to my own devices, I don't really know what this is asking for and it wouldn't meet reasonable particularity under Rule 34.

If what you are asking for is any advertisement -- I don't even know how to -- any advertisement -- I don't even know how to word it. That's my problem.

**MR. HARPER:** Advertisement, Instagram post, Facebook solicitation. I mean, those are frequently the way plaintiffs in these sorts of cases become the plaintiffs or become the class representatives. We're --

**THE COURT:** It's relevant to me if someone said, hey, I need somebody to go buy this product.

But if some -- if there's an -- I said, hey, did you buy this product and you found it was defective, please call this number, I mean, it's not privileged. I'm not really sure how to describe it in the way that would make it what you're looking for.

**MR. HARPER:** I understand, Your Honor. That's the sort of information that we elicit in deposition using often the initial advertisement.

And so that's why it's reasonably calculated to lead to the discovery of admissible evidence, which is --

**THE COURT:** Well, this one --

**MR. HARPER:** -- we have it as the --

**THE COURT:** -- we kind of have the cart before the horse, which is you say it's reasonably calculated to lead to discovery of admissible evidence.

Well, that's not the federal standard anymore. And as of I think next year it won't be the California standard either. Be that as it may, you can always follow-up.

But you're going to ask him at deposition, right, how -- why'd you buy this. What happened after you bought it? I thought I was misled. What did you do next? I contacted an attorney. Then you'll stop there, I would assume.

Or he'll say, I got an advertisement. You know, why

did you buy it? I got an advertisement that said I should buy it. I'm trying to understand --

**MR. HARPER:** Well, or he'll say, I forget, and then I pull up the advertisement, and then all of a sudden they remember. I mean, that's --

**MR. COELHO:** Your Honor, we'll prepare the Plaintiff so that they can respond --

**THE COURT:** Well, don't tell me that. Okay. Don't tell me that.

I mean, what cases are you citing to me that support precisely what you're asking, which is that you're entitled to -- assuming there is a solicitation, that you're entitled to a solicitation to join the case or to file a case?

**MR. HARPER:** I -- what I can do at this point is refer the Court to *Serna versus Big A Drug Stores*, 2007 Westlaw 7665762 --

**THE COURT:** Right. Might be -- as we said, might be appropriate for you to inquire at the deposition.

Plaintiffs have cited me Zaklit (phonetic) versus Nationstar Mortgage, LLC, which is a 2017 case from this district, that says, "even assuming that plaintiffs were solicited by counsel, that does not undermine a finding of adequacy. There is nothing inherently improper with the recruitment of a class representative." So --

**MR. HARPER:** We're not targeting recruitment per se

as something improper. We're looking for this as evidence of the chain of going from someone who allegedly purchased the product to becoming a putative class representative.

**THE COURT:** And you can ask him. I'm not saying you can't ask about it at deposition. But I'm not seeing the relevance to something this broad, and I'm inclined to deny it.

**MR. HARPER:** Okay. Well, I guess, I mean, --

**THE COURT:** But tell me something. I mean, --

**MR. HARPER:** I don't have anything for Your Honor at --

**THE COURT:** If there's something that says that --

**MR. HARPER:** -- this point right now so --

**THE COURT:** -- hey, the -- and let me see whose judge -- which judge that was. That was either Judge Snyder or Judge Kato.

If you're telling me that that's just wrong, here's a case that overrules that, let me know. I'm here to get it right.

But I got some language here that seems to say that solicitation, there's nothing inherently wrong with that, and it wouldn't undermine a finding of adequacy.

And that's to relevance, right? The relevance is that there was something untoward or inappropriate about a relationship between a class rep and counsel and how the case got filed, which means that that class rep would not

necessarily be an adequate person.

Let me tell you, my background, I worked on a criminal case, several -- actually two criminal cases where there were improper relationships between a class rep and a counsel that were not appropriately disclosed.

So there can be. But I need to get a baseline of that before I start going out and saying --

**MR. HARPER:** Your -- I'll give you a case that I worked on two years ago. It -- it's called White versus The Kroger Company. I don't have the citation in front of me.

But the -- there was a relationship between the plaintiff and counsel and the family members that we discovered from deposition.

