**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# EXHIBIT 7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARCADIA CONSUMER HEALTHCARE INC., a Delaware corporation,<br><br>Defendant. | Case No.: 8:24-cv-02657-JDE |

**Expert Report of Rhonda Harper**

**July 10, 2026**

**CONFIDENTIAL**

# TABLE OF CONTENTS

**Introduction** ..... 3
**Assignment and Methodology** ..... 4
**Materials Reviewed** ..... 5
**Case Overview** ..... 5
**Expert Qualifications** ..... 6
**Summary of Opinions** ..... 7
**Package Assessment** ..... 7
**Intent** ..... 20
**Materiality and Consumer Confusion** ..... 26
**Brand Name and Imagery Changes** ..... 34
**Opinion** ..... 35
**Appendix A** ..... 37
**Appendix B** ..... 44

# INTRODUCTION

1) My name is Rhonda Harper. I am the owner of Harper Litigation Consulting and Research LLC. I offer expert witness and advisory services to counsel on issues related to marketing, branding, advertising, consumer perception, and associated business practices.

2) I have spent decades in senior marketing and brand leadership roles at Fortune 500 companies, managing consumer healthcare portfolios, including over-the-counter products. My expertise covers product positioning, packaging strategy, consumer decision-making, and ensuring compliance with advertising standards.

3) Over the course of my career, I have been directly responsible for evaluating and approving product packaging and label copy, with particular emphasis on how consumers interpret claims, disclosures, and visual communication in retail environments.

4) Plaintiffs' counsel retained me in connection with *Hayde v. Arcadia Consumer Healthcare, Inc.*, Case No. 8:24-cv-02657-JDE, pending in the United States District Court for the Central District of California.

5) I am compensated at a rate of $800 per hour for expert services. My compensation is not contingent upon the substance of my opinions or the outcome of this litigation.

6) The opinions expressed in this report are based on my education, professional training, and experience in marketing and consumer research, as well as my analysis of the materials reviewed. If called to testify, I expect to testify in a manner consistent with the opinions expressed in this report and the bases supporting them. I reserve the right to supplement my opinions should additional information become available.

## ASSIGNMENT AND METHODOLOGY

7) I have been asked to evaluate, from a marketing, branding, shopper-behavior, and consumer-perception standpoint, whether Defendant's naming, front-label claims, visual imagery, and packaging of the over-the-counter antifungal product line sold under the FUNGI-NAIL brand create a mismatch between consumer expectations and the products' actual performance, whether that mismatch constitutes misleading or deceptive marketing, and whether these acts were intentional. Specifically, I was asked to review the role product labeling plays in the consumer purchase decision for merchandise sold through retailers such as drug stores, supermarkets, mass merchants, and online retailers, and opine as to: (a) whether a reasonable consumer would be misled by Defendant's FUNGI-NAIL trademark and product packaging; (b) whether a reasonable consumer would rely on Defendant's FUNGI-NAIL trademark, package imagery, and front-label claims; (c) the materiality of Defendant's FUNGI-NAIL trademark, challenged front-label claims, and package imagery; and (d) whether it is reasonable to expect a consumer to discover and process disclaimers regarding product efficacy on the back or side panels before purchase.

[redacted]

9) I applied a framework that evaluates: (1) brand name and naming conventions; (2) FOP claim hierarchy; (3) imagery and visual hierarchy; (4) proximity, typography, contrast, and

[redacted]

## MATERIALS REVIEWED

[redacted]

## CASE OVERVIEW

11) Based on the Second Amended Complaint[1] and information provided by counsel, my understanding of the case is as follows.

12) Plaintiffs Eric Hayde and Megan Wheeler plan to seek certification of two classes to represent individuals in California and across the country who have purchased Defendant's U.S. FUNGI-NAIL products.

13) Defendant Arcadia Consumer Healthcare Inc. is a corporation headquartered in Bridgewater, New Jersey, that manufactures and sells consumer healthcare products. Among these products is a line of FUNGI-NAIL products sold nationwide.

14) Defendant's primary U.S. FUNGI-NAIL products include liquid, spray, ointment, and pen. Across the product line, the product name FUNGI-NAIL and fungus-efficacy claims such as

[1] Second Amended Complaint, p. 3.

[redacted]

15) Plaintiffs' Causes of Action are for Intentional Misrepresentation, Negligent Misrepresentation, Violation of the California False Advertising Law, Violation of the Unfair Competition Law, Breach of Express Warranty, and the California Consumer Legal Remedies Act.

