DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
*jacobharper@dwt.com*
Nicole S. Phillis (SBN 291266)
*nicolephillis@dwt.com*
Heather F. Canner (292837)
*heathercanner@dwt.com*
Peter K. Bae (SBN 329158)
*peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Rachel H. Herd (*pro hac vice*)
*rachelherd@dwt.com*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700

*Attorneys for Defendant*
*Arcadia Consumer Healthcare Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION**

| | |
|---|---|
| ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARCADIA CONSUMER HEALTHCARE INC., a Delaware corporation,<br><br>Defendant. | Case No. 8:24-cv-02657-JDE<br>Assigned to the Hon. John D. Early<br><br>**DEFENDANT ARCADIA CONSUMER HEALTHCARE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**[*Declarations of Evan Bashoff and Heather F. Canner filed concurrently*]**<br><br>Dept.: Courtroom 6A<br>Date: October 8, 2026<br>Time: 10:00 a.m. |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........................................ 1
II. FACTUAL BACKGROUND ........................................ 3
A. Arcadia and the Fungi-Nail Brand Line of Products. ........................................ 3
B. FN Is Marketed and Sold in a Variety of Ways. ........................................ 4
C. Customer Satisfaction Is Arcadia's Focus. ........................................ 6
D. Plaintiffs Sue; Discovery Shows Wheeler's Unique Experience......... 7
E. Previous Unsuccessful Class Action Challenging Fungi-Nail............ 7
F. Plaintiffs Abandon Hayde and Narrow the Class........................................ 8
III. CLASS CERTIFICATION STANDARD ........................................ 9
IV. THE COURT SHOULD DENY CLASS CERTIFICATION........................ 9
A. Wheeler Fails Her Burden on Commonality or Predominance. .......... 9
1. No Predominance for Materiality. ........................................ 10
2. No Commonality or Predominance as to Deception. .............. 13
3. Individualized Standing Inquiries Predominate....................... 18
4. No Commonality or Predominance for Injury and Damages. ........................................ 18
B. Wheeler Fails Typicality and Adequacy. ........................................ 20
1. Wheeler's Purchase and Reliance Are Atypical. ..................... 20
2. Wheeler's Experience Is Otherwise Atypical of the Class. ..... 20
3. Purchase for Discoloration Makes Her Inadequate. ................ 21
4. Wheeler Would Limit the Class Remedy. ............................... 21
C. Wheeler Cannot Establish Superiority Under Rule 23(b)................. 22
D. No Injunctive Relief Class Should Be Certified. ............................... 23
E. Certification of Individual Issues Is Not Warranted. ......................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) .................... 24

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) *abrogated on other grounds Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) .................... 14, 16

*Black Lives Matter L.A. v. City of L.A.*,
113 F.4th 1249 (9th Cir. 2024) .................... 1, 9, 10, 14

*Bruce v. Telefora, LLC*,
2013 WL 6709939 (C.D. Cal. 2013).................... 12

*Carrera v. First American Home Buyers Protection Co.*,
702 F. App'x 614 (9th Cir. 2017) .................... 14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).................... 23

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).................... 2, 9, 18

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .................... 23

*Downey v. Pub. Storage, Inc.*,
44 Cal. App. 5th 1103 (2020) .................... 13

*Dunn v. Costco Wholesale Corp.*,
2021 WL 4205620 (C.D. Cal. 2021).................... 11

*Grodzitsky v. Am. Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020) .................... 10

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018).................... 16

*Henderson v. J.M. Smucker Co.*,
2011 WL 1050637 (C.D. Cal. 2011).................... 21

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
2017 WL 2559615 (C.D. Cal. 2017)........................................................ 10

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014)........................................................ 19

*In re First Am. Home Buyers Prot. Corp. Class Action Litig.*,
313 F.R.D. 578 (S.D. Cal. 2016)........................................................ *passim*

*In re Stec Inc. Sec. Litig.*,
2012 WL 6965372 (C.D. Cal. 2012)........................................................ 22

*Johnson v. Harley-Davidson Motor Co.*,
285 F.R.D. 573 (E.D. Cal. 2012)........................................................ 18

*Kennedy v. Nat. Balance Pet Foods, Inc.*,
361 F. App’x 785 (9th Cir. 2010)........................................................ 18

*Kha v. Tilray Brands, Inc.*,
2026 U.S. Dist. LEXIS 160579 (C.D. Cal. 2026)........................................ 15

*Kwan Software Eng’g, Inc. v. Foray Techs., LLC*,
2014 WL 572290 (N.D. Cal. 2014)........................................................ 12

*Lara v. First Nat’l Ins. Co. of Am.*,
25 F.4th 1134 (9th Cir. 2022)........................................................ 22, 23

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012)........................................................ 14

*McConnon v. Kroger Co.*,
2024 WL 2132509 (C.D. Cal. 2024)........................................................ 18

*McMorrow v. Mondelez Int’l, Inc.*,
2020 WL 1157191 (S.D. Cal. 2020)........................................................ 19

*Minkler v. Kramer Labs., Inc.*,
2013 WL 3185552 (C.D. Cal. Mar. 1, 2013)........................................ *passim*

*Moheb v. Nutramax Labs. Inc.*,
2012 WL 6951904 (C.D. Cal. 2012)........................................................ 21, 24

*Munoz v. Alorica, Inc.*,
2026 WL 2199195 (9th Cir. 2026)........................................................ 22

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025) .......... 16, 19

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......... 14

*Otto v. Abbott Lab'ys, Inc.*,
2015 WL 12776591 (C.D. Cal. 2015) .......... 11, 12

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*,
674 F. Supp. 3d 799 (C.D. Cal. 2023) .......... 10

*Palmer v. HSBC Bank, USA, NA*,
2024 WL 2287199 (9th Cir. 2024) .......... 20

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 24

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
2016 WL 5920345 (C.D. Cal. 2016) .......... 12

*Prescott v. Reckitt Benckiser LLC*,
2022 WL 3018145 (N.D. Cal. 2022) .......... 16

*Reitman v. Champion Petfoods USA, Inc.*,
830 F. App'x 880 (9th Cir. 2020) .......... 24

