DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
*jacobharper@dwt.com*
Nicole S. Phillis (SBN 291266)
*nicolephillis@dwt.com*
Heather F. Canner (292837)
*heathercanner@dwt.com*
Peter K. Bae (SBN 329158)
*peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Rachel H. Herd (*pro hac vice*)
*rachelherd@dwt.com*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700

*Attorneys for Defendant*
*Arcadia Consumer Healthcare Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION**

| | |
|---|---|
| ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARCADIA CONSUMER HEALTHCARE INC., a Delaware corporation,<br><br>Defendant. | Case No. 8:24-cv-02657-JDE<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE OR EXCLUDE EXPERT REPORTS OF DR. DAVID BELL; DR. ERNAN HARUVY; RHONDA HARPER; AND DR. MATTHEW BOGYO; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>***[Declaration of Peter K. Bae; [Proposed] Order filed concurrently]***<br><br>Assigned to the Hon. John D. Early<br><br>Dept.: Courtroom 6A<br>Time: 10:00 a.m.<br>Date: October 8, 2026 |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 8, 2026, at 10:00 a.m. in Courtroom 6A of the United States District Court, Central District of California, located at 411 W. Fourth St., Santa Ana, California 92701, defendant Arcadia Consumer Healthcare Inc. (Arcadia) will and hereby does move this Court, pursuant to the Court's July 10, 2025 Order re Scheduling Order and Trial Procedures (Dkt. 41), Federal Rule of Evidence 702 for an order striking or excluding the Expert Reports of Dr. David Bell, Dr. Ernan Haruvy, Rhonda Harper, and Dr. Matthew Bogyo submitted in support of Plaintiffs' motion for class certification. *See* Plaintiffs' Motion for Class Certification (Dkt. 92; Dkt. 96-2 [redacted version]; Dkt. 97-1 [unredacted, under seal version]), Declaration of Thiago M. Coelho (Dkt. 93) Exs. 15 (Bell Report); 13 (Haruvy Report); 7 (Harper Report); 6 (Bogyo Report).

Arcadia brings this motion on the grounds that Plaintiffs' proffered expert testimony does not satisfy Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because the experts are not qualified and the expert declarations: (1) cannot assist the trier of fact; (2) rely on insufficient facts and data; (3) are not the product of reliable methodologies; and/or (4) do not reliably apply the purported methodologies the facts of this case.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 25, 2026. Declaration of Peter K. Bae ¶ 13.

This motion is based on this notice and motion; the attached memorandum; the declaration of Peter K. Bae and exhibits thereto; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on this motion.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: September 4, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant*
*Arcadia Consumer Healthcare Inc.*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 3
A. Plaintiffs' Damages Expert: David Bell, Ph.D ........ 3
B. Plaintiffs' Materiality Expert: Ernan Haruvy, Ph.D ........ 4
C. Plaintiffs' Deception Expert: Rhonda Harper ........ 4
D. Plaintiffs' Microbiology Expert: Matthew Bogyo, Ph.D. ........ 5
III. LEGAL STANDARD ........ 5
IV. ARGUMENT ........ 6
A. Dr. Bell's Report Should Be Stricken or Excluded ........ 6
1. Dr. Bell's Methodology Cannot Reliably Show Class Damages ........ 6
2. Dr. Bell's Damages Model Does Not "Fit" Plaintiffs' Case ........ 9
B. Dr. Haruvy's Materiality Opinions are Unreliable and Unhelpful. ........ 12
C. Ms. Harper's Deception Opinions Should Be Excluded. ........ 15
1. Ms. Harper's Opinions Lack a Reliable Methodology ........ 16
2. Ms. Harper's Opinions About Arcadia's "Intent" and Feasibility are Unhelpful ........ 17
a. Ms. Harper Cannot Opine on Arcadia's Intent ........ 18
b. Ms. Harper Cannot Opine on Ultimate Issues ........ 18
c. Ms. Harper Cannot Opine About What Arcadia "Should" Do ........ 19
D. Dr. Bogyo's Report Should Be Stricken ........ 19
1. Dr. Bogyo's Is Not Qualified to Opine on Onychomycosis ........ 19
2. Dr. Bogyo's Uncited FDA Monograph Opinion is Unhelpful and Unreliable ........ 21
V. CONCLUSION ........ 21



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page**

*AIG Retirement Servs., Inc. v. Altus Fin. S.A.*,
2011 WL 13213589 (C.D. Cal. Sept. 26, 2011) .......... 17

*Bustamante v. KIND, LLC*,
100 F.4th 419 (2d Cir. 2024) .......... 12, 14

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) .......... 6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 10

*Crow Tribe of Indians v. Racicot*,
87 F.3d 1039 (9th Cir. 1996) .......... 19

*Pedroza v. PetSmart, Inc.*,
2013 WL 1490667 (C.D. Cal. Jan. 28, 2013) .......... 6, 9

*Diode Dynamics, L.L.C. v. 5DLight, Inc.*,
2026 WL 852169 (C.D. Cal. Mar. 20, 2026) .......... 18

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) .......... 6, 16, 17

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 7, 16

*Grodzitsky v. Am. Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020) .......... 5

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .......... 18

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) .......... 7, 9, 11

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
2022 WL 898595 (9th Cir. Mar. 28, 2022) .......... 6

*In re SFPP Right-of-Way Claims*,
2017 WL 2378363 (C.D. Cal. May 23, 2017) .......... 16



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*In re Zicam Cold Remedy Mktg., Sales Pracs., and Prods. Liab. Litig.*,
2011 WL 798898 (D. Ariz. Feb. 24, 2011)........................................................ 20

*Jacobs v. Fareportal, Inc.*,
2020 WL 6587245 (D. Neb. May 29, 2020)...................................................... 16

*Kaffaga v. Estate of Steinbeck*,
938 F.3d 1006 (9th Cir. 2019) ........................................................................ 18

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
2014 WL 572290 (N.D. Cal. Feb. 11, 2014) .............................................. 12, 13

*Laux v. Mentor Worldwide, LLC*,
295 F. Supp. 3d 1094 (C.D. Cal. 2017) ...................................................... 19, 21

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
2019 WL 8014103 (D. Del. June 25, 2019)...................................................... 16

