Thiago M. Coelho (SBN 324715)
*thiago.coelho@wilshirelawfirm.com*
Lauren Lendzion (SBN 239184)
*lauren.lendzion@wilshirelawfirm.com*
Chumahan B. Bowen (SBN 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach (SBN 281404)
*jennifer.leinbach@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017f
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff Megan Wheeler and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ARCADIA CONSUMER HEALTHCARE, INC., a Delaware corporation,

Defendant.

Case No. 8:24-cv-02657-JDE

**PLAINTIFF MEGAN WHEELER'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

Date: October 8, 2026
Time: 10:00 a.m.
Judge: Hon. John D. Early
Courtroom: 6A

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 8, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 6A of the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, Plaintiff Megan Wheeler will move under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), 23(c)(4), and 23(g) for an order:

(1) certifying the California Class defined below under Rule 23(b)(3) for actual price-premium damages under Civil Code section 1770(a)(5) and under Rule 23(b)(2) for prospective relief under the UCL fraudulent and unlawful prongs, the FAL, and Civil Code section 1770(a)(5); (2) alternatively, certifying the common issues specified below under Rule 23(c)(4) for that same California Class; (3) appointing Wheeler as class representative; and (4) appointing Wilshire Law Firm, PLC as class counsel under Rule 23(g).

Plaintiff Wheeler seeks appointment as class representative through this motion. Hayde remains a Plaintiff, but this motion does not ask the Court to appoint him as a class representative or rely on his transaction to satisfy Rule 23.

The motion seeks certification of Arcadia's uniform Fungi-Nail labeling course across the liquid, ointment, pen, and pump-spray tolnaftate products.

This motion is based on this Notice, the memorandum, declarations, exhibits, record, and any proper evidence or argument. Counsel conferred under Local Rule 7-3 on July 23, 2026. Coelho Decl. ¶ 2.

Dated: August 17, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach
*Attorneys for Plaintiff Megan Wheeler and the Proposed Class*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... i
TABLE OF AUTHORITIES .......... iii
MEMORANDUM OF POINTS AND AUTHORITIES .......... 1
I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 2
A. All Fungi-Nail Products Carry the Same Material Front-Label Message. .......... 2
B. Arcadia's Records Show the Label Drove Sales, Misled Buyers, and Was Left Unchanged. .......... 5
C. Wheeler's Purchase Mirrors the Same Deception and Economic Loss. .......... 7
III. THE PROPOSED CALIFORNIA CLASS AND CLAIMS .......... 8
A. California Class Definition .......... 8
B. Claims and Relief .......... 8
C. Alternative Issue Certification .......... 9
IV. RULE 23(a) IS SATISFIED .......... 9
A. The California Class Is Numerous. .......... 9
B. Common Questions Will Generate Common Answers. .......... 9
C. Wheeler Is Typical of the California Class. .......... 10
D. Wheeler and Counsel are Adequate, and Wilshire Satisfies Rule 23(g). .......... 10
V. RULE 23(b)(3) IS SATISFIED .......... 11
A. Governing Standard .......... 11
B. Every Purchaser Confronted the Same Deceptive Front Label. .......... 12

## TABLE OF CONTENTS (CONTINUED)

C. Product Capability and Falsity are Common. .......................................... 13
D. Materiality, Reliance, and Causation are Susceptible to Common Proof.. 14
E. Bell's EPP Framework Matches the Liability Theory and Measures Damages Classwide. ........................................................................... 16
F. The CLRA Claim Turns on Common Proof............................................ 18
G. Full Refunds Are an Objective Class Exclusion...................................... 19
H. A Class Is the Only Practical Way to Redress a $10 and Change Loss..... 19
VI. RULE 23(b)(2) IS SATISFIED ................................................................ 21
VII. ALTERNATIVELY, THE COURT SHOULD CERTIFY DEFINED ISSUES UNDER RULE 23(c)(4)............................................................................ 23
VIII. CONCLUSION ....................................................................................... 23
CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2 .................. 24

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ........................10-11, 19
*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).................. 17, 20
*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) ........................................................................... 8, 21
*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ................................................ 16
*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)...................... 22
*DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223 (9th Cir. 2024).................... 11
*Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018)................................................................................................ 12
*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................ 12
*Harik v. California Teachers Association*, 326 F.3d 1042 (9th Cir. 2003) ........... 9
*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)........................................... 14, 16
*Johnson v. General Mills, Inc.*, 278 F.R.D. 548 (C.D. Cal. 2012)...................... 10
*Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013)......................... 19
*Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011 (9th Cir. 2024).......... 14-15, 17-18
*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)........................................ 10
*Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854 (9th Cir. 2025), cert. denied, No. 25-874 (U.S. Apr. 20, 2026)..................................... 12-15, 17-19
*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc)................................................................. 11

## TABLE OF AUTHORITIES (CONTINUED)

### CASES (CONTINUED)

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)........ 21
*People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064 (2017)........ 14
*Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2022 WL 3018145 (N.D. Cal. July 29, 2022)........ 12
*Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-cv-00110-JLS-SS, 2020 WL 905571 (C.D. Cal. Feb. 24, 2020)........ 10
*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)........ 23
*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016)........ 11, 17
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)........ 9, 21
*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998)........ 22
*Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. 2024)........ 12
*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008)........ 12, 14, 21

