Thiago M. Coelho (SBN 324715)
*thiago.coelho@wilshirelawfirm.com*
Lauren Lendzion (SBN 239184)
*lauren.lendzion@wilshirelawfirm.com*
Chumahan B. Bowen (SBN 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach (SBN 281404)
*jennifer.leinbach@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Putative Classes*

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

ARCADIA CONSUMER HEALTHCARE, INC., a Delaware corporation,

Defendant.

Case No.: 8:24-cv-02657-JDE

**PLAINTIFF MEGAN WHEELER'S OPPOSITION TO DEFENDANT ARCADIA CONSUMER HEALTHCARE INC.'S MOTION TO STRIKE OR EXCLUDE EXPERT REPORTS OF DR. DAVID BELL; DR. ERNAN HARUVY; RHONDA HARPER; AND DR. MATTHEW BOGYO**

Date: October 8, 2026
Time: 10:00 a.m.
Judge: Hon. John D. Early
Courtroom: 6A

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

III. ARGUMENT ........ 1

A. LEGAL STANDARD ........ 1

B. DR. BELL'S REPORT SHOULD NOT BE EXCLUDED ........ 2

1. Plaintiff Satisfies Rule 702 Under the Standard Governing an Unexecuted Class-Certification Model ........ 2

2. Bell's disclosed price-premium calculation fits the alleged economic injury ........ 6

C. HARUVY'S REPORT SHOULD NOT BE EXCLUDED. ........ 7

1. Haruvy screened for consumers with relevant topical-treatment purchasing experience ........ 8

2. The question and response choices measure purchase importance without requiring a favorable answer ........ 9

3. The original data checks and unweighted results answer the challenged statistics ........ 11

D. HARPER'S PACKAGING AND CONSUMER-PERCEPTION OPINIONS SHOULD NOT BE EXCLUDED ........ 13

1. Harper Explains How Her Marketing Experience and the Disclosed Principles Support Her Packaging Analysis ........ 13

2. Arcadia's Intent Objection Does Not Dispose of Harper's Analysis of the Packaging and Research ........ 16

3. Harper's Consumer-Perception Opinions Address Factual Questions Presented for Certification ........ 17

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

## TABLE OF CONTENTS (continued)

Page

4. Harper's Critique of the Existing Study Remains Relevant Without Adopting Her Rebranding Proposals ........ 18

5. Harper's Opinions Address the Common Questions Presented for Certification ........ 18

E. BOGYO'S SCIENTIFIC OPINIONS SHOULD NOT BE EXCLUDED ........ 19

1. Bogyo's Chemistry and Biochemistry Expertise Qualifies Him to Analyze Antifungal Activity and Nail Delivery ........ 19

2. Bogyo Explains His Methods, Supporting Evidence, and Application to Arcadia's Products ........ 21

3. Arcadia's FDA-Monograph Objection Provides No Basis to Strike Dr. Bogyo's Independent Scientific Analysis. ........ 22

4. Bogyo's Opinion Addresses a Common Question Central to Certification ........ 23

IV. CONCLUSION ........ 23

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

## TABLE OF AUTHORITIES

Page

**Cases**

*BillFloat Inc. v. Collins Cash Inc.*
105 F.4th 1269 (9th Cir. 2024) ........ 8

*Bustamante v. KIND, LLC*
100 F.4th 419 (2d Cir. 2024) ........ 10

*Comcast Corp. v. Behrend*
569 U.S. 27 (2013) ........ 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
509 U.S. 579 (1993) ........ 2

*Duvall v. Haier US Appliance Sols., Inc.*
815 F. Supp. 3d 876 (N.D. Cal. 2025) ........ 7

*Engilis v. Monsanto Co.*
151 F.4th 1040 (9th Cir. 2025) ........ 16

*General Electric Co. v. Joiner*
522 U.S. 136 (1997) ........ 5

*Gunaratna v. Dennis Gross Cosmetology LLC*
2023 WL 2628620 (C.D. Cal. Mar. 15, 2023) ........ 8

*Hangarter v. Provident Life & Accident Insurance Co.*
373 F.3d 998 (9th Cir. 2004) ........ 13, 16, 17, 19, 22

*Hinojos v. Kohl's Corp.*
718 F.3d 1098 (9th Cir. 2013) ........ 7

*In re ConAgra Foods, Inc.*
302 F.R.D. 537 (C.D. Cal. 2014) ........ 5, 6, 17, 18

*In re Incretin-Based Therapies Products Liability Litigation*
2022 WL 898595 (9th Cir. Mar. 28, 2022) ........ 6

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

## TABLE OF AUTHORITIES (continued)

Page

*In re NJOY, Inc. Consumer Class Action Litigation*
120 F. Supp. 3d 1050 (C.D. Cal. 2015) ........................................... 9, 10

*In re Silicone Gel Breast Implants Products Liability Litigation*
318 F. Supp. 2d 879 (C.D. Cal. 2004) ...................................... 19, 21, 22

*In re Zicam Cold Remedy Marketing, Sales Practices, and Products Liability Litigation*
2011 WL 798898 (D. Ariz. Feb. 24, 2011) ........................................... 22

*Jacobs v. Fareportal, Inc.*
2020 WL 6587245 (D. Neb. May 29, 2020) ........................................ 16

*Krommenhock v. Post Foods, LLC*
334 F.R.D. 552 (N.D. Cal. 2020) ................................................ 15, 17

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999) ............................................................ 13, 16

*Kwan Software Engineering, Inc. v. Foray Technologies, LLC*
2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ........................................ 8

*Laux v. Mentor Worldwide, LLC*
295 F. Supp. 3d 1094 (C.D. Cal. 2017) ............................................ 22

*Liqwd, Inc. v. L'Oréal USA, Inc.*
2019 WL 8014103 (D. Del. June 25, 2019) ......................................... 16

*Lytle v. Nutramax Laboratories, Inc.*
114 F.4th 1011 (9th Cir. 2024) ..................................................... 2

*McGinity v. Procter & Gamble Co.*
69 F.4th 1093 (9th Cir. 2023) ...................................................... 14

*Morris v. BNSF Railway Co.*
790 F. Supp. 3d 1129 (W.D. Wash. 2025) ........................................... 20

*Noohi v. Johnson & Johnson Consumer Inc.*
146 F.4th 854 (9th Cir. 2025) .................................................... 2, 6, 7

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

## TABLE OF AUTHORITIES (continued)

Page

*Noriega v. Abbott Laboratories*
No. 23 Civ. 4014 (PAE), 2026 WL 1601501 (S.D.N.Y. June 4, 2026) .......... 15, 17

