Thiago M. Coelho (SBN 324715)
*thiago.coelho@wilshirelawfirm.com*
Lauren Lendzion (SBN 239184)
*lauren.lendzion@wilshirelawfirm.com*
Chumahan B. Bowen (SBN 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach (SBN 281404)
*jennifer.leinbach@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARCADIA CONSUMER HEALTHCARE, INC. a Delaware corporation,<br><br>Defendant. | Case No.: 8:24-cv-02657-JDE<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ARCADIA CONSUMER HEALTHCARE INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 8, 2026<br>Time: 10:00 a.m.<br>USDC Judge: John D. Early<br>Courtroom: 6A<br><br>Complaint Filed: 12/06/2024<br>Class Discovery Cutoff: 05/12/2026<br>Fact Discovery Cutoff: 12/28/2026<br>Pretrial Conf.: 05/21/2027<br>Trial Date: 06/02/2027 |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 3

A. Plaintiffs Have Alleged Standing for Injunctive Relief .......... 3

1. Plaintiffs Have Both Stated that They Would Purchase the Product Again .......... 3

2. That Plaintiffs Needed Other Remedies Does Not Preclude Future Use .......... 5

3. That Plaintiffs' Future Purchases Depend on the Product's Formulation or Label Changing Does Not Preclude Injunctive Relief .......... 6

B. The Express Warranty Claim Presents Triable Issues .......... 8

1. The Fungi-Nail Product Label Representations Created an Express Warranty Because they were Misleading to a Reasonable Consumer .......... 8

2. Arcadia's Hidden Disclaimers Cannot Negate its Express Warranty .......... 10

3. Whether Fungi-Nail Products Treat Skin Fungal Infections is Irrelevant .......... 11

V. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

CASES Page(s)

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) .................... 3

*Armstrong v. Davis*
275 F.3d 849 (9th Cir. 2001) .................... 6

*Brady v. Bayer Corp.*
26 Cal. App. 5th 1156 (2018) .................... 2, 11

*Caldwell v. Nordic Nats., Inc.*
709 F. Supp. 3d 889 (N.D. Cal. 2024) .................... 12

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) .................... 7-8

*Cordes v. Boulder Brands USA, Inc.*
2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) .................... 7

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) .................... 1, 3-4, 6, 8

*Elsayed v. Maserati N. Am., Inc.*
215 F. Supp. 3d 949 (C.D. Cal. 2016) .................... 11

*Fundin v. Chi. Pneumatic Tool Co.*
152 Cal. App. 3d 951 (1984) .................... 2, 11

*Hadley v. Kellogg Sales Co.*
273 F. Supp. 3d 1052 (N.D. Cal. 2017) .................... 10

*Hauter v. Zogarts*
14 Cal. 3d 104 (1975) .................... 2, 10

*In re ConAgra Foods, Inc.*
90 F. Supp. 3d 919 (C.D. Cal. 2015) .................... 8

# TABLE OF AUTHORITIES

CASES (continued) Page(s)

*In re SanDisk SSDs Litig.*
736 F. Supp. 3d 786 (N.D. Cal. 2024) .......... 7

*Keith v. Buchanan*
173 Cal. App. 3d 13 (Ct. App. 1985) .......... 8

*Krommenhock v. Post Foods, LLC*
255 F. Supp. 3d 938 (N.D. Cal. 2017) .......... 7

*Krommenhock v. Post Foods, LLC*
334 F.R.D. 552 (N.D. Cal. 2020) .......... 1, 4, 6-7

*LeGrand v. Abbott Lab'ys*
655 F. Supp. 3d 871 (N.D. Cal. 2023) .......... 10

*Levit v. Nature's Bakery, LLC*
767 F. Supp. 3d 955 (N.D. Cal. 2025) .......... 7

*Maneely v. General Motors Corp.*
108 F.3d 1176 (9th Cir. 1997) .......... 10

*Schertzer v. Samsonite Co. Stores, LLC*
2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) .......... 7

