Thiago M. Coelho (SBN 324715)
*thiago.coelho@wilshirelawfirm.com*
Lauren Lendzion (SBN 239184)
*lauren.lendzion@wilshirelawfirm.com*
Chumahan B. Bowen (SBN 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach (SBN 281404)
*jennifer.leinbach@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Putative Classes*

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

ARCADIA CONSUMER HEALTHCARE, INC., a Delaware corporation,

Defendant.

Case No.: 8:24-cv-02657-JDE

**PLAINTIFF MEGAN WHEELER'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION [ECF No. 92 & 113]**

Date: October 8, 2026
Time: 10:00 a.m.
USDC Judge: John D. Early
Courtroom: 6A

Complaint Filed: 12/06/2024
Class Discovery Cutoff: 05/12/2026
Fact Discovery Cutoff: 12/28/2026
Pretrial Conf.: 05/21/2027
Trial Date: 06/02/2027

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. PLAINTIFF'S EVIDENTIARY OBJECTIONS ........ 5

III. ARCADIA'S PACKAGING IS UNIFORM AND APPEARS IN ALL RETAIL CHANNELS ........ 5

IV. ARCADIA'S OWN RECORDS CORROBORATE THE COMMON MISLEADING MESSAGE ........ 8

V. ALL RULE 23 REQUIREMENTS FOR CERTIFICATION ARE MET ........ 10

A. Commonality and predominance are established. ........ 10

1. The nail-treatment representation is material ........ 10

2. Deception and reliance can be determined through common evidence. ........ 13

3. Speculative commercial purchases do not defeat CLRA standing. ........ 17

4. Bell identifies a common measure of injury and damages. ........ 18

B. Wheeler is typical and adequate. ........ 19

1. Her purchase and reliance match the class theory. ........ 19

2. Arcadia's consumer records refute its portrayal of an atypical experience. ........ 19

3. Purchase for nail discoloration creates no antagonistic interest. ........ 20

4. The supported premium remedy creates no demonstrated conflict. ........ 21

C. The superiority factors favor class adjudication. ........ 22

D. The requested injunctive class satisfies Rule 23(b)(2). ........ 23

E. Alternatively, defined issue certification would advance the litigation. ........ 24

VI. CONCLUSION ........ 25

VII. CERTIFICATE OF COMPLIANCE .......................................................... 26

# TABLE OF AUTHORITIES

CASES Page(s)

*Algarin v. Maybelline, LLC*
300 F.R.D. 444 (S.D. Cal. 2014) ........................................................ 24

*Ang v. Bimbo Bakeries USA, Inc.*
2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) ........................................ 24

*Astiana v. Kashi Co.*
291 F.R.D. 493 (S.D. Cal. 2013) ........................................................ 20, 21

*Bailey v. Rite Aid Corp.*
338 F.R.D. 390 (N.D. Cal. 2021) ........................................................ 10, 11

*Ballard v. Equifax Check Services, Inc.*
158 F. Supp. 2d 1163 (E.D. Cal. 2001) ................................................ 17-18

*Beck-Ellman v. Kaz USA, Inc.*
283 F.R.D. 558 (S.D. Cal. 2012) ........................................................ 3, 19

*Berger v. Home Depot USA, Inc.*
741 F.3d 1061 (9th Cir. 2014) ............................................................ 15-16

*Brady v. Bayer Corp.*
26 Cal. App. 5th 1156 (2018) ............................................................ 15, 19-20

*Briseno v. ConAgra Foods, Inc.*
844 F.3d 1121 (9th Cir. 2017) ............................................................ 4, 18, 22-23

*Carrera v. First American Home Buyers Protection Co.*
702 F. App'x 614 (9th Cir. 2017) ........................................................ 16

*Comcast Corp. v. Behrend*
569 U.S. 27 (2013) .............................................................................. 3, 19

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) .............................................................. 4, 23

## TABLE OF AUTHORITIES

CASES (continued) Page(s)

*Davis v. Lab'y Corp. of Am. Holdings*
No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024) .................................. 4

*Downey v. Public Storage, Inc.*
44 Cal. App. 5th 1103 (2020) .......................................................................... 16

*Dunn v. Costco Wholesale Corp.*
2021 WL 4205620 (C.D. Cal. July 30, 2021) ................................................. 12

*DZ Rsrv. v. Meta Platforms, Inc.*
96 F.4th 1223 (9th Cir. 2024) .......................................................................... 13

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970 (9th Cir. 2011) ............................................................ 3-5, 19, 24

*Evans v. Skolnik*
997 F.3d 1060 (9th Cir. 2021) ............................................................................ 1

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*
326 F.R.D. 592 (N.D. Cal. 2018) ............................................................ 14-15

*FTC v. LendingClub Corp.*
2020 WL 2838827 (N.D. Cal. June 1, 2020) ........................................ 9-10, 17

*Gunaratna v. Dennis Gross Cosmetology LLC*
2023 WL 2628620 (C.D. Cal. Mar. 15, 2023) ............................................... 12

*Hadley v. Kellogg Sales Co.*
324 F. Supp. 3d 1084 (N.D. Cal. 2018) .......................................................... 16

*In re Arris Cable Modem Consumer Litig.*
327 F.R.D. 334 (N.D. Cal. 2018) ............................................................ 13-14

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*
609 F. Supp. 3d 942 (N.D. Cal. 2022) .............................................................. 3

## TABLE OF AUTHORITIES

CASES (continued) Page(s)

*In re STEC Inc. Securities Litigation*
2012 WL 6965372 (C.D. Cal. Mar. 7, 2012) .......... 21

*In re Tobacco Cases II*
240 Cal. App. 4th 779 (2015) .......... 21

*Johnson v. General Mills, Inc.*
275 F.R.D. 282 (C.D. Cal. 2011) .......... 14

*Johnson v. Harley-Davidson Motor Co. Group, LLC*
285 F.R.D. 573 (E.D. Cal. 2012) .......... 18

*Kennedy v. Natural Balance Pet Foods, Inc.*
361 F. App'x 785 (9th Cir. 2010) .......... 18

*Kha v. Tilray Brands, Inc.*
No. 2:25-cv-10630-HDV-BFM, ECF No. 32 (C.D. Cal. July 17, 2026) .......... 15

*Lytle v. Nutramax Laboratories, Inc.*
114 F.4th 1011 (9th Cir. 2024) .......... 2, 8, 11-13, 19-20

*Martin v. Monsanto Co.*
2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) .......... 2, 11, 20, 23

