DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
*jacobharper@dwt.com*
Nicole S. Phillis (SBN 291266)
*nicolephillis@dwt.com*
Heather F. Canner (SBN 292837)
*heathercanner@dwt.com*
Peter K. Bae (SBN 329158)
*peterbae@dwt.com*
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Rachel H. Herd (*pro hac vice*)
*rachelherd@dwt.com*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700

*Attorneys for Defendant*
*Arcadia Consumer Healthcare Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION**

ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

ARCADIA CONSUMER HEALTHCARE INC., a Delaware corporation,

Defendant.

Case No. 8:24-cv-02657-JDE

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE OR EXCLUDE EXPERT REPORTS OF DR. DAVID BELL; DR. ERNAN HARUVY; RHONDA HARPER; AND DR. MATTHEW BOGYO**

Assigned to the Hon. John D. Early

Dept.: Courtroom 6A
Time: 10:00 a.m.
Date: October 8, 2026

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Dr. Bell's Report Should Be Stricken or Excluded. ..... 1

1. Dr. Bell's Methodology Cannot Reliably Show Class Damages. ..... 2

2. Dr. Bell's Damages Model Does Not "Fit" Plaintiff's Case. ..... 7

B. Dr. Haruvy's Materiality Opinions are Unreliable and Unhelpful. ..... 9

1. Dr. Haruvy's Supplemental Declaration Should be Stricken. ..... 9

2. Dr. Haruvy's Survey is Fatally Overinclusive. ..... 11

3. The Absence of Controls Compounds the Survey's Unreliability. ..... 12

4. The Survey's Questions are Biased and Leading. ..... 13

5. Additional Defects Undermined the Survey's Reliability. ..... 14

C. Ms. Harper's Opinions Should Be Excluded. ..... 15

1. Ms. Harper's Opinions Lack a Reliable Methodology ..... 15

2. Ms. Harper's Opinions About Arcadia's "Intent" and Feasibility are Unhelpful ..... 18

D. Dr. Bogyo's Report Should Be Stricken ..... 20

1. Dr. Bogyo Is Not Qualified to Opine on Onychomycosis ..... 20

2. Dr. Bogyo's Uncited FDA Monograph Opinion is Unhelpful and Unreliable ..... 21

III. CONCLUSION ..... 22






DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIG Retirement Services, Inc. v. Altus Finance S.A.*, 2011 WL 13213589 (C.D. Cal. Sept. 26, 2011) ............ 16

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............ 7

*Engilis v. Monsanto Co.*, 151 F.4th 1040 (9th Cir. 2025) ............ 20

*GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ............ 17

*Gunaratna v. Dennis Gross Cosmetology LLC.*, 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023) ............ 11

*In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014) ............ 19

*In re NJOY, Inc. Consumer Class Action Litigation*, 120 F. Supp. 3d 1050 (C.D. Cal. 2015) ............ 12

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879 (C.D. Cal. 2004) ............ 19

*In re Zicam Cold Remedy Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2011 WL 798898 (D. Ariz. Feb. 24, 2011) ............ 20

*Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. 2020) ............ 17

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ............ 16

*Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117 (S.D. Cal. 2020), *aff'd in part*, 2021 WL 5823707 (9th Cir. Dec. 8, 2021) ............ 17

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ............ 12



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Laux v. Mentor Worldwide, LLC*,
295 F. Supp. 3d 1094 (C.D. Cal. 2017), *aff'd*, 786 F. App'x 84 (9th Cir. 2019) .......... 21

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) .......... 4, 7

*Merchant v. Corizon Health, Inc.*,
993 F.3d 733 .......... 10

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025) .......... 7, 9

*Pedroza v. PetSmart, Inc.*,
2013 WL 1490667 (C.D. Cal. Jan. 28, 2013) .......... 6

*Pet Chalet, Inc. v. Cnty. of Riverside*,
2015 WL 13918085 (C.D. Cal. Sept. 10, 2015) .......... 16

*Plumley v. Mockett*,
836 F. Supp. 2d 1053 (C.D. Cal. 2010) .......... 10

*Porter v. Martinez*,
68 F.4th 429 (9th Cir. 2023) .......... 17

*Procter & Gamble Co. v. Ultero, Inc.*,
574 F. Supp. 2d 339 (S.D.N.Y. Aug. 28, 2008) .......... 12

*Reinsdorf v. Skechers U.S.A.*,
922 F. Supp. 2d 866 (C.D. Cal. 2013) .......... 12

*Shin v. Sanyo Foods Corp. of Am.*,
348 F.R.D. 477 (C.D. Cal. 2025) .......... 4

*Suchanek v. Sturm Foods, Inc.*,
311 F.R.D. 239 (S.D. Ill. 2015) .......... 14

*Thomas v. Newton Int'l Enters.*,
42 F.3d 1266 (9th Cir. 1994) .......... 17

*Wong v. Regents of Univ. of Calif.*,
410 F.3d 1052 (9th Cir. 2005) .......... 10



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) .......... 10

**Rules**

Fed. R. Civ. P. 23 .......... 5, 7, 10

Fed. R. Civ. P. 26 .......... 9

Fed. R. Civ. P. 26(a)(2) .......... 9

Fed. R. Civ. P. 26(a)(2)(B) .......... 18

Fed. R. Civ. P. 26(e) .......... 9

Fed. R. Civ. P. 37(c) .......... 10

Fed. R. Evid. 702 .......... *passim*

Fed. R. Evid. 703 .......... 15

Fed. R. Evid. 704(a) .......... 19



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I. INTRODUCTION

Plaintiff's opposition confirms all four reports should be excluded. Plaintiff attempts to: (1) recast Dr. David Bell's opinions as more developed than they actually are, in contradiction to his sworn testimony and written report; (2) improperly rehabilitate Dr. Ernan Haruvy's opinions through an untimely declaration—conceding fatal flaws of his original survey; (3) bolster Rhonda Harper's *ipse dixit* opinions to compensate for the clear analytical gaps in her report; and (4) defend Dr. Bogyo's inapt qualifications, though his opinions exceed the scope of his expertise. Because Plaintiff fails to satisfy the threshold inquiry required under *Daubert* at class certification, Arcadia's Motion should be granted in full.