And it involved a recruitment scheme that was in violation of California's capper statute which prohibits essentially ambulance chasing.

**THE COURT:** Right. And you're -- and you --

**MR. HARPER:** And --

**THE COURT:** -- said you learned about it in deposition. And have I said anything that limits your ability to ask about it in deposition?

The question is I'm trying to balance, as probably gotten a sense, what's the relevance versus what's the burden. I don't know what the burden is, probably not that much.

But I just read to you the case that says it's not

relevant to the question of adequacy of counsel how the person became involved.

Now, you may have cases and I may have seen cases where there's an improper relationship. You ask about it, then come on back, ask some more -- get some more document requests.

**MR. HARPER:** All right.

**THE COURT:** All right. What is the burden to Mr. Hayde to looking for these records, Mr. Coelho?

**MR. COELHO:** Specifically for request number 14, the burden would be low, Your Honor.

**THE COURT:** Okay.

**MR. COELHO:** Well, --

**THE COURT:** Can you tell me anything? If I were to say I'll grant the motion but it's -- it excludes any communication between -- that's privileged, that's a confidential communication between you and Mr. Hayde that you can then -- would that lower the burden?

**MR. COELHO:** You would lower the burden, Your Honor. But the problem that I have is that I don't fully understand the request itself just because of the way it's phrased. If we're talking about just the recruitment, then my answer would be the burden's low.

And if he excludes attorney-client privileged communication, there's no need for a privilege log, then of course the burden would be low.

But if it's all documents that refer or relate to the manner in which you became a party in this action, then it potentially includes, you know, any --

**THE COURT:** How about this: any advertisement, news article, solicitation, --

**MR. HARPER:** Well, --

**THE COURT:** Wait. Any advertisement, news article, or solicitation to which you responded resulting in the filing of this lawsuit, excluding communications, privileged communications, with counsel.

**MR. COELHO:** I don't really like the idea of solicitation because the state bar as essentially defined that term to mean someone actually going in person and soliciting that person, which would be a violation of the California ethical rules. But we --

**THE COURT:** I don't like the idea of eliminating what may be the most relevant question that's being asked.

**MR. COELHO:** Fair, Your Honor. I will say for the Court --

**THE COURT:** I'm not -- and I'm not -- my comment before about criminal cases, I don't have any reason to think that there's anything wrong with the solicitation here. And I'm not making any suggestion about that.

I am saying that it can be relevant that -- in this case I don't have any reason to think there is any such a

relationship or that there was anything improper.

**MR. COELHO:** Your Honor, we can provide those documents in response to specifically obviously the ad. Some are not applicable, such as the new article and the solicitation. But the ad can be fairly easy produced.

**THE COURT:** Well, when you say the ad, you mean the product ad.

**MR. COELHO:** I -- that was not my understanding. I thought that --

**THE COURT:** Okay.

**MR. COELHO:** -- you meant the actual ad that a plaintiff may have seen in relation to potentially retaining a law firm.

**THE COURT:** Okay. Understood. So it's what -- it's the -- I certainly hope it doesn't mean the -- a billboard where someone says I've been wronged, there's a lawyer, I'm going to call him. You don't mean that, right? You mean --

**MR. HARPER:** No. I mean --

**THE COURT:** -- an ad relating to --

**MR. HARPER:** -- a Facebook equivalent of that.

**THE COURT:** You -- well, hold on.

**(Laughter)**

You mean relating to this product.

**MR. HARPER:** Yes.

**THE COURT:** It's all contingent on this product.

It's not simply -- this is the problem with this one. I'm going to deny it. I'm just going to deny it because it's too hard for me to recraft it. I'm not recrafting.

As worded, it's just -- as we're having this -- when we have this much trouble trying to figure out what it means, it's not stated with reasonable particularity. So request for production number 14 to Mr. Hayde is denied.

All right. Request number one to Ms. Wheeler, I think this falls in the category of I think you said -- well, something about a protective order.