## EXPERT QUALIFICATIONS

16) I am the founder and principal of Harper Litigation Consulting and Research LLC. Since 2005, I have worked with hundreds of law firms nationwide as both a consulting and testifying expert in matters involving branding, advertising, consumer perception, and marketing practices. I have testified more than 150 times in courts, administrative proceedings, and arbitrations.

17) Prior to founding my consulting practice, I held the top marketing roles at several major organizations: Chief Marketing Officer at Sam's Club/Walmart, Chief Marketing Officer at Vanity Fair Intimates, and Global Director of Marketing Communications at UPS.

18) I was also the top promotional marketing executive for both Nabisco's biscuit division and Warner-Lambert's consumer healthcare division. At Warner-Lambert, I was responsible for many personal care brands, including Listerine, Efferdent, Actifed, Sudafed, Benadryl, Neosporin, Zantac, Lubriderm, Tucks, and EPT.

19) At Walmart, I introduced the field of Shopper Marketing, which focuses on understanding and leveraging the "shopping mindset" before, during, and after the purchase. It quickly gained traction among most consumer packaged goods brands. Now, it accounts for an estimated 20% of marketing budgets.

20) Additional details regarding my experience are provided in Appendix A.

## SUMMARY OF OPINIONS

[redacted]

## PACKAGE ASSESSMENT

[redacted]

[redacted]

24) In large-scale retail environments, whether physical or digital, consumers generally do not conduct detailed reviews of packaging and labeling before making purchase decisions. Instead, they make quick decisions based on key cues: the product name, the main claims, and the visual hierarchy.

25) Published academic research, marketplace research, and my more than three decades of executive marketing experience demonstrate that consumers rely heavily on packaging cues when shopping under ordinary marketplace conditions. Research consistently shows that consumers spend about three seconds examining a consumer packaged good before purchasing. This process is commonly referred to as "System 1" processing, which is fast and intuitive. Consumers generally seek to answer three questions: (1) What is it? (2) Is it for me? (3) Do I trust it? Consumers make purchasing decisions primarily based on the front panel, which serves as the primary purchase driver, while other elements serve a supporting role.

[redacted]

[redacted]

[redacted]

[redacted]

[2] ARCADIA-00025343, Row 43.
[3] Bashoff 30(b)(6) Deposition, p. 14:9-11.
[4] Bashoff 30(b)(6) Deposition, p. 37:21-23.
[5] Bashoff 30(b)(6) Deposition, p. 5:18-19; p. 6:4-9.
[6] Bashoff 30(b)(6) Deposition, p. 32:25-33:8.
[7] Bashoff 30(b)(6) Deposition, p. 35:24-36:8.

[redacted]

[redacted]




[redacted]

[redacted]

[8] Bashoff 30(b)(6) Deposition, p. 54:16-55:9.




[redacted]

[redacted]




[redacted]

[redacted]

[redacted] [redacted]




33) The product name FUNGI-NAIL provides the first exposure to claims and creates a reference point that influences consumer expectations. In consumer packaged goods, naming conventions are among the most influential tools for conveying a product's purpose. A reasonable consumer would understand that the product name associates a condition ("fungi") with a location

[9] Bashoff 30(b)(6) Deposition, p. 63:5-12; pp. 62:14-63:4.
[10] Bashoff 30(b)(6) Deposition, pp. 63:13-22.
[11] ARCADIA-00023290.
[12] Bashoff 30(b)(6) Deposition, pp. 65:16-67:12.
[13] Bashoff 30(b)(6) Deposition, pp. 64:5-65:4.

("nail") to treat fungal nail infections. This is further supported by nearby claims such as "maximum strength," "kills fungus," and "clinically proven to cure and prevent fungal infections," which use pharmaceutical language to suggest effectiveness and clinical credibility. From a brand strategy perspective, this is a well-crafted value proposition: it identifies the problem, signals strength, and suggests medical legitimacy.

[redacted]

35) The use of toenail imagery, particularly an image of a healthy or improved-looking toenail, does not reduce the net impression that the products treat the nail-related problem that motivated the shopping trip. In marketing practice, such imagery functions as a benefit or desired-end-state cue: it shows the consumer what the product is expected to help achieve. For a low-involvement over-the-counter purchase, a consumer is unlikely to treat the clean nail as a technical limitation cue distinguishing the nail plate from surrounding skin.