*Ries v. Ariz. Beverages USA, LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) .......... 24

*Roley v. Google LLC*,
2020 WL 8675968 (N.D. Cal. 2020) .......... 13, 16

*Shin v. Sanyo Foods Corp. of Am.*,
348 F.R.D. 477 (C.D. Cal. 2025) .......... 19

*Small v. Allianz Life Ins. Co. of N. Am.*,
122 F.4th 1182 (9th Cir. 2024) .......... 20

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by Comcast*, 569 U.S. 27 .......... 10

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
308 F.R.D. 630 (N.D. Cal. 2015) ........ 24

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) ........ 18

*Vizcarra v. Unilever U.S., Inc.*,
339 F.R.D. 530 (N.D. Cal. 2021) ........ 9, 10, 16, 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 1

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ........ 24

*Webb v. Carter's Inc.*,
272 F.R.D. 489 (C.D. Cal. 2011) ........ 13, 16, 23

*White v. Symetra Assigned Benefits Serv. Co.*,
104 F.4th 1182 (9th Cir. 2024) ........ 13

*Williams v. Warner Music Grp. Corp.*,
848 F. App'x 284 (9th Cir. 2021) ........ 21

*Zinser v. Accufix Rsch. Inst.*,
253 F.3d 1180 (9th Cir. 2001) ........ 10, 23

**Statutes**

Cal. Civ. Code
§ 1761(a), (d) ........ 18
§ 1782(b) ........ 21

**Rules**

Fed. R. Civ. P. 23 ........ *passim*

Fed. R. Civ. P. 702 ........ 19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Whether class certification is appropriate in this case was already answered—when Hon. John F. Walter denied class certification in *Minkler v. Kramer Labs., Inc.*, 2013 WL 3185552 (C.D. Cal. Mar. 1, 2013), based on the same mislabeling claims that plaintiffs Eric Hayde and Megan Wheeler assert here: that Fungi-Nail brand products misled them to believe the products treat nail fungus. With class discovery complete—and Plaintiffs having abandoned one class representative who purchased based on the physical packaging that has been the basis of their claims (Hayde), and now relying exclusively on another who made an idiosyncratic Amazon mobile app purchase only (Wheeler)—the record shows the same issues precluding certification in *Minkler* exist here too, and more.

Wheeler must prove, by the "preponderance of actual evidence," that she can satisfy each Rule 23 requirement. *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1258 (9th Cir. 2024). Unable to do so, Wheeler attempts to disguise her failures by muddling and conflating the evidence and requirements; but under the "rigorous analysis" the Court must undertake, her evidence falls short for each Rule 23 element. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

**No Commonality and Predominance.** Wheeler cannot establish commonality or predominance on several grounds:

- *Materiality.* Many customers purchased the Fungi-Nail products not for nail fungus, but for one of the many conditions the product is intended to and does in fact treat: athlete's foot; ringworm; and fungal infections of the skin around the nail, toes, and feet. As Judge Walter explained in *Minkler*, these customers would not find the purported nail fungus representations material, and Wheeler cannot proffer common evidence that the challenged representations were material to all—or even most—class members. *Minkler*, 2013 WL 3185552, at *6.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

- *Deception.* Compounding the *Minkler* problems, Wheeler cannot overcome the myriad individualized issues of deception based on consumer purchases. The individuals Wheeler purports to represent—online purchasers—did not look at a box of Fungi-Nail on a store shelf; they faced the panoply of different representations and disclosures displayed on different websites and applications, based on varying combinations of words, postings, and carousels—all of which create multiple iterations of ways of detailing the product. Each of these will require individualized issues into what mix of information to which consumers were exposed to determine deception, as well as materiality.

- *Injury.* Wheeler brings a damages class only under the Consumers Legal Remedies Act (CLRA), which applies to purchases made for personal, family, or household use—not business or commercial use. But Wheeler presents no common proof about the purpose for which class members purchased, and CLRA standing will require purchaser-by-purchaser inquiries.

- *Damages.* Wheeler was required to proffer a damages model that can show classwide injury and fits her liability theory. But her damages model (a) purportedly will determine how a consumer values the statement "kills nail fungus"—*a statement that does not even appear on the label*; and (b) does not even attempt to "measure only those damages attributable to [plaintiffs'] theory," meaning "it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

**Wheeler Fails as Class Representative.** Having abandoned Hayde, Plaintiffs have no representative for in-store purchasers despite building their complaint, experts, and case around individuals who viewed and purchased *in-store packaging* of Fungi-Nail products. Relying on Wheeler alone, Plaintiffs face several *additional* fatal errors on class certification:



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

- *First*, Wheeler does not and cannot represent the very class on which this matter is based: those who purportedly relied on the package in-store (as opposed to the myriad variations of representations through online retailers).
- *Second*, Wheeler cannot represent the "online" purchasers. Unlike the one-label package on which Hayde and plaintiffs have long built their claims, website purchases depend on hundreds of iterations of representations, disclosures, positioning, graphics, and videos over time, any one of which has a material impact on what consumers would see or rely on.
- *Third*, Wheeler had deeply atypical experiences with the product, as she bought FN based her assumption she had nail fungus and ignored most of the packaging, including the directions, even going so far as to bleach her feet—a stark departure from how any reasonable consumer would act, and the same grounds under which the *Minkler* court found typicality lacking.

**No Superiority.** As in *Minkler*, Plaintiffs cannot show "how this Court will identify the consumers who purchased these products, the amount of Fungi-Nail each consumer bought, and for what purpose the Fungi-Nail was bought," meaning the case is unmanageable, and superiority not satisfied. *Minkler*, 2013 WL 3185552, at *7.

**No Injunctive Class.** Wheeler's injunctive class also fails because she (i) lacks standing to seek injunctive relief, and (ii) primarily seeks monetary relief.

**No Rule 23(c)(4) Issue Class.** Wheeler fails to prove each issue independently meets Rule 23(a)'s requirements or would advance litigation.

With no viable injunctive class claims, a CLRA damages class, or other class claims, denial of certification is warranted.