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025) .......... 9, 10

*Medtronic, Inc. v. Axonics Modulation Techs., Inc.*,
2024 WL 4406929 (C.D. Cal. Aug. 29, 2024).................................................. 19

*Moement, Inc. v. Groomore, Inc.*,
2024 WL 4830589 (C.D. Cal. Oct. 29, 2024).................................................... 16

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ......................................................................... 21

*OCG Energy v. Shen*,
2024 WL 694912 (C.D. Cal. Feb. 12, 2024) ..................................................... 18

*Opperman v. Kong Techs.*,
2017 WL 3149295 (N.D. Cal. July 25, 2017)............................................... 9, 10

*Padilla v. City of Los Angeles*,
2023 WL 8610526 (C.D. Cal. June 29, 2023) .................................................. 19

*Pavo Sols. LLC v. Kingston Tech. Co.*,
2019 WL 8138163 (C.D. Cal. Nov. 20, 2019); *aff'd* 35 F.4th 1367 (Fed. Cir. 2022) ........................................................................................................ 18

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
655 F. Supp. 3d 1002 (S.D. Cal. 2023)............................................................. 18



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Pet Chalet, Inc. v. Cnty. of Riverside*,
2015 WL 13918085 (C.D. Cal. Sept. 10, 2015) ............................................... 17

*Procter & Gamble Co. v. Ultero, Inc.*,
574 F. Supp. 2d 339 (S.D.N.Y. Aug. 28, 2008) ............................................... 13

*Reinsdorf v. Skechers U.S.A.*,
922 F. Supp. 2d 866 (C.D. Cal. 2013) ................................................... 13, 14, 15

*Rusoff v. Happy Grp., Inc.*,
--- F.4th ----, 2026 WL 2387098 (9th Cir. Aug. 17, 2026)...................... 5, 10, 12

*Shin v. Sanyo Foods Corp. of Am.*,
348 F.R.D. 477 (C.D. Cal. 2025)................................................................. 9, 10

*Siqueiros v. Gen. Motors LLC*,
2022 WL 74182 (N.D. Cal. Jan. 7, 2022)........................................................ 21

*Sonneveldt v. Mazda Motors of Am., Inc.*,
2024 WL 5242611 (9th Cir. Dec. 30, 2024)..................................................... 21

*Tovey v. Nike, Inc.*,
2014 WL 3510636 (N.D. Ohio July 10, 2014)................................................. 15

*U.S. v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) .......................................................................... 16

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... 10

Fed. R. Evid. 702......................................................................................... *passim*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## I. INTRODUCTION

Plaintiffs seek class certification through four expert reports that ask this Court to accept their conclusions now and ask details later. As explained below and in Arcadia's rebuttal reports, Rule 702 prohibits class certification based on such inherently unreliable, unhelpful, and inapt testimony.

***First,*** Dr. David Bell's report exemplifies Plaintiffs' half-baked approach. Plaintiffs claim Dr. Bell's hypothetical "conjoint analysis" can calculate a price premium—and therefore, common, class-wide damages—attributable to the challenged statements. But merely pointing to a general statistical method (conjoint analysis) without defining the attributes to be tested (i.e., the specific attributes consumers value differently) fails to satisfy Rule 702. Aside from gesturing to a "conjoint analysis" generally and promising to adhere to general "best practices," Dr. Bell fails to identify the inputs required to tie his proposed methodology to this case. Among other basic failures, Dr. Bell fails to define the minimum basic variables—the efficacy claims, label stimuli, comparator products, prices, randomization protocol, quality-controls, and but-for presentation—to be tested. Ex. A[1] ¶¶ 23, 44–47, 55, 58–60. Without such information, the Bell conjoint analysis is neither reliable nor "helpful" as required under Rule 702.

***Second,*** Dr. Ernan Haruvy's materiality survey is equally flawed. Bereft of any actual evidence that Fungi-Nail's statements are material to absent class members or on a class-wide basis (as required for class certification), Plaintiffs cite Dr. Haruvy to argue that "the ability to kill or eliminate nail fungus" is material to consumer behavior. Dkt. 97-1 at 15. But the survey on which Dr. Haruvy bases this opinion is so methodologically flawed that it cannot be trusted. First, Dr. Haruvy surveys the wrong population. Second, the survey lacks key controls.

---

[1] Unless otherwise noted, all citations to exhibits are to exhibits to the concurrently-filed Declaration of Peter K. Bae.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Third, the survey relies on leading, biased questions. Ex. C ¶¶ 18–19 & App. B. As rebuttal expert Dr. Keith Botner explains, these failures render Dr. Haruvy's opinions professionally unreliable and legally useless. They must be stricken.

***Third,*** Rhonda Harper's "report"—cited by Plaintiffs for both what "reasonable consumers" would purportedly believe ***and*** for what Arcadia purportedly intended—is even more problematic. *E.g.*, Dkt. 97-1 at 4. Building on a string of other prior exclusions, Ms. Harper conjures a made-up eight-factor framework for her analysis, but provides no test, validation, error rate, survey, or replicable analytical process showing how those factors yield her conclusions. Ex. E ¶¶ 7–9. She further invades the province of this Court and the factfinder to "opine" that a reasonable consumer would be misled, that Arcadia acted intentionally, and that Arcadia should have redesigned the product. *Id.* ¶¶ 21, 42–68. Such conclusions are neither reliable nor helpful under Rule 702.

***Fourth***, Plaintiffs rely upon Dr. Bogyo's opinions to contend that Fungi-Nail cannot effectively treat onychomycosis. Dkt. 97-1 at 2, 5, 7, 13. But Dr. Bogyo's "onychomycosis" opinion far exceeds his qualifications as a microbiologist—particularly given that he had not even heard of tinea unguium (clinical term for nail infections caused by dermatophytes, representing the majority of fungal nail cases) until reading about it in Arcadia's rebuttal expert report. Moreover, his opinions regarding regulatory compliance with the FDA monograph—which are so indefensible that Plaintiffs do not even bother to cite them in the certification motion—not only exceed Dr. Bogyo's qualifications, but also the proper scope of expert testimony altogether.