### STATUTES AND RULES

Cal. Bus. & Prof. Code §§ 17200, 17500........ 8
Cal. Civ. Code § 1770(a)(5)........ 8-9, 14, 18
Cal. Civ. Code § 1782........ 19
Fed. R. Civ. P. 23........ passim
Fed. R. Civ. P. 30(b)(6)........ 2-3, 5-6, 13
C.D. Cal. L.R. 11-6.1........ 24
C.D. Cal. L.R. 11-6.2........ 24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Motion presents a single, classwide contention well-suited to a common resolution: whether Arcadia Consumer Healthcare, Inc.'s ("Arcadia") "Fungi-Nail" spray, liquid, pen and ointment products (together, the "Products") deceive reasonable consumers into believing that they effectively treat toenail fungus. The answer is a resounding yes. The front shows a toenail and promises "Kills Fungus" and "Clinically Proven to Cure and Prevent Fungal Infections." But Arcadia admits that none of the liquid, pen, ointment, or spray tolnaftate products treats fungus in the nail. The contrary qualification appears only away from the selling face: "Not for nail fungus" and "This product is not effective on the scalp or nails." Arcadia thus makes the nail-treatment promise where consumers decide whether to buy and discloses the opposite only after the promise has done its work. Together, these representations present an unambiguous and misleading message to reasonable consumers that Fungi-Nail is the product to buy for nail fungus relief. *See* Dkt. 31 at 12. Plaintiff Megan Wheeler ("Plaintiff" like other class members, was among those misled into purchasing Arcadia's Fungi-Nail products under the false but reasonable belief that it would treat her nail fungus. Declaration of Megan Wheeler in Support of Plaintiff's Motion for Class Certification ("Wheeler Decl.").

Arcadia's consumer complaint files read like a running transcript of that contradiction. One purchaser called it: "Rip off. Not for NAILS, despite name." Another reported that, after following the directions for three weeks, he "got a magnifying glass and read the fine print, 'Not effective in nails.'" A purchaser of the spray told Arcadia the product had "lied" about what it was and asked why it was called Fungi-Nail; Arcadia's agent recorded and acknowledged the confusion. Coelho Decl., Ex. 1 (ARCADIA-00045911 (Dec. 31, 2022 review)); Ex. 2

(ARCADIA-00045916 (Case No. 906)); Ex. 3 (ARCADIA-00078178 (Case No. 499523)).

Arcadia's admissions, its Chief Scientific Officer's testimony, and Dr. Matthew Bogyo's analysis establish that the products cannot treat fungus in the nail. Coelho Decl., Ex. 4, Bashoff Rule 30(b)(6) Tr. 137:8-141:16; Ex. 5-A, Tune Tr. 6:18-7:2, 30:17-31:2; Ex. 5-B, 92:15-94:25; Ex. 6, Bogyo Rep. at 6, 9, 18. The complaint records establishes that Arcadia was on notice of the package's real-world deception.

The contradiction was neither accidental nor immaterial. Arcadia's package research tested the clinical and fungus-killing messages; Arcadia later attributed a a [redacted] to its packaging changes and called the claims and packaging the principal driver of Fungi-Nail's turnaround.[1] Coelho Decl., Exs. 17 (ARCADIA-00005764 through ARCADIA-00005765), 10. Arcadia's Rule 30(b)(6) witness admitted that Arcadia could remove "Nail" from the brand name and acknowledged that the name can cause confusion. *Id.*, Ex. 4, Bashoff Rule 30(b)(6) Tr. 53:21-22; 54:1-4; 56:4-8, 18-21. Arcadia chose to keep the name and the sales it generated.

That same evidence is common to every purchaser. The Court should certify the California Class under Rules 23(b)(3) and 23(b)(2), appoint Wheeler as class representative, and appoint Wilshire Law Firm as class counsel.

## II. FACTUAL BACKGROUND

### A. All Fungi-Nail Products Carry the Same Material Front-Label Message.

Arcadia sells four primary U.S. Fungi-Nail forms: liquid, pen, ointment, and pump spray. Coelho Decl., Ex. 4, Bashoff Rule 30(b)(6) Tr. 13:22–14:11. Arcadia controls or approves their packaging and supplies product content to retailers. *Id.*,

---

[1] Previous to those changes, [redacted] Coelho Decl., Exs. 17 (ARCADIA-00005764).

Ex. 4, Bashoff Rule 30(b)(6) Tr. 37:21–23, 91:7–20. Across all four forms, the principal display panel uses the Fungi-Nail name, a prominent toenail image, "Kills Fungus," and clinical cure-and-prevent wording. The front never says the product does not treat nail fungus. *Id.*, Ex. 4, Bashoff Rule 30(b)(6) Tr. 90:20–24; Ex. 11. The contrary nail limitation appears only on another panel. *Id.*, Ex. 4, Bashoff Rule 30(b)(6) Tr. 55:3–6. The challenged promise and its contradiction are therefore standardized across the Class.

That visual hierarchy matters at the moment of purchase. Ms. Harper explains that the Fungi-Nail name dominates the front, creates the reference point for everything that follows, and is reinforced by the toenail image and efficacy claims. Consumers rarely inspect side and back panels; those who do generally look for confirmation of the selling face, not for a contradiction buried in smaller text. Coelho Decl., Ex. 7, Harper Rep. ¶¶ 33, 35-37. The complaints reflect that: consumers bought from the front and discovered the disqualifying language later.