*Opperman v. Kong Technologies, Inc.*
2017 WL 3149295 (N.D. Cal. July 25, 2017) .......... 6

*Pedroza v. PetSmart, Inc.*
No. ED CV 11-298-GHK (DTBx), 2013 WL 1490667 (C.D. Cal. Jan. 28, 2013) .......... 5

*Porter v. Martinez*
68 F.4th 429 (9th Cir. 2023) .......... 13

*Procter & Gamble Co. v. Ultreo, Inc.*
574 F. Supp. 2d 339 (S.D.N.Y. 2008) .......... 9

*Reinsdorf v. Skechers U.S.A.*
922 F. Supp. 2d 866 (C.D. Cal. 2013) .......... 9

*Rusoff v. The Happy Group, Inc.*
No. 24-7706, 2026 WL 2387098 (9th Cir. Aug. 17, 2026) .......... 2, 7

*Shin v. Sanyo Foods Corp. of America*
348 F.R.D. 477 (C.D. Cal. 2025) .......... 6

*Southland Sod Farms v. Stover Seed Co.*
108 F.3d 1134 (9th Cir. 1997) .......... 15

*Suchanek v. Sturm Foods, Inc.*
311 F.R.D. 239 (S.D. Ill. 2015) .......... 11

*Thomas v. Newton International Enterprises*
42 F.3d 1266 (9th Cir. 1994) .......... 19

*Torliatt v. Ocwen Loan Servicing, LLC*
570 F. Supp. 3d 781 (N.D. Cal. 2021) .......... 16, 17

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

## TABLE OF AUTHORITIES (continued)

Page

*Tovey v. Nike, Inc.*
2014 WL 3510636 (N.D. Ohio July 10, 2014) .................................... 16

*United States v. Valencia-Lopez*
971 F.3d 891 (9th Cir. 2020) ........................................................ 15, 16

*Wendell v. GlaxoSmithKline LLC*
858 F.3d 1227 (9th Cir. 2017) .......................................................... 21

*Williams v. Gerber Products Co.*
552 F.3d 934 (9th Cir. 2008) ........................................................ 14, 17

**Statutes**

Consumers Legal Remedies Act (CLRA) .......................................... 1, 22

False Advertising Law (FAL) .............................................................. 1, 22

Unfair Competition Law (UCL) ........................................................ 1, 22

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ................................................................... 16

Fed. R. Evid. 702 ................................................... 1, 2, 9, 16, 18, 19, 21

Fed. R. Evid. 703 ............................................................................. 15, 21

Fed. R. Evid. 704(a) ............................................................................... 17

**Other Authorities**

Greg M. Allenby et al.,
*"Economic Valuation of Product Features,"*
12 Quant. Mktg. & Econ. 421-456 (2014) ............................................ 5

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

# I. INTRODUCTION

Arcadia Consumer Healthcare Inc. ("Arcadia" or "Defendant") seeks to exclude all four experts supporting Plaintiff Megan Wheeler's ("Plaintiff") motion for class certification. Dkt. 107 ("Mot."). Plaintiff alleges that Fungi-Nail's name, nail imagery, and efficacy claims convey that the products treat nail fungus (the "challenged message"), although they do not provide that benefit, causing purchasers to lose the benefit of their bargain and overpay. Dkt. 35 Second Amended Complaint ("SAC") ¶¶ 3–7, 15–19, 61. The motion should be denied. Plaintiff's Expert Dr. David Bell ("Bell") proposes a price-premium model, Plaintiff's Expert Dr. Ernan Haruvy ("Haruvy") addresses materiality, Plaintiff's Expert Dr. Matthew Bogyo's ("Bogyo") Plaintiff's Expert Rhonda Harper ("Harper") analyzes the packaging's message, and Plaintiff's Expert Dr. Matthew Bogyo's ("Bogyo") Bogyo evaluates whether the products deliver an effective antifungal concentration within the nail. For the reasons, stated below Defendant's motion should be denied in its entirety.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

# II. FACTUAL BACKGROUND

Plaintiff seeks certification of a California purchaser class covering Fungi-Nail liquid, ointment, pen, and spray products. The motion seeks benefit-of-the-bargain damages under the CLRA and prospective relief under the CLRA, FAL, and UCL, or alternatively certification of specified common issues. (Amended Motion for Class Certification ("MCC") Dkt. 113 at 8–9. The supporting record includes reports from Plaintiff's experts Bell, Haruvy, Harper, and Bogyo. Dkt.. 113-18, 113-16, 113-10, 113-09. Arcadia seeks to exclude all. Dkt. 107 at 6–21.

# III. ARGUMENT

## A. LEGAL STANDARD

Under Rule 702, a qualified witness may offer expert testimony when the proponent establishes, more likely than not, that the testimony will assist the trier of fact, rests on sufficient facts or data and reliable principles and methods and reflects

a reliable application of those methods to the case. Fed. R. Evid. 702. The Court's gatekeeping inquiry examines relevance and reliability in the context of the expertise and opinion offered. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 592–95 (1993). At class certification, the Court evaluates challenged expert testimony under *Daubert*. *Rusoff v. The Happy Group, Inc.*, No. 24-7706, 2026 WL 2387098, at *6 (9th Cir. Aug. 17, 2026).

**B. DR. BELL'S REPORT SHOULD NOT BE EXCLUDED**

**1. Plaintiff Satisfies Rule 702 Under the Standard Governing an Unexecuted Class-Certification Model**

A class may rely on a reliable, not-yet-executed damages model capable of calculating damages in a manner common to the class. *Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024). An expert therefore need not field a survey or calculate final damages before certification, provided the proposed methodology is sufficiently developed and reliable. *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 864–65 (9th Cir. 2025).

Bell meets that standard. His report identifies the four challenged Fungi-Nail products and proposes to measure the overpayment attributable to their challenged [redacted] identified brand name and market price as attributes he anticipated testing. *Id*. 146:13–23. Arcadia's economist Song likewise admitted that Bell had five attributes in his illustration: brand name, applicator, efficacy claim, additional ingredients, and price. Deposition of Dr. Chen Song ("Song Dep."), Declaration of Thiago M. Coelho In Support Of Plaintiff's Opposition To Defendant's Motion to Strike. ("Coelho Decl.,") Ex. 1, at 120:17-121:8. Song also recognized Bell's sixteen proposed choice





WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

questions offering products A and B. *Id*. That defeats the claim that no attributes were identified. Mot. 8.