*Scott v. Saraya USA, Inc.*
675 F. Supp. 3d 1040 (N.D. Cal. 2023) .......... 1, 9

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*
673 F. Supp. 3d 1083 (N.D. Cal. 2023) .......... 7

*Valentine v. Crocs, Inc.*
783 F. Supp. 3d 1204 (N.D. Cal. 2025) .......... 10

*Vicious Brands, Inc. v. Face Co., LLC*
2026 WL 276178 (N.D. Cal. Feb. 3, 2026) .......... 8

## TABLE OF AUTHORITIES

CASES (continued) Page(s)

*Vitello v. Natrol, LLC*
50 F.4th 689 (8th Cir. 2022) .................... 11

*Whiteside v. Kimberly Clark Corp.*
108 F.4th 771 (9th Cir. 2024) .................... 2, 11

*Williams v. Gerber Prods. Co.*
552 F.3d 934 (9th Cir. 2008) .................... 11

*Zeiger v. WellPet LLC*
526 F. Supp. 3d 652 (N.D. Cal. 2021) .................... 7

STATUTES AND RULES

Cal. Com. Code § 2-313(1)(a), (b) .................... 8

Cal. Com. Code § 2-313(2) .................... 1, 8

Fed. R. Civ. P. 56(a) .................... 3

Local Rule 11-6.1 .................... 13

Local Rule 11-6.2 .................... 13

Missouri Merchandising Practices Act .................... 11

Uniform Commercial Code .................... 11

OTHER AUTHORITIES

Antonella Tosti & Boni E. Elewski,
*Onychomycosis: Practical Approaches to Minimize Relapse and Recurrence*,
2 Skin Appendage Disorders 83 (2016) .................... 5-6

**I. INTRODUCTION**

Defendant Arcadia Consumer Healthcare, Inc. ("Arcadia") asks the Court to hold that Plaintiffs Eric Hayde and Megan Wheeler ("Plaintiffs") lack standing for injunctive relief, despite that: (1) Hayde testified that he still has lingering toenail fungus and (2) both Plaintiffs affirmatively stated that they would consider purchasing Fungi-Nail products again should Arcadia's formulation or labeling change. This is more than sufficient to confer future injury standing. *See, e.g. Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (consumers have standing for injunctive relief where they "might purchase the product in the future" but are currently "unable to rely on the product's advertising or labeling"); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 573 (N.D. Cal. 2020) (denying summary judgment where plaintiff testified it was "possible" that he'd purchase the product again). Arcadia cannot prevail on summary judgment by mischaracterizing Plaintiffs' testimony.

Arcadia also seeks summary judgment for Plaintiffs' express warranty claim, arguing its product labeling never expressly promised to kill toenail fungus. But the lack of an exact, literally false statement does not defeat an express warranty claim. Cal. Com. Code §2-313(2) ("[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee.'"). Here, an express warranty arose when Arcadia made affirmations of fact, promises or descriptions that would tend to mislead reasonable consumers into believing that the Fungi-Nail products would effectively kill toenail fungus. *Scott v. Saraya USA, Inc.,* 675 F. Supp. 3d 1040, 1050 (N.D. Cal. 2023) (express warranty claims may proceed where they meet the reasonable consumer test).

Whether Arcadia disclaimed toenail fungus on its back or side labels, whether Plaintiffs read those disclaimers, or whether they used the product with the intention of treating toenail fungus is irrelevant and does not resolve the claim as a matter of law. Arcadia cannot take back what it promised on the front label by pointing to

fine print hidden away elsewhere. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024); *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (2018). Furthermore, "[b]ecause a disclaimer or modification is inconsistent with an express warranty, words of disclaimer give way to words of warranty" and thus, "[a]ny disclaimer or modification must be strictly construed against the seller." *Hauter v. Zogarts*, 14 Cal. 3d 104, 119 (1975); *see also Fundin v. Chi. Pneumatic Tool Co.*, 152 Cal. App. 3d 951, 958 (1984) (disclaimers which are inconsistent with statements of warranty have no effect).