*Mazza v. American Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012) .......... 16

*Minkler v. Kramer Laboratories, Inc.*
2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) .......... 1, 4, 11, 19, 21-22

*Moheb v. Nutramax Labs. Inc.*
2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) .......... 20, 24

*Moore v. Mars Petcare US, Inc.*
966 F.3d 1007 (9th Cir. 2020) .......... 11, 19-20

## TABLE OF AUTHORITIES

CASES (continued) Page(s)

*Munoz v. Alorica, Inc.*
2026 WL 2199195 (9th Cir. July 30, 2026) .................................................... 21

*Nguyen v. Nissan N. Am., Inc.*
932 F.3d 811 (9th Cir. 2019) ........................................................... 1, 21-22

*Noohi v. Johnson & Johnson Consumer Inc.*
146 F.4th 854 (9th Cir. 2025) ........................................................................ 18

*Oh v. Catalina Snacks, Inc.*
764 F. Supp. 3d 903 (C.D. Cal. 2025) ............................................................ 15

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*
31 F.4th 651 (9th Cir. 2022) (en banc) ........................................................... 17

*Otto v. Abbott Laboratories, Inc.*
2015 WL 12776591 (C.D. Cal. Jan. 28, 2015) ................................................ 12

*Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharmaceutical Co.*
674 F. Supp. 3d 799 (C.D. Cal. 2023) ............................................................ 12

*Parsons v. Ryan*
754 F.3d 657 (9th Cir. 2014) .......................................................................... 24

*Pierce-Nunes v. Toshiba America Information Systems, Inc.*
2016 WL 5920345 (C.D. Cal. June 23, 2016) ................................................. 12

*Reitman v. Champion Petfoods USA, Inc.*
830 F. App'x 880 (9th Cir. 2020) ................................................................... 25

*Ries v. Arizona Beverages USA LLC*
287 F.R.D. 523 (N.D. Cal. 2012) ................................................................... 24

*Roley v. Google LLC*
2020 WL 8675968 (N.D. Cal. July 20, 2020) ................................................. 16

## TABLE OF AUTHORITIES

CASES (continued) Page(s)

*Small v. Allianz Life Insurance Co. of North America*
122 F.4th 1182 (9th Cir. 2024) .......... 19

*Stearns v. Ticketmaster Corp.*
655 F.3d 1013 (9th Cir. 2011) .......... 12

*Trujillo v. UnitedHealth Grp., Inc.*
2019 WL 493821 (C.D. Cal. Feb. 4, 2019) .......... 1, 4, 22

*Valentino v. Carter-Wallace, Inc.*
97 F.3d 1227 (9th Cir. 1996) .......... 25

*Van v. LLR, Inc.*
61 F.4th 1053 (9th Cir. 2023) .......... 23

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) .......... 4, 24

*Walters v. Reno*
145 F.3d 1032 (9th Cir. 1998) .......... 24

*Webb v. Carter's Inc.*
272 F.R.D. 489 (C.D. Cal. 2011) .......... 16, 23

*White v. Symetra Assigned Benefits Service Co.*
104 F.4th 1182 (9th Cir. 2024) .......... 15

*Whiteside v. Kimberly-Clark Corp.*
108 F.4th 771 (9th Cir. 2024) .......... 15, 19-20

*Williams v. Gerber Products Co.*
552 F.3d 934 (9th Cir. 2008) .......... 15, 19-20

## TABLE OF AUTHORITIES

Page(s)

STATUTES AND RULES

Cal. Civ. Code § 1761(d) .......... 17

Fed. R. Civ. P. 23 .......... 2, 10

Fed. R. Civ. P. 23(b)(2) .......... 1, 4, 23-24

Fed. R. Civ. P. 23(b)(3) .......... 4-5, 23-24

Fed. R. Civ. P. 23(b)(3)(A)-(C) .......... 2, 22

Fed. R. Civ. P. 23(c)(4) .......... 1, 24

C.D. Cal. L.R. 11-6.1 .......... 26

## I. INTRODUCTION

This case is tailor-made for class certification. It seeks to hold Arcadia accountable for misleading California consumers about products called "FUNGI-NAIL" that cannot treat nail fungus. Class action treatment is appropriate to allow consumers to recover from the deception Arcadia has profited from for years.

Arcadia leans heavily upon *Minkler v. Kramer Laboratories, Inc.*, 2013 WL 3185552 (C.D. Cal. Mar. 1, 2013), but that non-binding decision[1] is over ten years old and has been overridden by later Ninth Circuit authorities. Even Judge Walter, who authored *Minkler*, later rejected its freestanding ascertainability prerequisite. *See, e.g., Trujillo v. UnitedHealth Grp., Inc.*, 2019 WL 493821, at *3 (C.D. Cal. Feb. 4, 2019) (Walter, J.) ("Plaintiff need not demonstrate ascertainability or administrative feasibility in order for the Court to certify the class").

*Minkler* is also factually inapposite. *Minkler's* certification motion sought full refunds for the entire class, even those who purchased the product for athlete's foot or ringworm or who already received refunds. *Minkler*, 2013 WL 3185552, at *3. By contrast, Plaintiff here excludes refunded consumers and seeks price-premium damages attributable to Fungi-Nail's nail-efficacy claims suffered by every class member at the time of purchase, regardless of why they purchased it. *See, e.g., Nguyen v. Nissan N. Am., Inc.,* 932 F.3d 811, 821 (9th Cir. 2019) (price premium damages appropriately measured classwide damages even if individual class members may have valued the product the same). Furthermore, the *Minkler* plaintiff did not conduct a materiality survey and never sought to certify a Rule 23(b)(2) or 23(c)(4) class, whereas Plaintiff here does.

Arcadia also tries to use *Minkler* to drum up individualized issues, relying heavily on the argument that different information on pathways to purchase would

[1] Importantly, previous district court decisions are "not binding precedent in…the same judicial district, or even upon the same judge in a different case." *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021).

create mini trials. *See* Opp. at 11. But where, like here, a uniform and materially misleading marketing message is placed on a product's front label, variations on the consumer purchasing journey do not rebut materiality and reliance. *Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1011, 1034–38 (9th Cir. 2024) (that some class members may have considered information other than the packaging did not undermine reliance and materiality). Here again, Judge Walter now agrees. He later certified a labeling class where all class members were exposed to the same material misrepresentation, despite that class members "had varying reasons for purchasing" the product. *Martin v. Monsanto Co.*, 2017 WL 1115167, at *7-8 (C.D. Cal. Mar. 24, 2017) (Walter, J.).