# II. ARGUMENT

## A. Dr. Bell's Report Should Be Stricken or Excluded.

Arcadia showed in its opening motion that Dr. Bell's Report must be excluded under Rule 702 because Dr. Bell's half-baked "methodology"—a summary of conjoint analysis "best practices" and non-committal valuation hypotheticals—cannot reliably calculate classwide damages. Dkt. 107 (Mot.) 6:11–9:25. While Dr. Bell identified "potential" attributes he "could" test in a conjoint analysis, he repeatedly testified that he had ***not*** made a final decision on which product attributes to test, let alone how those attributes would be evaluated. Further, Arcadia showed that Dr. Bell's "price premium" analysis does not "fit" Plaintiff's "no purchase" theory of the case, as required under Rule 702. *Id*. at 9:27–10:13, 11:13–12:2. Either one of these grounds warrants striking Dr. Bell's damages analysis.

In response, Plaintiff argues (1) that Dr. Bell's methodology satisfies the Rule 702 standard for an unexecuted model of damages at class certification (despite the fact that Dr. Bell failed to identify the core attributes he would test in his conjoint analysis and offered testimony inconsistent with Plaintiff's opposition) (*see* Dkt.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

115 (Opp.) 2:8–6:9); and (2) that Bell's price-premium calculation fits Plaintiff's alleged economic injury (despite the fact that she pleaded a no-purchase theory) (*see id.* at 6:12–7:12). None of Plaintiff's arguments show that Dr. Bell's ever-shifting methodology capable of reliably calculating damages according to common proof at trial, so Dr. Bell's opinions should be excluded. *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1024, 1032 (9th Cir. 2024).

**1. Dr. Bell's Methodology Cannot Reliably Show Class Damages.**

Plaintiff contends in opposition that Dr. Bell's undeveloped damages opinion satisfies Rule 702 because the Ninth Circuit has permitted the consideration of unexecuted damages models at the class certification phase where the proposed methodology is sufficiently developed and reliable. Opp. 2:10–2:15. The Ninth Circuit has made clear that an unexecuted damages can support class certification under Rule 23 only "so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle*, 114 F.4th at 1011, 1024, 1032. Contrary to Plaintiff's suggestion, *Lytle* does not grant her *carte blanche* to proffer undeveloped damages methodologies in support of class certification. *Lytle* makes clear that "[m]erely gesturing at a model or describing a general method will not suffice to meet this standard." *Id.* at 1032. "Rather, plaintiffs—or their expert—must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case." *Id.* Dr. Bell falls far short of this standard.

In the opposition, Plaintiff presents Dr. Bell's summary of "best practices" and potential damages valuation measures as far more developed than they actually are. In reality, Dr. Bell's non-committal references to the potential attributes he "might" test and the potential valuation measures he "could" use are simply not enough to prove the reliability of an unexecuted model of damages at class certification . *Id.* at 1011, 1024, 1032. For the reasons set forth below, Plaintiff



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

falls far short of her burden under Rule 702 not because the methodology is unexecuted, but because it is not conceptually developed enough to show reliable design, nor is it consistent with Plaintiff's theory of the case. Accordingly, Dr. Bell's opinions should be stricken.

***First***, Plaintiff claims that Dr. Bell has, in fact, identified attributes he intends to test, specifically, brand name and market price, and that such identification is enough to pass muster under Rule 702. Opp. 2:22–23. Review of Dr. Bell's deposition testimony revealed he was much less committal than Plaintiff now portrays. Dr. Bell testified that he was "considering" "manipulation of the brand name" and "manipulation of the market price" as one of several attributes to test in his conjoint analysis. Coelho Decl., Ex. 3 at 146:13–23. But in the same response, Dr. Bell qualified that testimony by stating that those two variables are "not yet exhaustive" because there was additional "qualitative research as well as existing facts and data in this case" for him to consider in making that future determination. *Id.* Moreover, during another line of questioning, Dr. Bell admitted that his proposal to manipulate "brand name" in the manner he testified to was not part of his report, and in any event he had "not made a definitive determination as to whether [he] would manipulate brand name in the manner just described…" at all. Ex. B at 76:18–80:18. And when pressed on how he would test the efficacy claim Plaintiff purports to challenge in this case, Dr. Bell again confirmed he had not yet made that determination. Ex. B at 48:10–14; 73:23–74:20 (regarding the phrasing of the efficacy claim, "Whether or not that's the right way to do it is not yet something I've made a determination about"); 139:20–140:13 ("No, I've not made a decision about whether I would use that exact language, whether it would say, "Kills fungus," "Kills nail fungus." Or – or something else."); 140:5–13; Ex. J ¶ 41.

While Dr. Bell's Report identifies the five ***potential*** product features "[to illustrate the [conjoint analysis] principles at work" e.g., brand, applicator, efficacy claims, added ingredients, and price, Ex. A ¶¶ 31–32, he similarly testified that he





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

had not yet decided what is the "right way" to test or isolate specific conjoint stimuli, *id.*, Ex. B at 73:23–74:16. Nor did Dr. Bell confirm the attributes, levels, or presentations to be included in the proposed 16 choice tasks as Plaintiff suggests. *See* Opp. 2:28–3:2. Indeed, when asked whether he had "finalized [his] design for which specific product features will be examined" in his conjoint analysis, Dr. Bell left no doubt: "***No I have not. I've simply laid out the best practices for doing so***." Ex. B at 73:18–22.