**MR. COELHO:** I can address the protective order if you like, Your Honor.

**THE COURT:** Do we need a protective --

**MR. COELHO:** I mean, --

**THE COURT:** -- order? Can -- do you need her credit card number?

**MR. HARPER:** If I can just get something out of this, I'm --

**THE COURT:** Can -- do you need her --

**MR. HARPER:** -- fine with that.

**THE COURT:** Do you need her credit card number?

**MR. HARPER:** No.

**THE COURT:** So we black out the -- redact the credit card number, mark it has redacted. You can produce everything.

And, you know, I don't know what bank or credit card

statements -- you just want a receipt or some statement that shows she actually purchased it, right?

**MR. HARPER:** Yes.

**MR. COELHO:** Your Honor, we already produced that. We produced the Amazon that has the purchase, buying the product. Same for Mr. Hayde. We produced the fact that he has the product.

**MR. HARPER:** Well, they produced -- for Ms. Wheeler, they produced a receipt that shows it was purchased. We don't know who purchased it other than we have a representation. So --

**THE COURT:** They're entitled to know who purchased it.

**MR. COELHO:** How am I going to produce a document that says this is the person who purchased it? I don't have that document.

**THE COURT:** Well, when -- if there's an Amazon statement, there's somebody's account. Is her name on that account?

**MR. COELHO:** I believe so. I can produce the account profile; would that be enough?

**THE COURT:** You want proof that she purchased it.

**MR. HARPER:** Yes.

**THE COURT:** You're directed to produce a document sufficient to show proof that Ms. Wheeler purchased the product

at issue.

**MR. HARPER:** And I can make this even easier, Your Honor. The standard is to have statutory standing, Ms. Wheeler and Mr. Hayde have to show that they lost money or property as a result of the conduct here.

And so they have to show some evidence that they lost money or property. And that's what the bank statements or something showing that would be --

**THE COURT:** Is there anything wrong with saying they have to produce documents sufficient to show that -- right now I'm just talking about this one. I don't have the one with Mr. Hayde in front of me, do I? Yeah. So it's just this one.

Documents sufficient to show Ms. Wheeler purchased the product at issue. That could be a bank statement, it could be a credit card statement, it could be an Amazon account statement.

And to the extent there is private information, it can be redacted.

**MR. COELHO:** Your Honor, why can't she just testify and say, yes, this is my card, yes, this is my account?

**THE COURT:** Why can't she just produce this record?

**MR. COELHO:** If it's just the Amazon thing, that's fairly easily. If it's the bank account, I may have to go back three years and see a bunch of private information that would --

**THE COURT:** She's the plaintiff. She has to show standing. She has to show that she purchased the product. At some point they don't have to take her word for it.

**MR. COELHO:** Fair enough, Your Honor.

**THE COURT:** She's ordered --

**MR. COELHO:** I'll produce it.

**THE COURT:** -- to produce documents -- and it could be one document -- documents sufficient to show that she purchased the product at issue. Simply a screenshot of a face page does not prove that she purchased it. It could be on a credit card, if that's how it was purchased.

If it was through Amazon, it can be through your -- if her Amazon statement is like mine, you go to the bottom and you can scroll in perpetuity and see everything you've ever purchased. And so she can show that, combined with the fact that it's her account.

**MR. COELHO:** Okay. That clarifies it, Your Honor. So just to be clear, we did produce the actual statement on Amazon. It would be sufficient to show that she --

**THE COURT:** It has to show --

**MR. COELHO:** -- owns that account.

**THE COURT:** -- that she purchased it. An Amazon statement that shows this product was purchased on a certain date does not show that she purchased it, okay?

**MR. COELHO:** Thank you, Your Honor.

**THE COURT:** And if she doesn't have it, by goodness, just say she doesn't have it. And then she'll be deposed and they'll make whatever hay out of that they want, okay?

**MR. COELHO:** Thank you, Your Honor.

And just for the record, Your Honor, I can redact any other private information, correct?

**THE COURT:** Yes. But it's -- needs to have her name, --

**MR. COELHO:** Yeah. Understood.

**THE COURT:** -- something that identifies it as her, and the amount paid and when it was paid, and then identifies the product.

**MR. COELHO:** Thank you, Your Honor.

**THE COURT:** Assuming -- well, I'm not going to assume anything.

I missed request number seven.

I'll read request number seven and -- all documents that refer or relate to any legal proceedings commenced at any time, in any court, or with any arbitration, organization in which you have sought to be a class representative in a class action in which you brought suit derivatively on behalf of a corporation, or in which you represented or assisted in the representation of any plaintiffs, defendants, or other persons in a legal proceeding brought as a class derivative or private attorney general action.