[14] Bashoff 30(b)(6) Deposition, p. 41:16-42:3; pp. 42:13-43:1; pp. 47:25-48:13.
[15] Bashoff 30(b)(6) Deposition, p. 51:23-52:1.

[redacted]

## THE BACK-OF-PACKAGE (BOP) IS SECONDARY AND CONDITIONAL.

[redacted]

[16] Second Amended Complaint, pp. 1-2. See also, ARCADIA-00023290.
[17] Second Amended Complaint, pp. 1-2.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

## PROMOTIONAL ADVERTISING INCLUDES PACKAGING CLAIMS WITHOUT A DISCLAIMER.

[redacted]

[redacted]

[18] ARCADIA-00005764-5.
[19] ARCADIA-00003951.

## CONSISTENT FUNGI-NAIL MESSAGING EXTENDS ACROSS THE MARKETPLACE.

[redacted]

[redacted]

## INTENT

[redacted]

[20] Bashoff 30(b)(6) Deposition, pp. 89:13-90:24.
[21] Bashoff 30(b)(6) Deposition, pp. 91:7-24; p. 93:18-24.

43) Packaging and labeling decisions are made carefully and rarely changed. Standard processes exist to balance consumer appeal, brand strategy, and legal requirements. In my experience across many companies, a typical packaging change process is outlined below.

1. Marketing identifies the target market, defines use cases, and analyzes the market to determine the product's core value proposition and claim hierarchy (e.g., naming, claims, support, and reason to believe).
2. Creative develops the packaging and creates the copy.
3. Consumer Research validates consumer takeaway and purchase intent.
4. Marketing verifies direct and implied claims.
5. Regulatory and Legal reviews for compliance with legal standards.
6. Legal approves.
7. Final packaging files are released for printing, manufacturing, and distribution.

[redacted]

[22] ARCADIA-00087771.
[23] ARCADIA-00087765.
[24] Bashoff 30(b)(6) Deposition, pp. 78:13-79:3.
[25] Bashoff 30(b)(6) Deposition, p. 79:10-12.
[26] Bashoff 30(b)(6) Deposition, pp. 79:13-80:9.

[redacted]

[redacted]

[27] Bashoff 30(b)(6) Deposition, p. 77:24-78:8.
[28] ARCADIA-00005337.




[redacted]

[29] ARCADIA-00005764.
[30] ARCADIA-00005765.

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[31] ARCADIA-00025210. ARCADIA-00026816.
[32] ARCADIA-00025211-17. ARCADIA-00026821-22.
[33] ARCADIA-00033039. ARCADIA-00034487.

## DEFENDANT DID NOT CONDUCT RESEARCH REGARDING THE BRAND NAME OR PRODUCT EFFICACY.

[redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

[34] Bashoff 30(b)(6) Deposition, p. 54:1-4.
[35] Bashoff 30(b)(6) Deposition, pp. 152:4-153:7; pp. 153:20-154:5.
[36] Bashoff 30(b)(6) Deposition, pp. 154:6-17. See also, ARCADIA-00005719-00008252.
[37] Bashoff 30(b)(6) Deposition, pp. 157:13-158:1.
[38] Bashoff 30(b)(6) Deposition, pp. 139:5-23.
[39] Bashoff 30(b)(6) Deposition, pp. 140:8-141:16.
[40] Bashoff 30(b)(6) Deposition, pp. 141:17-142:3; pp. 145:15-146:2.

[redacted]

## MATERIALITY AND CONSUMER CONFUSION

[redacted]

### TREATING NAIL FUNGUS IS IMPORTANT TO CONSUMERS' PURCHASE DECISIONS.

53) In consumer healthcare and personal care, the primary factor in purchase decisions is a product's intended use. Consumers seeking treatment for nail fungus make a targeted decision to address a personal condition. If consumers are directed to choose a product that does not effectively treat that condition, the misrepresentation is not minor; it is fundamental. From a consumer perception standpoint, the belief that this product treats nail fungus is material.

### DEFENDANT ADMITS IT EXPECTED CONSUMER CONFUSION.

[redacted]

[41] Bashoff 30(b)(6) Deposition, pp. 143:22-146:2; p. 156:4-14.
[42] Bashoff 30(b)(6) Deposition, pp. 159:7-161:5.
[43] Bashoff 30(b)(6) Deposition, p. 54:8-1453:18-24.
[44] Bashoff 30(b)(6) Deposition, pp. 54:8-14; pp. 55:16-56:3.