## II. <u>FACTUAL BACKGROUND</u>

### A. Arcadia and the Fungi-Nail Brand Line of Products.

Arcadia is a consumer health and wellness company that innovates and delivers over-the-counter, personal care, and supplement products to help


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

consumers proactively address wellbeing and treat everyday problems. Bashoff Decl. ¶ 2. Arcadia manufactures (among other things) antifungals, including Fungi-Nail brand foot care products, in liquid, ointment, pen, and spray form (FN products or FN). (Dkt. 35 (SAC) ¶ 3.) The FN products are over-the-counter (OTC) antifungals designed to treat fungal infections, including ringworm, athlete's foot, toe and foot fungus. Bashoff Decl. ¶ 3. The active ingredient in FN products, tolnaftate 1%, is proven effective to treat fungus anywhere it can reach, including:

- *Tinea pedis* (known as "athletes foot")
- Ringworm
- Fungal infections of the toe and foot
- Skin fungus around the nail, including cuticle, edge, and folds.

Ex. A (Parker Report) 5–6, 18, 22[1]; Coelho Ex. 6 (Bogyo Report) 16. FN cannot penetrate the nail plate, but it can stop a fungal infection on the skin before it reaches and infects the nail plate. Ex. A 14–15, 21. Customers can purchase Fungi-Nail from at least 50 different brick-and-mortar and online stores, Bashoff Decl. ¶ 4, and pharmacists and physicians also recommend it as an effective antifungal, *e.g.*, Exs. M–N.

**B. FN Is Marketed and Sold in a Variety of Ways.**

FN is sold—and customers obtain information about FN—in several ways, including through websites, applications, third-party outlets, television advertising, and industry periodicals. Bashoff Decl. ¶ 5. These various outlets include wide-ranging statements, disclosures, images, customer comments, and depictions—all in different combinations and portrayed in different ways depending on the consumer's purchase place, website, or app. Exs. J–K.

[1] All exhibits cited are to the concurrently-filed Declaration of Heather F. Canner unless otherwise stated.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

In addition to the various information from these outlets, Arcadia's packaging for FN products contain advises on the front label that it is an "ANTI-FUNGAL LIQUID," "Kills Fungus," "Stops Itching & Burning," and "Restores Skin Health + Cures Most Athlete's Foot." Coelho Ex. 20. They also depict a foot with red, inflamed, and cracked skin surrounding a healthy toenail that is structurally intact, which is a depiction of the "visual hallmarks" of the fungal conditions it treats. *Id.*; Ex. A (Parker Report) 21–22. The side label states in bold font: "Not for nail or scalp fungus." Coelho Ex. 20.







The label displays Arcadia's money back guarantee: "For more information about Fungi-Nail and money back guarantee, visit us at funginail.com." *Id.* 2. The back label contains a "Directions" panel explaining "This product is not effective on the scalp or nails" and advising customers to "Stop use and ask a doctor if … there is no improvement within 4 weeks." *Id.* 3.


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899


**Directions:** ■ Clean affected area with soap and warm water and dry thoroughly. ■ Apply a thin layer of Fungi-Nail® Anti-Fungal Liquid over affected area twice daily (morning and night) or as directed by a doctor. ■ Wear well-fitting, ventilated shoes, and change shoes and socks at least once daily. ■ For athlete's foot pay special attention to spaces between the toes. ■ For athlete's foot and ringworm, use daily for 4 weeks. For toe fungus, apply under nail and around cuticle area. If condition persists longer, consult a doctor. ■ To prevent athlete's foot, apply once or twice daily (morning and/or night). ■ This product is not effective on the scalp or nails ■ Supervise children in the use of this product.


***Warnings***
***For external use only.***
**Do not use** on children under 2 years of age unless directed by a doctor.
**When using this product** ■ avoid contact with eyes.
**Stop use and ask a doctor if** ■ irritation occurs ■ there is no improvement within 4 weeks.
**KEEP THIS AND ALL MEDICATION OUT OF THE REACH OF CHILDREN.** In case of accidental ingestion, contact a physician, emergency medical care facility or Poison Control Center immediately for advice.

In 2018, Arcadia undertook a marketing study of FN, including its label and aisle location, to determine what certain consumers found important. Coelho Ex. 10. Despite some mischaracterizations in Plaintiffs' Motion (*e.g.*, Mot. 5), the study addressed previously decreasing store sales and identified several packaging details that sought to and did increase store sales, including statements like "Clinically Proven," an attractive silver background, shiny mylar packaging, formulation updates, and different shelf placement. Coelho Exs. 10, 17. These were *independent* of the "Fungi-Nail" name, and did not rely on a "kills fungus" statement, contrary to Plaintiffs' misstatements. *Id.*; Bashoff Decl. ¶ 6.

**C. Customer Satisfaction Is Arcadia's Focus.**

Arcadia prioritizes customer satisfaction as evidenced by its expansive, no-questions asked, Money-Back Guarantee. Bashoff Decl. ¶ 7. Any dissatisfied customers can (and do) seek refunds for any reason, at any time, by emailing or calling Arcadia. *Id.* The guarantee is unrestricted. *Id.*

Arcadia also welcomes customer feedback. *Id.* Many purchasers buy FN for its intended purposes and are satisfied with its performance. *Id.* ¶¶ 7–9. Customer complaints about FN's lack of efficacy (including that FN does not cure nail fungus), as compared to the total sales, are extremely low. *Id.* ¶ 8. In 2021, such complaints represented .00425 percent of total unit sales; in 2022, it was


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

.0041 percent; in 2023, it was .0023 percent; and in 2024, it was .004876 percent. *Id*.

**D. Plaintiffs Sue; Discovery Shows Wheeler's Unique Experience.**

Originally, Plaintiffs filed this action alleging they each purchased one bottle of FN Liquid, and allegedly relied on the "Fungi-Nail" and "Kills Fungus" front label statements to believe it can treat nail fungus. (SAC ¶¶ 3, 8–9, 15–19.)

Discovery clarified things. Wheeler (the only remaining putative representative) purchased her only FN product—the Liquid—in 2023 through Amazon's mobile application, not in-store. Ex. D (Tr.) 55:16–17. She assumed she had nail fungus based on her "yellow, cloudy, gray" nails and "slight burn[ing]," but did not see a doctor or have anyone else diagnose her. *Id.* 50:9–51:1. When purchasing, Wheeler read only the "front of the box," and did not "read any information surrounding the box on the Amazon ad." *Id*. 58:18–23. The product name when she purchased was "Fungi-Nail Anti-Fungal Liquid Solution, Kills Fungus That Can Lead to Nail & Athlete's Foot …." Ex. H (MW00005).