Plaintiffs cannot meet their burden on class certification based on: (1) an unbuilt damages model; (2) a biased survey designed only to confirm Plaintiffs' claims; (3) *ipse dixit* packaging opinions devoid of any reliable methodology; and (4) unfounded pharmacological and regulatory opinions. Because Plaintiffs' expert reports fail on multiple independent grounds under Rule 702, they must be stricken.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## II. BACKGROUND

### A. Plaintiffs' Damages Expert: David Bell, Ph.D.

Plaintiffs offer Dr. David Bell to opine that class-wide damages can be measured through a future conjoint survey designed to estimate an alleged price premium. Ex. A ¶¶ 14, 22–26, 51–58. Generally speaking, a conjoint analysis is a statistical methodology used to determine how consumers value different product features. Plaintiffs claim they can show class-wide damages by calculating a "price premium" attributable to their challenged statements based Dr. Bell's unexecuted, undefined "conjoint analysis"—an opinion that does little more than recite general practices for this type of research without actually identifying the inputs that apply the conjoint methodology to the facts of this case. Dkt. 97-1 at 15–16.

At deposition, Dr. Bell conceded he had not even decided which efficacy claims—the heart of Plaintiffs' case—he would test. Nor does he confirm any of the other attributes he would test in his conjoint analysis, such as brand, application method, price, additional ingredients, etc. Despite not actually defining the contours of a conjoint analysis, Dr. Bell promises he can somehow calculate consumers' willingness to pay, willingness to buy, and an "equilibrium price premium" attributable to the allegedly misleading efficacy claims. Ex. A ¶¶ 23, 44–47, 58–60. But again, Dr. Bell has failed to define the efficacy claims he would test in this analysis and, in fact, repeatedly wavered between testing ***different*** efficacy claims not even at issue in this litigation. Ex. B at 140:5–13 ("Q: So you haven't decided yet whether your conjoint analysis will test the efficacy claim "Kills nail fungus;" correct? [Objection.] THE WITNESS: No, I've not made a decision about whether I would use that exact language, whether it would say, "Kills fungus," "Kills nail fungus," or—or something else.")

Dr. Bell likewise conceded at deposition that his report does not present a completed damages methodology—and that he had neither investigated, applied, nor decided which, among his three damages extrapolation methods (willingness to



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

pay, willingness to buy, and an "equilibrium price premium"), would be the most applicable here. *Id.* at 81:9–19. As Dr. Chen Song explains in her rebuttal, Dr. Bell's vague references to an undefined future conjoint study fail to define the proper but-for alternative, invoke efficacy messages that misstate Plaintiffs' theory of liability, and offer no reliable basis for extrapolating any survey results to the proposed class. Ex. J ¶¶ 10–14, 18–28, 89–100.

**B. Plaintiffs' Materiality Expert: Ernan Haruvy, Ph.D.**

Plaintiffs cite Dr. Haruvy in their class certification motion to argue that a significant segment of the consumers "considered the ability to kill or eliminate nail fungus important to the purchase decision"—a purported indicator of materiality. Dkt. 97-1 at 15. But Dr. Haruvy based those opinions on a botched survey of inapt consumers who were led by biased questions that violate the most basic best practices for survey design. Dr. Haruvy conducted a survey in which respondents viewed various Fungi-Nail product presentations and rated the importance of certain product attributes, including whether the product kills or eliminates nail fungus. Ex. C ¶¶ 8, 18–19, 53–68.

As rebuttal expert Dr. Keith Botner explains, the survey suffers from multiple fundamental defects, including an overinclusive respondent universe that was not limited to purchasers of antifungal products, contained no control group or control mechanism, used leading and biased questions, and exhibited additional data-quality concerns, including duplicate-IP issues and non-random respondent assignment. Ex. I ¶¶ 5, 39–80, 82–83.

**C. Plaintiffs' Deception Expert: Rhonda Harper**

Plaintiffs offer Rhonda Harper to opine that Arcadia's packaging and branding create the net impression that Fungi-Nail treats nail fungus and that consumers are likely to be misled by the challenged product presentation. Ex. E ¶¶ 7–10, 21–41, 67–68. Plaintiffs also invoke the opinions of Ms. Harper to explain what Arcadia "intended" in designing the Fungi-Nail name.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Ms. Harper's opinions are not based on any consumer research, survey, or testing. Instead, she relies primarily on her personal review of packaging materials, selected consumer complaints, and marketing experience to speak for an entire population of consumers. Ex. I ¶¶ 4, 21–37. Ms. Harper's *ipse dixit* conclusions about consumer beliefs, as well as about Arcadia's intentions, are untethered to any recognized methodology. *Id.* ¶¶ 81, 83.

**D. Plaintiffs' Microbiology Expert: Matthew Bogyo, Ph.D.**

Plaintiffs offer Dr. Matthew Bogyo to opine that Fungi-Nail's tolnaftate-based products cannot effectively treat nail fungus. Dkt. 97-1 at 2, 5, 7, 13. Dr. Bogyo also purports to opine in his report (though it is not cited in Plaintiffs' class certification motion) that various packaging statements allegedly exceed or are inconsistent with the FDA's topical antifungal monograph. Ex. G at 16–18. But Dr. Bogyo—a microbiologist by trade—had not even heard about tinea unguium until this litigation, Ex. H at 48:14–20, and in any event, cannot opine on ultimate FDA compliance issues. *Cf.* Ex. K at 15–23.

## III. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admission of all expert testimony. Expert testimony is permitted from an expert qualified by "knowledge, skill, experience, training, or education" (qualified); where the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue" (helpfulness and "fit"); "the testimony is the product of reliable principles and methods" (reliable methodology); and "the expert's opinion reflects a reliable application of the principles and methods to the facts" (reliable application). Fed. R. Evid. 702(a)–(d).

As this Court recognizes, Dkt. 41 at 2, the gatekeeping function of Rule 702 applies at class certification. *See, e.g.*, *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984–87 (9th Cir. 2020) (affirming exclusion of expert testimony offered in support of class certification and denying class certification); *Rusoff v.*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Happy Grp., Inc.*, --- F.4th ----, 2026 WL 2387098, at *6 (9th Cir. Aug. 17, 2026) ("*Daubert*'s gatekeeping requirement plays a central role in the class certification process: plaintiffs may not obtain class certification—nor may defendants block it—through the presentation of expert witnesses who lack reliability. To the extent plaintiffs argue that *Daubert* has no role to play at class certification, our precedents say otherwise."). "[T]here is no presumption in favor of admission" of expert evidence; the proponent of such evidence "must always establish the admissibility criteria of Rule 702 by a preponderance of the evidence." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025).