Arcadia's continued use and prominent placement of the Fungi-Nail name employed a familiar OTC "problem-solution" naming convention to mislead

consumers about the product's intended use. Harper explained that consumers understand compound brand names as identifying "what's the problem and what does it treat," (*see* Coelho Decl., Ex. 7, Harper Rep. ¶ 33) just as "Lubriderm" conveys lubrication for skin and "Efferdent" conveys a product for dentures. Thus, when a consumer sees Fungi-Nail, the name itself supplies the intended takeaway: "I have a problem. I have fungus. There's Fungi-Nail," or, more directly, "What is it? It's for fungus on nails." Coelho Decl., Ex. 8, Harper Tr. 29:24-25, 30:1-25, 31:1-19, 47:16–19, 48:16-19. In other words, "Fungi" identifies the condition, fungus, while "Nail" identifies where the condition exists and where the product supposedly works. That message was reinforced by Arcadia's toenail imagery and front-panel efficacy claims, leading reasonable consumers to believe that Fungi-Nail "works on nails." *Id.* 60:4-14. Arcadia then relegated the contrary limitation to small, buried back-panel language that Harper testified would not overcome the dominant front-panel message. Indeed, Harper opined that Arcadia intentionally kept the Fungi-Nail name and imagery "separate and distinct" from the back-panel disclosure, failed to test whether consumers understood what "Fungi-Nail" meant, and avoided determining how much incremental revenue it received from consumers who believed the product worked on nails when it did not. *Id.* 72:9-25, 73:1-25.

Purchasers understood the uniform message exactly as Arcadia designed it. In a Target review compilation in Arcadia's files by March 2021, one purchaser described a product named Fungi-Nail, a diseased-toenail image, and a label admitting it does not work on nails, then concluded: "Very deceptive product, i purchased it and it doesnt work." Coelho Decl., Ex. 9 (ARCADIA-00004348). The wording is informal; the point is precise. The front sold a nail-fungus treatment that the rest of the package disclaimed.

The scientific proof confirms the problem. Arcadia's corporate witnesses identified no nail-penetration, delivery, or cure study for the finished products and agreed that the products do not treat fungus within the nail. Coelho Decl., Ex. 4, Bashoff Rule 30(b)(6) Tr. 139:18–23, 140:8–21, 141:9–16; Ex. 5-A, Tune Tr. 6:18-7:2, 30:17-31:2; Ex. 5-B, 92:15-94:25. Dr. Bogyo explains that topical 1% tolnaftate, the active ingredient in Arcadia's products, cannot penetrate the nail plate in a manner that can effectively kill toenail fungus. *Id.*, Ex. 6 at 6, 9, 18. That capability question has the same answer for every covered form.

**B. Arcadia's Records Show the Label Drove Sales, Misled Buyers, and Was Left Unchanged.**

[redacted]

[redacted] Its Q1 2023 log recorded a liquid purchaser saying: "Although it shows a toenail on the box and calls itself Fungi-Nail, when you read the box it says not for nail fungus. Funny how they don't put that on the front of the box so that a potential customer would know. Ripped off again." Another purchaser used the product for three weeks before getting a magnifying glass to read "Not effective in nails." Coelho Decl., Ex. 2 (ARCADIA-00045916 (Case Nos. 853, 906)).

---

[2] The old packaging specifically showed the applicator being applied on the skin, rather than the toenail.

The pattern spans every covered form. The ointment purchaser asked how a product called Fungi-Nail could admit it was not effective on nails. A pen purchaser called the name "deceptive" because the package itself said it was not for nail fungus. And the spray purchaser told Arcadia that the product had "lied." Coelho Decl., Exs. 2 (ARCADIA-00045916 (Case No. 853; 901)); Ex. 11 (ARCADIA-00082304 (Case No. 535636)); Ex. 3 (ARCADIA-00078178 (Case No. 499523)). Different consumers, years, channels, and applicators produced the same complaint because they all carried the same contradiction.

Arcadia did not merely receive these complaints. It collected and categorized them in its own consumer-service and review files. Its corporate representative agreed that it could remove "Nail" from the name, that the name caused confusion, yet testified that Arcadia did not need to change the claims or imagery. Coelho Decl., Ex. 4, Bashoff Rule 30(b)(6) Tr. 53:21-22; 54:1-4; 56:4-8, 18-21, 242:16–19, 243:3–11. Arcadia kept the label after the complaints made the deception unmistakable.

This was intentional. [redacted] received complaints explaining exactly how the message misled purchasers, identified an easy fix, and left the message in place. A single $10.96 purchase can look trivial in isolation. Arcadia's records show that it was one instance of a repeated transaction: the front sold nail-fungus relief, the purchaser paid, and the disqualifying truth emerged only afterward. It is no surprise that Arcadia has made [redacted] selling this product. Coelho Decl., Ex. 12 (ARCADIA-00087711).

Ms. Harper, a former Sam's Club Chief Marketing Officer, concluded that the name, toenail imagery, and front-label efficacy hierarchy create a dominant nail-treatment impression and that less salient side and back language contradicts rather than cures it. Coelho Decl., Ex. 7, Harper Rep. ¶¶ 32-61. Doctor Haruvy, a professor

at McGill University, conducted multiple randomized product-specific surveys that found 89.62% to 95.52% of respondents rating the ability to kill or eliminate nail fungus as important when deciding whether to buy these very products. Coelho Decl., Ex. 13, Haruvy Rep. ¶¶ 18-38. Doctor Bogyo, a Stanford professor, addresses the incapability of this product treating nail fungus – something that neither Defendant's expert rebutting Dr. Bogyo, nor its own Chief Science Officer can dispute. Doctor Bell, a former chaired Wharton professor of twenty years, proposes the common damages method. *Id.*, Exs. 6 & 15.