The report identifies additional candidate attributes, including product form, applicator, efficacy claims, added ingredients, and price. Bell Rep. ¶¶ 29, 44 (Dkt. 113-18). The report proposes testing efficacy levels that mirror the actual package statements, imagery, and disclaimers, with a comparable but-for presentation that does not convey the challenged message. *Id*. ¶¶ 40, 44. It requires the design either to hold brand constant while isolating the challenged label elements or separately account for brand equity. *Id*. ¶ 44. He explained he could compare otherwise identical packages with and without "Kills Fungus," or vary the "Fungi-Nail" name while holding other design elements constant. (Deposition of Dr. David Bell ("Bell Dep."), Coelho Decl., Ex. 3, at 74:3–10, 75:6–18). He explained he would develop alternatives from the marketed product, existing case evidence, and qualitative research. *Id*. 143:2–7.

Approximately 800 to 1,000 respondents recruited through an Internet panel will be consumers in the OTC antifungal market, including those who purchased or seriously considered such products within a defined recent period. Bell Rep. ¶ 46 (Dkt. 113-18). He will assess representativeness using age, gender, ethnicity, prior antifungal use, and familiarity with category brands. *Id*. ¶ 47. Each respondent will complete sixteen purchase-choice tasks, with an outside "none of these or keep shopping" option, and confirm whether the selected product is one the respondent would actually buy. *Id*. ¶¶ 42–43. The second response encourages careful purchase consideration and more realistic market-share predictions. *Id.* ¶ 43. Attribute levels will rotate across alternatives to permit estimation of their separate effects. *Id*. ¶ 36. Pretesting will assess clarity and whether the materials cue respondents to the litigation issue. *Id*. ¶¶ 44–45. Defendant's expert agreed that cognitive interviews may precede final questions and pretesting informs revisions. Song Dep. 61:3–18,

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

139:3–9. The exact instrument, screening criteria, randomization protocol, and quality-control rules will be finalized before fielding. Bell Rep. ¶ 44.

Arcadia argues that Bell conceded conjoint analysis could not identify a representative class of consumers who would not have purchased absent the alleged misrepresentation. Mot. 8. The cited question asked what Bell had done to identify those consumers; he had not tried to "locate those individuals specifically." Bell Dep. 150:22–151:6. Bell's analysis does not depend on finding specific individuals and can estimate how changing product attributes affects purchase probabilities. *Id.* 151:17–152:1, 152:20–23, 153:16–22. His proposed equilibrium price premium ("EPP") calculation combines those demand estimates with product costs and competitors' pricing responses to compare equilibrium prices with and without the alleged nail-treatment representation. Bell Rep. ¶¶ 53, 55–56, 59. The resulting price difference measures the alleged price premium paid by purchasers. *Id.* ¶ 59.

Bell proposes a main-effects model, testing supported interactions between brand and efficacy message and between product form or applicator and efficacy message. *Id.* ¶ 37. It specifies Hierarchical Bayes estimation of the values respondents assign to attribute levels, with uncertainty measures for those estimates and the resulting premiums. *Id.* ¶¶ 38–39, 48–50. Bell testified that Hierarchical Bayes was a method he had used in published research and considered appropriate here. Bell Dep. 83:12–20.

For EPP, Bell proposes combining estimated demand with Arcadia's product-level costs, margins, wholesale and retail prices, unit sales, and competitive offerings. Bell Rep. ¶¶ 53–55. His assumptions include a heterogeneous logit demand model, constant marginal costs within the modeled output range, no market entry or exit during the relevant horizon, and Nash price competition. *Id.* ¶¶ 53–54. Under that framework, manufacturers' prices are adjusted iteratively until no manufacturer benefits from changing its price given its competitors' prices. *Id.* ¶ 56. Comparing equilibrium prices with and without the challenged message yields the

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

alleged overpayment. *Id.* ¶ 59. If reliable cost data are unavailable, Bell will identify a proxy source and test plausible margins. *Id.* ¶ 55. Where the data permit, he will calculate premiums by SKU, package version, and period, then multiply the per-unit premium by covered sales, subject to required offsets and class limitations. *Id.* ¶ 57.

Bell's disclosures described above provide the survey-methodology detail missing from the untimely expert declaration in *Pedroza v. PetSmart, Inc.*, No. ED CV 11-298-GHK (DTBx), 2013 WL 1490667, at *2–3 (C.D. Cal. Jan. 28, 2013). See Mot. at 6. Those disclosures also explain how Bell's proposed methods and evidence will measure the alleged overpayment, supplying an analytical path the Court can evaluate. That distinguishes *General Electric Co. v. Joiner*, 522 U.S. 136, 144–46 (1997) (upholding exclusion where experts failed to explain how materially dissimilar studies supported their causation opinions). See Mot. at 7.

Bell discloses the EPP's assumptions, data, and calculation procedures. Bell Rep. ¶¶ 53–57. Indeed, the EPP is well accepted in the scientific community. *See, e.g.*, Greg M. Allenby *et al.*, "*Economic Valuation of Product Features*," 12 Quant. Mktg. & Econ. 421-456 (2014). Those disclosures provide the basis for evaluating whether EPP can reliably measure the alleged benefit-of-the-bargain damages.

Arcadia argues that Plaintiff's reliance on EPP conflicts with Bell's proposal to investigate three measures. Mot. 9, 11; Bell Dep. 159:9–19. Bell proposes willingness to pay (WTP), willingness to buy (WTB), and EPP to examine the same alleged representation's effects on consumer valuation, market share, and market prices. Bell Rep. ¶¶ 51–53. Bell explained that best practice is to investigate all three and "look at the convergence." Bell Dep. 81:9–13. His report also contemplates presenting measures other than the primary measure as sensitivity or corroborating analyses. Bell Rep. ¶ 58. The three measures complement the EPP calculation.

Arcadia's authorities involved experts or models that lacked the methodological detail Bell supplies. Mot. 7–10; see *supra* Section III.B.1. In *ConAgra*, the expert offered "no damages model at all," identifying neither variables

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

nor applicable data. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552–53 (C.D. Cal. 2014). *In Opperman,* the expert neither identified the survey attributes nor isolated the two security features at issue from smartphone privacy generally. *Opperman v. Kong Technologies, Inc.*, 2017 WL 3149295, at *11–12 (N.D. Cal. July 25, 2017). *Shin* involved no damages expert, only a suggestion of conjoint analysis. *Shin v. Sanyo Foods Corp. of America*, 348 F.R.D. 477, 485–86 (C.D. Cal. 2025). *In re Incretin-Based Therapies Products Liability Litigation*, 2022 WL 898595, at *1 (9th Cir. Mar. 28, 2022) (affirming exclusion where the expert failed to meaningfully explain the methodology underlying his causation opinion) fails for same reason.