Arcadia's Motion for Partial Summary Judgment (the "Motion") should be denied in full.

## II. FACTUAL BACKGROUND

Plaintiffs are consumers who required a topical antifungal treatment for their toenails. Plaintiffs purchased Arcadia's "Fungi-Nail" "Anti-Fungal Liquid" product (the "Product"). The Product displays broad efficacy representations, including "FUNGI-NAIL," "ANTI-FUNGAL LIQUID," "Kills Fungus," "Clinically Proven to Cure and Prevent Fungal Infections," coupled with a prominent image of a human toenail on its front label. ECF 101-4 at 2.

Before purchasing the Product, Plaintiffs both looked at the "Fungi-Nail" name and the broad anti-fungal claims and toenail imagery and concluded, as reasonable consumers acting reasonably under the circumstances, that the Product would effectively treat toenail fungus. Declaration of Thiago M. Coelho in Support of Plaintiffs' Opposition ("Coelho Decl."), Ex. 1 (Deposition of Eric Hayde ["Hayde Tr."] at 91:4-23, 95:15-23 ("you've got a toenail right here and you've got it "kills fungus…So the average person like myself is going to be led to believe that it's going to kill all fungus, not just some fungus."); Ex. 2 (Deposition of Megan Wheeler ["Wheeler Tr."] at 59:4–5 ("Because it said it killed fungus. It's Fungi-Nail."), 200:6-11 (testifying that she relied on the "Fungi-Nail" name and that it had a "picture of a toenail that is not a normal color"); *see also* ECF 94 at ¶¶3-7.

The Product did not treat Plaintiffs' toenail fungus. Hayde used the liquid nightly for three months and experienced no improvement. Hayde Tr. 93:18–25. Wheeler applied the product to her nails twice daily for approximately six weeks before stopping because she also experienced no improvement. Wheeler Tr. 101:24–102:22.

Plaintiffs' expert evidence confirms the lack of efficacy. Fungi-Nail products are formulated with 1% tolnaftate, which does not penetrate the nail barrier and thus cannot effectively treat nail fungus. ECF 97-09 at 7-18. Likewise, Plaintiffs' consumer expert confirms that Plaintiffs acted reasonably. A reasonable consumer presented with the Fungi-Nail name, its broad antifungal efficacy claims, and its toenail imagery would be misled just as Plaintiffs were. ECF 97-10 at ¶¶67-68. Additionally, a reasonable consumer when presented with those unambiguous efficacy claims would not look to the Products' back and side labels for contrary information. *Id.*

## III. LEGAL STANDARD

Summary judgment is proper only when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). At summary judgment, a court may not weigh competing evidence or resolve reasonable competing inferences against the nonmovant. *Id.*

## IV. ARGUMENT

### A. Plaintiffs Have Alleged Standing for Injunctive Relief

1. <u>Plaintiffs Have Both Stated that They Would Purchase the Product Again</u>

A previously deceived consumer has standing to assert a claim to seek an injunction against false advertising or labeling, even if they now know or suspect the advertising was false at the time of the original purchase, because they "will be

unable to rely on the product's advertising or labeling" or "might purchase the product in the future" because they "may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 969-70.

At summary judgment, courts will credit a plaintiff's testimony and allegations indicating that they would consider purchasing a product again as sufficient for standing. *Krommenhock*, 334 F.R.D. at 573. A plaintiff need not commit to making a future purchase to state a threat of real or immediate injury. Even "ambiguous testimony" merely indicating that "it [is] possible" that a plaintiff would purchase the product again suffices. *Id.* (denying summary judgment for injunctive relief and noting that "future intent can be explored at trial," and "on a full record").