Notably, Arcadia does not challenge numerosity, WLF's adequacy, or the superiority factors in Rule 23(b)(3)(A)–(C), and its attacks on the other Rule 23 elements do not demonstrate that Wheeler has not met her burden or undermine Plaintiff's evidence.

**Commonality and Predominance.** Arcadia begins with an unsupported premise: a consumer purchasing Fungi-Nail for athlete's foot or ringworm cannot also value nail-treatment capability. But willingness to buy for another benefit does not establish willingness to pay the same price without the disputed benefit. See Lytle, 114 F.4th at 1037 ("it is still more plausible that the consumers would have paid less had they known the truth"). Here, Plaintiff seeks the incremental price attributable to the represented nail benefit, while preserving the value of skin treatment. Bell Rep.[2] ¶¶ 40, 44, 53–59.

Wheeler is suited to represent all Fungi-Nail class members. Again, *Lytle* and *Martin* reject the premise that the existence of different online information necessarily defeats common deception when faced with a common, material misrepresentation.

---

[2] Unless stated otherwise, all defined terms shall have the same meanings as those set forth in Plaintiff's moving papers.

Arcadia suggests that the damages class may consist of commercial purchasers, which is far-fetched considering this is a consumer product for foot fungal infections. Further, commercial purchasers are easily distinguishable from ordinary consumers because they purchase products through business entities and in bulk quantities, both of which would be reflected in sales records. Nevertheless, should the Court find it necessary, Plaintiff proposes the below revision to the proposed class definition to exclude such purchasers:

> All natural persons residing in the State of California who purchased the liquid, ointment, pen, or spray Fungi-Nail products from December 6, 2020 to the present for personal, family, or household purposes, and not for business, commercial, or resale purposes.

As to damages, Bell's model compares market prices with and without the challenged representation, retaining the products' lawful benefits. Bell Rep. ¶¶ 40, 44, 53–59. That identifies the causal match *Comcast Corp. v. Behrend*, 569 U.S. 27, 35–38 (2013) requires. *See also* ECF 115 ("Plaintiff's Daubert Opp") at 6.

**Wheeler is Typical and Adequate.** Wheeler can represent both online and brick-and-mortar purchasers. *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566 (S.D. Cal. 2012) (finding typicality despite multiple different consumer products purchased at different venues because all made similar omissions); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 961, 963-64 (N.D. Cal. 2022) (finding typicality satisfied despite objections that certain representatives had never attempted online purchases because it was "a claim of the same nature."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9 (9th Cir. 2011) ("Differing factual scenarios resulting in a claim of the same nature as

other class members does not defeat typicality.”). In fact, Wheeler’s experience is nearly identical to hundreds of consumers who complained to Arcadia about its Fungi-Nail products. *Compare* Wheeler Dep. 58:6–23, 59:3–5 (explaining she purchased Fungi-Nail, “[b]ecause it said it killed fungus. It’s Fungi-Nail. I had nail fungus.”) *with* Coelho Reply Decl., Ex. 1 (ARCADIA-00004011 at 4012 [consumer misled by “the appearance of the toenail on the box and the name on the product”]) *and* Ex. 2 (ARCADIA-00045140 at 45144 [complaining that “FUNGI-Nail” did not treat fungal infections of the toenail]).

**Class Action is Superior.** *Minkler*’s ascertainability requirement was overruled by the Ninth Circuit in *Briseno*. *Minkler*, 2013 WL 3185552, at *3, *7; *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129–32 (9th Cir. 2017) (in class actions seeking price premium damages, “the identity of particular class members…affects neither the defendant’s liability nor the total amount of damages it owes to the class”) (internal quotations omitted). Judge Walter now concurs. *Trujillo*, 2019 WL 493821, at *3. Further, “[c]laims administrators, auditing processes, and other techniques may be used to validate claims.” *Davis v. Lab’y Corp. of Am. Holdings*, No. 22-55873, 2024 WL 489288, at *3 (9th Cir. Feb. 8, 2024). A class action is the superior means of resolving claims arising from Arcadia’s uniform marketing, as the costs of litigation would dwarf any individual recovery.

**Wheeler Has Standing.** Wheeler continues to want an effective nail-fungus treatment and would consider purchasing Fungi-Nail again if accurately labeled or reformulated. Wheeler Decl. ¶ 9; *see also* ECF No. 119 at 4-5; *see also* *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–72 (9th Cir. 2018).

Arcadia’s monetary-predominance argument invokes a test rejected by *Wal-Mart Stores, Inc. v. Dukes*, which instead prohibits individualized monetary awards within a Rule 23(b)(2) class. 564 U.S. 338, 360–65 (2011). Wheeler seeks prospective labeling relief under Rule 23(b)(2) and CLRA damages separately

under Rule 23(b)(3), a structure expressly contemplated in *Ellis*, so the damages request does not foreclose the injunctive class. 657 F.3d at 986–87.

For the reasons set forth in Plaintiff's Motion and this reply, the Court should grant the Motion in its entirety.

## II. PLAINTIFF'S EVIDENTIARY OBJECTIONS

Plaintiff objects to the Bashoff Declaration, which Arcadia relies heavily upon. Opp. 6–7, 12, 17, 22–23. No such declaration was filed on the docket and Plaintiffs' counsel was never provided with a copy. Coelho Reply Decl., ¶2. Plaintiff has concurrently filed evidentiary objections to the missing Bashoff Declaration and the Court should exclude it and all arguments arising therefrom.

## III. ARCADIA'S PACKAGING IS UNIFORM AND APPEARS IN ALL RETAIL CHANNELS

Arcadia's own materials show that online purchasers see the same product packaging online as they do in the store. Canner Decl., Ex. J-N. As shown below, all prominently display the front of the carton bearing Fungi-Nail and the nail imagery as *the default and first* product image.

| Safeway.com | Walgreens.com | CVS.com |
| --- | --- | --- |
| <br> | <br> | <br> |
| Canner Decl., Ex. J at 3 | Canner Decl., Ex. J at 5 | Canner Decl., Ex. J at 8 |

| | | |
|---|---|---|
| Ralphs.com<br><br>Canner Decl., Ex. J at 12 | Shoprite.com<br><br>Canner Decl., Ex. J at 15 | Shopmyexchange.com<br><br>Canner Decl., Ex. J at 17 |
| Walmart.com<br><br>Canner Decl., Ex. J at 20 | Albertsons Mobile App<br><br>Canner Decl., Ex. J at 22 | Safeway Mobile App<br><br>Canner Decl., Ex. J at 25 |
| Target Mobile App<br><br>Canner Decl., Ex. J at 28 | Vons Mobile App<br><br>Canner Decl., Ex. J at 32 | Walgreens Mobile App<br><br>Canner Decl., Ex. J at 35 |

| | | |
|---|---|---|
| Walmart Mobile App   Canner Decl., Ex. J at 38 | Amazon.com   Canner Decl., Ex. K at 2 | |

Additionally, an example of the Fungi-Nail product page on Amazon.com is shown below:




Canner Decl., Ex. K at 2. Thus, online consumers were presented with the same misleading front label with the same challenged representations as they would at a physical store.