These are not peripheral details, but rather, strike at the heart of whether Dr. Bell's proposed methodology is capable of measuring classwide damages. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 553 (C.D. Cal. 2014) (excluding damages methodology where the plaintiff's expert "does not identify any variables he intends to build into the models, nor does he identify any data presently in his possession to which the models can be applied. The court is thus left with only [plaintiff's expert's] assurance that he can build a model"). Dr. Bell's proposed methodology is no different than the amorphous descriptions of general methods or "mere gestures" that courts have rejected as unreliable under Rule 702. *Id.*; *Shin v. Sanyo Foods Corp. of Am.*, 348 F.R.D. 477, 485 (C.D. Cal. 2025) (expert cannot "[m]erely gestur[e] at a model or describe[e] a general method" but must "chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case.") (quoting *Lytle*,114 F.4th at 1032).

***Second***, Plaintiff suggests that Dr. Bell's review of Arcadia's packaging research and its COO's testimony regarding marketing strategy somehow salvages his hypothetical methodology. Opp. 2:18–22. Importantly, Plaintiff fails to cite a single case to support the notion that merely reviewing the defendants' marketing materials is an acceptable methodology to calculate classwide damages. Reviewing material that may inform a future study is not the same as designing a reliable model. Indeed, the Ninth Circuit has affirmed that "half-baked, warmed-over" expert conclusions in the absence of a workable, reliable methodology warrant



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

exclusion. *Grodzitsky v. American Honda Motor Co.*, 957 F.3d 979, 983–987 (9th Cir. 2020); *see also Rusoff v. Happy Grp., Inc.*, 2026 WL 2387098, at *6 (9th Cir. Aug. 17, 2026) (lack of reliable methodology and promises to conduct future analysis supported exclusion under Rule 702). While Dr. Bell's review of the material may have provided him with a "good starting point," he admits he has yet to "conduct [his] own qualitative research" to "design … the conjoint stimuli." Ex. B 72:3–5. His concession confirms the problem. Dr. Bell has merely gestured as to the "best practices" for a damages model in this case without actually charting out the path to show that his model is the case-specific model Rule 23 requires. Ex. B 73:18–22; 82:11–15; 139:20–24; 140:5–13; 143:12–17; *In re ConAgra*, 302 F.R.D. at 553; *Shin*, 348 F.R.D. at 485.

***Third***, Plaintiff describes the survey as though Dr. Bell has prepared it or committed to executing a defined instrument, claiming that "[a]pproximately 800 to 1,000 respondents recruited through an Internet panel will be consumers in the OTC antifungal market, including those who purchased or seriously considered such products within a defined period" and that under Dr. Bell's methodology "[e]ach respondent will complete sixteen purchase choice tasks" with rotating attribute models. Opp. 3:15–4:2 (citing Dkt. 113-18 ¶¶ 36, 42–43, 44–45, 46, 47). But review of Dr. Bell's report confirms, again, that he has not yet decided that this is the methodology he will use. In reality, Dr. Bell has not drafted let alone finalized the survey, conducted pretesting, finalized its features, created the stimuli, or identified the non-hypothetical competing products. Declaration of Eda Harotounian ("Harotounian Decl."), Ex. 1 at 87:18–88:5; 91:16–94:1. To that end, Arcadia's expert (Dr. Song's) testimony that Dr. Bell ***contemplated*** 16 potential choices is not an admission that Dr. Bell actually committed to using these choices; it is simply an acknowledgement that Dr. Bell proposed to have consumers rate 16 unspecified attributes for each product offering. *See id.*; ECF No. 117-3, 120:17–121:8. Vaguely describing the potential structure of a conjoint analysis, rather than



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

actually applying it to the facts of this case, is not enough to pass muster under Rule 702.

***Fourth***, Plaintiff argues that Dr. Bell's Equilibrium Price Premium (EPP) measure of calculating damages is singularly capable of "measuring the alleged price premium paid by consumers"—despite the fact that Dr. Bell, in fact, advanced two ***other*** measures of damages in his report ("willingness to buy" (WTB) and "willingness to purchase" (WTP)) and testified he would need to consider the "convergence" of ***all three*** before deciding the best approach to calculate damages. *Compare* Opp. 4:3–5:25 with Mot. 9:3–9, citing Ex. B at 79:15–81:19. Instead of addressing this argument head on, Plaintiff strings together buzzwords from Dr. Bell's report that fail Arcadia's argument. Opp. 4:3–5:25. Buried in this soup of doublespeak, Plaintiff admits that Dr. Bell "explained that [the] best practice is to investigate all three [measures] and 'look at the convergence,'" yet still posits the EPP calculation as the singular method to be used to value the alleged misrepresentations. Opp. 5:22–25. Plaintiff further claims "the three measures complement the EPP calculation." *Id*. at 5:23–25. This contention reveals the nonsensical approach of her counterargument. Dr. Bell's identified EPP calculation is ***one of the three*** measures to calculate damages—it makes no sense to suggest that EPP would complement itself. *Compare id*. at 5:25 *with* Dkt. 113-18 ¶¶ 51–53.

Nor does Dr. Bell's disclosure of the formula behind EPP, and that fact that Dr. Bell plans on using Arcadia's "product-level cost, margin, wholesale, retail, and unit-sales data," if available, in calculating EPP distinguish the instant case from *Pedroza*. Opp. 4:21–5:7; Ex. A ¶¶ 51–55 (identifying WTP, WTB, and EPP as the three measures he would consider in the "economic valuation of the alleged misrepresentation of the Fungi-Nail Products' efficacy"). In *Pedroza*, the court granted a motion to strike where, as here, the expert neither identified the specific survey inputs or how those inputs would be determined in a case-specific manner. *Pedroza v. PetSmart, Inc.*, 2013 WL 1490667, at *3 (C.D. Cal. Jan. 28, 2013).