Are you asking for any cases in which Ms. Wheeler was a class representative?

**MR. HARPER:** Yes.

**THE COURT:** Can we say that that's the question?

**MR. HARPER:** Let's -- that's perfectly fine.

**THE COURT:** All right.

**MR. COELHO:** Your Honor, we produced the complaint for another case that she was a class representative --

**THE COURT:** And that's everything.

**MR. COELHO:** That's everything.

**THE COURT:** All right. Based on that representation, that they have produced -- well, I want to be clear. That's all documents in Ms. Wheeler's possession, custody, or control that are cases or reflect cases in which she was a class representative, other than this one.

**MR. COELHO:** Do you mean in addition to the complaint?

**THE COURT:** The complaint's fine. It just has to identify the case.

**MR. COELHO:** Yes. That's it, Your Honor.

**THE COURT:** All right. Based on that representation, number seven is denied.

And request number nine. It's essentially the equivalent to Mr. Hayde's request number 17 that I denied because I just can't craft it in a way that's not

objectionable. So I'm going to have the same ruling with respect to request number nine as to Ms. Wheeler.

All right. Is that it in terms of the substantive request for production? Then we get into the sanctions.

**MR. HARPER:** No, Your Honor. I don't --

**THE COURT:** Did I miss one?

**MR. HARPER:** I think we missed the costs and fees agreements --

**THE COURT:** Oh, okay.

**MR. HARPER:** -- which are the Hayde RFP number 17 and the Wheeler RFP --

**THE COURT:** Oh, it's its --

**MR. HARPER:** -- number 12.

**THE COURT:** -- own separate section, right?

**MR. HARPER:** Yeah.

**THE COURT:** Seventeen and 12, right?

**MR. HARPER:** Yes.

**(Pause)**

**THE COURT:** All right. Go ahead and I'll hear from you to justify why all documents that refer or relate to any agreement you have with your attorneys or any other person or entity or any agreement your attorneys have with any other person or entity concerning the payment or advancement of attorney's fees, expenses, and costs with respect to the lawsuit, who will advance, and who is responsible for payment

of the costs and expenses incurred in connection with the prosecution of this lawsuits, or whether a fee in this lawsuit will be shared by any person not a member of your attorney's law firm.

**MR. HARPER:** Yes, Your Honor. This -- we're really trying to just get at the fee agreement between Mr. Hayde and Ms. Wheeler on one hand, and their counsel in a class action. These are commonly produced and they --

**THE COURT:** That's not what it seems to ask for.

**MR. HARPER:** Well, we're --

**THE COURT:** If I were to -- this looks like some -- you're asking for something else. You're asking for litigation financing.

**MR. HARPER:** And we are --

**THE COURT:** Am I misreading it?

**MR. HARPER:** -- asking for litigation financing --

**THE COURT:** Okay.

**MR. HARPER:** -- as well.

**THE COURT:** That's the essence of this, right?

**MR. HARPER:** Sure. Yeah. Litigation --

**THE COURT:** Okay.

**MR. HARPER:** -- financing and yes.

**THE COURT:** Why is that particularly relevant here?

**MR. HARPER:** Well, again, adequacy depends -- and adequacy of counsel and adequacy of the plaintiffs depends on

their ability to serve as fiduciaries to the class and have an undivided -- particularly as to the putative plaintiffs that have an undivided -- putative class reps have an undivided duty of loyalty to the class.

And if they have litigation funders in here, then that's potentially splitting the loyalties.

That's also true of counsel. If they've got funders to whom they are owed duties, then that would obviously be relevant to their ability to serve as class counsel.

**MR. COELHO:** Your Honor, may I save your time?

**THE COURT:** Well, keep -- it's his burden. Keep going.

**MR. HARPER:** The -- in response to this, Plaintiff did provide a two-item privilege log which is the retainer agreement. I mean, it's the privilege log with respect to the retainer agreement, which was Exhibit 50 it looks like. Or, I'm sorry, Exhibit L.