55) As a professional marketer leading some of the largest consumer packaged goods brands and retailers, I have never expected consumer confusion due to the name of one of my products. Nor have I worked with professional marketers from other large companies who have expressed such a notion.

## THERE IS SIGNIFICANT EVIDENCE OF ACTUAL CONSUMER CONFUSION.

[redacted] [redacted]

[45] Bashoff 30(b)(6) Deposition, p. 234:16-22 and Exhibit 10; pp. 202:10-203:1.
[46] Bashoff Deposition, p. 77:25, 78:1-25, 79:1-22; ARCADIA-00041519–00041521; ARCADIA-00048009–00048011; ARCADIA-00083517–00083519.

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

47 ARCADIA-00037402.
48 ARCADIA-0025343, Row 57.
49 ARCADIA-00073853, Row 97.
50 ARCADIA-00073853, Row 105.

[redacted]

[51] ARCADIA-00078178, Row 13.
[52] ARCADIA-00078178, Row 59.
[53] ARCADIA-00078178, Row 81.
[54] ARCADIA-00078178, Row 105.

[redacted]

[redacted] ARCADIA-00078178, Row 213.

[57] ARCADIA-00078178, Row 218.

[58] ARCADIA-00073853, Row 174.

[redacted]

panel they have a picture of the bottle that comes in the Box and on the fire panel it has a picture of a big toe of the toenail again with make you think it's for toenail fungus. However, when I read the writing on the box and very small probably out on one of the sides. It says not for nail fungus. It's just yours for our athlete's foot and rewire, you know, I find that very confusing the day. I don't TV sets of emails with toe nail fungus and the biggest print on the box the word funded mail which again from you and make you think it's for the phone and mail for nails and when you start reading you know in this very small print on the side, which is where the argosy. This is this is not for the nail fungus. It's for athlete's foot. The ring worms and I find this very confusing. I'm just wondering what's going on and why they had on TV. You know says that from you know those 40 no from this and that it shows a picture of the big toe on the box yet and very small print

[59] ARCADIA-00025349, Row 26.

[redacted]

## DEFENDANT MADE NO CHANGES TO ITS PACKAGING OR MARKETING IN RESPONSE TO CONSUMER COMPLAINTS, INTERNAL CONCERNS, OR THE PRESENT LITIGATION.

[redacted]

[redacted]

[60] ARCADIA-00025349, Row 13.
[61] Bashoff 30(b)(6) Deposition, pp. 233:10-23; pp. 241:12-244:3.
[62] Bashoff 30(b)(6) Deposition, p. 243:3-11.
[63] Bashoff 30(b)(6) Deposition, p. 243:13-18.
[64] Bashoff 30(b)(6) Deposition, pp. 246:3-247:22.
[65] ARCADIA-00025349, Row 17.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

66 Bashoff 30(b)(6) Deposition, pp. 165:22-166:5; pp. 164:12-166:17.

[redacted]

[redacted] [redacted]

[redacted] [redacted]

## BRAND NAME AND IMAGERY CHANGES

65) Admittedly, changing a brand name and core imagery can temporarily place revenue and profits at risk; however, it can be done efficiently and effectively. The most common methods[70] marketers use are listed below and can be accomplished in a relatively short time. For example, had Defendant acted when concerns were raised in the operative complaint, the transition process could have been completed or substantially completed by now.

[67] Suwelack, T., Hogreve, J., & Hoyer, W. D. (2011). *Understanding money-back guarantees: Cognitive, affective, and behavioral outcomes*. *Journal of Retailing, 87*(4), 462–478. https://doi.org/10.1016/j.jretai.2011.09.002.

[68] Moorthy & Srinivasan (1995), *Marketing Science,* "Signaling Quality with a Money-Back Guarantee: The Role of Transaction Costs." See also, Davis, Scott & Hagerty, Michael & Gerstner, Eitan. (1998), Journal of Economics and Business, "*Return policies and the optimal level of Hassle."*

[69] Davis, Hagerty & Gerstner (1995), *Journal of Retailing*, "Money-Back Guarantees in Retailing: Matching Products to Customer Tastes." Heiman, McWilliams & Zilberman (2001), *Journal of Business Research*, "Demonstrations and Money-Back Guarantees: Market Mechanisms to Reduce Uncertainty."