Wheeler used FN but never read the instructions. Ex. D (Tr.) 62:10–18, 101:12–13. After using it on her toenails contrary to instructions, she "us[ed] bleach in the shower" and "hand sanitizer when [she] wasn't taking a shower" to treat her toenails. *Id*. 102:25–103:11. She never requested a refund from Arcadia or Amazon. *Id*. 161:9–18. Instead, she joined this lawsuit.

**E. Previous Unsuccessful Class Action Challenging Fungi-Nail.**

Long before Wheeler's claims, this class action already failed in another form. In *Minkler*, 2013 WL 3185552, Judge Walter denied class certification of a near-identical suit. There, as here, the plaintiff challenged the label for the same FN products, and claimed he was misled to believe the product could treat nail fungus based on the "Fungi-Nail" name, front-label statements that it "eliminate[s] fungus," and an image of a toe. *Id.* at *1; Ex. I (*Minkler* Compl.) ¶¶ 1, 15. There, as here, the *Minkler* plaintiff asserted consumer protection claims and sought to



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

certify a class of FN purchasers. 2013 WL 3185552, at *1. *Minkler* denied class certification finding:

*First*, the plaintiff's claims were atypical of the class, as plaintiff "ignor[ed] most of the information" on FN's label—whereas "[r]easonable consumers do not use drugs without consulting the warnings and disclaimers included on the FDA-mandated labeling." *Id.* at *4. He also was not exposed to any other marketing, and did not consult with a pharmacist or physician before purchasing, meaning the "nature of [his] reliance [was] atypical. *Id.*

*Second*, fatal issues precluded commonality and predominance. Because FN is marketed to treat a number of ailments, including "ringworm, athlete's foot and other conditions that can appear in places other than 'on nails,'" many class members would have purchased FN for its intend use, and would not have relied on the challenged representations (or found them material). *Id*. Further, some class members "relied on the recommendations of physicians or pharmacists," rather than the packaging. *Id*. The issue of reliance (and therefore materiality) could not be resolved through common proof and required "individualized inquir[ies]."

*Third*, a plaintiff who "purchased [FN] for nail discoloration that may or may not have been related to fungus" was not adequate to represent members who "did derive benefits from [FN] for ringworm, athlete's foot, toe and/or foot fungus, or other fungal conditions." *Id*. at *5.

*Fourth*, the proposed class was unmanageable, and therefore could not satisfy superiority, because plaintiff did not show "how this Court will identify the consumers who purchased these products, the amount of Fungi-Nail each consumer bought, and for what purpose the Fungi-Nail was bought." *Id.* at *7.

**F. Plaintiffs Abandon Hayde and Narrow the Class.**

Wheeler has substantially narrowed the scope of this action. Plaintiffs seek to certify only Wheeler as class representative; include in their classes only



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"persons residing in … California who purchased [FN] from December 6, 2020 to present" except those "who received a full refund" (Mot. 8); and move on only three of their six claims—a damages class for violation of the CLRA; and an injunctive relief class for violation of the Unfair Competition Law (UCL) and False Advertising (FAL).

## III. CLASS CERTIFICATION STANDARD

"Class certification is [] not to be granted lightly. … Rule 23 mandates that district courts 'rigorously analyze' whether a proposed class meets various requirements." *Black Lives Matter*, 113 F.4th at 1258. "[P]laintiffs cannot plead their way to class certification through just allegations and assertions." *Id*. "Rather, [] plaintiffs must 'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites." *Id.* Where "there is conflicting evidence," the court must "judge the persuasiveness of the evidence" and "resolve any factual disputes" necessary. *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 546 (N.D. Cal. 2021).

Under Rule 23, "a party must … be prepared to prove" actual common questions of law or fact, common questions predominate over individualized question, typicality of claims or defenses, and that a class action is superior to alternative methods of adjudication. *Comcast Corp.*, 569 U.S. at 33; Fed. R. Civ. P. 23(b)(3).

## IV. THE COURT SHOULD DENY CLASS CERTIFICATION

### A. Wheeler Fails Her Burden on Commonality or Predominance.

Wheeler faces substantial burdens on commonality and predominance.

***Commonality*****.** "[I]t is not enough to merely raise common questions or issues to satisfy Rule 23." *Black Lives Matter*, 113 F.4th at 1260. For commonality, "plaintiffs must 'be prepared to prove'" "questions that are 'central to the validity' of the claims and capable of being resolved 'in one stroke,'" i.e., "on a class-wide basis," by a "preponderance of the evidence." *Id.* at 1258–60.



**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 1264. "[T]he district court must engage in a 'rigorous analysis' of commonality, rather than 'merely concluding that, because evidence was admissible, a finding of commonality was appropriate." *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986 (9th Cir. 2020).

***Predominance.*** The predominance burden "is even higher" than commonality; it requires "proving that common questions predominate over individual ones." *Black Lives Matter*, 113 F. 4th at 1254, 1258. "Showing predominance is difficult, and it regularly presents the greatest obstacle to class certification." *Id*. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Rsch. Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

Wheeler fails to meet her burden at every step: (1) materiality; (2) classwide deception; (3) standing; and (4) damages.

**1. No Predominance for Materiality.**

Wheeler cannot prove commonality or predominance as to materiality for the same reasons as in *Minkler*, given long-held Ninth Circuit authority. "[I]f the misrepresentation or omission is not material as to all class members, the issue of reliance would vary from consumer to consumer and the class should not be certified." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022–23 (9th Cir. 2011), *abrogated on other grounds by Comcast*, 569 U.S. 27; *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *6 (C.D. Cal. 2017) (failure to show predominance as to materiality precluded certification); *Vizcarra*, 339 F.R.D. at 548 (lack of evidence regarding materiality precluded commonality).