## IV. ARGUMENT

### A. Dr. Bell's Report Should Be Stricken or Excluded.

Dr. Bell's Report should be excluded because it is unreliable, irrelevant, and fails to "fit" Plaintiffs' theory of the case. First, Dr. Bell provides no specific information sufficient to evaluate the reliability of his methodology; rather, he offers only the kind of conceptual outline courts hold insufficient under *Daubert*. Second, Dr. Bell proposes metrics that do not match the damages Plaintiffs seek and contemplates (but does not commit to) testing efficacy claims that are not at issue.

#### 1. Dr. Bell's Methodology Cannot Reliably Show Class Damages

To satisfy Rule 702, "an expert must provide sufficient explanation for their methodology such that '[s]omeone else using the same data and methods [would] be able to replicate the result[s].'" *In re Incretin-Based Therapies Prods. Liab. Litig.*, 2022 WL 898595, at *1 (9th Cir. Mar. 28, 2022) (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014)). An expert who "does not explain what data he plans to use" for applying his methodology, "why such data is sufficiently complete and reliable," "how he plans to select a representative sample," or "why such a selection would be representative" will be excluded under *Daubert*. *Pedroza v. PetSmart, Inc.*, 2013 WL 1490667, at *3 (C.D. Cal. Jan. 28, 2013). Courts routinely find expert reports that provide only a conceptual outline of



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

a model, without identifying the inputs to be applied or where those inputs come from, unreliable. *Id.*

Here, Dr. Bell's report is unreliable because it consists of hypothetical assumptions about a generic conjoint analysis rather than a concrete methodology based on the facts of this case. Aside from his testimony that the "analysis [he] intend[s] to run is designed to assess the economic loss" "to consumers in the class who purchased" the products at issue, Dr. Bell offers no basis for the Court to evaluate whether the specific inputs and attributes to be tested are capable of showing class-wide damages. Ex. A ¶ 59; *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert testimony must be excluded where the opinion "is connected to existing data only by the *ipse dixit* of the expert").

While conjoint analysis can be considered at the class certification stage to show how consumers value attributes of a product, to pass muster under Rule 702, the conjoint analysis should identify the inputs and attributes to be tested. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014), is on point. There, this Court struck an expert analysis invoking a conjoint methodology at the class certification stage where the expert failed to identify the characteristics and attributes to be tested, or how the expert would convert the output from the conjoint analysis into an actual price premium paid by putative class members. In granting the *Daubert* motion, the Court explained:

> Although the methodologies [plaintiff's expert] describes may very well be capable of calculating damages in this action, [plaintiff's expert] has made no showing that this is the case. [Plaintiff's expert] does not identify any variables he intends to build into the models, nor does he identify any data presently in his possession to which the models can be applied. The court is thus left with only [plaintiff's expert's] assurance that he can build a model to calculate damages. Stated differently, his declaration is "'so incomplete as to be inadmissible as irrelevant.'"

*Id.* (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)).



**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

The same defects compel the same result here. Dr. Bell does not specify the attributes to be used in his conjoint survey, which will provide the data for his damages calculation, nor does he explain how those outputs can be reliably extrapolated to calculate damages class-wide. At deposition, Dr. Bell admitted he:

- (1) *had not identified any of the specific attributes he intended to use in the conjoint survey and only opined generally on "best practices"* [Ex. B at 73:18–22 ([Q.] And you have not yet finalized your design for which specific product features will be examined; correct? A. No, I have not. I've simply laid out the best practices for doing so"); Ex. J ¶¶ 29–45 (Dr. Bell's proposed analysis vague and incomplete)];
- (2) *had not created conjoint stimuli* [Ex. B at 82:11–15; Ex. J ¶ 39];
- (3) *had not determined the specific but-for presentation* [Ex. B at 143:12–17; Ex. J ¶¶ 27–28];
- (4) *did not believe a conjoint analysis could identify a representative class of consumers who would not have purchased the product in the absence of the alleged misrepresentation* [Ex. B at 150:22–151:2 ("[Q.] I think I'm asking a different question, which is is there anything that you have done within your damages methodology to identify those members of the class who would not have purchased the product in the absence of the alleged misrepresentation? A. No"); Ex. J ¶¶ 55, 64, 81];
- (5) *had not determined the efficacy claim he would test and was still deciding whether to test the claim "kills nail fungus" even though that phrase does not appear on the packaging* [Ex. B at 48:10–14 (admitting "Kills Nail Fungus" does not appear on the product packaging), 139:20–24 ("Q. In the conjoint analysis that you propose in your report is the efficacy claim that you intend to test 'Kills nail fungus'? A. So that would presumably be one claim that I might test"), 140:5–13; Ex. A ¶ 44 (acknowledging "tested levels should mirror the actual package



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

statements, imagery, and disclaimers . . . rather than simply inserting litigation phrasing that may not appear on the label"); Ex. J ¶ 41]; and

- (6) *had not decided which among his three damages extrapolation measures—WTB, WTP, or EPP—he would use to isolate the price premium*, *see* Ex. B at 79:15–81:19, and would need to look to the "convergence" of all three before making that decision—a position that directly contradicts Plaintiffs' assertion in the class certification motion that Dr. Bell's "purchase-time equilibrium price premium" (only one of Dr. Bell's proffered methods) is Dr. Bell's singular theory to calculate damages to the class, *cf.* Dkt. 97-1 at 8, 16–18.

The flaws in Dr. Bell's analysis are far greater than deferred execution. They render it impossible for this Court to ascertain whether his model is capable of calculating class-wide damages based on Plaintiffs' theory of liability. Dr. Bell fails to identify case-specific design inputs and decision choices necessary to show that his conjoint analysis can reliably calculate class damages at all. Because of these defects, the Court is left only with Dr. Bell's promises that he can someday construct a damages model based on generic "best practices" of "conjoint analysis"—a showing that does not satisfy Rule 702. *See Opperman v. Kong Techs.*, 2017 WL 3149295, at *11 (N.D. Cal. July 25, 2017); *Shin v. Sanyo Foods Corp. of Am.*, 348 F.R.D. 477, 485 (C.D. Cal. 2025) (expert cannot "[m]erely gestur[e] at a model or describe[e] a general method" but must "chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case.") (quoting *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308, 221 L. Ed. 2d 396 (2025)); *see also In re ConAgra*, 302 F.R.D. at 552–53; *Pedroza*, 2013 WL 1490667, at *3.