**C. Wheeler's Purchase Mirrors the Same Deception and Economic Loss.**

Wheeler is a California resident. On July 12, 2023, after searching Amazon for nail-fungus medicine, she paid $10.96 including tax for a one-ounce Fungi-Nail liquid. Wheeler Decl. ¶¶ 3-7; Coelho Decl., Ex. 14, Wheeler Tr. 55:4-60:11, 109:19-25 (Including Deposition Exhibit 11). Before paying, she viewed and relied on the Fungi-Nail name and the "Kills Fungus" statement. She did not receive a refund. Wheeler Decl. ¶¶ 5-8.

Her injury occurred at the time of purchase. She paid a market price elevated by the Fungi-Nail name, toenail imagery, and front-label efficacy claims. Her theory does not depend on how long she used the product, whether her condition improved, or what caused it. It is the same economic injury described throughout Arcadia's complaint files: paying for a nail-fungus promise the product could not deliver.

Wheeler also faces a continuing labeling problem. She continues to need products for nail fungus and would consider Fungi-Nail again if it were accurately labeled or reformulated to do what the front communicates, but she cannot presently rely on Arcadia's package. Wheeler Decl. ¶¶ 9-11.

## III. THE PROPOSED CALIFORNIA CLASS AND CLAIMS

### A. California Class Definition

**California Class:** All persons residing in the State of California who purchased the liquid, ointment, pen, or spray Fungi-Nail products from December 6, 2020 to present.

Excluded from the class are those who received a full refund, Arcadia's subsidiaries, affiliates, officers, directors, and employees; counsel and judicial personnel assigned to this action and their immediate families; governmental entities; and resellers.

The definition covers all four product forms. Differences in package size, applicator, or price do not create separate classes because the challenged message and purchase injury are materially the same.

### B. Claims and Relief

The California Class is proposed under Rule 23(b)(3) for actual price-premium damages under Civil Code section 1770(a)(5), and under Rule 23(b)(2) for prospective relief under the UCL fraudulent and unlawful prongs, Cal. Bus. & Prof. Code § 17200, the FAL, *id.* § 17500, and Civil Code section 1770(a)(5). The UCL unlawful claim borrows the same FAL and CLRA conduct. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).

The monetary theory is the purchase-time equilibrium price premium, measured by product and relevant period. Coelho Decl., Ex. 15, Bell Rep. ¶¶ 22–23, 53–57. For a qualifying purchase, recovery is capped at the amount paid. The same class definition applies to the damages and prospective-relief portions of the case.

**C. Alternative Issue Certification**

If the Court declines to certify any claim in full, Wheeler requests certification under Rule 23(c)(4), for the same California Class, of the following common issues: (1) the objective net impression of the Challenged Front Labeling; (2) whether the covered products can treat fungus in the nail; (3) whether the challenged message is material to a reasonable purchaser; (4) Arcadia's knowledge and reasonable care under the FAL; (5) whether the challenged message caused a positive EPP for any product and period; and (6) the common conduct elements of the UCL, FAL, and Civil Code section 1770(a)(5).

**IV. RULE 23(a) IS SATISFIED**

**A. The California Class Is Numerous.**

Arcadia sold [redacted] of Fungi-Nail products nationally through mass retailers and produced California-specific sales and consumer records, [redacted] Coelho Decl. ¶¶ 12-15 and Exs. -17-18. Statewide distribution, sales volume, and the California records support the reasonable inference that far [redacted] covered products during the class period. A precise count is unnecessary when joinder is impracticable. *Harik v. California Teachers Association*, 326 F.3d 1042, 1051-52 (9th Cir. 2003).

The class is defined by objective purchase and labeling facts. Receipts, retailer account histories, Arcadia's sales, packaging records, photographs, and declarations provide ordinary means to identify purchases of covered products and apply the full-refund exclusion.

**B. Common Questions Will Generate Common Answers.**

Commonality requires a common contention capable of classwide resolution, not that every question be common. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011). Here, one set of answers resolves the central issues for everyone:

what each Fungi-Nail package objectively communicates; whether the products can treat fungus in the nail; whether that capability is material; what Arcadia knew; whether the common message violates the UCL, FAL, or CLRA; whether it generated a price premium; and whether one injunction is warranted. The question, "[t]hen why is this called Fungi-Nail?" is not a purchaser-specific issue; it is the same question generated by the same package. Coelho Decl., Ex. 2 (ARCADIA-00045916 (Case No. 901)).

**C. Wheeler Is Typical of the California Class.**

Typicality asks whether the representative's claims are reasonably coextensive with those of absent members, not identical in every detail. *Melendres v. Arpaio*, 784 F.3d 1254, 1264 (9th Cir. 2015). Wheeler purchased Fungi-Nail liquid bearing the Challenged Front Labeling, she has the same price-premium injury, received no refund, and asserts the same statutory theories. Her proof and Arcadia's defenses track the class.