**2. Bell's disclosed price-premium calculation fits the alleged economic injury**

Arcadia argues that Bell's price-premium model does not fit Plaintiff's alleged injury because the SAC alleges consumers would not have purchased the products. Mot. 10–12. However, the SAC alleges purchasers did not receive the benefit of their bargain because the products lacked the advertised nail-treatment benefit. SAC ¶¶ 7, 61. Bell proposes calculating the alleged premium by comparing equilibrium prices with and without the challenged nail-treatment message. Bell Rep. ¶¶ 40, 53–56, 59; *supra*, Section III.B.1. Bell's proposed calculation therefore corresponds to the pleaded benefit-of-the-bargain injury. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35–38 (2013).

Defendant never asked Bell about the benefit-of-the-bargain damage allegations in the SAC. Mot. 11; *see* SAC ¶¶ 7, 61. Bell also explained he understood a premium to be implicit. Bell Dep. 109:15–111:21. Moreover, the allegation that consumers would not have purchased does not defeat a price-premium damages model. Mot. at 11. In *Noohi*, the plaintiff likewise alleged that she would not have purchased the product had she known the truth, and the Ninth Circuit upheld reliance at class certification on a proposed model measuring overpayment attributable to the

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

challenged label. *Noohi v. Johnson & Johnson Consumer Inc*., 146 F.4th 854, 861, 865–67 (9th Cir. 2025).

Arcadia misidentifies the challenged "kills nail fungus" representation. Mot. at 10 & n.2. Plaintiff challenges the impression conveyed by the Fungi-Nail name and actual packaging, not a verbatim "kills nail fungus" statement. SAC ¶¶ 3–7, 15–19. Bell proposes comparing that packaging with an otherwise comparable presentation without the challenged message, using tested levels that mirror actual statements, imagery, and disclaimers. Bell Rep. ¶¶ 40, 44. He explained that the alternatives would draw from the marketed product, case evidence, and qualitative research. Bell Dep. 143:2–7. His report also requires holding brand constant or separately accounting for brand equity, so the comparison isolates the challenged message rather than unrelated brand value. Bell Rep. ¶ 44.

**C. HARUVY'S REPORT SHOULD NOT BE EXCLUDED.**

Haruvy tested whether the ability to kill nail fungus matters when consumers decide whether to buy Fungi-Nail. Haruvy Rep. ¶¶ 7–11, 18–19. That question tracks materiality, whether a reasonable consumer would attach importance to the representation in deciding what to buy. *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1107 (9th Cir. 2013). *Duvall v. Haier US Appliance Sols., Inc*., 815 F. Supp. 3d 876, 890 (N.D. Cal. 2025). *Rusoff* differs. There, the expert inferred consumers' understanding of "pasture raised" from online research and unsystematic grocery-store visits. *Rusoff*, 2026 WL 2387098, at *6. Haruvy instead collected screened California respondents' answers after they viewed Fungi-Nail packaging. Haruvy Rep. ¶¶ 17–19. *Id*., App. B at 37. His survey measures purchasing importance, not whether the packaging deceived respondents. Declaration of Ernan Haruvy, Ph.D., in Support of Plaintiffs' Opposition to Defendant's Motion to Strike ("Haruvy Decl.') ¶¶ 3, 27. *Rusoff*'s separate predominance ruling does not make evidence directed to materiality unreliable. *Rusoff*, 2026 WL 2387098, at *11.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

**1. Haruvy screened for consumers with relevant topical-treatment purchasing experience**

Arcadia argues that Haruvy should have limited participation to prospective antifungal buyers. Mot. 12–13. His screen required California adults who purchased or seriously considered an OTC topical-health product within 24 months. Haruvy Rep. ¶¶ 17–18; App. B at 36–37. Haruvy deliberately chose the topical-health purchasing screen to identify consumers familiar with that product category without revealing the survey's interest in antifungal efficacy before they viewed the package. Haruvy Rep. ¶¶ 18, 22, 30. Haruvy Decl. ¶¶ 4–5. Each respondent then viewed Fungi-Nail packaging and evaluated the importance of the stated capabilities when deciding whether to buy that product. Haruvy Rep. ¶¶ 18–19, 53.

*Gunaratna* rejected an objection that a beauty and personal-care screen included razor and sunscreen buyers, despite the products' high-end skincare audience: the screen sufficiently identified potential purchasers likely to overlap with the class. *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 2628620, at *14–15 (C.D. Cal. Mar. 15, 2023). Haruvy similarly used a related purchasing category, then asked about the product at issue. Overinclusiveness does not require exclusion where the survey has the necessary foundation. *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1275–76 (9th Cir. 2024).

*Kwan* involved a missing connection between users of photographic evidence in law enforcement and prospective buyers of specialized software. *Kwan Software Engineering, Inc. v. Foray Technologies, LLC*, 2014 WL 572290, at *4–5 (N.D. Cal. Feb. 11, 2014). Here, Haruvy supplied both a recent topical-health purchasing criterion and his reason for using it. Haruvy Rep. ¶¶ 18, 22, 30. His general acknowledgment that different products have different audiences does not concede that this explained category screen is irrelevant. Mot. 13 & n.3; (Deposition of Dr. Ernan Haruvy ("Haruvy Dep."), Coelho Decl., Ex. 4, at 52:20–54:24).

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

### 2. The question and response choices measure purchase importance without requiring a favorable answer

Arcadia's assertion that Haruvy omitted mechanisms to improve reliability overlooks the questionnaire's safeguards. Mot. 13–14. Haruvy presented nail-fungus efficacy alongside other product capabilities and randomized their order. Haruvy Rep. ¶¶ 19, 35. He did that to avoid concentrating respondents exclusively on nail fungus. Haruvy Dep. 154:8–155:8. Respondents separately rated each capability, with unimportant and neutral responses expressly available. Haruvy Rep., App. B at 37. Five pretest participants reported no unclear or ambiguous questions. Haruvy Decl. ¶ 11. *NJOY* rejected the proposition that the absence of a control group alone renders a survey inadmissible, considering the questionnaire's other safeguards. *In re NJOY, Inc. Consumer Class Action Litigation*, 120 F. Supp. 3d 1050, 1078–79 (C.D. Cal. 2015).