Arcadia complains that "there is no evidence in the record that either Plaintiff would ever purchase Fungi-Nail again." Mot. at 10. That is false. Both Hayde and Wheeler testified that they would consider purchasing Fungi-Nail Products again in the future should its labeling or formulation change, which is all that is required for standing under *Davidson* and *Krommenhock*.

Hayde testified that he would purchase Fungi-Nail again if its labeling was changed to be more accurate or if it was reformulated to effectively kill nail fungus. Hayde Tr. at 147:19–149:11 ("What I mean is if it actually kills toenail fungus and it's labeled – if it's not so misleading, if I had toenail fungus, I would buy it again.").[1] Likewise, Wheeler expressed a strong preference for using name branded topical treatments like Fungi-Nail rather than having to use home remedies and

[1] Arcadia mischaracterizes Hayde's testimony. Hayde never testified that he would never purchase Fungi-Nail again. He simply testified that he did not purchase the product again after using it for three months because it did not kill his toenail fungus. Hayde Tr. 93:24-94:3 (Q: Okay. And what happened after three months? A: Nothing. It did nothing. Q: Did you buy another bottle of Fungi-Nail? A: I wouldn't waste my money. It didn't do anything."). He went on to testify that he would purchase Fungi-Nail again should it be reformulated or relabeled.

would purchase it again should it be accurately labeled or reformulated. Wheeler Tr. at 59:18-20 ("I knew Fungi-Nail was a name brand product. That's why I stuck with that one."); 105:3-13 ("[Bleach is] a harsh chemical. I wanted a name brand product. Being an adult and actually buy appropriate medication for my feet instead of using a home remedy"); *see also* ECF 94 at ¶¶9-11 ("I continue to want an effective nail-fungus product. I would consider purchasing Fungi-Nail again if Arcadia accurately labeled it or reformulated it to treat nail fungus."). Both have satisfied standing for injunctive relief.

2. <u>That Plaintiffs Needed Other Remedies Does Not Preclude Future Use</u>

Nevertheless, Arcadia contends that Plaintiffs are not at risk of future injury because they sought other remedies which Arcadia contends solved their toenail fungus issues. Mot. at 10-11.

As an initial matter, Arcadia mischaracterizes Hayde's testimony, who stated that his toenail fungus *has not been fully cured*. After suffering from chronic toenail fungus for over 20 years, Hayde was recently prescribed a prescription-strength antifungal designed to treat nail fungus. Hayde Tr. at 78:10-13; 82:19. However, after experiencing substantial side effects impacting his liver health, Hayde had to stop taking that medication before all of his nail fungus had been eliminated. *Id.* at 82:20–83:9 ("I just have residual [fungus] at the tips"). As a result, Hayde still suffers from lingering toenail fungus, which cannot be treated by other means and which can continue to grow now that his treatment has stopped. *Id.* at 83:8-14 (testifying that "[n]othing except the pill" would kill the remaining fungus).

Regardless, even if Hayde's toenail fungus had been fully eliminated, that does not mean that he will never suffer from toenail fungus again in the future. Indeed, toenail fungus is a condition with a high recurrence rate and can easily return even after successful treatment. *See* Antonella Tosti & Boni E. Elewski, *Onychomycosis: Practical Approaches to Minimize Relapse and Recurrence*, 2 Skin Appendage Disorders 83, 83–87 (2016), https://doi.org/10.1159/000448056.

(noting relapse/reinfection rate of 20-25% for onychomycosis following initial successful therapy, with recurrence rates of up to 53%); *see also Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (an injury is likely to recur if "there is an implicit likelihood of its repetition in the near future").