This is consistent with Arcadia's testimony. Arcadia confirmed that every Fungi-Nail product carton sold during the class period displayed the Fungi-Nail name, toenail imagery, and challenged efficacy language on its front panel. Bashoff Rule 30(b)(6) Tr. 90:9–24. [redacted]

[redacted] Bashoff Rule 30(b)(6) Tr. 91:7–24. Different retailer headings do not change the brand name and toenail imagery consumers see on the Fungi-Nail products. Nor does the ancillary online information Arcadia cites to "demonstrate that the misrepresentation was not a substantial factor in a large percentage of consumers' purchasing decisions." *Lytle*, 114 F.4th at 1036.

## IV. ARCADIA'S OWN RECORDS CORROBORATE THE COMMON MISLEADING MESSAGE

Arcadia's professed concern for customer satisfaction rings hollow. Consumers repeatedly reported buying Fungi-Nail to treat nail fungus, only to discover that the fine print contradicted the name and imagery that induced their purchases. ECF No. 97-02 ("Opening Coelho Decl."), Exs. 1–2 (ARCADIA-00045911, ARCADIA-00045916), Ex. 11 (ARCADIA-00082304).

The necessary correction is straightforward: put "Not for Nail or Scalp Fungus" on the front of the package instead of hiding it in the fine print. [redacted]. Bashoff Rule 30(b)(6) Tr. 53:21–54:4. Yet when Arcadia received negative reviews identifying the name as misleading and a suggestion to clarify the packaging, Bashoff's response was: "I wouldn't respond to these" and was careful not to put his reasoning in writing. Coelho Reply Decl., Ex. 3 (ARCADIA-00030706).[3]

The concern also extended beyond dissatisfied customers: the marketing drew NAD and FTC scrutiny, and Arcadia's records document a subsequent FDA inquiry concerning Fungi-Nail Pen. ECF 14-4 at 1; Coelho Reply Decl., Ex. 4

---

[3] Defendant claims the Q&A information on Target.com is sufficiently explanatory (Opp. at 15-16, Canner Decl. Ex. L), but clearly Target customers still purchased the Fungi-Nail products and were deceived by the product packaging despite this Q&A. "There seems to be a concern about the efficacy of this item as guests are calling out that the name Fungi Nail is confusing and misleading." Coelho Reply Decl., Ex. 3 (ARCADIA-00030706).

ARCADIA-00041548–00041549. The FDA's question went directly to the contradiction: if the label says the product is not for nails, why call it Fungi-Nail? Arcadia's CEO acknowledged that the name was "potentially confusing," but defended the micro disclaimer as putting the company in the "right," while at the same time recognizing that he understood why the FDA would conduct an inquiry based on the name Fungi-Nail when the product "is not necessarily to be applied to the nail." Coelho Reply Decl., Ex. 4 (ARCADIA-00041548).[4] That response exposes the flaw in Arcadia's defense: it treats the disclaimer as a justification for retaining the very name consumers say misled them.

Arcadia's self-serving complaint-to-sales ratios cannot turn that record into proof of customer satisfaction. The opposition cites a Bashoff declaration that has not been provided, and [redacted] Harper Rep. ¶ 56.

Nor does a consumer's failure to demand a refund establish satisfaction. Harper explains that, for an inexpensive product, the effort required to pursue repayment can exceed the amount at stake, leaving dissatisfied consumers to absorb the loss. *Id.* ¶¶ 61–64. Arcadia keeps the sale proceeds; consumers bear the cost of the misleading purchase. Their silence does not erase that injury. *FTC v. LendingClub Corp.*, 2020 WL 2838827, at *21 (N.D. Cal. June 1, 2020) (low

[4] As Harper, who was the CMO for Sam's Club, states: "[a]s a professional marketer leading some of the largest consumer packaged goods brands and retailers, I have never expected consumer confusion due to the name of one of my products. Nor have I worked with professional marketers from other large companies who have expressed such a notion." Harper Rep. ¶¶54-55. This runs directly contrary to Arcadia's claim that there is always going to be confusion with a consumer product. Bashoff 30(b)(6) Tr. at 55:19-21.

complaint rates are not a dispositive answer to deceptive net impression because complaints do not represent the universe of injury).

Arcadia's records contradict its claim that refunds were available without restriction. For example, Arcadia denied a consumer's refund request because the consumer had not used the product: "Unfortunately we are unable to refund if you have not tested the product." Coelho Reply Decl., Ex. 5 (ARCADIA-00025349, row 17).

## V. ALL RULE 23 REQUIREMENTS FOR CERTIFICATION ARE MET

### A. Commonality and predominance are established.

At issue for commonality and predominance are whether the Fungi-Nail products present a misleading efficacy promise to reasonable consumers, whether that efficacy promise was material, and whether class members overpaid for the products which did not perform as promised. Common evidence answers all of those questions in the affirmative. Opening Coelho Decl., Exs. 4–8, 10, 13, 15, 19.

#### 1. The nail-treatment representation is material.

Arcadia's argument against materiality is reliant on an unfounded assumption: that a consumer purchasing a topical antifungal for athlete's foot or ringworm cannot also value its nail-treatment capability. Opp. 10–13. A buyer may value several uses and pay more for a broader promise. Indeed, "[t]o establish materiality, a plaintiff is not required to show that the challenged statement is the '*sole or even the decisive cause*' influencing the class members' decisions to buy the challenged products." *See, e.g., Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 403 (N.D. Cal. 2021) (emphasis added).