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

***Fifth***, and for the reasons set forth above, Plaintiff's attempts to shoehorn Dr. Bell's analysis in line with *Lytle* and *Noohi* fail. Opp. 2:10–3:2. Arcadia's objection to Dr. Bell's report is not that it is unexecuted, but that his methodology is not sufficiently defined to show reliability. Both *Noohi* and *Lytle* acknowledge that while unexecuted models of damages may be permitted at class certification, they still must be reliable to be considered. Here, Dr. Bell's generalized "best practices" do not meet this burden. Unlike in *Noohi*, Dr. Bell's promises that he will assess the representativeness of the sample using demographic correlates, *see* Ex. A ¶¶ 46–47, does not entitle Plaintiff to advance a largely undefined method for valuing damages in support of class certification. Plaintiff's efforts to analogize Dr. Bell's opinions to those at issue in *Lytle* and *Noohi* fail because Dr. Bell's promises that he will be able to define a workable methodology in the future are insufficient to show reliability at class certification. *See Noohi*, 146 F.4th at 864 ("'… plaintiffs—or their expert—must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case'") (quoting *Lytle*).

**2. Dr. Bell's Damages Model Does Not "Fit" Plaintiff's Case.**

Even if Dr. Bell's methodology were reliable (it is not), his price premium opinion still fails to meet the relevance prong of Rule 702 because it does not fit Plaintiff's "no-purchase" theory of the case. Moreover, under Rule 23, a plaintiff seeking class certification under Rule 23 must proffer a damages model that "measure[s] only those damages attributable to" the Plaintiff's theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Dr. Bell's model fails on all fronts.

In opposition, Plaintiff contends that Dr. Bell's price-premium model fits Plaintiff's alleged injury because the SAC alleges that purchasers did not receive the benefit of their bargain. Opp. 6:12–20 (citing SAC ¶¶ 7, 61). The Court should reject Plaintiff's attempt to recast her original "no-purchase" theory as a price



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

premium model because nowhere in the SAC does Plaintiff plead that she would have paid less for the products absent the alleged misrepresentation; instead, Plaintiff pleads that she would not have purchased the products at all. *See* SAC ¶¶ 10, 42, 44 ("Had Plaintiffs and the Class members known that it had the products in fact do not kill nail fungus, they would not have purchased the products.").

Indeed, in each of the paragraphs Plaintiff cites in support of her position, the full context of the allegations make clear that the "benefit of the bargain" theory is based on a "no purchase" claim. *See, e.g.*, SAC ¶ 7 ("***As a result of Defendant's deceptive and misleading practices, Plaintiffs and the Class members were induced to purchase Fungi-Nail products that do not perform as advertised***…. Defendant's customers did not receive the benefit of their bargain because the Fungi-Nail products do not treat nail fungus."); 61 ("Plaintiffs and the Class members did not receive the benefits of their bargains and used products which had not been proven to kill toenail fungus, and in fact, were not effective on toenail fungus. ***Plaintiffs and the Class members paid for a product that they would not have purchased had they known the truth.***") (emphases added).

Plaintiff confusingly argues that Arcadia never asked Dr. Bell about the benefit of the bargain allegations in the SAC. Opp. 6:21–22. Again, she misstates the record. During Dr. Bell's deposition, Arcadia's counsel asked Dr. Bell whether Plaintiffs allege a price premium theory in the SAC, going paragraph by paragraph through the SAC. Harotounian Decl., Ex. 1 105:13–138:22. In response, Dr. Bell acknowledged that the SAC does not explicitly allege a price premium. *Id*. Dr. Bell then attempted to supply an "implied" price premium through his own reasoning that a decline in the probability of purchase means a price premium existed. Ex. B 110:18–111:21. Dr. Bell did not identify either Paragraph 7 or Paragraph 61 as supporting a "price premium" theory; to the contrary, he testified Paragraph 7 expressly did ***not*** plead such a theory. Reply Ex. 1 at 106:23–107:3.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff cannot now convert her no-purchase theory into an overpayment theory to salvage Dr. Bell's analysis.

As a last ditch effort, Plaintiff cites *Noohi* (again) in support of her claim that the allegation that she would not have purchased the products does not defeat the applicability of a price-premium damages model. Opp. 6:25–7:2. *Noohi* is distinguishable. There, the plaintiff pursued an overpayment theory, and the expert's methodology was designed to calculate the value attributable to the challenged representation. 146 F.4th at 865. In contrast, here, Plaintiff does not plead an overpayment theory, and Dr. Bell's model cannot transform the alleged no-purchase injury into a classwide damages calculation based upon a price premium model.

**B. Dr. Haruvy's Materiality Opinions are Unreliable and Unhelpful.**

In its Motion, Arcadia showed that Dr. Haruvy's Report should be excluded under Rule 702 because it rests on a fundamentally unreliable methodology: it samples the wrong population (Mot. 12:27–13:15), lacks controls (*id.* at 13:16–14:12), uses biased and leading questions (*id.* at 14:13–23), and omits additional safeguards designed to ensure objective results (*id.* at 14:24–15:12).

The opposition effectively concedes these deficiencies, but argues that individually, none warrant exclusion. To further cure these defects, Plaintiff (1) submits an untimely supplemental Haruvy declaration that validates Arcadia's original *Daubert* challenge, and in any event, should be stricken under Rule 26; (2) attempts to recast the respective defects as going to weight rather than reliability; and (3) relies on distinguishable authority. All these efforts fail.