And the -- so the privilege log, all it has is a date and author, which says the Wilshire law firm, and then the to and from and --

**THE COURT:** I'm not ruling on privileges right now. That's -- hasn't been briefed, has it? Is there something in here where parties have briefed privilege?

**MR. HARPER:** I --

**THE COURT:** On that -- on those particular items, do

I have that privilege log?

**MR. HARPER:** I think you do, Your Honor.

**THE COURT:** Where -- what -- where -- what exhibit is that?

**MR. HARPER:** It's Exhibit L to the supplemental declaration.

**THE COURT:** Well, technically you're not supposed to submit evidence in a supplemental memorandum so --

**MR. HARPER:** Well, it --

**THE COURT:** So what --

**MR. HARPER:** -- was produced --

**THE COURT:** -- beyond speculation is there that there's a conflict? That's what we're talking about, right? Is there some kind of conflict that would make these particular Plaintiffs not adequate representatives of the class?

**MR. HARPER:** We don't know yet. But if we're -- we -- the privilege log was produced the same day that our supplemental brief was due. It wasn't produced in advance of any of that.

And the reason I find this relevant is if they're conceding that it's at least relevant enough to produce a privilege log, we don't -- it doesn't have anything justifying the privilege assertion there.

**THE COURT:** Well, so normally parties, once the action is filed -- and I think it's even covered in Rule 26,

that you can -- it's not normally anticipated that parties, once litigation is filed, have to list on a privilege log communications with their client.

**MR. HARPER:** I fully agree on that, Your Honor.

**THE COURT:** And normally you wouldn't include a retainer agreement. Your client certainly isn't going to list its retainer agreement with your firm on some request for production that any document relating to the defense of this case.

Well, arguably the retainer agreement references the defense of this case. I'm not saying that's a relevant, appropriate thing.

So the fact that they produced it, when they produced it, doesn't really tell me much.

We all know there's a retainer agreement. There has to be by California law, right?

**MR. HARPER:** (Inaudible)

**MR. COELHO:** (Inaudible)

**THE COURT:** So we knew there was one. It's not like this suddenly came out of the blue. The question is what your -- you want the retainer agreement and litigation funding agreements.

**MR. HARPER:** Yes.

**THE COURT:** What --

**MR. HARPER:** It's a class action, Your Honor. And in

a class action, there's -- there are additional duties beyond just parties. Like Defendants, we're not -- Defendants are not seeking class or anything. It's the Plaintiffs. They're seeking -- and they have a duty under --

**THE COURT:** Right. But we're also in California.

**MR. HARPER:** Yes.

**THE COURT:** And a California retainer agreement is going to be presumed subject to some protection, not necessarily privilege, but some confidentiality protection. You want to -- me to overcome that because it's a class action.

And my review of the cases is -- I remember the Rodriguez case with Judge Real -- and cases since then sort of say well, it doesn't mean that every single case at this stage we're reviewing retainer agreements.

It's is there something that makes it look like there's a conflict? Is there some whiff of something that makes me feel like, yes, I want all this stuff out there?

I don't see it yet. Am I wrong in looking at the cases?

**MR. HARPER:** I -- you're not wrong, Your Honor. And I see which way the wind is blowing on this one.

So I think what I would suggest, and where I think Your Honor is going, is we'll withdraw as to this particular request, subject to --

**THE COURT:** Of course --

**MR. HARPER:** -- following deposition and maybe we do a follow-up.

**THE COURT:** By the way, every ruling here is subject to a change in circumstance.

And should something come out at the deposition that would lead you to believe that there is something more going on here, yes, I want to know if there's something more going on here because I'm the one that signs if it's granted, the class certification motion.

And I'm the one that goes up to the Ninth Circuit and maybe has some objector somewhere claiming I didn't do a good enough job at the class certification stage. And so that's where I am at. You have seen where I was inkling.

But if you're willing to withdraw it subject to -- without prejudice to you --

**MR. HARPER:** That's fine, Your Honor.

**THE COURT:** -- reasserting it, that's -- the motion will be denied as -- or the request is withdrawn as to numbers 17 and 12 for Mr. Hayde and Ms. Wheeler respectively.

Is that now everything or did I -- I'm now looking at my earlier notes. Did I miss number five, did I get number five?