[70] Aaker, D. A. (1991). Managing Brand Equity. New York: The Free Press. Aaker, D. A. (1996). Building Strong Brands. New York: Free Press. Aaker, D. A. (2004). Brand Portfolio Strategy. New York: Free Press. Keller, K. L. (1993). "Conceptualizing, Measuring, and Managing Customer-Based Brand Equity." Journal of Marketing, 57(1), 1–22. Keller, K. L., & Aaker, D. A. (1992). "The Effects of Sequential Introduction of Brand Extensions." Journal of Marketing Research, 29(1), 35–50.

| Strategy | Description | Risk Level | Typical Duration |
|---|---|---|---|
| Endorsed Branding | New brand introduced with old brand endorsement ("NewBrand, from OldBrand") | Very Low | 1–3 years |
| Dual Branding | Old and new names appear together with equal prominence | Low | 6 months–3 years |
| Brand Migration | Gradually reduce prominence of the old name while increasing the new | Low | 2–5 years |
| Sub-brand Evolution | New name begins as a product or sub-brand before replacing parent | Low | 2–10 years |

66) During the transition from FUNGI-NAIL to a new name, it would be important to:

- Use the old and new names together for an extended period;
- Keep logos, colors, packaging, and other assets familiar initially;
- Communicate clearly that only the name is changing, not the product;
- Maintain consistent product quality and pricing;
- Use extensive advertising to explain the transition;
- Initially, continue supporting legacy search terms and product names online; and
- Coordinate retailer updates to avoid shelf confusion.

## OPINION

[redacted]

[redacted]

[redacted]

69) I reserve the right to supplement or amend this report if additional information becomes available through discovery or other sources.

70) I have no current or prospective financial interest in the outcome of this matter. My compensation is not contingent upon my opinions or the results of this case.

71) Signed this 10th day of July 2026, in Dallas, Texas.

Rhonda Harper, MBA
Harper Litigation Consulting and Research

# APPENDIX A

## EXHIBIT 1: RHONDA HARPER CV

### EXPERT WITNESS & LITIGATION CONSULTING EXPERIENCE

**Founder & Principal, Harper Litigation Consulting & Research,** 2005–Present
Retained by hundreds of law firms nationwide as a consulting and testifying expert in matters involving trademark, false advertising, branding, marketing practices, and consumer perception. Named a designated expert in more than ten class action lawsuits. Conducted or rebutted nearly 200 Lanham Act trademark, trademark, and advertising surveys. Delivered more than 75 marketing reports.
Experience includes matters in: U.S. Federal Courts, State courts, Delaware Court of Chancery, U.S. Patent and Trademark Office (USPTO), Trademark Trial and Appeal Board (TTAB), and Arbitration forums (AAA and JAMS).

### PROFESSIONAL EXPERIENCE

**Founder, Owner & Chief Executive Officer, Penrose Check-In Services**, Dallas, TX, 2013–2019
Founded and led the first nationwide technology-enabled senior care auditing and oversight service. Established national standards for consumer oversight, compliance, and service accountability. Recognitions: AARP Top 10 Health/Tech Start-Up (2016); Geriatrics Society of America Top 15 Innovation Tech for Seniors (2016); and, Cartier/McKinsey Women's Initiative Award (2017).

**Global Director, Marketing Communications, UPS**, Atlanta, GA, 2011–2012
Led global marketing communications across all products and services. Directed the launch of UPS My Choice, the company's first B2C initiative and one of the largest launches in company history. Oversaw global agency relationships and messaging strategy.

**General Manager, Office Director & Senior Vice President, Ketchum Public Relations**, Atlanta, GA & Dallas, TX, 2005–2007
Managed two offices with over 100 professionals for a top-three global communications agency. Oversaw the firm's second-largest regional P&L. Increased client revenue by 33% and launched new practice areas, including social media, retail, and energy communications.

**Founder & Chief Executive Officer, RTM&J**, Atlanta, GA, 2003–2010
Founded and led a strategic marketing and research consultancy with a 98% client repeat rate. Directed brand strategy, segmentation, commercialization, innovation, and positioning initiatives for Fortune 500 clients, including IBM, The Home Depot, HSN, The Coca-Cola Company, Tyson Foods, Kellogg's, Target, Russell Athletic, SC Johnson, Arby's, Papa John's, and Washington Mutual.