Courts thus deny certification where the misrepresentation would not be material to a significant portion of the class. *E.g.*, *Stearns*, 655 F.3d at 1024; *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*, 674 F. Supp. 3d 799, 835–37, 839 (C.D. Cal. 2023) (evidence that "40% of []



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

purchases would have been made" regardless of misrepresentation undermined common materiality); *Dunn v. Costco Wholesale Corp.*, 2021 WL 4205620, at *5 (C.D. Cal. 2021) (consumers purchased product for reasons unrelated to representation, defeating common proof of materiality).

Judge Walter—addressing essentially the same proposed class based on the same essential claims—declined certification in *Minkler*, noting materiality barred it:

> Some of the class members would have relied on the recommendations of physicians or pharmacists, and the appearance of the products' packaging would not have been important to their purchasing decision.… [Further,] Fungi–Nail is marketed for use as a treatment for ringworm, athlete's foot and other conditions that can appear in places other than "on nails." … The proposed class [however, includes] consumers who purchased the product for "nail fungus" [as well as] those who purchased the product for use on conditions that do not affect the nails [for which the challenged representations would not be material].

2013 WL 3185552, at *4. Thus, "[i]ndividualized inquiry would be necessary" to "determin[e]" which class members found the label statements material. *Id.*; *see Otto v. Abbott Lab'ys, Inc.*, 2015 WL 12776591, at *3 (C.D. Cal. 2015) (denying certification; challenged omission that product was not effective for consumers with low vitamin-D was "obviously unimportant" to at least 40% of the proposed class, because they were not vitamin-D deficient).

Nothing material has changed since *Minkler*; the Court should reach the same conclusions here.[2] FN treats a wide variety of fungal conditions aside from those on the nail plate, including athlete's foot. Ex. A (Parker Report) 5–6. Many customers purchase the product for these intended uses, not nail fungus, and thus

[2] While the FN label in *Minkler* has some differences, they have no bearing on *Minkler*'s bases for denying class certification, to Wheeler's mislabeling theory, or to her failures to meet her certification burdens.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

would not find the alleged nail fungus treatment representations material. *See id.* 6 ("more than 70% of Americans will have [athlete's foot] at some point during their lives" compared to only a "10%" "prevalence" for nail fungus); Exs. M–N; Bashoff Decl. ¶¶ 7–9. Customers also purchase based on pharmacist or doctor recommendation, or factors other than the label. Exs. M–N. As in *Minkler*, these problems defeat commonality and predominance. *See Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *8 (C.D. Cal. 2016) (no common proof of materiality where consumers purchased TVs for different reasons, including personal recommendations).

Wheeler's attempts to gloss over this dispositive problem fails.

*First*, Wheeler misplaces reliance on Dr. Haruvy's flawed materiality survey. As Arcadia's Motion to Strike and Expert Report of Keith Botner (Ex. B) explains, those opinions are based on unreliable methodology. Dr. Haruvy did not even survey potential class members, instead including anyone who self-reported using an "over-the-counter topical"—which would include, e.g., lip balm—and is in no way tailored to the relevant population here. Coelho Ex. 13 ¶ 18; Ex. B (Botner Report) ¶¶ 5, 39–51; *see Bruce v. Telefora, LLC*, 2013 WL 6709939, at *7 (C.D. Cal. 2013) (disregarding consumer survey where respondents not potential class members); *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 572290, at *3 (N.D. Cal. 2014) (rejecting consumer survey that did not capture product's target audience). Casting such an overbroad net might result from his last-minute survey efforts; much of his surveying occurred July 3–5, just days before the July 10 disclosure deadline. Ex. B (Botner Report) ¶ 77. He also failed to account for the different mix of information customers received, *infra* IV.A.2. And he failed to implement any controls, used biased and leading questions, and drew a concerning number of repeat—potentially fraudulent—respondents. Ex. B ¶¶ 5, 52–82.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Second*, Wheeler cannot meet her burden with her damages expert's (Dr. Bell) report (Mot. 15–16), which vaguely notes potential damages models he might use to calculate a price premium. Her effort to conflate damages with materiality underscores her shortcomings.

*Third*, she incorrectly suggests "Arcadia's PRS IN VIVO research" "tested" the challenged statements and can somehow show common materiality. (Mot. 14.) Instead, the study showed a variety of *other* factors—"Clinically Proven" statements, a silver background, new mylar packaging, and new formulation—contributed to a sales increase. Coelho Exs. 17, 10. The "Fungi-Nail" brand name and "kills fungus" statement were *not* notable contributors. *Id.*, Ex. 17.

**2. No Commonality or Predominance as to Deception.**

Wheeler also cannot meet her burden as to deception. The Ninth Circuit has consistently held consumer deception claims cannot be certified where consumers were exposed to different representations or disclosures, as it precludes common proof. *E.g.*, *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1195 (9th Cir. 2024) (reversing certification where "the court would need to examine unique circumstances [including] the disclosures made to each plaintiff").

Even where all plaintiffs were exposed to an alleged misrepresentation, but only some were exposed to disclosures undermining the deception, "there is a question of whether [class members] were exposed to the same … deception and thus individual questions predominate." *Roley v. Google LLC*, 2020 WL 8675968, at *8–10 (N.D. Cal. 2020); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) (no certification as "awareness of a disclosure would almost certainly vary from consumer to consumer"); *see also Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1118 (2020) (no predominance where "advertisements … varied over time and across different media, and not all … contained the [challenged] falsities and omissions").


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) *abrogated on other grounds Microsoft Corp. v. Baker*, 582 U.S. 23 (2017), is instructive. There, plaintiff claimed defendant imposed a surcharge for renting tools while omitting that it was optional, which defendant disclosed in store signs and through employes' "oral notice." *Id*. at 1064, 1069. The Ninth Circuit found the disclosure "variance over time and among the different [stores] … is a crucial issue," which had to "be resolved on an individual rather than a class-wide basis." *Id*. Because the disclosures "would negate the claimed misrepresentation, the … individualized determination of the nature of those statements supported denial of class certification." *Id*. at 1070.