### 2. Dr. Bell's Damages Model Does Not "Fit" Plaintiffs' Case

Even if Dr. Bell's methodology were reliable—it is not—his class-wide "price premium" opinion still fails under Rule 702 because it does not fit Plaintiffs'



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

theory of the case. Expert testimony should only be considered where it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Even at the class certification stage, expert testimony must still be admissible under Rule 702 and *Daubert*. *Rusoff*, 2026 WL 2387098, at *6. And beyond Rule 702, a plaintiff seeking class certification under Rule 23 must proffer a damages model that "measure[s] only those damages attributable to" the Plaintiffs' theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). "[T]he question a district court must ask is whether [a proposed damages] model will likely be able to generate common answers at trial" when considering "common proof at the class certification stage." *Shin*, 348 F.R.D. at 484 (quoting *Lytle*, 114 F.4th at 1024, 1032). Because Dr. Bell's "price premium" opinion falls short of this standard, it should be stricken under Rule 702 (or, if considered, rejected under Rule 23) for at least three separate reasons:

***First***, Dr. Bell has not identified the efficacy claim that he intends to test. Dr. Bell testified that he "might" test the claim "kills nail fungus," but that he had not even finalized that decision. Ex. B at 48:10–14, 139:20–24, 140:5–13. Even worse, the only potential efficacy claim Dr. Bell does consider cannot be squared with the actual statements Plaintiffs challenge, which are far narrower: that the name "Fungi-Nail," combined with statements that the product "cure[s] and prevent[s]" "fungal infections," led consumers to believe that the product treated nail fungus. SAC (Dkt. 35) ¶¶ 3–5; Ex. A ¶ 44; Ex. J ¶¶ 23–25; *see Opperman*, 2017 WL 3149295 at *12 (rejecting expert's damages model as overbroad because it did not measure the value attributed to the specific features at issue).[2]

***Second***, Dr. Bell fails to offer a damages model tied to the pleadings; he offers only the possibility of a future conjoint study that will then somehow inform

[2] Even if the Court were to consider this evidence (which it should not), this mismatch is fatal under *Comcast* and Rule 23. By testing a different representation, Dr. Bell's model fails to match the actual challenged representations in Plaintiffs' theory of the case. *See Comcast*, 569 U.S. at 35–36.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

one of three potential damages models. To compound the issue, in the class certification motion, Plaintiffs do not even rely on Dr. Bell's three-pronged damages measures (willingness to buy, willingness to pay, and equilibrium price premium), instead only invoking one purported measure (the "price premium"). *Compare* Dkt. 97-1 at 8, 10, 16–17 with Ex. A ¶¶ 51–58. Plaintiffs' class-wide damages argument in the class certification motion thus contradicts Dr. Bell's own testimony that he would need to "investigate all three [metrics] and . . . look at the convergence." Dkt. 97-1 at 16–18; Ex. B at 81:9–13; Ex. J ¶ 47. Courts have rejected such incomplete models like Dr. Bell's. *E.g.*, *In re ConAgra*, 302 F.R.D. at 552 (finding expert opinion "so incomplete as to be inadmissible as irrelevant" where expert did not "identify any variables he intend[ed] to build into the models" or "identify any data" which could be applied to models) (citation omitted).

***Third***, Dr. Bell offers a "price premium" theory of class-wide damages that is inconsistent with Plaintiffs' theory of liability. Here, Plaintiffs pled a "no-purchase" theory; they do not allege that they paid more money based on efficacy claims. *See* SAC ¶¶ 10, 42, 44 ("Had Plaintiffs and the Class members known that it had the products in fact do not kill nail fungus, they would not have purchased the products."). Despite this, Dr. Bell's proposed analysis does not account for whether a consumer would have purchased Fungi-Nail, and instead is designed by its own terms only to "calculate an Economic Price Premium, i.e., the amount of overpayment attributable to a challenged misrepresentation." Ex. A ¶ 22; Ex. B at 76:2–17, 101:25–102:14. When pressed at deposition, Dr. Bell admitted that the SAC omitted any price premium allegations. *E.g.* Ex. B at 105:20–109:4, 119:21–120:16, 122:5–124:14, 125:10–126:12, 129:10–130:15, 137:17–138:19. Recognizing this fatal defect, Dr. Bell attempted to recharacterize Plaintiffs' theory as an "implied" price-premium theory—conceding the inherent deficiencies in his damages opinion. *See, e.g.*, *id.* at 111:22–112:5. Because Dr. Bell's model



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

measures a different theory of damages than the one sought by Plaintiff, it is irrelevant and unhelpful under Rule 702. Ex. J ¶¶ 18, 20; Fed. R. Evid. 702.

**B. Dr. Haruvy's Materiality Opinions are Unreliable and Unhelpful.**

Dr. Haruvy's materiality opinions warrant exclusion because they are grounded in an unreliable methodology, unreliably applied. Plaintiffs claim that Dr. Haruvy's report shows that 89–96% of survey respondents rated "the ability to kill or eliminate nail fungus as important" when making purchasing decisions. Dkt. 97-1 at 7. But Dr. Haruvy bases those opinions on a survey of the wrong universe of consumers, without appropriate survey controls, led by biased questions, and devoid of other survey safeguards. Such defects render both Dr. Haruvy's methodology unreliable and confirm his opinions are unhelpful at class certification.

To ensure that a survey for use in litigation is reliable, courts evaluate whether the survey was conducted with the proper safeguards, including whether: (1) "the proper universe was examined;" (2) "the survey's methodology and execution were in accordance with generally accepted standards;" (3) "the questions were leading or suggestive;" and (4) the data was "accurately reported." *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 572290, at *4–5 (N.D. Cal. Feb. 11, 2014) (citing *Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 166 (S.D.N.Y. 2012)); *Rusoff*, 2026 WL 2387098, at *6, 11 (affirming exclusion of unreliably designed survey offered at class certification and reversing grant of class certification); *see also Bustamante v. KIND, LLC*, 100 F.4th 419, 429 (2d Cir. 2024) (affirming exclusion of consumer perception survey expert where expert's survey included flawed design and leading questions intended to lead consumers "into selecting answer that plaintiffs preferred" and thus had "no probative value and could not assist a trier of fact"). Dr. Haruvy's survey fails to meet these requirements.