Her purchase of the liquid does not make her atypical of purchasers of the ointment, pen, or spray. All four forms use the Fungi-Nail name, toenail presentation, same front efficacy claims, 1% tolnaftate, and off-front nail limitations; differences in applicator, size, or price are common product inputs, not unique defenses. See *Johnson v. General Mills, Inc.*, 278 F.R.D. 548, 552 (C.D. Cal. 2012) (under Rule 23(a)(3)'s permissive standard, claims are typical if reasonably coextensive with absent class members' claims; they need not be substantially identical); *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-cv-00110-JLS-SS, 2020 WL 905571, at *5 (C.D. Cal. Feb. 24, 2020) (named plaintiff typical across materially similar "Pure" and "100% Pure" product labels).

**D. Wheeler and Counsel are Adequate, and Wilshire Satisfies Rule 23(g).**

Adequacy asks whether the representative and counsel have conflicts with the class and will prosecute the action vigorously. *Amchem Products, Inc. v.*

*Windsor*, 521 U.S. 591, 625-26 (1997). Wheeler understands the case, participated in discovery, sat for deposition, and accepts her fiduciary duties. Wheeler Decl. ¶¶ 12-15. She seeks the same relief under the same theories as every class member and has no interest antagonistic to the class.

Wilshire Law Firm has investigated the claims, litigated extensive document and deposition discovery, retained experts in marketing, survey research, science, and economics, and has substantial class-action experience. Coelho Decl. ¶¶ 18-26. Counsel has committed the resources needed for trial and has no conflict. Those facts satisfy Rule 23(a)(4) and Rule 23(g).

## V. RULE 23(b)(3) IS SATISFIED

### A. Governing Standard

Predominance asks whether the common issues are important enough that one adjudication can do the work for the class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The analysis proceeds element by element: the Court identifies the claims and defenses, determines which issues can be established through a common body of evidence, and compares the common work with any genuinely individualized work. *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233-39 (9th Cir. 2024); *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-67 (9th Cir. 2022) (en banc). The Court resolves factual and legal disputes material to certification, but does not decide merits questions unrelated to Rule 23. *Olean*, 31 F.4th at 666-67. Individual damages computations do not defeat certification when liability and the damages methodology are common. *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1154-55 (9th Cir. 2016).

Mapped to the certified claims, the decisive chain is common from beginning to end: what the standardized front label communicates; whether the standardized off-front limitation cures or contradicts that message; whether all four 1% tolnaftate

forms can treat fungus in the nail; whether nail-treatment capability is material to a reasonable purchaser; what Arcadia knew and whether it exercised reasonable care; whether a material representation supports classwide reliance; and whether the message produced a measurable market premium. One set of packages, witnesses, studies, surveys, complaint records, and expert analyses answers those questions for everyone. If Wheeler fails at any central link, the Class loses that issue together.

**B. Every Purchaser Confronted the Same Deceptive Front Label.**

Exposure is uniform here because the challenged representation is the product packaging itself. Every product package bears the Fungi-Nail name, toenail image, and efficacy claims on its principal display panel. The same front label identifies the product on a store shelf and in Arcadia-supplied retail content online. A purchaser cannot buy a Fungi Nail Product without buying the standardized representation attached to it. Courts therefore infer classwide exposure when the alleged deception appears on every product package. *Noohi*, 146 F.4th at 868-69; *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1099 (N.D. Cal. 2018).

Arcadia may invoke the side and back limitations, but their effect is common. The Court can decide once, from standardized package evidence, whether off-front language qualifies or contradicts the front. *Williams*, 552 F.3d at 939; *Whiteside*, 108 F.4th at 778-85. Courts likewise hold that uniform back-label disclaimers do not defeat predominance. *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 326 F.R.D. 592, 611 n.7 (N.D. Cal. 2018); *Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2022 WL 3018145, at *10 (N.D. Cal. July 29, 2022). Arcadia's records show why. One buyer discovered the limitation only after three weeks and a magnifying glass; another said the small-print warning should have been placed on the front "next to the pen that points to the nail." Coelho Decl., Ex. 2 (ARCADIA-00045916 (Case No. 906)); Ex. 11 (ARCADIA-00082304 (Case No. 535034)).

Arcadia may contend that some purchasers inspected the side or back panel, understood the limitation, or specifically purchased it for a skin infection. Those possibilities do not require purchaser-by-purchaser trials. The legal question is objective: whether the standardized side and back language qualifies or contradicts the standardized front-label promise. If the front-label message is material, the CLRA reliance inference follows classwide; if it is not material, the Class fails together. *Noohi*, 146 F.4th at 868-71. Either result turns on the packages, expert evidence, surveys, and corporate records, not on reconstructing each shopper's attention.

Various Retail channels do not change the theory. Whether purchased in a store or online, the Class is limited to Fungi-Nail products bearing the Challenged Front Labeling. Arcadia controls or approves the package and supplies product content to retailers. Coelho Decl., Ex. 4, Bashoff Rule 30(b)(6) Tr. 37:21–23, 91:7–20. Package records, retailer images, product codes, and sales records identify the representation attached to each covered sale. The merits do not depend on a purchaser's diagnosis, treatment history, manner of use, or result because Wheeler seeks the market overcharge created at the point of sale.