*Ultreo* does not support exclusion. There, the missing control prevented the survey from distinguishing advertising-induced beliefs from beliefs consumers already held. *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 351–52 (S.D.N.Y. 2008). Haruvy does not opine that Arcadia's advertising created respondents' preference. He measures whether nail-fungus efficacy matters when consumers evaluate the product shown, and a preexisting preference for effective treatment can itself make that benefit important. Haruvy Rep. ¶¶ 7–11, 19. Haruvy Decl. ¶ 12. *NJOY* also distinguished *Ultreo* as addressing survey weight and credibility on a preliminary-injunction record, not Rule 702 admissibility. 120 F. Supp. 3d at 1080. *Reinsdorf* involved a survey linking photographs to brand recognition and purchasing decisions without establishing respondents' exposure or isolating the photographs' contribution. *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 877–78 (C.D. Cal. 2013). Those exposure and attribution defects do not apply to Haruvy's purchase-importance opinion.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

Arcadia's leading-question claim discounts the purchasing context and the complete response scale. Mot. 14. The complete question asks, "When deciding whether to buy this product, how important is it that it" has each stated capability. The five displayed answers include very unimportant, somewhat unimportant, and neutral, as well as somewhat important and very important. Haruvy Rep. ¶ 19; App. B at 37. Respondents also distinguished among capabilities presented with the same wording and response scale. Haruvy Decl. ¶ 22. Across the five survey versions, the unweighted percentage rating nail-fungus efficacy "very important" exceeded the percentage assigning that rating to nail appearance by 26.31–39.29 percentage points. *Id*. ¶ 21. Defendant's comparison to *Bustamante v. KIND, LLC*, 100 F.4th 419, 427–30 (2d Cir. 2024) fails. Mot. 14. *Bustamante's* survey used "all" and "natural" to steer respondents toward plaintiffs' preferred answer that the product contained no artificial ingredients or undefined chemical names. 100 F.4th at 428–29. Haruvy's question permits respondents to rate nail-fungus efficacy very unimportant without comparable pressure.

Arcadia's blinding objection overstates what respondents were told. Mot. 14. The consent screen described advertising research about an over-the-counter product without identifying Arcadia, Fungi-Nail, the litigation, the sponsor, or the nail-fungus hypothesis. Haruvy Rep. ¶ 38 & App. B at 36. Haruvy Decl. ¶ 6. Qualified respondents then viewed the package and rated the benefits' purchase importance. Haruvy Rep. ¶ 19 & App. B at 37. The consent screen did not instruct respondents to regard nail-fungus efficacy as important. *Id.*, App. B at 36–37. *NJOY* likewise rejected the contention that respondents' early awareness of the general product category rendered a survey unreliable. 120 F. Supp. 3d at 1080.

The absence of "don't know" or "no opinion" choices does not undermine these safeguards. Mot. 15. Haruvy asked how important each stated capability was to respondents when deciding whether to buy the product. Haruvy Rep. ¶ 19 & App. B at 37. Answering that question did not require respondents to determine whether

the product actually had that capability. Haruvy Decl. ¶ 9. Respondents could select "unimportant" or "neutral," which were not counted as affirmative importance ratings. *Id.* ¶¶ 8–9. *See Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 247 (S.D. Ill. 2015) (absence of a "no opinion" option did not significantly compromise survey permitting neutral answers)

Arcadia faults the fixed order of the eligibility answers and importance-scale choices. Mot. 15; Expert Rebuttal Report of Dr. Keith A. Botner ("Botner Rep.") ¶ 65. Haruvy's instrument randomized the attribute rows while presenting each capability on the same scale, running from very unimportant through neutral to very [redacted] at 71:22–72:2). Randomizing rows prevented a fixed position for nail-fungus efficacy, guarding against position effects. Haruvy Decl. ¶ 10.

**3. The original data checks and unweighted results answer the challenged statistics**

Arcadia's "over half" figure concerns responses collected before Haruvy [redacted] 132:7–20, 134:16–22. Arcadia points to entries from the same IP address reporting



WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

different importance ratings and ages. Mot. 15. But Haruvy retained only the first of the three entries and excluded the later entries, including the third entry reporting a different age. Haruvy Dep. 176:20–177:7, 183:24–184:22, 186:19–21. Haruvy Decl. ¶ 15. Thus, the example does not show that those inconsistent responses were counted together.

The validation record includes specific checks beyond the panel provider's reputation. Mot. 15. Haruvy screened for eligibility and California residence, monitored responses during collection, and applied the original exclusions. Haruvy Rep. ¶¶ 17–18, 34, 41; App. D at 41. Haruvy compared the four July surveys with the provider's demographic records before his deposition and reported a match, later acknowledging the possibility of a few small age discrepancies. Haruvy Dep. 78:1–79:4, 187:3–188:19. Haruvy Decl. ¶ 18. That identifies a concrete demographic check of the July surveys in addition to the original screening and cleaning; Arcadia's claim that the survey lacked validation information omits that.

Haruvy's high importance ratings did not result from the age weighting Arcadia criticizes. Mot. 14. Before age weighting, 87.97–94.29% of respondents already rated nail-fungus efficacy "very important." Haruvy Rep., App. D at 42. Haruvy gave greater weight to responses from adults age 65 and older because too few participated in the liquid survey compared with their share of California adults. That adjustment explains the 9.44 weight Arcadia challenges. Haruvy Rep. ¶¶ 49–52 & tbl. 1. Across all five survey versions, age weighting increased the percentage rating nail-fungus efficacy "very important" by only 1.23–3.05 percentage points. Haruvy Rep., App. D at 42. Haruvy Decl. ¶¶ 19–20. Even without the challenged weights, the respondents overwhelmingly rated nail-fungus efficacy very important.

Arcadia faults the surveys for being conducted at different times and not randomly assigning respondents to package versions. Mot. 15. Plaintiff relies on the importance ratings reported separately for each package. Haruvy's conclusion rests on respondents' ratings within each version, without treating the versions as



WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

randomized test and control groups or claiming that additional package panels caused differences between their answers. Haruvy Decl. ¶¶ 25–26. See Haruvy Dep. 126:8–22. The January survey examined the ointment's front label, while the July surveys added packages disclosed later. Haruvy Dep. 99:21–102:19, 103:11–17. Participants could select available versions, and some participated in more than one. *Id.* 103:18–104:3. Each survey screened respondents for eligibility and asked them to rate the importance of product benefits. Haruvy Rep. ¶¶ 17–19, 53. The report presents those ratings separately for each package. *Id.*, App. D at 42. Those results support the limited opinion offered here: how important respondents considered nail-fungus efficacy when evaluating the package they saw. Thus, Arcadia's request to exclude Haruvy's opinion fails.

**D. HARPER'S PACKAGING AND CONSUMER-PERCEPTION OPINIONS SHOULD NOT BE EXCLUDED**

Harper analyzes the name, toenail imagery, efficacy claims, and less prominent nail limitation. Expert Report of Rhonda Harper ("Harper Rep.") at 12–18, ¶¶ 32–38 (Dkt. 113-10). Those features bear on the message and materiality questions presented for certification. MCC at 9:3–8; 12:7–22; 14:13–15:13. Arcadia's method, intent, and rebranding objections do not warrant excluding that packaging analysis. Mot. 15:13–19:14.