Because Hayde cannot rely on his previous prescription, he still requires an effective antifungal to treat the lingering fungus on his toenails and to prevent further recurrences. Likewise, while Plaintiff Wheeler believes that she was able to eliminate her nail fungus using bleach, she would rather purchase a name-brand medication that effectively treats nail fungus in the future instead of resorting to an inconvenient, harsh chemical as a home remedy. Wheeler Tr. 105:3-13; ECF 94 at ¶¶9-11. Thus, she too would like to use Fungi-Nail Products in the future should she fall into the substantial percentage of individuals whose nail fungus returns after their first infection.

3. <u>That Plaintiffs' Future Purchases Depend on the Product's Formulation or Label Changing Does Not Preclude Injunctive Relief</u>

Arcadia also contends that Plaintiffs' future purchase intent is too conditional or speculative to confer standing because it is partially contingent on factors outside of their control: such as whether Arcadia changes its labeling, whether those changes are sufficient, and whether they need or decide to purchase the product after those changes. Mot. at 11-12.

However, courts interpreting *Davidson* have expressly rejected this same argument and have declined to require a plaintiff to commit to a future purchase decision to have standing for injunctive relief. *See Krommenhock,* 334 F.R.D. at 573. Instead, courts routinely hold that plaintiffs satisfy standing where, like here, they state that they may purchase a product again if it were reformulated or its labeling changed to no longer be deceptive. *See, e.g., Davidson*, 889 F.3d at 970 (upholding allegations that plaintiff "might purchase" the product again depending on whether its formulation or labeling is updated); *Krommenhock*, 334 F.R.D. at

572-73 (denying summary judgment where "it [is] possible" that a plaintiff would purchase the product again). In *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools,* 673 F. Supp. 3d 1083, 1093 (N.D. Cal. 2023), the court explained:

> Plaintiff alleges she "would consider purchasing Defendant's milk again if Defendant were to treat cows in a manner consistent with its advertising." This allegation is sufficient to confer Article III standing.

*Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 688 (N.D. Cal. 2021) (standing for injunctive relief satisfied where plaintiff "testified that he would be 'open to' purchasing the Wellness Products again if his issues with it were remedied."); *Levit v. Nature's Bakery, LLC*, 767 F. Supp. 3d 955, 972 (N.D. Cal. 2025) (same); *In re SanDisk SSDs Litig.*, 736 F. Supp. 3d 786, 791 (N.D. Cal. 2024) (plaintiff had standing for injunctive relief where he alleged that he "may be interested in purchasing Defendants' products in the future, so long as Defendants fix the Defects and properly label their products going forward").

Arcadia's caselaw for its contrary proposition is easily distinguishable. *Cordes v. Boulder Brands USA, Inc.* dismissed injunctive relief premised solely on its plaintiff's purchase history without any allegations about their future purchasing intent. No. CV 18-6534 PSG (JCX), 2018 WL 6714323, at *8 (C.D. Cal. Oct. 17, 2018). *Schertzer v. Samsonite Co. Stores, LLC* dismissed injunctive relief where plaintiff did not allege any future desire to purchase defendant's products, only to visit its stores. No. 19-CV-639 JLS (MSB), 2020 WL 4281990, at *11 (S.D. Cal. Feb. 25, 2020). *Krommenhock v. Post Foods, LLC* rejected an injunctive relief claim because its plaintiffs' future purchasing intent was conditioned in part on a sugar reduction or a price decrease of the challenged product, both of which were outside the scope of their requested labeling change. 255 F. Supp.3d at 938, 968 (N.D. Cal. 2017). None are applicable here.

The remaining caselaw is irrelevant. *Clapper v. Amnesty Int'l USA* was not even a consumer case but rather involved government surveillance of non-U.S.

citizens. 568 U.S. 398 (2013). Likewise, *Vicious Brands, Inc. v. Face Co., LLC* was a trademark infringement case between skincare brands. No. 24-CV-04996-LJC, 2026 WL 276178, at *6-7 (N.D. Cal. Feb. 3, 2026). Neither even discuss future consumer purchasing intent.