Here, common evidence shows that the vast majority of consumers find Fungi-Nail's ability to kill nail fungus material to their purchasing decisions. [redacted]. Haruvy Rep. ¶ 54 & Table 2. These results support objective materiality and, together with evidence of classwide

exposure, an inference of reliance. *Lytle,* 114 F.4th at 1038. [redacted] Opening Coelho Decl., Ex. 10 at 00087775.[5] [redacted] *Id.*, Ex. 17 at 00005765.

Because class members find killing nail fungus important, whether some were recommended Fungi-Nail by others or whether they purchased it for conditions other than nail fungus does not defeat commonality or predominance. As discussed above*, Lytle v. Nutramax Laboratories, Inc.* is directly instructive. There the Ninth Circuit rejected Arcadia's same arguments here (and *Minkler's* pharmacy-recommendation and purchasing purpose findings) and held that veterinary recommendations or whether class members looked at other information did not displace reliance on a product's packaging nor eliminate the challenged representation as a substantial factor. *Lytle*, 114 F.4th at 1036-37.

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020–21 (9th Cir. 2020), supplies the underlying reliance rule. There again, the Ninth Circuit rejected the argument that veterinary prescriptions and varied advertisements negated reliance on the challenged marketing. *Id.* at 1020. Although *Moore* arose on dismissal, *Lytle* expressly applied its reasoning at class certification. 114 F.4th at 1036. Arcadia's reliance on professional recommendations or "marginally different interactions with the product…that is otherwise materially misleading"[6] merely repeats the argument those cases rejected. *Lytle*, 114 F.4th at 1037.

Arcadia's other caselaw is inapposite and easily distinguishable. Unlike here, each involved claims that large swaths of the class did not find misleading or

---

[5] This refutes Arcadia's argument that this research did not test the materiality of its efficacy representations. The fact that the study discussed other factors which contributed to sales does not defeat materiality. *Bailey*, 338 F.R.D. at 403.

[6] Again, even Judge Walter has since held that such differences do not defeat certification. See *Martin*, 2017 WL 1115167, at *7-8.

material. *See Lytle*, 114 F.4th at 1037 (distinguishing *Stearns* and similar cases); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011) (materiality not uniform where some class members intentionally signed up for the subscription); *Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharmaceutical Co.,* 674 F. Supp. 3d 799, 835–39 (C.D. Cal. 2023) (40% of purchasers would not have found the omitted health risks material); *Dunn v. Costco Wholesale Corp*., 2021 WL 4205620, at *5 (C.D. Cal. July 30, 2021) (plaintiff "presented no consumer survey or other market research to demonstrate" materiality); *Otto v. Abbott Laboratories, Inc.*, 2015 WL 12776591, at *3 (C.D. Cal. Jan. 28, 2015) (omission was only material to individuals with a vitamin D deficiency); *Pierce-Nunes v. Toshiba America Information Systems, Inc.*, 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016) (not all class members exposed to the labeling).

Arcadia's attempts to challenge Haruvy's materiality survey fail. [redacted] Haruvy Rep. ¶¶17-18. *Gunaratna v. Dennis Gross Cosmetology LLC* upheld a similar survey design and rejected the same overbreadth objections that Arcadia makes here. 2023 WL 2628620, at *14–15 (C.D. Cal. Mar. 15, 2023) (skin-care user survey was not overbroad because it may have included razor and sunscreen buyers).

Haruvy's survey was not biased or leading. [redacted]. Haruvy Rep. ¶19, App. B at 37.

Arcadia is also incorrect that Haruvy did not exercise proper controls and drew "a concerning number of repeat—potentially fraudulent—respondents." Opp. at 12. [redacted] Haruvy Rep., App. D at 41. In fact, Haruvy screened for eligibility and California residence, monitored responses during collection, controlled for duplicate-IP groups, and applied the appropriate exclusions to his final results. Haruvy Rep. ¶¶ 17–18, 34, 41, 47; App. D at 41; *see also* Plaintiff's Daubert Opp at p.11-12.

Finally, Arcadia also accuses Plaintiff of conflating Bell's proposed damages models with materiality. Opp. at 13. No such conflation exists. Neither Bell nor Plaintiff states that his proposed price premium models will establish materiality.

**2. Deception and reliance can be determined through common evidence.**

Arcadia argues that the existence of marginally different variations of online information about the Fungi-Nail product necessarily defeats common deception. Opp. 13–17. *Lytle* rejects that "cramped interpretation of the reliance requirement." 114 F.4th at 1037. Plaintiff need not prove that every consumer experienced an identical shopping journey to establish a material common representation. *Id.* Indeed, the Ninth Circuit has expressly instructed that "disparate modes of exposure" to the same challenged statement "do not constitute material variations" and that "slight differences do not defeat commonality." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1236 (9th Cir. 2024) (internal quotations omitted).

Here, the evidence shows that "the representations on the product's packaging were substantially similar throughout the class period." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 366 (N.D. Cal. 2018); *see also* Sec. III. This includes "third party retailers' websites," which "contained

statements that were the same as or similar to the statements on the packaging." *Id.* While Arcadia spills much ink reciting various statements or disclosures consumers may have seen on certain retailer webpages, it does not show that they displaced the common front-label message.

Nor could it, as all of the online product packaging offered by Arcadia is *substantially identical* to what purchasers encountered in-store. *See* Sec. III. They all present *the same, materially misleading* efficacy promise to consumers. *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 288–89 (C.D. Cal. 2011) is instructive here. There, like here, General Mills argued that the different combinations and variations of its advertisements defeated commonality and predominance. The court rejected that argument and certified the claims because the underlying misleading claim remained the same across those variations. *Id.* ("the common issue that predominates is whether General Mills' packaging and marketing communicated a persistent and material message that YoPlus promotes digestive health").

The same is true here. The Fungi-Nail name, toenail imagery, and efficacy language are substantially identical across all variations of Fungi-Nail's packaging and presentations, regardless of whether they were displayed online or at a brick-and-mortar store. *See* Sec. III; *see also* Bashoff Tr. 90:1–91:24. [redacted]).