**1. Dr. Haruvy's Supplemental Declaration Should be Stricken.**

As an initial matter, Plaintiff's opposition relies on a new declaration from Dr. Haruvy to cure defects Arcadia identified in his original Report and testimony. *See* Dkt. 117-2 ("Haruvy Declaration" or "Haruvy Decl."). This declaration should be stricken.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Federal Rule of Civil Procedure 26 required Dr. Haruvy to disclose, by the Court-ordered deadline, all opinions he intended to offer and the bases for them. Fed. R. Civ. P. 26(a)(2). Although Rule 26(e) allows a party to correct or supplement an earlier disclosure, it does not permit a party to add a new analyses or strengthen an expert's previously disclosed opinions after the opposing side exposes its weakness. *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1061–63 (C.D. Cal. 2010) (holding "a supplemental expert report that states additional opinions or "seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report" is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)"). Dr. Haruvy's declaration does just that. It is not a correction of an incomplete or inaccurate disclosure, but a post-deadline effort to rehabilitate an inadequate methodology after Arcadia challenged its deficiencies. *See* Haruvy Decl., ¶ 2 ("This declaration responds to Dr. Keith A. Botner's July 20, 2026 rebuttal report and August 11, 2026 deposition testimony concerning my survey, and to the corresponding criticisms advanced by Arcadia."). This is improper, particularly because Dr. Haruvy testified at deposition, which took place after Dr. Botner's rebuttal report and deposition, that he did not intend to supplement his Report and that his Report "stands for itself." Harotounian Decl., Ex. 2 209:15–22.

Plaintiff's untimely attempt to rehabilitate Dr. Haruvy's defective report is neither substantially justified nor harmless. Arcadia has only three days to file this Reply, and has no meaningful opportunity to depose Dr. Haruvy on these new opinions. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (untimely disclosure one month before trial not harmless where plaintiffs would not have adequate time to depose expert). In any event, Dr. Haruvy's supplemental declaration (1) concedes the unreliability of his initial report; and (2) confirms that his belated and untimely opinions cannot be used to support class certification under Rule 23. *See id.*; *Wong v. Regents of Univ. of Calif.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (affirming district court excluding late



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

identified expert witness where failure to timely identify was "without substantial justification"); *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 743 (9th Cir. 2021) (affirming district court's order excluding improperly disclosed expert evidence).

**2. Dr. Haruvy's Survey is Fatally Overinclusive.**

As Arcadia explained in its Motion, Dr. Haruvy's survey is incurably unreliable because failed to examine the proper universe and instead broadly directed his survey at consumers of any OTC topical product. Mot. 12:27–13:15.

In opposition, Plaintiff argues that Dr. Haruvy's screener question targeted the proper universe under *Gunaratna v. Dennis Gross Cosmetology LLC*. Opp. 8:12–19. Plaintiff's reliance on *Gunaratna* is misplaced. There, the court considered a materiality survey regarding the importance of collagen in a line of skin care products created and sold by the defendant. 2023 WL 2628620 at *14 (C.D. Cal. Mar. 15, 2023). The screener selected respondents who ***purchased*** personal care and beauty products (items like the beauty product at issue) in the last six months. *Id.* Here, by contrast, Dr. Haruvy's universe encompasses purchasers who even ***considered*** purchasing any OTC topical product for any health condition, without any connection to the anti-fungal products at issue. Ex. C ¶ 18 (whether the respondent is a California adult who seriously considered purchasing or purchased an OTC topical health product within the past 24 months); Ex. I ¶¶ 52–57. A survey universe can be broad when the case itself concerns a broad purchasing audience, like the class in *Gunaratna*, which was composed of purchasers of several different types of beauty products.

*Billfloat Inc. v. Collins Cash Inc.* is similarly unavailing. While *Billfloat* repeats the general rule that over-inclusiveness is not always grounds for exclusion, 105 F.4th 1269, 1276 (9th Cir. 2024), the question is whether over-inclusiveness in this specific case rendered Dr. Haruvy's survey unreliable under Rule 702. It does. The gap between potential purchasers of OTC topical health products and OTC topical antifungal products is simply too vast. Mot. 12:27–13:15. Dr. Haruvy's



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

own testimony undermines Plaintiff's argument, as he concedes that the target population are those consumers "being targeted by the advertisements," a point that Plaintiff does not contest in the opposition. Ex. D 52:20–53:2.

Contrary to Plaintiff's arguments, a survey becomes unreliable when the screener admits respondents who are not potential customers of the product in question. *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 572290, at *4–5 (N.D. Cal. Feb. 11, 2014) (survey that measures perceptions of wrong audience was neither relevant nor reliable). That is exactly what happened here. Plaintiff's admission that even Haruvy acknowledged that "different products have different audiences" confirms *Kwan*'s application. Opp. 8:20–27; *see* Ex. D 52:20–53:2.

**3. The Absence of Controls Compounds the Survey's Unreliability.**

As Arcadia explained in its Motion, controls are "fundamental to reliable survey design because they separate actual consumer perception from background assumptions and other survey 'noise,'" and Dr. Haruvy's unexplained lack of controls yielded unreliable results. Mot. 13:16–14:12 (citing *Procter & Gamble Co. v. Ultero, Inc.*, 574 F. Supp. 2d 339, 351 (S.D.N.Y. 2008) ("Controls are an essential feature of reliable survey evidence" (citation omitted)).

Plaintiff claims that Dr. Haruvy's failure to use controls alone does not warrant exclusion. Opp. 9:3–13. This is a red-herring: Arcadia did not argue that the absence of controls alone rendered the survey unreliable, but that the absence of controls, in conjunction with the survey's other defects, rendered the survey unreliable. Plaintiff's reliance on *In re NJOY, Inc. Consumer Class Action Litigation* only confirms the point. 120 F. Supp. 3d 1050, 1079 (C.D. Cal. 2015) ("Neither case supports NJOY's assertion that lack of a control group alone renders a survey inadmissible."). Where, as here, the absence of controls is one of multiple compounding deficiencies, exclusion is appropriate. *Reinsdorf v. Skechers U.S.A.*,





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

922 F. Supp. 2d 866, 878–79 (C.D. Cal. 2013) (excluding survey in part because it did not include controls).

**4. The Survey's Questions are Biased and Leading.**

In its Motion, Arcadia also explained that Dr. Haruvy's use of biased and leading questions drove respondents to Plaintiff's desired response—a hallmark of unreliability. Mot. 13:13–23.