**MR. HARPER:** Mr. Bae is telling me that we did miss number five, so --

**THE COURT:** Yes, so --

**MR. HARPER:** -- I'm going to trust him.

**THE COURT:** -- let's go back because I'm looking at my own notes. And number -- what I did is I skipped number five and numbers 17 and 12, and I jumped to number 11. So I -- with my apologies, let's go to number five.

I won't tell you -- maybe I will tell you what my little handwritten notes which was my initial reaction to number five, which is overbroad, facially overbroad.

But I haven't looked at it yet again, so let me see. Oh, yeah.

**MR. HARPER:** That's fine, Your Honor. I --

**THE COURT:** Okay. There's nothing wrong with -- so you guys -- although it's already after noon, you didn't -- you -- believe it or not, you didn't get the full first discovery motion hearing colloquy from me which can last three hours.

**(Laughter)**

All right. One of them is when you use all documents that refer or relate to, okay, there's plenty of cases that the hair go back -- goes up on the back of my neck. I need to see what's coming next.

Now, if it's all documents that refer or relate to the memorandum of understanding dated December 7th, 1941, --

**MR. HARPER:** I'm a history buff, --

**THE COURT:** Okay.

**MR. HARPER:** -- too, Your Honor. I get it.

**THE COURT:** All right. But the point is if it's refer or relate to something specific, good.

If it's refer or relate to World War II, all documents refer or relate to World War II, well, that's different. Okay. Now, --

**MR. HARPER:** Yeah.

**THE COURT:** So that's what's happening here. It's refer or relate to -- yeah, it's any communications but anything relating to any matter in the complaint, okay, that's too much. So that one is denied, number five, as to both Defendants, right. Or both Plaintiffs.

**MR. HARPER:** Yeah.

**THE COURT:** That one's denied.

All right. I don't want to keep you any longer. Is there anything else we need to take up on this?

**MR. HARPER:** No. I --

**THE COURT:** The motions --

**MR. HARPER:** -- appreciate your time, Your Honor.

**THE COURT:** -- for sanctions are denied partly because the motion is both granted and denied, partly because I do think the parties were both at fault to some extent in the scheduling of the depositions.

But I'll make it very clear to Plaintiffs. These -- you're now ordered to be there. There's no last-minute we're not showing up. Then under Rule 37(b), not "A," the full

panoply of sanctions are on the board; understood?

**MR. COELHO:** Understood, Your Honor.

May I just raise one additional point?

**THE COURT:** You can -- does it relate to this motion?

**MR. COELHO:** It is.

**THE COURT:** Okay.

**MR. COELHO:** Yeah. I do believe that Your Honor's request to meet-and-confer typically would be to avoid judicial waste and inefficient use of Your Honor's time.

And some of these requests, for example even RFP number five, which just narrowing in a way that we can understand it so that there's some limitation.

And it seems that we are doing this meet-and-confer and we are coming and doing compromising to some points on the Plaintiffs' side. But we don't see any of that on the Defendant's side.

**THE COURT:** Well, they withdrew two. And I think they would have withdrawn number five had I given them the opportunity to. So they have withdrawn some so there is some meeting and conferring.

Let him -- let me say what I see. I told you this at the beginning. Each think the other is to blame, and you're both right. Okay. There is over-aggressiveness on -- I'm seeing. I'm also seeing a lack of complete responsiveness.

And if someone says I'm going forward with a

deposition of your client, if he's not there, we're going to move to compel, if you think that that's inappropriate, you don't just not show up and see where the chips land. You come and see me.

And, yeah, I don't like hearing disputes that I think don't have to be heard. I told you that at the beginning. But ultimately you got to -- you can't just let things happen and see where they go.

I'm seeing some things on both sides here. And I'm going to ask both sides to just turn down the heat a little bit. Try to work things out a little bit.

I mean, request for production number five, that one's a bad one.

But fighting about things like criminal history when you don't even know if your client has any, and fighting about -- you know, telling me you don't even know where your client is located suggests to me that both sides need to maybe -- I used to say this when I was in practice.

If I get 80 percent of what I asked for, that's pretty good. Nobody gets a hundred percent. Nobody -- and I had someone in here the other week who said, well, I limited my requests so I've already limited it to 80 percent, I want a hundred percent of my requests.