**Vice President of Marketing & Walmart Corporate Officer, Sam's Club,** Bentonville, AR, 2000–2002
One of 120 Walmart Officers. Chief marketing officer reporting to the CEO of a $40 billion division with 40 million members. Managed a $200+ million budget. Led global brand strategy, advertising, creative services, research and insights, CRM, in-store merchandising, communications, shopper marketing, and agency management. Initiated Shopper Marketing as a strategic discipline, now comprising approximately 25% of national marketing budgets.

**Vice President of Marketing & VF Corporation Corporate Officer, Vanity Fair Intimates,** Alpharetta, GA, 1998–2000
Led brand development, advertising, in-store merchandising, creative services, research and insight, communications, licensing, innovation, and marketing strategy for a $1.5 billion division. Managed a $40 million budget. Launched category-leading products across the chain, department store, and mass merchandising channels.

**Earlier Career Experience (1984–1998)**
**Promotional Marketing Director**, Nabisco, $4B Biscuit Division
**Promotional Marketing Division Manager**, Warner Lambert, $1.5B Consumer Healthcare Division
**National Marketing Director & Corporate Development Manager**, American Red Cross
**High School Math Teacher**, Atlanta, GA

**EDUCATION**
**Master of Business Administration (MBA)**
Emory University, Goizueta Business School

**Bachelor of Science, Education / Mathematics Resource**
Illinois State University

**PROFESSIONAL AFFILIATIONS**
- International Trademark Association (INTA)
- Insights Association (formerly Market Research Association)
- Association of National Advertisers
- American Marketing Association

Former Board Member:
- Emory University Goizueta Business School Alumni Association
- Promotion Marketing Association (Brand Activation Association)
- Market Research Association
- Public Relations Society of America

Former Adjunct MBA Marketing Professor:
- American University, Washington, DC
- Fairleigh Dickinson University, Madison, NJ

**SPEAKING & THOUGHT LEADERSHIP**
Frequent keynote speaker for Fortune 500 corporations, leading universities, and national trade associations on topics including branding, marketing strategy, commercialization, consumer research, and innovation.

## EXHIBIT 2: RHONDA HARPER RULE 26 TESTIMONY

Deposition and Trial Testimony July 2022 – July 2026
Bold: Client

| **Case No.** | **Case** | **Court** |
|---|---|---|
| 2:22-cv-000335 | ***9 Square In The Air, LLC*** *v. Mountainville Commerce, LLC, d/b/a Castlesquares d/b/a Castle Sports, Bart Boggess, Jerry Boggess, and Ian Boggess* | United States District Court for the District of Utah |
| 2:21-cv-00698 | ***Alfwear, Inc.*** *v. IBKUL UBHOT, LLC; IBKUL Corp.; and IBCOOL Inc.* | United States District Court, District of Utah, Central Division |
| 24-cv-00056 | ***Raymond Baxter Sr. and Lesa Baxter, individually and as the Personal Representatives of The Estate of Raymond Baxter Jr.*** *v. ClubSpecialists Intl., Bentwater, LLC, Bentwater Golf Club Men's Golf Association, Inc., and Bentwater Links, LLC* | State Court of Paulding County, State of Georgia |
| 2:19-cv-00560 | *Bruce Boyer v.* ***City of Simi Valley*** | United States District Court For the Central District of California |
| 5:24-cv-04004 | *BuzzBallz, LLC v.* ***MPL Brands NV, Inc. d/b/a Patco Brand*** | United States District Court for the Northern District of California |
| 4:22-cv-92731 | *CAP Barbell, Inc. v.* ***HulkFit Products, Inc.*** | United States District Court Southern District of Texas |
| 01-22-0000-5109 | *Christian Brothers Automotive Corporation v.* ***Annie's Auto, LLC and Seek 1st LLC, and Angela Kaschube, and Kevin Kaschube*** | AAA Arbitration; Houston Texas |
| 2021-cv-32097 | *Christian Living Neighborhoods v.* ***Morning Star Assisted Living, LLC; Morningstar Senior Management, LLC; Edgemark Morningstar Holly Park, LLC; and Holly Park Developer, LLC*** | District Court, County of Arapahoe, State of Colorado |
| 652428/2023 | ***Dorilton Capital Management LLC et. al.*** *v. Stilus LLC et. al.* | Supreme Court of the State of New York County of New York |
| CGC-23-608356 | ***Environmental Democracy Project*** *v. Hugo Boss USA, Inc., et al.* | Superior Court for the State of California County of San Francisco |
| 6:23-cv-00221 | *Gencor Industries, Inc.* ***v. Gencor Pacific Limited, GE Nutrients, Inc., Gencor Pacific Organics India Pvt. Ltd., Gencor Pacific Auto Engineering Pvt. Ltd., and Jith Veeravalli*** | United States District Court Middle District of Florida Orlando Division |