Other Ninth Circuit authority is in accord. In *Carrera v. First American Home Buyers Protection Co.*, the Ninth Circuit affirmed that plaintiff's failure to show "all" class members were uniformly exposed to alleged omissions precluded certification. 702 F. App'x 614, 614–15 (9th Cir. 2017). In *Mazza v. American Honda Motor Co.*, it reversed certification of false advertising claims because class members were "exposed" to "disparate information." 666 F.3d 581, 596 (9th Cir. 2012), *overruled only as to other grounds, Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022).

The variety of disclosures here destroys commonality and predominance for the same reasons. Wheeler does not even attempt to meet her burden to show by a preponderance of evidence that common proof of uniform deception exists classwide for both in-store and online purchasers, let alone that individual issues do not predominate. *See Black Lives Matter*, 113 F.4th at 1258–60. The many websites and mobile applications for the 20-plus retailer platforms involve hundreds of iterations of product names, representations, disclosures, and videos—not to mention changes during the five-year plus class period. Exs. J–L. For example:



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

- Class members (including Wheeler) were exposed to different *product names*—which for Wheeler, was not just "Fungi-Nail," but reiterated the product's purpose: "Fungi-Nail Anti-Fungal Liquid Solution, Kills Fungus That Can Lead to Nail & Athlete's Foot …" Ex. H (MW00005). Unlike in-store purchasers, some online purchasers (including Wheeler) did not need to examine the side or back labels to see "not effective on the nails" statements—this disclosure appears on the product page's readily available picture carousel, *e.g.*, Ex. K, which reasonable consumers review, *Kha v. Tilray Brands, Inc.*, 2026 U.S. Dist. LEXIS 160579, at *11 (C.D. Cal. 2026).

- The Amazon picture carousel also includes prominent clarifying information explaining "toe fungus." Ex. K. No such statement appears on the FN package, or even on certain other retailer webpages. Exs. J–L.




- The carousel also contains FN video advertisements, which in-store customers and other online purchasers would not have viewed. Ex. K.

- Even looking at Wheeler's own evidence, she repeatedly emphasizes customer reviews stating FN does not treat nail fungus (e.g., Mot. 4; Coelho Exs. 1, 9)—these too were presented for some online purchasers.

- Arcadia submits other examples where FN's purpose—treating fungus of the toes and feet and *around* the nail—and statements that the product does not treat nail fungus are prominently presented. Exs. J–K. Target.com, for example, clearly explains FN cannot be used for nail fungus:



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**Q: Can this be used on fingernails?**

Godsgrl4evr - 5 months ago

> **A:** While primarily marketed for toes and feet, the product can be used for fungal infections on the skin around fingernails. However, we recommend consulting a doctor for fingernail issues specifically, as they may require different treatment.
>
> EG Product Expert - 5 months ago Helpful (0) Not helpful (0) Report
>
> Brand expert
>
> Answer it

**Q: does this product actually work on toenail fungus?**

ralph - 7 years ago

> **A:** No, the products says it is NOT for nail ( or toenail) fungus, just skin fungus.
>
> JerseyReno - 5 years ago Helpful (4) Not helpful (0) Report
>
> **A:** Fungi-Nail liquid is clinically proven to cure and prevent skin fungus. It should be applied to affected skin around the toenails and between toes. It is not for nail or scalp fungus.
>
> EG Product Expert - 6 years ago Helpful (15) Not helpful (2) Report
>
> Brand expert

Ex. K.

Here, as in *Roley*, *Downey*, *Webb*, *Berger*, *Carrera*, and *Mazza*, determining deception would require individualized inquiries into the representations to which consumers were exposed.

Plus, Wheeler's own evidence falls short of her burdens.

*First*, she fails to identify common proof of materiality, because her evidence focuses almost exclusively on the physical packaging observed during an in-store purchase, and not the variety of marketing customers were presented with when purchasing online. (Mot. 12–13.)

*Second*, she suggests the labels alone can show common deception, but she "must point to common evidence other than the alleged misrepresentations themselves." *Vizcarra*, 339 F.R.D. at 548.[3]

---

[3] Wheeler's authority is inapposite. In *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 868–69 (9th Cir. 2025), the plaintiff, unlike Wheeler, offered "undisputed evidence of classwide exposure." In her other cases, defendants argued certain class members were exposed to, but did not "see[]" the statements at issue. *E.g.*, *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1099 (N.D. Cal. 2018); *Prescott v. Reckitt Benckiser LLC*, 2022 WL 3018145, at *5 (N.D. Cal.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Third*, Wheeler's reliance on her purported deception expert, Rhonda Harper, is misplaced. By Ms. Harper's own admission, she does not address the online purchase experience, much less the multiple iterations of online statements, label images, disclosures, and website carousels. Ex. F (Tr.) 106:2–108:7. Her report instead discusses how customers review the product package, contending they look only at the front and do not "turn" the box to the side or back (both contain disclosures that FN is not for nails). *E.g.*, Coelho Ex. 7 ¶ 68. This testimony is not about online purchasers, who do not have to pick up and "turn" a product to read the side or back label; when online, that information may be presented in an image carousel immediately next to the front label (and may vary in size), or it may contain completely different images and information. *E.g.*, Exs. J–L. And, she admits the mix of information differed for online retailers. *See* Coelho Ex. 7 ¶ 37. Her limited opinions about FN's physical packaging are not representative of information presented to *online* class purchasers and cannot constitute common proof of deception classwide. Further, her report should be stricken, *see* Arcadia's Motion to Strike, including because she has no reliable basis for her far-reaching opinions. Ex. B (Botner Report) ¶¶ 20–37 (rebutting report).

*Fourth*, the two complaints Wheeler cites falls short of classwide proof. (Mot. 12.) And the complaints Ms. Harper attempts to cast as "significant" (Coelho Ex. 7 ¶ 56) represent less than 0.004% of purchases during the class period—far from classwide evidence. Bashoff Decl. ¶ 8; Ex. B (Botner Report) ¶ 36. Nor do those complaints confirm *what* statements which customers were exposed to. And they largely represent customers who received refunds and therefore are excluded. Bashoff Decl. ¶ 8.

---

2022). Here, Wheeler has not proffered common proof of what class members were exposed to. (She otherwise cites irrelevant motion to dismiss cases.)