***First***, the survey does not examine the proper universe. "The correct universe for a survey in a false advertising case is 'those consumers to whom the ad



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

is directed'—i.e., prospective buyers of the product or service being advertised." Ex. I ¶ 45; *see also Kwan*, 2014 WL 572290, at *4–5. Here, respondents qualified for the survey if they had "purchased or seriously considered purchasing any over-the-counter topical product, such as a cream, ointment, spray, powder, or lotion, to treat a health condition." Ex. C ¶ 18. This definition sweeps in an array of consumers of irrelevant products—sunscreen, hemorrhoid cream, deodorant, baby powder, hand salve, nasal spray—that have nothing to do with foot and toe fungus products. Ex. I ¶ 42. At deposition, Dr. Haruvy further confused the applicable population, testifying that the target population was limited to those consumers "being targeted by the advertisements." Ex. D at 52:20–53:2. This testimony effectively concedes the flaw in his survey design.[3] This design defect renders Dr. Haruvy's survey unreliable because it fails to target consumers who would actually encounter or rely on the challenged representations. *Kwan*, 2014 WL 572290, at *5; *see* Ex. I ¶ 42 (survey that measures perceptions of wrong audience cannot reliably measure consumer understanding).

***Second***, Dr. Haruvy's survey also lacks any key controls, i.e., questions, variables, or mechanisms used to improve survey reliability. *See* Ex. I ¶¶ 52–54 (explaining controls). Such controls are fundamental to reliable survey design because they separate actual consumer perception from background assumptions and other survey "noise." *See Procter & Gamble Co. v. Ultero, Inc.*, 574 F. Supp. 2d 339, 351 (S.D.N.Y. Aug. 28, 2008) ("Controls are an essential feature of reliable survey evidence" (citation omitted)); *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878–79 (C.D. Cal. 2013) (excluding survey in part because it did not include any controls). Despite citing the Diamond Guide throughout his report, which promotes controls, Dr. Haruvy employed no controls, nor did he explain his

---

[3] Dr. Haruvy admitted that the target audience for one type of product is not the same for different products, further undermining his own survey design. Ex. D at 54:3–24.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

reasoning behind this omission. *See generally* Ex. C; Ex. I ¶¶ 52–57; *see also* Shari Seidman Diamond, *Reference Guide on Survey Research, in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, 359, 400–01 (Federal Judicial Center National Research Council, 3rd ed. 2011) https://www.nationalacademies.org/read/13163/chapter/9 (last visited Sept. 4, 2026) (controls are most reliable means for assessing data against noise). At his deposition, Dr. Haruvy admitted that he did not use controls and tried to justify this choice by claiming controls were unnecessary since he was measuring "materiality" rather than "causality." Ex. D at 131:24–133:9. But Dr. Haruvy failed to coherently explain why testing for "materiality" does not require controls, a decision that yielded skewed obviously results, such as weighing some cohorts' scores *nine times higher* than others—without determining whether those cohorts also have systematically biased views. *Id.* at 131:24–133:9, 142:22–25.

***Third***, Dr. Haruvy's survey is based on biased and leading questions. A fundamental principle of survey research is that questions should be unbiased. Ex. I ¶ 58; *Bustamante*, 100 F.4th at 429. Dr. Haruvy, however, disclosed the purpose of the survey to respondents, abandoning standard blinding procedures. Ex. C App. B, p. 36; Ex. I ¶ 59. He then asked respondents "how important" a feature was and provided five response options: two are "unimportant," one is neutral, and two are "important." Ex. C App. B, p. 37. That structure encouraged respondents to perceive importance rather than neutrally measuring it, suggesting to respondents that the "right" answer contains the word "important." Ex. I ¶¶ 62–63. Courts exclude surveys that, like Dr. Haruvy's survey, are designed to drive toward a plaintiff's preferred result. *Reinsdorf* , 922 F. Supp. 2d at 878.

***Fourth***, the Haruvy Survey omits additional standard safeguards in survey design, i.e., administration and quality controls designed to ensure objective survey results:

- Large number of duplicate IP addresses "accessing or attempting multiple survey sessions" [Ex. I ¶ 74 (over half of respondents had a duplicate IP





DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

address); Ex. D at 177:1–178:4, 184:2–22 (the same IP address entered different answers regarding importance of claims to the survey within mere minutes), 186:13–187:23 (the same IP address answered the age question differently within mere minutes of retaking the survey)];

- No protection against ordering bias [Ex. I ¶ 65];
- No “don’t know” / “no opinion” option [Ex. C App. B; Ex. I ¶¶ 67–68];
- No information on how survey participants were validated [Ex. I ¶¶ 71–72; Ex. D at 75:13–76:5 (admitting inability to testify as to Cloud Connect’s quality metrics); and
- No adherence to random assignment [Ex. I ¶¶ 76–79].

These flaws collectively confirm the fundamental unreliability of Dr. Haruvy’s approach and warrant exclusion. *Reinsdorf*, 922 F. Supp. 2d at 878.

**C. Ms. Harper’s Deception Opinions Should Be Excluded.**

Rhonda Harper’s expert report fails under the basic reliability and helpfulness requirements of Rule 702. Plaintiffs cite Ms. Harper’s report to contend that (1) Fungi-Nail’s “front panel message” would lead “reasonable consumers” to believe that Fungi-Nail “works on nails;” (2) Arcadia “intentionally kept the Fungi-Nail name and imagery” and “failed to test” what consumers understood; and (3) Arcadia purportedly “avoided” determining the incremental value it received from the challenged statements. Dkt. 97-1 at 4. Ms. Harper’s report should be excluded under Rule 702 because (1) her custom, untested methodology is neither reliable in theory nor reliably applied—a flaw resulting in Ms. Harper’s exclusion multiple times before[4]; and (2) her feasibility and intent opinions are irrelevant and unhelpful as she is not permitted to opine on legal issues.