**C. Product Capability and Falsity are Common.**

The capability question has a common answer across all four forms. Each uses 1% tolnaftate. Arcadia's Rule 30(b)(6) witness and Chief Scientific Officer identified no finished-product nail-penetration, delivery, or cure study and agreed that the products do not treat fungus within the nail. Coelho Decl., Ex. 4, Bashoff Rule 30(b)(6) Tr. 139:18–23, 140:8–21, 141:9–16; Ex. 5-A, Tune Tr. 6:18-7:2, 30:17-31:2, Ex. 5-B, Tune Tr. 92:15-94:25. Dr. Bogyo analyzes the shared formulation and explains why topical 1% tolnaftate cannot cross the nail plate in a concentration effective against onychomycosis. *Id.*, Ex. 6 at 6, 9, 18. Arcadia's fine print side and back label nail limitations confirm that the same capability issue

applies across forms. A purchaser's use, diagnosis, response, or satisfaction cannot change whether these products can do what the front communicates.

The legal consequence is likewise common. Civil Code section 1770(a)(5) prohibits representing that goods have characteristics, uses, or benefits they do not have. The UCL and FAL use the objective reasonable-consumer test. *Williams*, 552 F.3d at 938-39. The FAL separately asks whether Arcadia knew or should have known the representation was untrue or misleading. That question turns on corporate testimony, studies, package development, complaint files, and the decision to retain the label. *People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1079-81 (2017). The complaints show that actual purchasers repeatedly received the same net impression and that Arcadia knew the contradiction was causing the same confusion.

**D. Materiality, Reliance, and Causation are Susceptible to Common Proof.**

When a standardized label is presented to the class, materiality is judged objectively, and a finding that the representation was material supports a rebuttable classwide inference of reliance under the CLRA. *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 860-71 (9th Cir. 2025), *cert. denied*, No. 25-874 (U.S. Apr. 20, 2026); *Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1011, 1019, 1029-38 (9th Cir. 2024). The UCL and FAL likewise permit common proof of likely deception and materiality; absent members need not recount individual reliance where the named plaintiff proves standing and the class was exposed to the same material representation. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 (2009).

The evidence converges from every direction. The package hierarchy places the Fungi-Nail name, toenail image, and broad efficacy claims together on the selling face. [redacted] Ms.

Harper explains why the front creates a dominant nail-treatment impression. Professor Haruvy's randomized product-specific surveys found that 89.62% to 95.52% of respondents considered the ability to kill or eliminate nail fungus important to the purchase decision. Coelho Decl., Exs. 7, 13, 9, 16-18. Arcadia's complaint files supply qualitative corroboration in purchasers' own words. A California liquid purchaser wrote: "The name of the product is FUNGINAIL and that is why I bought it. The name is very deceptive." Coelho Decl., Ex. 15 (ARCADIA-00075220 (Case No. 488729)). The complaints are not offered as a statistical sample. They matter because they record the same causal sequence, in Arcadia's files, that the common evidence tests: the front-label message prompted the purchase, the contrary limitation was discovered later, and the purchaser felt deceived. Materiality remains an objective classwide question; the Court need not ask why every individual buyer acted.

Arcadia cannot defeat that showing by cataloging other reasons a purchaser might have liked a product, such as the applicator, package size, brand familiarity, or some skin use. Bell's model does not assume that nail-fungus capability was every purchaser's only motive. It preserves the value of those lawful attributes and asks the common market question: did the false nail-treatment message raise the price? If so, a purchaser who also valued another feature still paid the same message-driven premium embedded in the transaction. Individual motive therefore does not displace common proof of materiality, reliance, or economic causation. Coelho Decl., Ex. 15, Bell Rep. ¶¶ 37-60.

Reliance and causation follow the same common path. For the CLRA, a classwide finding that a uniform representation was material supports a classwide inference of reliance. *Noohi*, 146 F.4th at 868-71; *Lytle*, 114 F.4th at 1034. The UCL and FAL apply an objective likely to deceive standard, and absent class members need not recount individual reliance when the named plaintiff proves

standing and the Class received the same material message. *In re Tobacco II Cases*, 46 Cal. 4th at 326-28. Economic causation is also common. Bell's model asks whether the challenged message raised the equilibrium market price for each covered product and period. If it did not, no purchaser in that grouping recovers. If it did, the overcharge was embedded in the price paid by every purchaser in the grouping, subject to the amount-paid cap. Different motives, uses, satisfaction levels, and treatment outcomes do not alter that market price question.

**E. Bell's EPP Framework Matches the Liability Theory and Measures Damages Classwide.**

*Comcast* requires a damages model tied to the liability theory. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Wheeler does not claim that every product was worthless. The theory is that the Fungi-Nail name, toenail presentation, and front-label efficacy claims elevated the equilibrium market price above the price for the same product without the false nail-treatment message. Dr. Bell therefore proposes an equilibrium price premium, or EPP, framework that measures the value attributable to that message while preserving the product's lawful attributes.

Bell discloses a choice-based conjoint demand analysis integrated with an equilibrium-pricing model. The demand side measures how California-relevant consumers value product attributes. The supply side uses market prices, shares, and competitive information to translate that preference evidence into equilibrium prices. The model then compares the actual market with a counterfactual market in which the challenged nail-efficacy message is removed while the formulation, skin indications, applicator, ingredients, brand, package size, and other lawful attributes remain. The difference is the EPP for each Fungi Nail Product and relevant period. Coelho Decl., Ex. 15, Bell Rep. ¶¶ 21-23, 37-60. That is the same purchase-time overcharge alleged for every member, not an average of individualized medical outcomes.

The framework also handles differences without creating individual trials. Product form, package size, price, and time period are all common questions. A positive EPP is calculated for the applicable product-period grouping and capped at the purchaser's amount paid. A zero or negative EPP means the grouping recovers nothing, which is a common failure of proof rather than an individualized issue. Full-refund recipients fall outside the Class at the outset. No purchaser must prove how long she used the product, whether she followed directions, whether her condition improved, or what caused her symptoms.