**1. Harper Explains How Her Marketing Experience and the Disclosed Principles Support Her Packaging Analysis**

Arcadia argues Harper lacks a reliable method connecting her experience to her conclusions. Mot. 16:2–17:24. Reliability of experience-based testimony depends on the expert's relevant knowledge and experience, assessed using factors suited to the opinion. *Porter v. Martinez*, 68 F.4th 429, 444–45 (9th Cir. 2023); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–52 (1999). Industry experience can supply that foundation. *Hangarter v. Provident Life & Accident Insurance Co.*, 373 F.3d 998, 1017–18 (9th Cir. 2004).

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

Harper held senior marketing positions at Sam's Club/Walmart and Warner-Lambert's consumer healthcare division, including OTC-brand promotional responsibilities. Harper Rep. 6, ¶¶ 17–18; Deposition of Rhonda Harper ("Harper Dep."), Coelho Decl., Ex. 6, at 16:14–20. She worked on Listerine's packaging redesign and Efferdent's repackaging. *Id*. at 18:4–22. Her responsibilities included evaluating packaging, label copy, and consumers' interpretation of claims and disclosures – the task she performed here. Harper Rep. 3, ¶¶ 2–3.

Her Report identifies naming conventions, claim and visual hierarchy, disclosure prominence, shopper behavior, consumer feedback, and business records as components of her assessment. Harper Rep. 4–5, ¶¶ 8–9. Harper acknowledged combining them for this case and qualified which were standard principles, while explaining their use in marketing practice. Harper Dep. 33:1–24. These were "accepted individual frameworks" brought together for her "assessment." *Id.* 34:2–4. Calling the combination "custom" does not answer whether it was reliable or reliably applied.

Harper explains that the name pairs fungus with the nail, while healthy-toenail imagery and efficacy claims reinforce the suggested benefit. Harper Rep. 12–13, ¶¶ 32–35. She connects that naming convention to work on Lubriderm and Efferdent, which similarly communicate the intended use. Harper Dep. 31:9–19.

Harper compares the name and front-panel claims with the nail limitation's location, size, and prominence. Harper Rep. 12–18, ¶¶ 32–38. She explains why the limitation may fail to change the impression even for consumers who read the back. Harper Rep. 14, ¶ 36; Harper Dep. at 65:9–20; 114:9–24. A back label disclosure cannot cure an unambiguously deceptive front-label claim. *Williams v. Gerber Products Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098–99 (9th Cir. 2023).

Harper reviewed Arcadia's PRS In Vivo study and published packaging and consumer-behavior literature. Mot. 5:1-6; Harper Rep. 21–24, ¶¶ 44–48; App. B,



WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

PDF pp. 44–46, Harper Dep. At 26:16-24. Rule 703 permits an expert to rely on facts or data made known to her, including otherwise inadmissible material of a type reasonably relied upon by experts in the field; it does not require personal generation of every underlying source. Fed. R. Evid. 703. See *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) (rejecting the objection that the expert relied on data collected by others).

*Krommenhock* admitted packaging-meaning and materiality opinions grounded in industry experience and company research, without requiring a new survey or focus group. *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 580 (N.D. Cal. 2020). Harper likewise identifies relevant experience, sources, and comparisons. Harper Rep. 3–6, ¶¶ 2–3, 8–10, 17–18; 12–18, ¶¶ 32–38; Harper Dep. 30:7–31:19; 36:7–37:2.

*Noriega* admitted an experience and research-based analysis of how a product's name, imagery, claims, and disclaimer conveyed a growth benefit, without a new survey or expertise specific to children's nutrition drinks. *Noriega v. Abbott Laboratories*, No. 23 Civ. 4014 (PAE), 2026 WL 1601501, at *5–9 (S.D.N.Y. June 4, 2026). Harper similarly explains how name, imagery, and disclosure prominence interact, using identified experience and materials. Harper Rep. 3–6, ¶¶ 2–3, 8–10, 17–18; App. B at PDF pp. 44–46; 12–18, ¶¶ 32–38; Harper Dep. 36:7–37:2.

Harper's inability to identify specific published OTC-shopping research does not erase her OTC packaging experience. Harper Dep. at 68:3–69:2; Harper Rep. 3, ¶¶ 2–3; 6, ¶ 18. Her package comparisons do not require treating the general three-second purchase estimate as a measured finding here. Harper Rep. 8, ¶ 25; 12–18, ¶¶ 32–38. They rest on identified features, experience, and materials. *Id.* 3–5, ¶¶ 2–3, 8–9; Harper Dep. 30:7–31:19; 36:7–37:2.

Arcadia's reliance on *United States v. Valencia-Lopez,* 971 F.3d 891 (9th Cir. 2020), fails. Mot. at 16:5–7. There, the expert never explained how his general experience supported his near-zero estimate of the likelihood that drug cartels used

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

coerced couriers. *Valencia-Lopez*, 971 F.3d at 898–901. Harper supplies the connection missing there: she connects her package comparisons and naming analysis to her professional work. Harper Rep. 12–18, ¶¶ 32–38; Harper Dep. 30:7–31:19; 36:7–37:2. That explanation also answers Botner's criticism and supplies Rule 702's required reasoned basis. Mot. at 17:3-11; *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1048–50 (9th Cir. 2025).

Arcadia's other cases likewise turn on the opinions' foundation. Mot. 15–16 n.4. *Tovey* rejected Harper's unexplained analysis under Rule 702 and Rule 26(a)(2)(B), not a categorical survey requirement. *Tovey v. Nike, Inc.*, 2014 WL 3510636, at *5–9, *16–17 (N.D. Ohio July 10, 2014). *Liqwd* barred unfounded or legally improper opinions, otherwise leaving her testimony for the jury. *Liqwd, Inc. v. L'Oréal USA, Inc.*, 2019 WL 8014103, at *3 (D. Del. June 25, 2019). *Jacobs* excluded a trademark survey with cumulative defects, including inconsistent confusion theories and an unclaimed mark. *Jacobs v. Fareportal, Inc.*, 2020 WL 6587245, at *4–10 (D. Neb. May 29, 2020). The Court must assess the opinions and support presented here. *Kumho Tire*, 526 U.S. at 150–52. Here, Harper applies disclosed principles to the package and connects that analysis to her experience. Harper Rep. 3, ¶¶ 2–3; 4–5, ¶¶ 8–9; 6, ¶¶ 17–18; 12–18, ¶¶ 32–38; Harper Dep. 30:7–31:19; 36:7–37:2. She offers neither a trademark-survey nor damages calculation. Harper Rep. 12–18, ¶¶ 32–38; Harper Dep. 22:16–18.