Here again, both Plaintiffs have testified that they would buy Fungi-Nail products again should they be reformulated or properly labeled. *See* Hayde Tr. at 147:19–149:11; ECF 94 at ¶¶9-11. That is the exact same purchasing intent upheld by *Davidson* and its progeny. Plaintiffs therefore have standing to seek injunctive relief.

### B. The Express Warranty Claim Presents Triable Issues

1. <u>The Fungi-Nail Product Label Representations Created an Express Warranty Because they were Misleading to a Reasonable Consumer</u>

To prevail on a breach of express warranty claim, a plaintiff must show (1) an affirmation of fact, promise, or description of the goods; (2) that it formed part of the basis of the bargain; and (3) that the warranty was breached. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (citing cases). "Proof of reliance on specific promises or representations is not required." *Id.* Instead, the question of breach hinges on whether the product features the seller promised—and the consumer paid for—were not delivered. *Id.*

Cal. Com. Code §2-313(1)(a) and (b) provide that any affirmation of fact or promise, as well as any description of the goods at issue, becomes part of the basis of the bargain between a buyer and seller and creates an express warranty that the goods will conform to the affirmation or promise. Section 2-313(2) separately provides that "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." Finally, California courts "liberally constru[e] affirmations of quality made by sellers in favor of injured consumers." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (Ct. App. 1985).

Here, Plaintiffs satisfy all three elements. The front label of the Fungi-Nail Products contain affirmations of fact, promises and descriptions—including "FUNGI-NAIL," "ANTI-FUNGAL LIQUID," "Kills Fungus," "Clinically Proven to Cure and Prevent Fungal Infections" and prominent toenail imagery—which together convey to a reasonable consumer that it can effectively kill toenail fungus. ECF 101-4 at 2; *see also* ECF 97-10 at ¶¶67-68 ("the combined effect of the product name, front-label claims, imagery, and visual hierarchy is likely to mislead consumers into believing the primary U.S. FUNGI-NAIL products treat nail fungus or a nail-related fungal problem."). Those affirmations formed part of the basis of the bargain between Plaintiffs and Arcadia, creating an express warranty that was breached when the Product failed to live up to its broad antifungal promises.

Arcadia argues it could not have so warranted because it never made any promise specifically stating that the Product would treat toenail fungus. Mot. at 13. But Arcadia's affirmations did not need to be literally false to create an express warranty. All that is required is that they are misleading to reasonable consumers. For example, *Scott v. Saraya USA, Inc.* upheld express warranty claims pertaining to "No Sugar Added Keto Granola Cinnamon Almond Crunch," which claimed "no sugar added" and "sweetened with monk fruit" on its front label, because reasonable consumers were misled by those statements into believing that the product was "solely or predominantly sweetened with monk fruit." 675 F. Supp. 3d 1040, 1046 (N.D. Cal. 2023). In so doing, the *Scott* court specifically rejected the same argument that Arcadia raises here. It found that the express warranty claim survived under the reasonable consumer test, even despite that defendant never expressly stated "solely or predominantly sweetened by monk fruit." *Id.* at 1050.

So too here. The Fungi-Nail Product claims mislead reasonable consumers into believing that it effectively kills toenail fungus. That is sufficient to sustain an

express warranty claim.[2] *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017) ("[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty.") (citing cases); *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 895-97 (N.D. Cal. Feb. 8, 2023) (finding that because the plaintiff's consumer protection claims were sufficient under the reasonable consumer test, her breach of express warranty could also proceed).

*Maneely v. General Motors Corp.* does not compel a different result. That case did not involve product labeling, but rather television advertisements showing people riding in cargo beds, which the court found insufficient to constitute a warranty that doing so was safe. 108 F.3d 1176, 1181 (9th Cir. 1997). *Valentine v. Crocs, Inc*. is inapposite for the same reason; its court found television advertisements depicting Crocs shoes near wet conditions insufficient to warrant that they would not shrink after water exposure. 783 F. Supp. 3d 1204, 1212 (N.D. Cal. 2025). Neither case stands for Arcadia's proposition that misleading product labeling cannot create an express warranty claim without including a literally false claim.