Any disclaimers tucked away within the retailer websites do not alter that analysis because they all required a consumer to look beyond the front label prominently displayed as the default product image. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 611 n.7 (N.D. Cal. 2018) (back label

statements do not create individualized issues where the front label was uniformly misleading); Sec. III. On Amazon, a consumer must click through multiple images of the Fungi-Nail front label before reaching the "What is Toe Fungus" graphic. Canner Decl., Ex. K. Likewise, Target presents the nail-fungus exclusion in a Q&A that must be separately accessed, and Walgreens includes a disclaimer only in expanded application text. *Id.,* Ex. L at 4; Ex. J at 28–30, 35–36. Just as a reasonable consumer is not expected to "look beyond misleading representations on the front of the box" when purchasing a product in a physical store, a reasonable consumer would not be expected to go searching for those hidden disclaimers when presented with an unambiguous front label online. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008); *see also Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167–73 (2018) ("You cannot take away in the back fine print what you gave on the front in large conspicuous print."); *Oh v. Catalina Snacks, Inc.*, 764 F. Supp. 3d 903, 915 (C.D. Cal. 2025) (a reasonable consumer would not look through online product reviews when presented with an unambiguous product claim).[7]

Here again, Arcadia's caselaw is inapposite. They involved real material variances in what was conveyed to consumers. *White v. Symetra Assigned Benefits Service Co.* dealt with differing misrepresentations and omissions made during separate "one-on-one" communications between defendants and individual class members pertaining to their separate financial circumstances. 104 F.4th 1182, 1194–96 (9th Cir. 2024). Likewise, *Berger v. Home Depot USA, Inc.* dealt with

---

[7] *Kha v. Tilray Brands, Inc.* is inapposite and does not stand for the proposition that reasonable consumers review image carousels online. The *Kha* court merely found that plaintiff would look for clarifying information elsewhere when presented with an ambiguous claim online, just as a consumer who "purchases products in the store" would look to the back label. No. 2:25-cv-10630-HDV-BFM, ECF No. 32, at 10–12 (C.D. Cal. July 17, 2026). But here, Fungi-Nail's front label claim is unambiguously deceptive, so no such expectation exists. *See Whiteside v. Kimberly-Clark Corp.*, 108 F.4th 771, 778–85 (9th Cir. 2024).

five different allegedly misleading contracts, varying employee explanations, and differing store signs that the parties disputed *even existed*. 741 F.3d 1061, 1069–70 (9th Cir. 2014). Here, *the exact same material misrepresentation* was made across all of Arcadia's front labels.

Other cases denied certification where the misleading claim was not included in every advertisement. *See Mazza v. American Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *Downey v. Public Storage, Inc.*, 44 Cal. App. 5th 1103, 1118 (2020); *Carrera v. First American Home Buyers Protection Co.*, 702 F. App'x 614, 614–15 (9th Cir. 2017). Again, the opposite is true here: all class members were exposed to Arcadia's misrepresentations regardless of where they purchased products. *Hadley v. Kellogg Sales Co.,* 324 F. Supp. 3d 1084, 1099 (N.D. Cal. 2018) ("where the alleged misrepresentation appears on the label or packaging of each item being sold, class-wide exposure to it may be inferred.").

The remaining cases dealt with omissions claims rather than misleading advertising claims and denied certification where exposure was not uniform. *Roley v. Google LLC*, 2020 WL 8675968, at *8–10 (N.D. Cal. July 20, 2020) (denying certification because Google omitted material information in only one avenue out of many); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 501–05 (C.D. Cal. 2011) (denying certification where not every class member would have seen the proposed disclosure). They too are inapposite. Arcadia's Fungi-Nail misrepresentation was prominently made on its front label everywhere it was sold, and it could have easily disclosed the truth there too.

Arcadia's remaining arguments fail as well. Arcadia misstates Harper's testimony, [redacted] Canner Decl., Ex. F, Tr. 106:8–15. [redacted] *Id.* at 107:5–19. Nor

could it, as each online retailer Arcadia identifies used the *exact same name, image, and efficacy claims* that Harper already analyzes. *See* Sec. III.[8] Put differently, Harper's evidence is equally applicable to all of Arcadia's "Fungi-Nail" products, regardless of whether they were sold in-store or online.

Finally, as explained above, the purported low ratio of complaints does not defeat classwide deception. "That there is actual evidence that only a small percentage complained thus does not support an inference that consumers were not likely to be deceived; especially given that complaints do not reflect the 'total universe of injury.'" *FTC*, 2020 WL 2838827, at *21 (further noting that a plaintiff "does not have to show *any* actual consumer confusion to support a finding that the net impression of its representations was likely to deceive.") (emphasis in original). Additionally, [redacted]. Harper Rep. ¶¶ 52, 56–57.

**3. Speculative commercial purchases do not defeat CLRA standing.**

Arcadia offers no evidence regarding potential commercial purchasers. Nevertheless, Plaintiff proposes that, should the court find it necessary, the class be limited to natural persons purchasing for personal, family, or household purposes. Cal. Civ. Code § 1761(d). This revised class definition addresses the standing issue. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc) (courts may address an overinclusive class by refining its definition); *see also Ballard v. Equifax Check Services, Inc.*, 158 F. Supp. 2d 1163, 1172–74 (E.D. Cal. 2001) (rejecting

---

[8] Despite acknowledging Wheeler relies on Haruvy and Harper to show common deception, Arcadia contradicts itself by also arguing that she "suggest[s] the labels alone can show common deception." Opp. at 16. This argument is self-refuting.

hypothetical commercial uses of retail purchases as insufficient to overcome evidence of consumer purpose).[9]

Further, claimants can identify the Fungi-Nail product, purchase date, amount, purpose, and refund status, supported by available receipts or retailer histories and subject to challenge. *Briseno* recognizes such procedures for inexpensive consumer purchases. 844 F.3d at 1131–33.

**4. Bell identifies a common measure of injury and damages.**

Next, Arcadia contends that Bell's damages model does not suffice to calculate price premium damages. For the same reasons set forth in Plaintiffs' Daubert Opp, Arcadia's arguments fail here too.

*First*, allegations that consumers would not have purchased the products do not defeat a price-premium damages model. *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 861, 865–67 (9th Cir. 2025) (upholding proposed price premium model where plaintiff likewise alleged she would not have purchased the product had she known the truth).

*Second*, Bell's model fits Plaintiff's alleged injury and will effectively isolate the price premium. He does not propose to calculate a "kills nail fungus" statement. Opp. at 19. Rather, Bell will calculate the alleged premium by comparing equilibrium prices with and without the challenged nail-treatment messaging on the packaging. Bell Rep. ¶¶ 40, 53–56, 59. Bell's proposed

---

[9] In *Johnson v. Harley-Davidson Motor Co. Group, LLC*, 285 F.R.D. 573, 582–83 (E.D. Cal. 2012), the plaintiffs left the commercial-purchaser objection unanswered, and the court nevertheless acknowledged that the issue alone might not preclude certification; here, Plaintiff expressly requests a class definition excluding commercial purchases. Likewise, *Kennedy v. Natural Balance Pet Foods, Inc.*, 361 F. App'x 785, 787 (9th Cir. 2010), an unpublished decision, concerned a nationwide class encompassing purchasers regardless of purchase purpose and unresolved variations in state law, whereas here Plaintiff seeks a California class limited to natural persons purchasing for personal, family, or household purposes.

calculation therefore corresponds to the pleaded benefit-of-the-bargain injury. *Comcast*, 569 U.S. at 35–38.