Plaintiff contends that Dr. Haruvy's survey did not use leading questions, and attempts to distinguish *Bustamante*. Opp. 10:1–15. Plaintiff's arguments fail—and *Bustamante* proves the point. There, the Second Circuit affirmed exclusion of a consumer survey notwithstanding the general rule that methodological criticisms often go to weight. 100 F.4th 419, 430 (2d Cir. 2024). The court held that questions and response options that steered participants toward the plaintiffs' preferred answer deprived the survey of probative value and made it unable to assist the factfinder. *Id.* at 428–29. The same principle applies here. Plaintiff emphasizes that respondents could choose "very unimportant," "somewhat unimportant," or "neutral," but the use of the word "important" steered respondents towards Plaintiff's preferred answer that the ability of Arcadia's products to treat nail fungus was an important efficacy claim for consumers. Ex. I ¶¶ 62–63.

Plaintiff's attempted distinction misses the point. The problem in *Bustamente* was not limited to the particular words "all," or "natural." It was the expert's use of a survey design that pushed respondents toward the conclusion plaintiffs needed. *Bustamante*, 100 F.4th at 428–30. So too here. Dr. Haruvy likewise posed questions that embed Plaintiff's desired conclusions and valuations to claim that the "kills nail fungus" feature is materially important to the class. Ex. I ¶ 58; Ex. C App. B at 37. Plaintiff emphasizes that respondents could choose "very unimportant," "somewhat unimportant," or "neutral," but they neglect to address that the very framing of the word "important" steered respondents toward Plaintiff's preferred answer regarding the purported importance of the alleged efficacy claim



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to consumers. Mot. 14:13–23. That is precisely the kind of design-driven result Rule 702 does not permit. Ex. I ¶¶ 62–63.

Plaintiff's reliance on *Suchanek* is also misplaced. There, the lack of a "don't know" option did "not doom the study because participants were encouraged to offer commentary during their interview," and had an opportunity to "comment[ ] on their uncertainty in a number of instances." *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 247 (S.D. Ill. 2015). No such facts apply here, so *Suchanek* is inapt. *See generally*, Ex. C; Ex. I ¶¶ 67–68.

**5. Additional Defects Undermined the Survey's Reliability.**

Arcadia further demonstrated in its opening brief that the survey's administration and analysis contain additional defects that independently undermine reliability. Mot. 14:24–15:12. Among other things, Dr. Haruvy's raw data showed that a large number of duplicate IP addresses "access[ed] or attempt[ed] multiple survey sessions." Ex. I ¶ 74. Plaintiff's opposition fails to prove otherwise.

Plaintiff argues that Dr. Haruvy retained the first response associated with a duplicate IP address and excluded only later responses. *See* Opp. 12:1–12:5; Harotounian Decl., Ex. 2 106:18–107:6. That approach does not establish that the retained response was the reliable one, particularly where the record identifies inconsistent entries from the same IP address. *See, e.g.*, Ex. D at 177:1–178:4, 184:2–22 (same IP address entered different answers regarding importance of claims to the survey within mere minutes), 186:13–187:23 (same IP address answered the age question differently within mere minutes of retaking the survey).

Nor does Plaintiff's opposition show that Dr. Haruvy utilized sufficient validation procedures. Opp. 12:6–14. His general statements that he relied on an established panel, monitored responses, and later compared certain data to provider records do not identify a reliable validation method for the final sample. *See e.g.*, Ex. D 75:13–76:5 (Dr. Haruvy admits that he cannot speak to Cloud Connect's quality metrics).



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff's claim that Haruvy's "high important ratings did not result from the age weighting that Arcadia criticizes" similarly misses the point. Opp. 12:15–24. Importantly, Plaintiff does not dispute that the survey employed dramatic age weighting, including a 9.44 weight for a severely underrepresented 65-and-older cohort in the liquid survey. Ex. C, at 12 (Table 1). Plaintiff argues that this weighting does not matter because the unweighted results remain high. Opp. 12:23–24. But this outcome does not solve the methodological flaw. Dr. Haruvy's report presents weighted results based on a group for which the raw sample was plainly inadequate, without establishing that the few respondents in that group reliably represent older members of the proposed class. The Court need not decide whether weighting alone would require exclusion. It is another unsupported analytic choice that confirms the combined unreliability of the classwide conclusions Plaintiff seeks to draw.

**C. Ms. Harper's Opinions Should Be Excluded.**

Arcadia showed in its opening brief that Rhonda Harper's expert report fails under Rule 702 because her: (1) untested methodology is neither reliable in theory nor reliably applied, and (2) intent, legal, and "would've, could've, should've" opinions are irrelevant and unhelpful. Mot. 15:13–19:14. Rather than cure these issues, Plaintiff's opposition brief compounds them.

**1. Ms. Harper's Opinions Lack a Reliable Methodology**

Arcadia explained that Ms. Harper's opinion should be excluded because it lacks a reliable methodology and instead is largely based on Ms. Harper's *ipse dixit* and generalized "experience." Mot. 16:1–17:24.

In opposition, Plaintiff contends that she was entitled to base her opinions on her marketing experience and that disclosed principles "support her packaging analysis." Opp. 13:20–16:20. Try as she may, Plaintiff fails to rebut the ample authority supporting exclusion under such circumstances, and instead claims "Rule 703 permits an expert to rely on facts or data made known to her," and "does not



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

require personal generation of every underlying source." *Id*. at 15:1–4. Plaintiff misses the point. This is not a Rule 703 problem. The issue is that Ms. Harper cites only her own "say-so" to justify opinions based on little more than vague "experience"—a defect which has gotten her excluded multiple times before. *See* Mot. 15 n. 4.

Plaintiff's cited authorities in fact support Arcadia's arguments. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (Opp. 13), the Supreme Court found plaintiffs' expert testimony properly excluded because he failed to show his method reliably supported his conclusions. *See id*. at 153–58. In particular, plaintiffs' expert offered a two-factor test for tire failures, i.e., tire failures should be attributed to abuse rather than defect only if at least two of four physical symptoms of abuse were present. *See id*. at 144. But this purported expert failed to show that his two-factor threshold had been tested, subjected to peer review, or accepted by other tire analysts—instead, it was essentially his personal criterion. *See id*. at 156–58. The District Court thus properly "excluded his testimony [as] unreliable." *Id*. at 139.