Nobody gets a hundred percent of your -- of what you want. Nobody. So if you get 80 percent, it's pretty good.

Please be mindful and work together.

As I said, you're building the house, not me. Next time, I'm just going to hammer nails. You present a dispute to me, granted, denied, granted, denied.

I brought you in here. We had a hearing rather than doing this on the papers because I really wanted to talk to both sides, okay.

**MR. COELHO:** Your Honor, I will say we've been waiting for any documents produced by the other side by six months. We'll probably --

**THE COURT:** We're not --

**MR. COELHO:** -- have to come back again.

**THE COURT:** -- taking it up. You got a motion, file a motion.

**MR. COELHO:** That's what I'm referring to.

**THE COURT:** Okay. Well, but same thing. Take a close look at what you're asking for.

**MR. COELHO:** I haven't received a single document, Your Honor, not one page.

**THE COURT:** Okay. Well, we'll see.

**MR. HARPER:** Your Honor, we'll take it to your heart, Your Honor.

**THE COURT:** You'll take it to my heart?

**MR. HARPER:** We'll -- I'll -- we'll take it to heart your suggestions.

**THE COURT:** Okay. And I didn't bring this up, but there's a reference to a protective order. It -- are -- is this side --

**MR. HARPER:** We --

**THE COURT:** -- going to want a protective order?

**MR. HARPER:** Yeah. We submitted the protective order three weeks ago. I think I saw an email from opposing counsel yesterday in response to it. So, yeah, we want a protective order so we can --

**THE COURT:** Are you using --

**MR. HARPER:** -- get some documents produced and --

**THE COURT:** -- the proposed protective order on my website?

**MR. HARPER:** Yes, Your Honor.

**MR. COELHO:** Your Honor, we've submitted your proposed protective order to counsel more than six months ago. They forced us to sign an NDA because they didn't want to sign a protective order.

And then just right before this hearing they gave back redlines which I turned back within next day or so --

**MR. HARPER:** That was for --

**MR. COELHO:** -- sitting on counsel's --

**THE COURT:** I'm being told that was for a mediation, not for a protective order, so I think you might be talking about different things.

But here's -- rather than -- okay. This --

**MR. HARPER:** We should just work this out.

**THE COURT:** -- is not how it works, okay. This is not how it works. Go talk.

**MR. HARPER:** Yeah.

**THE COURT:** Just go talk. Protective orders should take -- I mean, we are not talking about -- I was going to say the crown jewels of France. We are not talking about something that can't be -- isn't readily dealt with, all right.

And for good or for bad, you consented or didn't opt-out to me, depending on your point of view. I'm the same judge that's going to be handling the trial that's handling -- doesn't always work out that way.

A lot of times people have all kinds of issues with the discovery judge. And then they go to a trial judge and it's wonderful, it's off to a new start.

You're not getting a new start. Not saying that I carry anything over, okay. But I'm living through this with you. I'm going to -- I'm telling you I'm going to remember the rulings that I make.

Sometimes people think I can get away with things in front of the magistrate judge because when I got to the district judge, the district judge, oh, I don't know, I don't want to deal with any of this.

Well, I'm just letting you know, I remember it. And

I don't mean I -- in that in a threatening way. It's not meant that at all.

It just means someone tells me I've produced everything, I'm going to remember it. If it turns out a week before trial a new document shows up, then I'm going to need some kind of explanation for that.

And the flipside is if someone -- well, that goes to everybody.

**MR. HARPER:** I understand, Your Honor.

**THE COURT:** All right. Anything else --

**MR. HARPER:** Thank you, Your Honor.

**MR. COELHO:** Thank you, Your Honor.

**THE COURT:** -- on behalf of the Plaintiff?

**MR. COELHO:** Nothing else, Your Honor.

**THE COURT:** On behalf of defense.

**MR. HARPER:** Thank you, Your Honor.

**THE COURT:** All right. Thank you. We're adjourned.

**(This proceeding was adjourned at 12:15 p.m.)**

**CERTIFICATION**

**I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**

| | |
|---|---|
| ______________________________ | **June 9, 2026** |
| **Signed** | **Dated** |

***TONI HUDSON, TRANSCRIBER***