| | | |
|---|---|---|
| 1:24-cv-00009 | ***Grato Holdings Inc. and Energique, Inc.*** *v. JB7, LLC* | United States District Court for the Southern District of Iowa Western Division |
| 3:22-cv-01567 | ***Hawks Hill Ranch, LLC and Hawks Hill Ranch Winery, LLC*** *v. William Yarak and Margaret Yarak* | United States District Court, Northern District of California San Francisco Division |
| 3:23-cv-01410 | ***Hyundai Motor Company and Hyundai Motor America, Inc.*** *v. Hyundai Technology Group, Inc., General Procurement, Inc., and Hyundai Technology Inc.* | United States District Court of Northern District of California |
| 3:20-cv-09976 | ***iD Auto*** *v. Volkswagen of America* | United States District Court for the District of New Jersey |
| TTAB | ***Ignite International, Ltd. v.*** *Kathi Vidal, in her official capacity as Director of the United States Patent and Trademark Office; and The United States Patent and Trademark Office* | United States District Court Eastern District of Virginia |
| 1:22-cv-01075 | *Infmetry, LLC v.* ***Message in a Bottle, Inc.*** | United States District Court Eastern District of California, Sacramento Division |
| PM-21cv005951 | *James Jackson v.* ***AJ Capital Partners, LLC, Collegiate Hotel Group LLC*** | Court of Common Pleas Franklin County, Ohio |
| 6:21-cv-04154 | ***LaBorde Earles Law Firm*** *v. Morris Bart, III and Morris Bart LLC* | United States District Court, Western District of Louisiana, Lafayette Division |
| 3:20-cv-09976 | ***Onyx Enterprises Int'l Corp.*** *v. Volkswagen Group of America, Inc.* | United States District Court for the District of New Jersey |
| 2:23-cv-01005 | *Pacific Landscape Management, Inc. v.* ***Pacific Landscape Management, LLC*** | United States District Court Western District of Washington at Seattle |
| 4:21-cv-0323 | *Prosper Funding LLC v.* ***Splitit U.S.A., Inc., et al.*** | United States District Court, Southern District of Texas Houston Division |
| 0:22-cv-00814 | ***Pyramex Safety Products, LLC*** *v. Global Glove & Safety Manufacturing, Inc.* | United States District Court, District of Minnesota |

| | | |
|---|---|---|
| 2:22-cv-03791 | *Q Industries, Inc. v.* ***O'Reilly Auto Enterprises LLC, O'Reilly Automotive Stores Inc., O'Reilly Automotive, Inc., Ozark Purchasing LLC, Test-Rite Products Corp., Test-Rite International Co Ltd*** | United States District Court For the Central District of California |
| 3:23-cv-01484 | *Red Barn Candle Company, LLC, v.* ***Bath & Body Works Brand Management, Inc.*** | United States District Court for the Northern District of Texas Dallas Division |
| 3:20-cv-06393 | ***Reflex Media, Inc. and Clover8 Investments Pte. LTD*** *v. Successfulmatch.com, Successful Match Canada, Inc., and Qiang Du* | United States District Court, Northern District of California |
| 4:24-cv-00981 | ***Rooke LLC d/b/a Riot Hospitality Group*** *v. Funky Lime Hospitality Concepts LLC, West 7th Nightlife Concept Group, Inc., Emil Bragdon, and THDR Operating LLC d/b/a Koe Wetzel's Riot Room* | United States District Court for the Northern District of Texas |
| 6:22-cv-0812 | ***Sonate Corporation, d/b/a Vegadelphia Foods*** *v. Beyond Meat, Inc.* | United States District Court District of Massachusetts |
| 21C35 | *State of Tennessee v.* ***LLPS, Inc. and Council for Corporations, LLC, et al.*** | Circuit Court of Davidson County Tennessee for the Twentieth Judicial District at Nashville |
| 24-2-00464-5 | *State of Washington v.* ***LLPS, Inc. f/k/a The Mandatory Poster Agency, Inc., d/b/a Washington Labor Law Poster Service, Inc., Labor Law Poster Service, LLC, d/b/a Washington Labor Law Poster Service, LLC, and Joseph Edward Fata, Justin Michael Fata, Thomas Anthony Fata, and Steven John Fata*** | State of Washington King County Superior Court |
| CV28-24-1731 | *Tawni Weaver, an individual, d/b/a RENU MEDISPA, L.L.C., and Renu Medispa, L.L.C. v.* ***Renew Aesthetics and IV Hydration Bar P.L.L.C.*** | District Court of the First Judicial District of the State of Idaho, in and for the County of Kootenai |
| 2:20-cv-00173 | ***ThermoWorks Inc.*** *v. Itronics Co. Limited, Itronics USA Inc., and Thermopro Inc.* | United States District Court for the District of Utah Central Division |
| 98289487 | *United States Polo Association, Inc. v.* ***JYS Apparel, LLC*** | United States Trial and Appeal Board |
| 6:21-cv-02135 | *U.S. All Star Federation, Inc. v.* ***Open Cheer and Dance LLC*** | United States District Court for the Middle District of Florida, Orlando Division |