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**3. Individualized Standing Inquiries Predominate.**

Individualized inquiries regarding whether class members have CLRA standing will also predominate. *Kennedy v. Nat. Balance Pet Foods, Inc.*, 361 F. App'x 785, 787 (9th Cir. 2010) (no predominance on CLRA standing issues). Under the CLRA, only class members who purchase "goods or services *for personal, family, or household purposes*" have standing, while those who purchased for business, commercial, or resale purposes do not. Cal. Civ. Code § 1761(a), (d) (emphasis added). Customers who purchased FN to stock a work or school infirmary, for example, would lack CLRA standing. Resolving "whether class members purchased a [product] for personal or business use is not a common question and will require individual examination." *Johnson v. Harley-Davidson Motor Co.*, 285 F.R.D. 573, 582–83 (E.D. Cal. 2012).

**4. No Commonality or Predominance for Injury and Damages.**

Wheeler also fails to meet her burdens for injury and damages. For injury, she must "demonstrate by a preponderance of the evidence that a common question of law or fact exists—an issue that is capable of class-wide resolution." *Van v. LLR, Inc.*, 61 F.4th 1053, 1066–67 (9th Cir. 2023). Under *Comcast*, Wheeler must also proffer a damages "model" that "measure[s] only those damages attributable to" her theory of liability. *Comcast*, 569 U.S. at 35.

Wheeler relies on Dr. Bell's "equilibrium price premium" (EPP) damages "model," which does not suffice.

*First*, Dr. Bell's model purports to measure a "price premium," which contradicts Plaintiffs' pleaded injury. Plaintiffs allege they and the class "paid for a product that they would not have purchased had they known the truth" (SAC ¶¶ 7, 61), meaning the product is "worthless" to them, for which the remedy is full refund, not just a price premium, *McConnon v. Kroger Co.*, 2024 WL 2132509, at *3 (C.D. Cal. 2024). Wheeler's price premium model departs from this theory,



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

and fails to account for other class members (like Hayde) who claim an injury and damages equal to FN's full price. Ex. E (Tr.) 252:5–12. This not only precludes common proof; individualized inquiries to determine which class members are entitled to what relief would predominate.

*Second*, Dr. Bell's model fails to isolate the price premium, if any, resulting from the challenged statements, which "alone" warrants denial. *Vizcarra*, 339 F.R.D. at 553–55; *McMorrow v. Mondelez Int'l, Inc.*, 2020 WL 1157191, *5–9 (S.D. Cal. 2020) (denying certification where damages study did not isolate premium for challenged "nutritious" statement but instead used phrases like "nutritious sustained energy"). He proposes to measure a price premium attributable to the claim "kills nail fungus." Coelho Ex. 15 ¶ 35. As Dr. Bell acknowledges, the tested attributes "should mirror the actual package," *id*. ¶ 44, but ***"Kills Nail Fungus" appears nowhere on the label***. Ex. G (Tr.) 48:10–18.

*Third*, Dr. Bell's opinion does not show a viable damages model is capable of calculating classwide damages. Under Rule 23, an expert cannot "'[m]erely gestur[e] at a model or describe[e] a general method'" but must "'chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case.'" *Shin v. Sanyo Foods Corp. of Am.*, 348 F.R.D. 477, 484 (C.D. Cal. 2025); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552–53 (C.D. Cal. 2014) (striking expert that did "not identify any variables he intend[ed] to build into the models" nor "any data presently in his possession to which the models can be applied"). As described in Arcadia's Motion to Strike and the Expert Report of Chen Song (Ex. C), Dr. Bell's opinions fail under both Rule 23 and Rule 702.[4]

[4] The expert in *Noohi* did far more in his damages model than Dr. Bell did here.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### B. Wheeler Fails Typicality and Adequacy.

#### 1. Wheeler's Purchase and Reliance Are Atypical.

Wheeler's purchase and reliance render her atypical. "'Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1201–02 (9th Cir. 2024).

Wheeler purports to represent customers who made purchases in any forum: both brick-and-mortar stores and through any website or mobile application. She is atypical of both. She made a single purchase through a unique source: Amazon's mobile app. Ex. D (Tr.) 132:10–23. *See Palmer v. HSBC Bank, USA, NA*, 2024 WL 2287199, at *2 (9th Cir. 2024) ("class representative's claims must be 'reasonably co-extensive with those of absent class members'"). The information Wheeler was presented with, reviewed, and relied on when purchasing is atypical for class members who purchased: (a) in-store, because she did not even purchase based on the same packaging; and (b) online, because the various iterations of representations and disclosures among websites, between website/app formats, and over time disparately affected purchase reasons, *supra* IV.A.2.

#### 2. Wheeler's Experience Is Otherwise Atypical of the Class.

Wheeler's use of and experience with the product also renders her atypical—an issue (again) already addressed in *Minkler*, where Judge Walter found several factors (all present here) rendered that plaintiff atypical:

> [Plaintiff] purchased Fungi–Nail while ignoring most of the information provided on the product's packaging, including the "Drug Facts" label on the back of the package, which is mandated by the FDA… to educate consumers about the safe and effective use of OTC drugs. Plaintiff's behavior in this regard is atypical. Reasonable consumers do not use drugs without consulting the warnings and disclaimers included on the FDA-mandated labeling. In addition, in making his purchase decision,



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

> Plaintiff was not exposed to any of the other forms of marketing used by Defendants, nor did he consult a pharmacist or physician. As a result, the nature of Plaintiff's reliance also renders him atypical.

2013 WL 3185552, at *4.

The same idiosyncrasies confirm Wheeler is atypical. Wheeler read only the FN's front label statements and ignored all other information on the product label (and website), even when using it. Ex. D (Tr.) 58:18–23, 62:10–18. Rather than read the directions as a reasonable consumer would, for two weeks, ***she poured bleach on her toenails*** twice a day in the shower and applied hand sanitizer to her nails once a day. *Id*. 103:7–11; 104:2–22; 106:16–25. And unlike other customers, she never consulted with a doctor, nor was diagnosed with nail fungus prior to using the product. *Id.* 66:15–20; 50:16–24. *E.g., Moheb v. Nutramax Labs. Inc.*, 2012 WL 6951904, at *4 (C.D. Cal. 2012) (certification denied because class included consumers who relied on physicians' advice).