[4] *See, e.g.*, *Tovey v. Nike, Inc.*, 2014 WL 3510636, at *16 (N.D. Ohio July 10, 2014) (excluding Ms. Harper for report “devoid of any description of the steps she took to form her conclusion regarding consumer confusion in this case. . . . [T]he report does not provide a basis or reasons for her conclusion that consumer confusion



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### 1. Ms. Harper's Opinions Lack a Reliable Methodology

"[W]hen an expert opinion is based on experience, the expert 'must explain how that experience leads to the conclusion reached.'" *Moement, Inc. v. Groomore, Inc.*, 2024 WL 4830589, at *4 (C.D. Cal. Oct. 29, 2024) (citation omitted). "[R]eliability becomes more, not less, important when the 'experience-based' expert opinion is perhaps not subject to routine testing . . . ." *U.S. v. Valencia-Lopez*, 971 F.3d 891, 898–900 (9th Cir. 2020). Courts are not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert . . . [a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Engilis*, 151 F.4th at 1048 (quoting *Joiner*, 522 U.S. at 146).

While Ms. Harper claims to have "applied a framework" in evaluating Fungi-Nail's packaging, Ex. E ¶ 9, she admitted that she *created that framework just for this case*, *only chose factors she thought were relevant*, and that *not all of these factors are even "standard principles and methods."* Ex. F at 32:22–33:24. Invented methodologies do not "satisf[y] a threshold of reliability" because they "ha[ve] never been used . . . before and likely will never be used again." *In re SFPP Right-of-Way Claims*, 2017 WL 2378363, at *7 (C.D. Cal. May 23, 2017) (citation omitted). Because Ms. Harper does not present "any other objective, verifiable evidence that the testimony is based on a scientifically valid principles," other than her own say-so, her methodology is unreliable. *Id.*

Without her concocted "methodology," Ms. Harper's report is rife with conclusions based only on her "experience," including musings about what "[a]

---

exists in this case."); *Liqwd, Inc., et al. v. L'Oreal USA, Inc.*, 2019 WL 8014103, at *3 (D. Del. June 25, 2019) (excluding Ms. Harper to extent she would have "offer[ed] opinions that are not grounded in fact and established methodology" with "little or no foundation"); *Jacobs v. Fareportal, Inc.*, 2020 WL 6587245, at *10 (D. Neb. May 29, 2020) (excluding Ms. Harper's opinions as "not reliable" and because they "will not assist the trier of fact").





DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

reasonable consumer would understand," the "primary consumer takeaway," and the "influence[ on] consumer expectations" from Fungi-Nail's packaging. *E.g.* Ex. E ¶¶ 30–31, 33, 35–37. Ms. Harper does not provide any analysis of how her experience supports her claims and does not identify objective evidence in support of her opinions. She rarely even cites her experience as the basis for her conclusions, and where she does, she does not explain the link between the two. *E.g. id.* ¶ 38. Arcadia's expert, Dr. Botner, points out the unreliability of Ms. Harper's report and explanations due to this dearth of supporting explanation or evidence. Ex. I ¶¶ 22–26, 30–31. Rule 702 requires more than cursory claims based on unexplained "experience" and Ms. Harper's *ipse dixit*. *Engilis*, 151 F.4th at 1048.

In *AIG Retirement Services, Inc. v. Altus Finance S.A.*, 2011 WL 13213589, at *3–4 (C.D. Cal. Sept. 26, 2011), the court excluded similar expert testimony grounded in "little explanation for how [the expert's] experience le[]d[] to" his conclusions, as his "expert report fail[ed] to provide any additional detail about the basis of" his opinions. There, the expert "fail[ed] to provide the Court with any examples or data with respect to his observations," and "expect[ed] the Court to simply take his word for it that his experience supports his opinion." *Id.*; *see also Pet Chalet, Inc. v. Cnty. of Riverside*, 2015 WL 13918085, at *3 (C.D. Cal. Sept. 10, 2015) (excluding expert declaration as "conclusory" without "sufficient factual underpinnings" and for failing to explain how experience led to conclusions). So too here: Ms. Harper does not explain how her experience led to her conclusions, leaving no way to determine that the connection between the two is reliable. Such opinions should be excluded.

**2. Ms. Harper's Opinions About Arcadia's "Intent" and Feasibility are Unhelpful**

Ms. Harper's impermissible legal opinions, improper opinions as to Arcadia's "intent," and musings about what Arcadia "could have" done must also be excluded



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

as irrelevant and unhelpful.

**a. Ms. Harper Cannot Opine on Arcadia's Intent**

Ms. Harper impermissibly opines on Arcadia's "intent" in package design. Ex. E at 20 & ¶¶ 7, 21, 42–50; *see also* Ex. F at 71:17–75:18 (Arcadia's "intent was to keep [the name and imagery and the disclosure] separate and distinct"). This is verboten. "Technical experts generally may not testify about motives, intent, or state of mind, as determinations on those issues are reserved for the jury." *Pavo Sols. LLC v. Kingston Tech. Co.*, 2019 WL 8138163, at *13 (C.D. Cal. Nov. 20, 2019) (citation omitted); *aff'd* 35 F.4th 1367 (Fed. Cir. 2022). "Courts distinguish between admissible opinions grounded in technical analysis and improper speculation about subjective intent." *Diode Dynamics, L.L.C. v. 5DLight, Inc.*, 2026 WL 852169, at *6 (C.D. Cal. Mar. 20, 2026) (citing *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1030 (S.D. Cal. 2023)); *see also OCG Energy v. Shen*, 2024 WL 694912, at *7 (C.D. Cal. Feb. 12, 2024) ("[O]pinions regarding [the parties'] intent, motive, or state of mind . . . are also improper expert testimony that invades the province of the jury . . . permitting expert testimony on this subject . . . would not be helpful to the jury" (citation omitted)) (collecting cases). Such opinions concerning Arcadia's intent are unhelpful, irrelevant, and must be excluded.

**b. Ms. Harper Cannot Opine on Ultimate Issues**

Ms. Harper's purports to opine that a "reasonable consumer" would be misled and confused by Fungi-Nail. Ex. E ¶¶ 21, 23, 33, 56; *see also* Ex. F at 24:20–24 (confirming Ms. Harper is "offering an opinion as to reasonable consumers and ordinary consumers being misled.") But "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1016 n.6 (9th Cir. 2019) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 1016 (9th Cir. 2004)); *see also*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.").