The model need not be executed before certification. *Lytle* holds that plaintiffs may rely on a reliable, not-yet-executed model likely to provide common answers and calculate damages classwide. 114 F.4th at 1019, 1029-33. *Noohi* applied that rule to a proposed label-value model and held that the final survey instrument and results may be tested after execution. 146 F.4th at 860-67. Arcadia may challenge Bell's assumptions, attribute levels, market inputs, counterfactual, and implementation, but those are merits disputes about one model. They do not generate a different damages method for each purchaser. The model will either reliably measure the alleged label premium for the defined groupings or fail for those groupings on common proof.

Transaction proof is secondary and administrable. Receipts, retailer account histories, Arcadia's sales and package records, product codes, and sworn claims can establish the product, date, price, amount paid, and objective full-refund exclusion. Those records may require matching, but they do not alter the package's meaning, product capability, Arcadia's knowledge, materiality, or the EPP. The need to identify purchases and perform arithmetic after common liability is decided does not defeat predominance. *Briseno*, 844 F.3d at 1129-33; *Vaquero*, 824 F.3d at 1154-55.

Common proof will occupy the trial: the packages, the scientific capability of the products, Arcadia's knowledge and conduct, objective materiality, the reliance inference, and one EPP methodology. The remaining person-specific work is confined to identifying a covered transaction and performing arithmetic after those questions are answered. None of it requires testimony about what each purchaser thought, why each purchaser shopped, how each purchaser used the product, or whether each purchaser was satisfied. Rule 23 does not require thousands of hearings to repeat a liability case that has already been decided once.

**F. The CLRA Claim Turns on Common Proof.**

The California Class asserts Civil Code section 1770(a)(5), which prohibits representing that goods have characteristics, uses, or benefits they do not have. Common proof will determine each disputed issue: the objective message communicated by every covered package; whether the products have the represented nail-fungus capability; whether that representation is material to a reasonable consumer; whether reliance may be inferred from a uniform material representation; and whether the message caused a positive EPP. *Noohi*, 146 F.4th at 861, 865-71; *Lytle*, 114 F.4th at 1029-38. The package evidence, scientific testimony, surveys, business records, and damages method do not vary by purchaser. Wheeler separately proves her own standing and reliance through her declaration, testimony, and purchase record. Absent members need not repeat her testimony one by one.

The statutory notice issue is common as well. On December 6, 2024, Hayde sent Arcadia a written demand identifying the section 1770(a)(5) violation, the Fungi-Nail labeling course, and the requested classwide correction. Arcadia did not implement the requested classwide cure. Coelho Decl. ¶¶ 27-31 and Ex. 16; ECF No. 35 ¶¶ 81-82. The demand and Arcadia's response are the same for the Class.

Whether the demand satisfies section 1782, and whether Arcadia made an adequate classwide correction, present common legal and evidentiary questions.

**G. Full Refunds Are an Objective Class Exclusion.**

Wheeler paid $10.96 after viewing the Challenged Front Labeling and received no refund. Wheeler Decl. ¶¶ 3-8. A proven overpayment is concrete economic injury. *Noohi*, 146 F.4th at 865-67. The Class excludes anyone who received a full refund, and Arcadia's records identify that objective fact. Full-refund status therefore affects only membership. It does not alter the common questions about the package's message, the products' capability, materiality, Arcadia's knowledge, reliance, causation, or the EPP. No person whose purchase price was fully returned seeks recovery through the Class.

**H. A Class Is the Only Practical Way to Redress a $10 and Change Loss.**

Wheeler paid $10.96. No rational consumer can hire counsel, retain four experts, obtain corporate discovery, and prove package meaning, scientific incapability, knowledge, materiality, and a market premium to recover a loss of that size. The cost of establishing the claim would dwarf the recovery even before trial. Repeating the same package, deposition, survey, scientific, and economic proof in separate cases would waste judicial resources and risk inconsistent outcomes. Rule 23(b)(3) was designed for precisely these negative-value consumer claims. *Amchem*, 521 U.S. at 617; *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).

Each Rule 23(b)(3) superiority factor points in the same direction. Class members have no practical interest in individually controlling a case that costs many times more to prove than it can recover. Concentrating the claims avoids repeating the same corporate and expert evidence and prevents inconsistent rulings about the same packages. This California forum is appropriate for a California class asserting

California statutory rights. And the phased trial and claims process described below supplies a concrete, workable method of adjudication.

Arcadia's complaint system illustrates why aggregation is necessary. Each purchaser encountered the contradiction as a small individual loss, which Arcadia logged as a separate review or consumer-service case. Viewed together, those records reveal the recurring course that no $10 claimant could afford to prove alone. Class treatment makes the scale of the conduct visible while preserving Arcadia's right to contest every common element once.

The trial can proceed in manageable phases. First, the factfinder resolves the objective net impression of the Challenged Front Labeling, product capability, materiality, Arcadia's knowledge and reasonable care, and the common statutory conduct. Second, the factfinder decides whether a positive EPP existed and its amount by product and period. Those determinations establish liability and the per-unit measure with common evidence. Third, purchase records identify qualifying transactions, enforce the full-refund exclusion, and apply the amount-paid cap. A claims administrator may perform matching and arithmetic, subject to audits and judicial resolution of genuine disputes. That ministerial claims process is not a series of liability trials. The Ninth Circuit rejects a separate administrative-feasibility requirement and permits ordinary records and sworn claims to identify class members. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129-33 (9th Cir. 2017).