**2. Arcadia's Intent Objection Does Not Dispose of Harper's Analysis of the Packaging and Research**

Arcadia challenges Harper's intent opinions, including her inference that Arcadia intentionally avoided research topics. Mot. 18:2–19. An expert may explain professional practices even when that assessment supports a finding of wrongdoing, without deciding ultimate legal issues. *Hangarter*, 373 F.3d at 1016. *Torliatt* applied that distinction at certification to an industry expert's document analysis. *Torliatt v. Ocwen Loan Servicing*, LLC, 570 F. Supp. 3d 781, 791–93 (N.D. Cal. 2021). Harper

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

explains packaging development, testing and the study's measures of visibility, recognition, effectiveness, and purchase interest. Harper Rep. 20–24, ¶¶ 42–48.

Harper had no conversations or testimony establishing an intent to avoid research topics. Harper Dep. 75:6–12. Her packaging and research analysis requires no subjective-motive opinion. Harper Rep. 12–18, ¶¶ 32–38; 20–24, ¶¶ 42–48. The Court can draw its own inferences, and confine any limitation to an unsupported intent opinion. *Hangarter*, 373 F.3d at 1016; *Torliatt*, 570 F. Supp. 3d at 791.

**3. Harper's Consumer-Perception Opinions Address Factual Questions Presented for Certification**

Harper's use of "reasonable consumers" does not require exclusion. Mot. 18:20–19:6. Rule 704(a), however, permits otherwise admissible testimony on an ultimate factual issue. *Hangarter*, 373 F.3d at 1016. Whether a business practice is deceptive under California law is ordinarily a factual question. *Williams*, 552 F.3d at 938-39. *Krommenhock* admitted packaging-meaning and materiality testimony. 334 F.R.D. at 580. *Noriega* likewise found a reasonable consumer packaging analysis helpful. 2026 WL 1601501, at *8–9. Harper likewise explains the package's message and its importance to consumers seeking nail-fungus treatment. Harper Rep. 12–18, ¶¶ 32–38; 26, ¶ 53.

*ConAgra* illustrates the distinction and the appropriate scope of any limitation. The Court admitted an opinion that genetically engineered foods were not natural but excluded the conclusion that the defendant falsely and deceptively labeled them. 302 F.R.D. at 557–58. Harper's package analysis similarly supplies factual expertise while leaving the governing law to the Court. Harper Rep. 3–5, ¶¶ 2–3, 8–9; 12–18, ¶¶ 32–38.

Harper expressly left the legal application of her opinions to the courts: "My opinions are my opinions and how they apply to the law is up for the courts to decide." Harper Dep. 98:5–6; *see id.* 97:3–8. *ConAgra* supports limiting any

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

statement declaring a legal violation while retaining independently supported factual opinions. 302 F.R.D. at 557–58.

**4. Harper's Critique of the Existing Study Remains Relevant Without Adopting Her Rebranding Proposals**

Harper's critique of unperformed research differs from her rebranding proposals. Mot. 19:7–14. She identifies unanswered questions, including the profitability effect of changing the name or removing toenail imagery. Harper Rep. 25–26, ¶ 51; Harper Dep. at 73:17–25. She supplies neither unperformed test results nor incremental-revenue calculations. Harper Dep. 73:17–25. The critique addresses the existing study's evidentiary reach at certification. Fed. R. Evid. 702(a); MCC 14:24–15:13.

The rebranding proposals concern a changed presentation and transition to a new name. Harper Rep. 34–35, ¶¶ 65–66. Their feasibility or necessity does not determine the existing packaging's meaning. MCC 9:3–8. Any ruling declining to consider them should preserve the separately supported package analysis. Harper Rep. 4–5, ¶¶ 8–9; 12–18, ¶¶ 32–38.

**5. Harper's Opinions Address the Common Questions Presented for Certification**

Harper's message analysis does not estimate purchaser prevalence or damages. Harper Rep. ¶¶ 46, 53; Harper Dep. 22:16–18, 82:3–18. It addresses online packaging and why the limitation may not cure the impression even when read. Harper Rep. ¶¶ 36–37; Harper Dep. 106:8–15, 110:15–24, 114:9–24. The complaints, including refunded purchasers' accounts, corroborate confusion qualitatively; they are not a representative sample or prevalence estimate. Harper Rep. ¶¶ 56–59; Harper Dep. 88:7–14, 89:12–18; MCC 15:5–13. The Court should deny exclusion or confine any limitation to a discrete intent, legal-conclusion, or rebranding opinion.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

### E. BOGYO'S SCIENTIFIC OPINIONS SHOULD NOT BE EXCLUDED

Bogyo addresses whether Arcadia's 1% tolnaftate products deliver an effective concentration to fungus within the nail. Dkt. 113-09 ("Bogyo Rep.") 1:3-15; Dkt. 113 ("MCC") 13:18-14:8. Arcadia itself acknowledges the product "cannot penetrate the nail plate," but cites skin treatment and prevention benefits. Dkt. 105 ("Opp.") 4:7–15. Bogyo recognizes skin efficacy and explains why it does not establish efficacy within the nail—the challenged benefit. Bogyo Rep. 12:8–18; 14:4–13.

#### 1. Bogyo's Chemistry and Biochemistry Expertise Qualifies Him to Analyze Antifungal Activity and Nail Delivery

Arcadia emphasizes Bogyo's lack of clinical experience. Mot. at 19:21–20:18. Rule 702, however, permits qualification through knowledge, skill, experience, training, or education and "contemplates a broad conception of expert qualifications." *Thomas v. Newton International Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994); accord *Hangarter v. Provident Life & Accident Insurance Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004). The required expertise depends on the analysis offered. *In re Silicone Gel Breast Implants Products Liability Litigation* permitted a polymer chemist without a medical degree to explain chemical degradation and interpret studies. 318 F. Supp. 2d 879, 901 (C.D. Cal. 2004).

Dr. Bogyo holds chemistry and biochemistry degrees, completed a Harvard Medical School fellowship, and is a Stanford professor whose research includes chemical-probe design and synthesis. Bogyo Rep. 2:5–14. His infectious-disease research examines enzymes targeted to treat infections. (Deposition of Dr. Matthew Bogyo, Ph.D. ("Bogyo Dep."), Coelho Decl., Ex. 7, at 17:7–11). That expertise supports his analysis of tolnaftate's enzyme inhibition, physical properties, and passage through the nail's keratin barrier. Bogyo Rep. 8:5–20; 9, tbl. 1; 11:18–12:6.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

The testimony cited for "no expertise in pharmacology" concerns medical licensure and clinical diagnosis. Mot. 20:9–10. Bogyo Dep. 18:21-19:24. His answer—"I'm a Ph.D. scientist, not an M.D." distinguishes clinical credentials without disclaiming his chemical and biochemical expertise. Bogyo Dep. at 18:22; Bogyo Rep. at 2:5–14.