2. <u>Arcadia's Hidden Disclaimers Cannot Negate its Express Warranty</u>

Next, Arcadia argues that no express warranty existed because it expressly disclaimed nail fungus on the Products' back and side labels. Mot. at 13-14. However, California law makes clear that "[b]ecause a disclaimer or modification is inconsistent with an express warranty, words of disclaimer give way to words of warranty unless some clear agreement between the parties dictates the contrary relationship" and thus, "[a]ny disclaimer or modification must be strictly construed against the seller." *Hauter*, 14 Cal. 3d at 119. Accordingly, an express warranty that

[2] This Court has already found that Plaintiffs' claims meet the reasonable consumer standard and that doing so is sufficient to sustain an express warranty claim. See ECF 31 at 18-19.

a product has certain properties—such as the Product claims at issue here—cannot be "disclaimed or excluded" by additional language purporting to modify or disclaim the warranty. *Fundin*, 152 Cal. App. 3d at 958 (noting that the UCC "seeks to protect the buyer from unexpected and unbargained for language of disclaimer by denying effect to such language when inconsistent with language of express warranty.").

This is particularly the case here because neither Hayde nor Wheeler, being reasonable consumers presented with unambiguous product claims, viewed the back or side label. Hayde Tr. at 198:21-199:10; Wheeler Tr. at 58:15-59:5. Arcadia's disclaimers, which existed only on those labels, cannot "absolve a defendant of liability for deceptive statements on the front label." *Whiteside*, 108 F.4th at 778 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *see also Brady,* 26 Cal. App. 5th at 1172 ("You cannot take away in the back fine print what you gave on the front in large conspicuous print.").

Here again, Arcadia's caselaw is easily distinguishable. *Elsayed v. Maserati N. Am., Inc.* found no express warranty where "[n]othing in the [vehicle's] materials even hints" at the promise plaintiff alleged had been made. 215 F. Supp. 3d 949, 960 (C.D. Cal. 2016). *Vitello v. Natrol, LLC* fares even worse; it did not even discuss express warranties but rather affirmed summary judgment for claims brought under the Missouri Merchandising Practices Act—a law from an entirely different state which is obviously not at issue here. 50 F.4th 689 (8th Cir. 2022).

3. <u>Whether Fungi-Nail Products Treat Skin Fungal Infections is Irrelevant</u>

Finally, Arcadia contends that Plaintiffs' express warranty claims fail because Plaintiffs cannot show that the product does not treat athlete's foot or ringworm. Mot. at 14. This is of no import. Arcadia promised, and Plaintiffs bargained for, a product that would kill fungus generally—including nail fungus—not only fungus in the skin around the nails. Plaintiffs then lost part of their bargains with Arcadia when they received a product that did not kill toenail fungus as

promised on the front. That Arcadia's promises were half true does not cure its breach or dispel Plaintiffs' resulting injury. *See Caldwell v. Nordic Nats., Inc.*, 709 F. Supp. 3d 889, 906 (N.D. Cal. 2024) ("To this end, whether a plaintiff was promised 750 mg of Vitamin C per gummy, but received half that amount per gummy or whether a plaintiff was promised that the product contained low sugar but received a product with a high amount of sugar—in both instances a promise would have been made that was not kept.").

**V. CONCLUSION**

In light of the foregoing, Plaintiffs respectfully request that the Court deny Arcadia's Motion in its entirety.

Dated: September 17, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach
*Attorneys for Plaintiffs and the Putative Classes*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that the memorandum of points and authorities contains 3,694 words, as counted by the word-processing program used to prepare it, including the footnotes, and complies with the word limit of Local Rule 11-6.1.

Dated: September 17, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho
*Attorneys for Plaintiffs and the Putative Class*