*Third*, Bell's proposed model is well supported. He does not "merely gesture" at a "general method," (Opp. at 19) [redacted] *See* Plaintiff's Daubert Opp. at 2-5. [redacted]. *Id.*

**B. Wheeler is typical and adequate.**

**1. Her purchase and reliance match the class theory.**

Typicality concerns similar injury from the same course of conduct. *Small v. Allianz Life Insurance Co. of North America*, 122 F.4th 1182, 1201–02 (9th Cir. 2024). Wheeler viewed the front label on Amazon and purchased it for nail treatment. Canner Ex. D, Tr. 55:16–17, 58:18–23; Ex. H at 4. Online and store purchasers encountered the same product packaging containing the same challenged name, imagery, and efficacy message (*see* Sec. III) and Plaintiff alleges they too overpaid as a result of the misleading packaging. Wheeler is therefore typical. *Ellis*, 657 F.3d at 985 n.9; *Beck-Ellman*, 283 F.R.D. at 566.

**2. Arcadia's consumer records refute its portrayal of an atypical experience.**

*Minkler* faulted the class representative for focusing on the front, not consulting a professional, and overlooking directions. 2013 WL 3185552, at *4. Arcadia claims the same about Wheeler's experience. Opp. 20–21. But as discussed above, *Williams*, *Brady*, and *Whiteside* reject a presumption that reasonable consumers must discover contradictory information behind an affirmative front label presentation, and *Lytle* and *Moore* likewise reject the

assumption that professional advice necessarily displaces label reliance. *See Williams*, 552 F.3d at 939; *Brady*, 26 Cal. App. 5th at 1172; *Whiteside*, 108 F.4th at 780–81; *Lytle*, 114 F.4th at 1035–36; *Moore*, 966 F.3d at 1020–21. Wheeler's experience is the exact purchasing response those principles protect. *See also Martin*, 2017 WL 1115167 at *4 (Walter, J.) (rejecting argument that plaintiff "is not typical of the class because she 'did not read the instructions prior to purchase' because plaintiff 'acted like thousands of other purchasers'").

Classwide evidence demonstrates that Plaintiff's experience was typical. [redacted] *See* Harper Rep. ¶ 57 & nn.48-60; *see also* Opening Coelho Decl. Exs. 1, 2, and 11.

Wheeler's later use of bleach and sanitizer is irrelevant because she seeks the premium paid at purchase; it does not change that she overpaid for the product. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) (rejecting typicality challenge because plaintiff seeking price premium "suffered the same type of economic injury and seeks the same type of damages as putative class members").[10]

**3. Purchase for nail discoloration creates no antagonistic interest.**

Whether Wheeler's inferred nail fungus diagnosis was correct does not alter Fungi-Nail's misleading packaging or its price effect. This is nothing but a red

---

[10] To the extent Arcadia invokes *Moheb* to presume that physician-advised purchasers could not share Wheeler's reliance on the packaging (*Moheb v. Nutramax Labs. Inc.*, 2012 WL 6951904, at *4 (C.D. Cal. Sept. 4, 2012)), that premise conflicts with *Lytle's* subsequent holding that professional recommendations do not necessarily negate label reliance because the challenged representation need only be a substantial factor in the purchase. *Lytle*, 114 F.4th at 1035–36.

herring argument. *Minkler* involved a representative who did not want his money back and disclaimed representing satisfied purchasers. 2013 WL 3185552, at *5. Wheeler pursues the same price premium recovery that applies to every qualifying purchaser, including consumers who used the Fungi-Nail products for their skin. Wheeler Dep. 165:7–11, 169:19–25; 170:15-17.

**4. The supported premium remedy creates no demonstrated conflict.**

Wheeler and the proposed class share an interest in recovering the overcharge attributable to Arcadia's challenged marketing. Bell Rep. ¶¶ 22, 56–57; *see Astiana*, 291 F.R.D. at 502 (finding aligned interests where all class members injured by price premium). This approach measures the same alleged economic injury across the class without requiring one group's recovery to come at another's expense. Bell Rep., ¶¶ 22, 56–57.

*Munoz* addressed a different problem: defendants there presented evidence that the proposed recordkeeping-fee model would have resulted in some class members being overcompensated. *Munoz v. Alorica, Inc.*, 2026 WL 2199195, at *2 (9th Cir. July 30, 2026). Arcadia identifies no comparable feature of Bell's model under which correcting the alleged overcharge for some purchasers would disadvantage others. Opp. 21–22; Bell Rep. ¶¶ 56–57.

Arcadia's reliance on *STEC* similarly assumes that requesting a full refund establishes an available and advantageous claim that Wheeler is sacrificing. Opp. 21–22 (quoting *In re STEC Inc. Securities Litigation*, 2012 WL 6965372, at *6 (C.D. Cal. Mar. 7, 2012)). A demand for the entire purchase price does not establish entitlement to it: California courts have rejected full-refund restitution where consumers received value apart from the deceptive advertising. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795–96 (2015). By contrast, the Ninth Circuit recognizes purchase-time overpayment as a cognizable CLRA damages theory even where the product retains some utility. *Nguyen*, 932 F.3d at 818, 820–

22 (9th Cir. 2019). A theory that disregards any actual skin-treatment value would therefore face an obstacle that a properly supported price-premium theory avoids. *See Id.*; Bell Rep. ¶¶ 22, 56–57. There is no conflict here.