The same result follows here. Ms. Harper's "experience-based" opinion is not only based on her own bespoke, idiosyncratic methodology, but she also fails to explain how her experience led to her conclusions. Mot. 16:22–17:24. On that point, Plaintiff does not even attempt to distinguish—let alone address—*AIG Retirement Services, Inc. v. Altus Finance S.A.*, 2011 WL 13213589, at *3–4 (C.D. Cal. Sept. 26, 2011), nor *Pet Chalet, Inc. v. Cnty. of Riverside*, 2015 WL 13918085, at *3 (C.D. Cal. Sept. 10, 2015)—both of which excluded similarly deficient testimony for failing to explain how the purported experience led to conclusions. Mot. 17:12–21. Instead, Ms. Harper only offers classic "*ipse dixit*" conclusions and vast analytical leaps, which are not proper under Rule 702. *Id*. at 16:7–17:11.

In opposition, Plaintiff protests that "Harper held senior marketing positions" and "worked on Listerine's packaging redesign and Efferdent's repackaging." Opp. 14:1–5. But Ms. Harper held these positions *more than twenty to forty years ago*.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*See* Dkt. 113-10 (Harper Rep.) at 38–39. Her opinion about antifungal drug purchasers' perception cannot reliably be based on her decades-old interactions with purchasers of Listerine and Efferdent. *See Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1141 (S.D. Cal. 2020), *aff'd in part*, 2021 WL 5823707 (9th Cir. Dec. 8, 2021) (plaintiff's expert "only infrequently interacts with purchasers of medical devices"; his "opinion about … purchasers' perception therefore cannot reliably be based on his experience."). And her purported "'years of experience' do[] not constitute 'sufficient facts or data,' or 'reliable principles and methods'" per se. *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *5 (N.D. Cal. Apr. 16, 2014) (rejecting expert opinion based on "30 years of experience"—which "cannot be tested or 'subjected to peer review and publication,' nor [contain] a 'known or potential rate of error'"—as "classic *ipse dixit*").

Contrary to the cases cited in the opposition, Ms. Harper also does not explain how her experience with Listerine and Efferdent—adult oral-care products—supports her opinions about the OTC antifungal for feet at issue in this case. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 580 (N.D. Cal. 2020) ("Silverman's in-depth experience in this field, including … marketing cereal and developing marketing plans for cereal products [at issue], qualify him to opine on the matters addressed in his Report"); *see also Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269–70 (9th Cir. 1994) (longshoreman with "29 years of longshore experience" qualified to give testimony "as to the working conditions of experienced longshore personnel."); *Porter v. Martinez*, 68 F.4th 429, 445 (9th Cir. 2023) ("Sergeant Beck's decades of experience in highway patrol"—including "'responding to car accidents'"—"allowed him to elucidate 'the practical realities" of … traffic safety."). Plaintiff claims in conclusory fashion that Ms. Harper "connects her package comparisons and naming analysis to her professional work," or "applies disclosed principles to the package and connects that analysis to her



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

experience," which are even more insufficient than the assertions above. Opp. 16:2–3, 16–17.

In addition, Plaintiff does not (and cannot) dispute that multiple courts in varying jurisdictions have already excluded Ms. Harper's testimony, including but not limited to opinions on issues of consumer confusion. Mot. 15:26–28, 16:25–28. Indeed, Plaintiff admits that numerous courts have "rejected Harper's unexplained analysis under Rule 702 and Rule 26(a)(2)(B)," "barred [Harper's] unfounded or legally improper opinions," and "excluded [her] survey with cumulative defects." Opp. 16:8–15 (collecting cases). The same result follows here. And even assuming these "other cases … turn on [Harper's] opinions' foundation" as the opposition contends, *id*. at 16:7, Plaintiff fails to explain why this distinction makes a difference. Consistent with Ms. Harper's other exclusions and Rule 702, this Court should also exclude her report here because her untested methodology is neither reliable in theory, nor as applied in this case.

**2. Ms. Harper's Opinions About Arcadia's "Intent" and Feasibility are Unhelpful**

In addition, Ms. Harper's report should be excluded because her intent, legal, and feasibility opinions are irrelevant and unhelpful under Rule 702. Mot. 17:25–19:14. The opposition confirms or otherwise concedes these defects.

**a. Ms. Harper Cannot Opine on Arcadia's Intent**

First, Ms. Harper improperly opines on subjective intent. Mot. 18:2–19. Plaintiff does not contest that opinions regarding parties' intent, motive, or state of mind constitute improper expert testimony that invades the province of the jury. *See id*. Indeed, Arcadia cites at least five decisions excluding unhelpful and irrelevant opinions on intent, *see id*. at 18:6–18 (collecting cases); Plaintiff fails to offer any meaningful rebuttal. Instead, Plaintiff all but admits that opinions on intent are improper, claiming the "Court can … confine any limitation to an unsupported intent opinion," and that "Arcadia's Intent Objection Does Not



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Dispose of Harper's Analysis of the Packaging and Research." *Id*. at 16:21–22, 17:5–7. Not so, as explained in Arcadia's Motion, and reiterated above. Such improper opinions should be stricken as they are neither reliable nor relevant to Plaintiff's claims.

**b. Ms. Harper Cannot Opine on Ultimate Issues**

Second, Ms. Harper cannot provide a legal opinion on an ultimate issue of law, i.e., a "reasonable consumer" would be misled and confused by the challenged label. Mot. 18:20–19:6 (collecting cases).