| | | |
|---|---|---|
| H-24-4964 | *WHC HTX, LLC v.* ***Yellow Cab Inc., et. al.*** | United States District Court Southern District of Texas Houston Division |
| 1:23-cv000763 | *Wild Apple Inc. d/b/a Eight Sushi Lounge v.* ***Suburban Nights II, Inc. d/b/a Ten Sushi Lounge, Suburban Nights, LLC, Wiyono Kurniawan, and Hendry Kartasurya*** | United States District Court for the Northern District of Georgia Atlanta Division |

# APPENDIX B

## EXHIBIT 1: MATERIALS REVIEWED AND CONSIDERED

### ACADEMIC LITERATURE


- Akturan, U. (2024). “Mirror, mirror on the wall, who is the most convincing of them all? A systematic literature review on packaging.” Journal of Business Research, 193.
- Bettman, J. R., Luce, M. F., & Payne, J. W. (1998). “Constructive consumer choice processes.” Journal of Consumer Research, 25(3), 187–217.
- Clement, J. (2007). “Visual influence on in-store buying decisions: An eye-track experiment on the visual influence of packaging design.” Journal of Marketing Management, 23(9–10), 917–928;
- Federal Trade Commission. (1983). FTC Policy Statement on Deception;
- Kahneman, D. (2011). *Thinking, Fast and Slow*. Farrar, Straus and Giroux.
- Manikandan, M. (2024). “The influence of packaging attributes on buying behavior.” International Journal of Literacy and Education, 4(2) 281-287.
- Oliver, R. L. (1980). “A cognitive model of the antecedents and consequences of satisfaction decisions.” Journal of Marketing Research, 17(4), 460–469.
- Rettie, R., & Brewer, C. (2000). “The verbal and visual components of package design. Journal of Product & Brand Management, 9(1), 56–70; and
- Underwood, R. L. (2001). “Packaging communication: Attentional effects of product imagery on consumer attention to brands.” Journal of Product & Brand Management, 10(7), 403–422.

- Suwelack, T., Hogreve, J., & Hoyer, W. D. (2011). "Understanding Money-Back Guarantees: Cognitive, Affective, and Behavioral Outcomes." *Journal of Retailing*, 87(4), 462–478. DOI: 10.1016/j.jretai.2011.09.002.
- Moorthy & Srinivasan (1995). "Signaling Quality with a Money-Back Guarantee: The Role of Transaction Costs." *Marketing Science*.
- Davis, Scott; Hagerty, Michael; & Gerstner, Eitan (1998). "Return Policies and the Optimal Level of Hassle." *Journal of Economics and Business*.
- Davis, Hagerty & Gerstner (1995). "Money-Back Guarantees in Retailing: Matching Products to Customer Tastes." *Journal of Retailing*.
- Heiman, McWilliams & Zilberman (2001). "Demonstrations and Money-Back Guarantees: Market Mechanisms to Reduce Uncertainty." *Journal of Business Research*.
- Aaker, D. A. (1991). *Managing Brand Equity*. New York: The Free Press.
- Aaker, D. A. (1996). *Building Strong Brands*. New York: Free Press.
- Aaker, D. A. (2004). *Brand Portfolio Strategy*. New York: Free Press.
- Keller, K. L. (1993). "Conceptualizing, Measuring, and Managing Customer-Based Brand Equity." *Journal of Marketing*, 57(1), 1–22.
- Keller, K. L., & Aaker, D. A. (1992). "The Effects of Sequential Introduction of Brand Extensions." *Journal of Marketing Research*, 29(1), 35–50.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]