**3. Purchase for Discoloration Makes Her Inadequate.**

In *Minkler*, 2013 WL 3185552, at *5, the named plaintiff who "purchased Fungi-Nail for nail discoloration that may or may not have been related to fungus" was inadequate for class members "who did derive benefits from Fungi-Nail for ringworm, athlete's foot, toe and/or foot fungus, or other fungal conditions." *Id*. That reasoning applies equally here; Wheeler purchased FN solely based on her personal conclusion that her toenail discoloration was caused by toenail fungus. Ex. D (Tr.) 50:16–51:1.

**4. Wheeler Would Limit the Class Remedy.**

Wheeler is also inadequate to represent class members who seek to recoup their full purchase price. "Proposed class representatives have a conflict of interest with the absent putative class members if they do not have standing to or refuse to assert certain claims that may be available and advantageous to the absent putative class members." *In re Stec Inc. Sec. Litig.*, 2012 WL 6965372, at *6 (C.D. Cal.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2012); *see Munoz v. Alorica, Inc.*, 2026 WL 2199195, at *2 (9th Cir. 2026) (vacating certification; "the district court failed to properly address [defendants'] contention that [plaintiffs' legal] theory gave rise to an irreconcilable class conflict"). Wheeler seeks to certify a class for "price-premium damages," not full damages. (Mot. 8.) As discussed *supra* IV.A.4, her allegations concede other class members seek a full refund, creating a conflict between her partial damages request and those who may be entitled to more.

**C. Wheeler Cannot Establish Superiority Under Rule 23(b).**

Manageability issues preclude superiority. "The manageability requirement [of superiority] 'encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 610 (S.D. Cal. 2016). For example, "[a] class action [that] would involve adjudicating issues specific to each class member's claim, … would be unmanageable." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1140 (9th Cir. 2022).

In *Minkler*, Judge Walter found classes with almost identical definitions as here were unmanageable, precluding superiority. *See Minkler*, 2013 WL 3185552, at *7. The plaintiff failed to show how to "identify the consumers who purchased these products, the amount of Fungi-Nail each consumer bought, and for what purpose the Fungi-Nail was bought." *Id.*; *see Lara*, 25 F.4th at 1140. Nor does Wheeler. FN products are sold primarily through independent retailers. Bashoff Decl. ¶ 13. Arcadia does not track individual purchasers of its products, let alone have any way to identify which "reside" in California, purchased for non-commercial reasons, or obtained "full refunds." *Id.* The individualized issues detailed *supra* IV.A also render the class unmanageable. *Lara*, 25 F.4th at 1140. And, courts have found "a class action … not superior [where defendant] is already offering the very relief that Plaintiffs seek: it allows consumers to obtain refunds …, even without a receipt," as Arcadia does. *Webb*, 272 F.R.D. at 504.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**D. No Injunctive Relief Class Should Be Certified.**

Wheeler cannot certify an injunctive relief class, for two more reasons.

*First*, she lacks Article III standing to seek injunctive relief and represent such class.[5] She must show she faces a threat of imminent injury: "a sufficient likelihood that [she] will again be wronged in a similar way." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Wheeler contends she "continue[s] to want an effective nail-fungus product" and "would consider buying Fungi-Nail again if Arcadia accurately labeled it or reformulated it to treat nail fungus." Dkt. 94 ¶ 9; *see* SAC ¶ 11. But "*possible* future injury" is insufficient—injury must be "*certainly impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). And under Wheeler's theory, "accurately" labeled FN would not convey it is a "nail-fungus" product, and she would not purchase it. Nor can Arcadia "reformulate[]" FN to treat fungus of the nail, as generally only prescription medications do. Bashoff Decl. ¶ 12; Ex. A (Parker Report) 19.

*Second*, an injunction class "is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195. "Certification is improper where, as here, the request for injunctive … relief is merely a foundational step towards a damages award which requires follow-on individual inquiries to determine each class member's entitlement to damages." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459 (S.D. Cal. 2014).

Here, Wheeler primarily seeks monetary relief nonincidental to her requested injunctive relief, which "would require assessment of each class member's claim based on how many products [they] purchased, where she purchased, if [they] used a coupon, and so forth." *Id*. Individualized damages issues persist regarding, e.g., the varying "retail price paid" and "subjective value" of the purchased products. *Moheb*, 2012 WL 6951904, at *6. And "although the monetary amount sought may be small per class member, in the aggregate they can

[5] Arcadia also moves for summary judgment on this basis.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

hardly be said to be incidental to the injunctive relief sought." *Ries v. Ariz. Beverages USA, LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012). Wheeler's cited authority supports *Arcadia's* position; those plaintiffs sought only injunctive classes. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *Parsons v. Ryan*, 754 F.3d 657, 663 (9th Cir. 2014). The "restitution … sought [is] not 'incidental,'" which militates against injunctive relief. *Algarin*, 300 F.R.D. at 458.

**E. Certification of Individual Issues Is Not Warranted.**

Rule 23(c)(4) certification of individual issues is unwarranted. Each issue to be certified must independently meet the requirements of Rule 23(a) and (b), except predominance. *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015).

Wheeler fails to show how she meets her burden, for either certification of "issues" or her vague alternative request to certify "common liability issues and conduct elements." Rather, she treats Rule 23(c)(4) "as something of a consolation prize in the event certification is [otherwise] denied[.]" *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 727 (N.D. Cal. 2023). She offers only a passing assertion that certification of liability issues would "materially advance the case" (Mot. 23); *see Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020) (affirming denial of certification; "numerous individualized issues affecting determinations of liability make Rule 23(c)(4) certification inefficient"). Such "perfunctory justification for certification itself requires the Court to deny certification of a Rule 23(c)(4) class." *Handloser v. HCL Techs. Ltd.*, 2021 WL 879802, at *12 (N.D. Cal. 2021).



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: September 4, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant*
*Arcadia Consumer Healthcare Inc.*



**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Arcadia Consumer Healthcare, Inc., certifies that this brief contains 6,945 words, which complies with the word limit of 11-6.1.

DATED: September 4, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant Arcadia Consumer Healthcare Inc.*



**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899