Ms. Harper's opinions on ultimate issues must be stricken. *Padilla v. City of Los Angeles*, 2023 WL 8610526, at *2 (C.D. Cal. June 29, 2023) (excluding "testimony concerning an opinion on a legal issue" as "improper legal conclusion[]" and "unhelpful to the trier of fact").

**c. Ms. Harper Cannot Opine About What Arcadia "Should" Do**

At various points through her report, Ms. Harper opines about what Arcadia "could have" done, including a full rebrand. Ex. E ¶¶ 34, 51, 65–66; *see also* Ex. F at 73:17–25 (Arcadia "could have tested" alternate packaging). Ms. Harper's speculation about what Arcadia "could have" or "should have" done is irrelevant and "impermissible *ipse dixit*" and must be excluded. *Medtronic, Inc. v. Axonics Modulation Techs., Inc.*, 2024 WL 4406929, at *20–21 (C.D. Cal. Aug. 29, 2024).

**D. Dr. Bogyo's Report Should Be Stricken**

Dr. Bogyo's opinions likewise fail under Rule 702. ***First***, Dr. Bogyo is unqualified to testify on the efficacy of 1% tolnaftate because he has no relevant expertise in pharmacology or fungal infections of the nail. ***Second***, Dr. Bogyo's *ipse dixit* opinions regarding the FDA monograph should be excluded because they impermissibly invade the province of this Court.

**1. Dr. Bogyo's Is Not Qualified to Opine on Onychomycosis**

Dr. Bogyo's expertise in microbiology fails to qualify him as an expert on the efficacy of 1% tolnaftate. *Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1100–01 (C.D. Cal. 2017) (expert qualifications in one subject "do[] not make him qualified in the many areas of medical science in which he opines" (citation omitted)); *cf.* Ex. K at 3–4 (Dr. Parker's expert qualifications include board certification from the American Board of Dermatology, a medical license and degree, and expertise in diseases of the skin and nails, including fungal infections).



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Dr. Bogyo is qualified in microbiology, specifically in "protease function in human disease"—not human foot diseases. Ex. G at 2; Ex. H at 16:12–18:19; *cf.* Ex. K at 3–4 (Dr. Parker has "academic and clinical expertise in infectious diseases of the skin, including fungal infections," "routinely diagnose[s]" "athlete's foot (tinea pedis) and toenail fungus (onychomycosis)," and is "equally versed in the appropriate therapeutics and diagnostics for these infections."). Dr. Bogyo does not research tinea pedis, onychomycosis, or feet and toenails generally. Ex. H at 17:12–18:19. Dr. Bogyo also does not work with or research over-the-counter products. *Id.* at 100:19–101:1, 130:25–131:6. Dr. Bogyo has no expertise in pharmacology, and he is not a medical doctor. *Id.* at 18:21–19:23.

Dr. Bogyo's background in microbiology does not qualify him to testify on drug efficacy—nor does he base any such opinions in a reliable methodology. *In re Zicam Cold Remedy Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2011 WL 798898, at *3, *12 (D. Ariz. Feb. 24, 2011) (excluding "board certified otolaryngologist" with degree in epidemiology as "not qualified to provide opinions about the efficacy of" drug at issue because expert "ha[d] no background in pharmacology," "no experience regarding [the drug's] components," and "no academic training or clinical experience in pharmaceutical efficacy.").

Indeed, in contrast, Arcadia's expert, Dr. Parker, is a board-certified dermatologist with 20 years of experience in addition to "academic and clinical expertise in infectious diseases of the skin, including fungal infections." Ex. K at 3–4. Her qualifications include "routinely diagnos[ing] and treat[ing] tinea pedis [athlete's foot] and onychomycosis [toenail fungus]" and an "extensive understanding of the breadth of home remedies, over-the-counter (OTC) topical therapies, and prescription topical and systemic antifungal agents utilized in treating fungal infections of the skin and nails." *Id.* at 4. Dr. Parker has precisely the qualifications to opine on treatments for foot fungus, including 1% tolnaftate. Because Dr. Bogyo lacks any such qualifications, his opinions regarding the



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

efficacy of 1% tolnaftate should be excluded. Fed. R. Evid. 702; *Laux*, 295 F. Supp. 3d at 1100–01.

**2. Dr. Bogyo's Uncited FDA Monograph Opinion is Unhelpful and Unreliable**

Dr. Bogyo's claim that Fungi-Nail's packaging does not comply with the FDA monograph—an opinion Plaintiffs tacitly concede is improper by failing to include it in their class certification papers—must be excluded. An expert may not opine on legal conclusions because they invade the province of the Court. Fed. R. Evid. 702(a)–(d); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058–59 (9th Cir. 2008) (affirming exclusion of expert who "intended to testify how [statute] applied to the facts of the case" as "ultimate issue of law").

Beyond invading the province of this Court, Dr. Bogyo's claim that he "read the monograph" and "underst[oo]d the terms in the monograph," Ex. H at 130:11–18, before opining on it falls far short of the reliability required of expert testimony and smacks of *ipse dixit*. *Sonneveldt v. Mazda Motors of Am., Inc.*, 2024 WL 5242611, at *2 (9th Cir. Dec. 30, 2024) (affirming exclusion of expert that "did not satisfactorily explain or support the methodology he employed, thereby failing to satisfy FRE 702"); *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *14 (N.D. Cal. Jan. 7, 2022) ("Without [] information or explanation of the methodology that [the expert] applied to reach these conclusions, [the] conclusions are grounded in nothing more than his say so."). Dr. Bogyo's FDA monograph opinion should be excluded.

## V. CONCLUSION

For the above reasons, the Court should strike the reports of Dr. Bell, Dr. Haruvy, Ms. Harper, and Dr. Bogyo.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: September 4, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant Arcadia Consumer Healthcare Inc.*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Arcadia Consumer Healthcare, Inc., certifies that this brief contains 6,986 words, which complies with the word limit of 11-6.1.

DATED: September 4, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant*
*Arcadia Consumer Healthcare Inc.*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899