The California Class covering all four forms is manageable because the central liability questions turn on the same labeling course, active ingredient, scientific evidence, corporate decision-making, and expert proof. Differences in applicator, package size, price, or period are all part of the damages model's historical pricing data and analysis. They do not require a different legal theory or a different witness for each purchaser. Concentration in this Court is especially

appropriate because Wheeler and the Class are California residents, the certified claims arise under California law, and the same evidence will govern every covered transaction. Common issues plainly predominate over the remaining record matching and arithmetic.

## VI. RULE 23(b)(2) IS SATISFIED

Rule 23(b)(2) applies when a defendant has acted on grounds generally applicable to the class so that one injunction is appropriate. *Wal-Mart*, 564 U.S. at 360; *Parsons v. Ryan*, 754 F.3d 657, 688-89 (9th Cir. 2014). Arcadia continues to use or approve the Challenged Front Labeling across all four Fungi-Nail forms. The confusion continued after this case was filed. In March 2025, a purchaser wrote: "The name of the product is fungi-nail. However, when I receive the product and read the package box, it reads that it is not for nail fungus. Then why even call it fungi nail if it doesn't do anything for nails?! Absolutely misleading, frustrating and bad business practices." Coelho Decl., Ex. 11 (ARCADIA-00082304 (Case No. 535124)). The legality of that continuing course does not turn on individualized use or treatment results.

The same common findings establish the UCL fraudulent and unlawful theories and the FAL claim for prospective relief. The UCL fraudulent prong and FAL ask whether the common package is likely to deceive a reasonable consumer. The UCL unlawful prong borrows the FAL and CLRA violations. *Williams*, 552 F.3d at 938-39; *Cel-Tech*, 20 Cal. 4th at 180. Exposure, net impression, capability, and materiality are therefore resolved with the same package, scientific, survey, marketing, and sales evidence described above. The FAL knowledge and reasonable-care issue is corporate, not personal to purchasers. Arcadia received, coded, summarized, and retained complaints that repeatedly identified the precise contradiction. One California purchaser told Arcadia that she bought because of the Fungi-Nail name and called the product deceptive. Coelho Decl., Ex. 15

(ARCADIA-00075220 (Case No. 488729)). Another said the warning belonged on the front next to the pen pointing at the nail. *Id.*, Ex. 11 (ARCADIA-00082304 (Case No. 535034)). Arcadia's knowledge of those communications has one answer for everyone.

Wheeler seeks prospective relief under these theories, so no individualized UCL or FAL damages calculation is presented. The question is whether Arcadia's continuing, standardized labeling course is likely to deceive and should be enjoined. That question has one answer for every member and leads to one remedy directed at the package itself. The Rule 23(b)(2) analysis below confirms why individual purchase circumstances cannot change the propriety of that indivisible relief.

Wheeler has standing for prospective relief because she alleges a continuing desire to purchase an effective nail-fungus product and would consider Fungi-Nail if Arcadia accurately labeled or reformulated it, but cannot presently rely on the package. Wheeler Decl. ¶¶ 9-11. *Davidson* holds that a previously deceived consumer has standing when she reasonably wants to buy again but cannot rely on the representation. 889 F.3d at 969-71.

The requested relief is specific and indivisible. Wheeler asks the Court to enjoin Arcadia from selling covered Fungi-Nail products in California with the Challenged Front Labeling unless the principal display panel clearly and conspicuously states "Does not treat fungus in the nail" or materially equivalent language, or Arcadia removes the Fungi-Nail name, or the products are reformulated and supported by competent substantiation to treat nail fungus. One order would resolve the legality of the course for every class member; individualized injunctions are unnecessary. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The same California Class may be certified under Rule 23(b)(2) for this indivisible prospective relief and under Rule 23(b)(3) for CLRA damages.

## VII. ALTERNATIVELY, THE COURT SHOULD CERTIFY DEFINED ISSUES UNDER RULE 23(c)(4)

Rule 23(c)(4) permits certification of particular issues when each issue class satisfies Rule 23(a) and the applicable Rule 23(b) requirements and common adjudication will materially advance the case. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233-35 (9th Cir. 1996). The issues identified in Section III.C are discrete, supported by common evidence, and susceptible to a common verdict.

If full claim certification is denied, the Court should certify the common issues identified in Section III.C for the same California Class. The issue certification should include whether the challenged message caused a positive EPP by product and period; if not, the Court should still certify the common liability issues and conduct elements.

## VIII. CONCLUSION

Wheeler respectfully requests that the Court certify the California Class covering the liquid, ointment, pen, and spray Fungi-Nail products under Rule 23(b)(3) for damages and Rule 23(b)(2) for injunctive relief. Alternatively, the Court should certify the defined common issues for that same California Class under Rule 23(c)(4).

Dated: August 17, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*

Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach

*Attorneys for Plaintiff Megan Wheeler and the Proposed Class*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Plaintiff Megan Wheeler, certifies that the memorandum of points and authorities contains 6,427 words, as counted by the word-processing program used to prepare it, including the footnote, and complies with the word limit of Local Rule 11-6.1.

Dated: August 17, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*

Thiago M. Coelho
*Attorneys for Plaintiff Megan Wheeler and the Proposed Class*