Bogyo first encountered "tinea unguium" in the rebuttal, but explained its relationship to onychomycosis. Bogyo Dep. 48:7–20. His Report already identified principal fungal organisms and tolnaftate's activity against dermatophytes. Bogyo Rep. 7:19–23; 9:15–23. Unfamiliarity with that term does not negate his organism and delivery analysis. *Id*. 7:12-23, 9:15-23, 11:18-12:6.

Nor do Defense Expert Dr. Eva Parker's ("Parker") credentials disqualify Bogyo. Mot. 19:26–28; 20:3–6, 19–28. Although his laboratory does not specifically study tinea pedis or onychomycosis, his opinion concerns delivery inside the nail plate and nailbed. Bogyo Dep. 17:12-18, 99:5-12. *Morris* similarly evaluated expertise against the opinion, permitting specific-causation testimony based on biomechanics and orthopedics training despite no medical degree. *Morris v. BNSF Railway Co.*, 790 F. Supp. 3d 1129, 1138–39 (W.D. Wash. 2025). Bogyo applies chemical and biochemical expertise to that delivery question. Bogyo Rep. 2:5-14, 8:5-20, 11:18-12:6.

[redacted]

Bogyo's scientific qualifications. Mot. 19:21-20:18.

Bogyo's lack of OTC laboratory research explains why his publications had not addressed the FDA monograph. Mot. 20:8–9; Bogyo Dep. 131:3–6. His opinion

instead rests on published 1% tolnaftate and nail-penetration research evaluated through his chemical and biochemical expertise. Mot. 20:8–9; Bogyo Dep. 100:21–101:1; Bogyo Rep. 2:5–14; 8:5–20; 11:18–12:6.

### 2. Bogyo Explains His Methods, Supporting Evidence, and Application to Arcadia's Products

Bogyo discloses literature synthesis, comparison of tolnaftate's properties with nail-permeability requirements, and review of product materials and testimony about formulation and testing. Bogyo Rep. 2:19–28. He applies those methods to explain how lipophilicity, low water solubility, and potential keratin binding restrict delivery through the nail. *Id*. 9, tbl. 1; 10:3–19; 11:18–12:6.

His deposition identifies published research on 1% tolnaftate and nail penetration and explains how lipophilicity and molecular size impede delivery. Bogyo Dep. 100:21–101:1, 101:11-15.

The Report describes a cadaver-toenail study finding greater penetration and antifungal activity for efinaconazole and tavaborole than tested tolnaftate or undecylenic acid OTC products. Bogyo Rep. 14:4–13. He analyzed others' published results as comparative support, expressly recognizing they do not substitute for clinical testing of Arcadia's formulations. Bogyo Dep. 80:22–23; Bogyo Rep. at 14:8–10.

An expert may base an opinion on research conducted by others when it provides a reliable foundation for the opinion offered. Fed. R. Evid. 703. *Wendell* rejected treating the absence of independent research as dispositive, assessing experience, literature review, and differential diagnosis together. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1234-36 (9th Cir. 2017). *Silicone Gel* likewise permitted interpretation of others' studies and measurements. 318 F. Supp. 2d at 901, 903. The inquiry therefore turns on the support for Dr. Bogyo's opinion and his application of the scientific principles to Arcadia's products. Fed. R. Evid. 702(b)–(d).

Bogyo identifies the four products' shared 1% tolnaftate ingredient and explains why its properties impede therapeutic delivery through keratin. Bogyo Rep. at 3–6; 7:1–6, 12–18; 11:18–12:6. He acknowledges formulation can improve penetration and considers Arcadia's lack of nail-penetration or efficacy testing. Bogyo Dep. at 101:21–102:6; Bogyo Rep. at 14:14–15:2. His literature, product-material, and testimony analysis supports his conclusion that Arcadia's standard 1% tolnaftate products cannot treat onychomycosis. *Id*. at 18:13–17. That conclusion rests on the need for effective delivery, with absent testing corroborative, rather than the sole basis. *Id*. at 7:12-18; 18:13-17.

Bogyo connects his expertise to his conclusions through analysis of molecular properties, nail permeability, and published research. Bogyo Rep. 2:5–14, 19–28; 11:18–14:13; 18:13–17. That distinguishes *Zicam's* physician lacking pharmacology and drug component expertise and answers Laux's requirement of expertise relevant to the opinion. Mot. at 20:11–18 (quoting *In re Zicam Cold Remedy Marketing, Sales Practices, and Products Liability Litigation*, 2011 WL 798898, at *12 (D. Ariz. Feb. 24, 2011)); Mot. at 19:22–25 (quoting *Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1100–01 (C.D. Cal. 2017)).

**3. Arcadia's FDA-Monograph Objection Provides No Basis to Strike Dr. Bogyo's Independent Scientific Analysis.**

Plaintiff does not rely on Bogyo's FDA-compliance opinion for certification; the unlawful-UCL theory rests on FAL and CLRA violations. MCC 5:1–8; 8:13–19; 21:17–21. Arcadia's monograph objection does not undermine his separate scientific analysis of molecular properties, published research, and nail delivery. Bogyo Rep. 2:19–28; 7–18; Bogyo Dep. 100:21–101:20. *Silicone Gel* rejected FDA unfamiliarity as a basis to exclude supported chemical-testing testimony. 318 F. Supp. 2d at 902. Any limitation on regulatory legal conclusions should preserve the independently supported scientific opinions. *Hangarter*, 373 F.3d at 1016.



WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

### 4. Bogyo's Opinion Addresses a Common Question Central to Certification

Bogyo addresses the shared ingredient and nail-delivery barrier; acknowledged skin benefits do not establish the disputed nail-treatment benefit. Bogyo Rep. 7:1–18; 11:18–14:13; 18:13–21. The Court should deny exclusion of his scientific opinions.

## IV. CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's motion in its entirety.

Dated: September 15, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*

Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach

*Attorneys for Plaintiffs and the Putative Classes*

WILSHIRE LAW FIRM, PLC
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for Plaintiff Megan Wheeler, certifies that the memorandum of points and authorities contains 6,814 words, as counted by the word-processing program used to prepare it, including the footnote, and complies with the word limit of Local Rule 11-6.1.

Dated: September 15, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho
*Attorneys for Plaintiffs and the Proposed Class*