**C. The superiority factors favor class adjudication.**

Arcadia only challenges manageability, leaving Rule 23(b)(3)(A)–(C) unopposed. Its reliance on *Minkler* overlooks both subsequent controlling authority and the proposed damages model. *See Briseno,* 844 F.3d at 1126–28; Opp. 22-23. *Minkler* faulted the plaintiff for failing to explain how the court would identify purchasers, quantities purchased, and purchase purposes. *Minkler*, 2013 WL 3185552, at *7. Four years later, *Briseno* affirmed certification of retail cooking-oil purchasers despite the absence of complete purchaser records and rejected a freestanding administrative-feasibility requirement. *Briseno,* 844 F.3d at 1124–28. Judge Walter himself would later follow *Briseno* and hold that a plaintiff "need not demonstrate ascertainability or administrative feasibility in order for the Court to certify a class." *Trujillo*, 2019 WL 493821, at *8 (citing *Briseno* and certifying class). Arcadia's lack of a purchaser list therefore does not defeat superiority. *Id.*

Plaintiff also supplies the practical answer Arcadia claims is missing: a phased proceeding resolving the common liability questions, determining whether the challenged marketing produced a price premium, and applying any proven premium to qualifying transactions. Mot. 20; Bell Rep. ¶¶ 56–57. Bell's proposed model measures the market overcharge, so the damages inquiry does not require a separate valuation of each purchaser's treatment experience. Bell Rep. ¶¶ 22, 56–57. Sworn claims and available purchase and refund records can address California eligibility, purchase quantities, personal-use purpose, and reimbursement, subject to audits and judicial resolution of genuine disputes. Mot. 19–20; *Briseno*, 844 F.3d at 1131–33. These procedures preserve Arcadia's

opportunity to contest unsupported claims while allowing the central liability and premium questions to be decided once. Mot. 20; *Briseno*, 844 F.3d at 1131–32.

Arcadia's refund argument does not move the needle. *Martin,* 2017 WL 1115167, at *9 (refund policy does not render class treatment inferior). [redacted] Harper Rep. ¶¶ 62–64. Further, Arcadia did not always honor its supposed money-back guarantee: "Unfortunately we are unable to refund if you have not tested the product." *Id.* ¶ 59 & n.65 (ARCADIA-00025349, row 17). The proposed class excludes purchasers who received full refunds, while the guarantee neither compensates those who remain unreimbursed nor corrects the continuing marketing challenged here. Mot. 19; Harper Rep. ¶¶ 58–64.

Moreover, Arcadia's reliance on *Webb v. Carter's Inc.*, 272 F.R.D. 489, 504–05 (C.D. Cal. 2011) is misplaced because its refund-based superiority rationale conflicts with subsequent Ninth Circuit authority holding that a voluntary refund program does not adjudicate the parties' controversy and is therefore "irrelevant to the superiority analysis under Rule 23(b)(3)." *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 n.4 (9th Cir. 2023).

**D. The requested injunctive class satisfies Rule 23(b)(2).**

Wheeler's interest in accurate labeling is concrete and personal: she continues to want an effective nail-fungus product and would consider purchasing Fungi-Nail again if accurately labeled or reformulated to treat nail fungus. Wheeler Decl. ¶ 9, ECF No. 113-1. Identical statements were found sufficient to support injunctive relief standing under *Davidson*, 889 F.3d at 969–72.

Arcadia's assertion that effective reformulation is impossible is also undermined by its own expert's discussion of Tolcylen, a penetration-enhanced tolnaftate formulation that demonstrated efficacy against nail fungus. ECF 105-2

at 14–15. In any event, the requested injunction permits Arcadia to correct the front-label presentation without reformulating the product.

Arcadia's monetary-relief argument likewise applies the wrong inquiry: *Wal-Mart* rejected the former predominance test, and *Ellis* recognizes that a court may certify an injunctive class under Rule 23(b)(2) alongside a damages class under Rule 23(b)(3). *Ellis*, 657 F.3d at 986–87 & n.10. Plaintiff seeks precisely that structure, reserving monetary recovery for Rule 23(b)(3), with its notice and opt-out protections. Mot. 21–23; *Ellis*, 657 F.3d at 986–87. Correcting the continuing front-label presentation provides prospective relief independent of compensation for past purchases; the damages request therefore supplies no basis to reject separate injunctive certification. Mot. 22; *Ellis*, 657 F.3d at 987 & n.10.[11]

### E. Alternatively, defined issue certification would advance the litigation.

Alternatively, the Court should certify the specific issues identified in Plaintiff's motion under Rule 23(c)(4). Mot. 9, 23. The common proof discussed above would resolve the central scientific, marketing, and economic disputes without requiring each purchaser to repeat the same expert testimony and documentary evidence. Mot. 9, 23; Bell Rep. ¶¶ 22, 56–57. An order specifying the products, periods, representations, and issues adjudicated would make those findings binding in the remaining proceedings while preserving transaction

[11] *Ries* certified an injunctive class while excluding monetary recovery from that class. 287 F.R.D. at 541–42. *Moheb* and *Algarin* found no prospective benefit to the representatives, unlike Wheeler's continuing purchase interest and inability to rely on the labeling. 2012 WL 6951904, at *6–7; 300 F.R.D. at 458–59; Wheeler Decl. ¶¶ 9–11. Neither *Walter* nor *Parsons* addressed whether a separate damages request precludes injunctive certification. 145 F.3d at 1047; 754 F.3d at 688–89. Indeed, *Ang* expressly rejected Arcadia's reading of *Algarin*, explaining that restrictions on monetary relief within a Rule 23(b)(2) class do not prohibit separate certification under Rules 23(b)(2) and (b)(3). *Ang v. Bimbo Bakeries USA, Inc.*, 2018 WL 4181896, at *11–12 (N.D. Cal. Aug. 31, 2018).

verification and any surviving individual defenses. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996).[12]

## VI. CONCLUSION

The Court should certify the proposed California class with its exclusions and an express CLRA personal-use limitation, appoint Wheeler and WLF, and grant separate damages and injunctive certification, or alternatively, certify the identified issues.

Dated: September 18, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

/s/ Thiago M. Coelho

Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach
*Attorneys for Plaintiffs and the Putative Classes*

[12] *Reitman* found issue certification inefficient due to inconsistent labeling claims, an inadequate damages model and an overbroad full-refund subclass. *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 881–82 (9th Cir. 2020). Here, Plaintiff identifies a uniformly misleading product label and a common price premium damages model. Class trial would resolve those common questions. Mot. 9, 23; Bell Rep. ¶¶ 22, 56–57.

## VII. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Megan Wheeler, certifies that the memorandum contains 6,979 words, including its headings, citations, and footnotes, and excluding the caption, tables of contents and authorities, signature block, and this certificate. The memorandum does not exceed the 7,000-word limit in Local Rule 11-6.1.

Dated: September 18, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

/s/ Thiago M. Coelho
Thiago M. Coelho

*Attorneys for Plaintiffs and the Putative Classes*