Plaintiff's limited response—"Rule 704(a) … permits otherwise admissible testimony on an ultimate factual issue" and "[w]hether a business practice is deceptive under California law is ordinarily a factual question"—lacks merit. Opp. 17:11–13. Even Plaintiff cites a decision which "excluded [legal opinions, including] the conclusion that the defendant falsely and deceptively labeled" products. *Id*. at 17:20–22, 19:18–20 (citing *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) (granting motion to strike "opinion that ConAgra 'falsely and deceptively labeled' its products. 'False' and 'deceptive' are judicially defined terms. Accordingly, [the expert's] use of these terms constitutes the offering of an improper legal opinion that usurps the role of the court."); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 902 (C.D. Cal. 2004) (similar; "Defendants are correct that Batich is not qualified to opine that Defendants breached a duty of care by failing to conduct certain tests.")). Although that court admitted a factual opinion that "foods that contain genetically engineered ingredients are not natural," *In re ConAgra Foods, Inc.*, 302 F.R.D. at 555, here, Ms. Harper goes far beyond any analogous "ultimate issue of fact" by "offering an opinion as to reasonable consumers and ordinary consumers being misled," Ex. F at 24:20–24. Ms. Harper cannot provide a legal opinion on whether a reasonable consumer would be misled by the challenged label—the gravamen of this lawsuit.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**c. Ms. Harper Cannot Opine About What Arcadia "Should" Do**

Third, Plaintiff ignores—and thereby concedes—that Ms. Harper's opinions about what Arcadia "could have" or "should have" done is irrelevant, "impermissible *ipse dixit*," and must be excluded. Mot. 19:7–14.

**D. Dr. Bogyo's Report Should Be Stricken**

Last, Arcadia showed that Dr. Bogyo's opinions fail under Rule 702 because he (1) is unqualified to testify on the efficacy of 1% tolnaftate as he has no expertise in pharmacology or relevant fungal infections, and (2) provides an unsupported legal opinion regarding the FDA monograph. Mot. 19:15–21:22. As explained below, Plaintiff's opposition effectively concedes these points.

**1. Dr. Bogyo Is Not Qualified to Opine on Onychomycosis**

In its opening brief, Arcadia showed that Dr. Bogyo is not qualified to testify on the efficacy of 1% tolnaftate because he has no expertise in pharmacology or relevant fungal infections. Mot. 19:21–21:2.

In opposition, Plaintiff contends that Dr. Bogyo's chemistry and biochemistry experience cross-qualifies him to opine on unrelated areas of pharmacology, notwithstanding given Dr. Bogyo's admitted unfamiliarity with key terms of the very fungal organisms at issue in this case. Opp. 19:10–21:3. As Plaintiff admits: "Reliability of experience-based testimony depends on the expert's relevant knowledge and experience…." Opp. 13:23–24; *see also Engilis v. Monsanto Co.*, 151 F.4th 1040, 1054 (9th Cir. 2025) (explaining "reliance on extensive clinical experience might be particularly informative—and perhaps necessary—in the context of a [certain] disease."). Plaintiff vaguely suggests that Dr. Bogyo's "chemical and biochemical" experience distinguishes *In re Zicam Cold Remedy Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2011 WL 798898, at *3, *12 (D. Ariz. Feb. 24, 2011), which (as Plaintiff puts it) excluded a "physician lacking pharmacology and drug component expertise" from opining on drug efficacy. Opp.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

20:4, 18; 22:12–3. Not so. Here, too, it is undisputed that Dr. Bogyo has no expertise in pharmacology, is not a medical doctor, does not work with or research OTC products, and does not research tinea pedis, onychomycosis, or feet and toenails. Mot. 20:6–10 (citing Ex. H at 17: 12–18:19, 18:21–19:23, 130:25–131:6). Dr. Bogyo, PhD, lacks the requisite relevant knowledge and experience with nail fungus, let alone with fungal infections generally.

**2. Dr. Bogyo's Uncited FDA Monograph Opinion is Unhelpful and Unreliable**

Plaintiff's opposition concedes that Dr. Bogyo's improper FDA monograph opinion—which is not cited in her class certification motion—must similarly be excluded as abandoned. *See* Mot. 21:3–22; Opp. 22:20 ("Plaintiff does not rely on Bogyo's FDA-compliance opinion for certification …."). Nonetheless, she implores the Court to "reject[] FDA unfamiliarity as a basis to exclude supported chemical-testing testimony." Opp. 22:24–25. Plaintiff's contentions lack merit.

As an initial matter, Dr. Bogyo did not proffer any "supported chemical-testing testimony." Dr. Bogyo testified that he did not test any products—chemically, clinically, or personally otherwise. *See* Dkt. 115-9 (Coelho Decl., Ex. 7 (Bogyo Dep. Tr.)) at 80:11–14, 17–18. To the extent "chemical-testing testimony" refers to the limited "ex vivo results" that Dr. Bogyo reviewed, Plaintiff's arguments still fail because his opinions are unreliable. Dr. Bogyo even admitted that "ex vivo results are not a substitute for product specific clinical testing of Arcadia's finished formulations." *See* Dkt. 113-9 (Coelho Decl., Ex. 6 (Bogyo Rep.)) at 14:9–10; Dkt. 115-9 at 80:2–5; (same); *see also Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1101 (C.D. Cal. 2017), *aff'd*, 786 F. App'x 84 (9th Cir. 2019) (methodology not "independently tested or peer reviewed, amounts to a subjective exercise, and thus is not reliable."). To the extent Plaintiff contends that Dr. Bogyo is qualified to opine on onychomycosis notwithstanding





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

his unfamiliarity with the FDA monograph, those arguments would still fail for the reasons above.

## III. CONCLUSION

Arcadia respectfully requests that this Court grant its Motion, and strike the reports of Dr. Bell, Dr. Haruvy, Ms. Harper, and Dr. Bogyo.

DATED: September 18, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant*
*Arcadia Consumer Healthcare Inc.*



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Arcadia Consumer Healthcare, Inc., certifies that this brief contains 6,961 words, which complies with the word limit of 11-6.1.

DATED: September 18, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant*
*Arcadia Consumer Healthcare Inc.*



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899