Thiago M. Coelho (SBN 324715)
*thiago.coelho@wilshirelawfirm.com*
Lauren Lendzion (SBN 239184)
*lauren.lendzion@wilshirelawfirm.com*
Chumahan B. Bowen (SBN 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach (SBN 281404)
*jennifer.leinbach@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Putative Classes*

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

ARCADIA CONSUMER HEALTHCARE, INC., a Delaware corporation,

Defendant.

Case No.: 8:24-cv-02657-JDE

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE OR EXCLUDE REBUTTAL EXPERT REPORTS; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: October 22, 2026
Time: 10:00 a.m.
USDC Judge: John D. Early
Courtroom: 6A

Complaint Filed: 12/06/2024
Class Discovery Cutoff: 05/12/2026
Fact Discovery Cutoff: 12/28/2026
Pretrial Conf.: 05/21/2027
Trial Date: 06/02/2027

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 22, 2026, at 10:00 a.m., or as otherwise ordered, in Courtroom 6A of the United States District Court for the Central District of California, 411 West Fourth Street, Santa Ana, California 92701, Plaintiffs Eric Hayde and Megan Wheeler will move to strike or exclude the rebuttal expert reports of Dr. Keith A. Botner (Botner) and Dr. Chen Song (Song) in their entirety, together with the opinions set forth therein, and Dr. Eva Rawlings Parker's (Parker) label-reading and related disclosure-adequacy opinions that exceed her rebuttal assignment, together with her legal conclusions about FDA monograph compliance.

The motion is brought under Federal Rules of Evidence 702, 703, Federal Rule of Civil Procedure 26(a)(2)(D)(ii), and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), subject to Dkt. 41 at 2 and Dkt. 87 at 2. Dkt. 41 requires class-certification expert challenges to be raised with the opposition/reply papers, and Dkt. 87 sets September 18, 2026, as the reply deadline.

Plaintiffs request that the Court strike or exclude in their entirety the rebuttal reports of Botner (ECF 106-1, Ex. B) and Song (ECF 106-2, Ex. C) and preclude reliance on those reports and the opinions set forth therein at class certification. Alternatively, Plaintiffs request exclusion or nonreliance as to the specific Botner and Song opinions identified in the memorandum. As to Parker (ECF 105-02, Ex. A), Plaintiffs seek exclusion of her label-reading and related disclosure-adequacy opinions as improper rebuttal, and her legal conclusions about compliance with FDA Monograph M005. Exhibits A, B, and C to the accompanying declaration contain excerpts of the Botner, Song, and Parker depositions, respectively. Exhibit E contains the cited Haruvy deposition excerpts. Exhibits F and G contain the cited Bell and Bogyo deposition excerpts, respectively.

On Monday, September 14, 2026, Plaintiffs requested a telephone or video conference and identified the disputed expert opinions and requested limitations. Defendant offered September 21 and 24, 2026. No substantive conference has yet occurred. See Declaration of Thiago M. Coelho in Support of Plaintiffs' Motion to Strike or Exclude Rebuttal Expert Reports ("Coelho Decl.") ¶ 7.

Plaintiffs acknowledge that the advance conference required by Local Rule 7-3 did not occur. In light of the circumstances described in counsel's declaration, the detailed written identification of the disputed opinions before filing, and the September 18 deadline for presenting these expert challenges, Plaintiffs respectfully request that the Court excuse this procedural deficiency and consider the challenges on their merits. Plaintiffs further request permission to complete the conference promptly and submit a short supplemental declaration identifying any issues resolved or narrowed.

The motion is based on this notice, the accompanying memorandum, the Declaration of Thiago M. Coelho and Exhibits A–H, the expert reports filed at ECF 106-1, Ex. B; ECF 106-2, Ex. C; and ECF 105-02, Ex. A, the record properly before the Court, and any argument the Court permits.

Plaintiffs submit this Motion with their timely class certification reply and respectfully request that it be considered at the October 8, 2026, hearing, or on another date set by the Court. To the extent additional leave is required, Plaintiffs request permission to present these expert challenges and, if necessary, an order shortening the notice period under Local Rule 6-1.

Dated: September 18, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach
*Attorneys for Plaintiffs and the Putative Classes*

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND AND SCOPE OF THE REQUEST ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 5

A. Botner's Report Should be Excluded in Its Entirety ........ 5

1. Botner may critique Harper's foundation but may not impose a legal survey prerequisite ........ 5

3. Controls must be connected to the inference the materiality survey makes ........ 8

4. Repeated IP addresses do not by themselves establish an observed degree of distortion ........ 9

5. General risks of leading questions do not establish an observed degree of distortion ........ 11

B. Song's Report Should be Excluded in Its Entirety ........ 11

1. Song cannot prescribe the legal requirements for class certification or define the pleaded claims ........ 12

2. Song's conjoint and Bayesian criticisms exceed her demonstrated expertise ........ 13

3. The asserted absence of an effective OTC product is an assumption, not Song's independent medical or market finding ........ 14

4. Nonexecution cannot substitute for analysis under the correct certification standard ........ 16

C. Parker's Label-Reading and Monograph Compliance Opinions Should be Excluded.......16

V. REQUESTED RELIEF.......17

VI. CONCLUSION.......19

# TABLE OF AUTHORITIES


CASES Page(s)

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
509 U.S. 579 (1993) .......... 3-4, 9, 12

*Engilis v. Monsanto Co.*
151 F.4th 1040 (9th Cir. 2025) .......... 3-4

*General Electric Co. v. Joiner*
522 U.S. 136 (1997) .......... 4-5, 7, 10

*Hangarter v. Provident Life & Accident Insurance Co.*
373 F.3d 998 (9th Cir. 2004) .......... 4, 6, 12, 17

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999) .......... 3, 6

*Lytle v. Nutramax Laboratories, Inc.*
114 F.4th 1011 (9th Cir. 2024) .......... 4, 12, 16

*Nationwide Transport Finance v. Cass Information Systems, Inc.*
523 F.3d 1051 (9th Cir. 2008) .......... 4-6, 12, 17

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*
31 F.4th 651 (9th Cir. 2022) (en banc) .......... 4

*R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*
2011 WL 2923703 (D. Nev. July 18, 2011) .......... 16

*Rusoff v. The Happy Group, Inc.*
2026 WL 2387098 (9th Cir. Aug. 17, 2026) .......... 4

*Sali v. Corona Regional Medical Center*
909 F.3d 996 (9th Cir. 2018) .......... 4

# TABLE OF AUTHORITIES

RULES AND REGULATORY AUTHORITIES Page(s)

Fed. R. Civ. P. 23 .......... 3-4

Fed. R. Civ. P. 26(a)(2)(D)(ii) .......... 16

Fed. R. Evid. 702 .......... 1, 3, 5, 7, 9-12, 14, 16

Fed. R. Evid. 703 .......... 5

Fed. R. Evid. 704(a) .......... 4

C.D. Cal. L.R. 11-6.1 .......... 20

FDA Monograph M005 .......... 16-19

OTHER AUTHORITIES

Richard M. Johnson, *Understanding HB: An Intuitive Approach* (Sawtooth Software, Mar. 2000) .......... 13

*Reference Guide* (cited in Botner Report ¶¶ 56-57 & n.59) .......... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant insists that an expert may not supply unsupported conclusions or testify beyond demonstrated expertise. Dkt. 107 at 16:2–17:11, 18:20–19:6, 19:21–20:18, 21:3–19. Its own rebuttal reports must withstand that same scrutiny. Dr. Keith A. Botner ("Botner") draws conclusions his analysis does not establish. [redacted], without establishing that the overlap represents duplicate participants in the final sample or invalidates the substantive results. ECF 106-1, Ex. B ¶¶ 74–75 & n.83. His deposition confirms the gap: [redacted] Coelho Decl. ¶ 8, Ex. A (Botner Dep.) 58:23–59:6, 134:4–22.

Dr. Chen Song ("Song") attacks Bell's damages methods despite significant gaps in her familiarity with them. [redacted] Ex. B (Song Dep.) 78:4–6, 107:13–22. [redacted] ECF 106-2, Ex. C ¶¶ 66–83, 90. Defendant must establish the foundation for her technical criticisms; the legal requirements for certification are for the Court to determine.

Dr. Eva Rawlings Parker ("Parker") offers consumer label-reading opinions beyond her assignment to rebut Bogyo and legal conclusions about FDA monograph compliance. ECF 105-02, Ex. A at 22–23. Rule 702 requires Defendant to establish a reliable foundation for the conclusions it offers. The Court should not credit conclusions that the experts' own analyses and testimony do not support.

Plaintiffs seek to strike or exclude Botner's and Song's rebuttal reports in

their entirety because the defects identified below undermine their central conclusions. Alternatively, Plaintiffs seek the specific exclusions and limitations identified below. Plaintiffs' challenge to Parker is narrower: her label-reading and related disclosure-adequacy opinions exceed her rebuttal assignment, and her conclusions about FDA monograph compliance invade the Court's role. Plaintiffs do not seek exclusion of her medical testimony.

## II. BACKGROUND AND SCOPE OF THE REQUEST

The Second Amended Complaint ("SAC") alleges that the Fungi-Nail name and accompanying efficacy claims convey nail-fungus treatment, including when read with the back-label disclaimer. SAC ¶¶ 3–6, 15–19. Defendant's reports address that theory. [redacted] ECF 106-2, Ex. C ¶¶ 18, 23. Parker distinguishes treatment of superficial skin infections from treatment within the nail plate. ECF 105-02, Ex. A at 13–15. This motion concerns whether Defendant's experts reliably address the questions their opinions purport to answer.

Defendant's disclosure dated July 20, 2026, identifies Botner, Song, and Parker as rebuttal witnesses. Coelho Decl. ¶¶ 2–5; ECF 106-1, Ex. B; ECF 106-2, Ex. C; ECF 105-02, Ex. A. Botner critiques Harper's packaging opinions and Haruvy's materiality survey; Song critiques Bell's proposed conjoint and damages methods; Parker responds to Bogyo. ECF 106-1, Ex. B ¶¶ 1–4; ECF 106-2, Ex. C ¶¶ 1–3, 9–15; ECF 105-02, Ex. A at 3–5. Defendant relies on these reports in its own exclusion motion. Dkt. 107 at 12–17, 19–21 (citing its Exs. I–K). Defendant's certification opposition also invokes Parker's packaging opinions, Botner's survey and complaint criticisms, and Song's damages criticisms. Dkt. 105 at 5:1–8, 12:11–27, 17:19–25, 19:5–24. References below to the "MCC Declaration" identify counsel's August 17, 2026, declaration supporting class certification; its Exhibits 13 and 15 contain Haruvy's and Bell's reports, respectively.

Plaintiffs challenge Botner's and Song's reports in their entirety because the defects addressed below undermine their central conclusions. Their credentials do not resolve whether each challenged inference has a sufficient foundation or constitutes an impermissible legal conclusion. The Parker challenge concerns improper rebuttal on label reading and legal conclusions about FDA monograph compliance.

While managing overlapping briefing deadlines, Plaintiffs' counsel requested a conference on September 14, 2026, identifying the challenged expert opinions and proposed discussing their withdrawal or limitation. Coelho Decl. ¶ 7, Ex. D. Defendant offered September 21 or 24. *Id*. On September 18, Plaintiffs accepted September 21 and proposed extending their filing deadline to September 28 in exchange for a seven-day extension of Defendant's expert-motion reply deadline, subject to Court approval. Defendant declined. Coelho Decl. ¶ 14, Ex. H. No substantive conference occurred.

## III. LEGAL STANDARD

Rule 702 requires the proponent to establish, more likely than not, that the witness is qualified, the testimony will help the trier of fact, it rests on sufficient facts or data and reliable methods, and the opinion reflects reliable application of those methods. Fed. R. Evid. 702(a)–(d). The 2023 amendment expressly states that burden. Defendant invokes *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025), for the propositions that there is no presumption favoring admission and that the proponent must establish the Rule 702 requirements by a preponderance. Dkt. 107 at 6:6–9. Defendant bears that burden for the rebuttal opinions it offers, regardless of Plaintiffs' separate burden under Rule 23.

The inquiry must fit the particular expertise and opinion. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 592–95 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–52 (1999). Experience may support an opinion, but the proponent must explain its application. An opinion connected to the evidence

only by the expert's assertion may be excluded where the analytical gap is too great. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Engilis*, 151 F.4th at 1048–50.

At certification, the Court evaluates reliability in light of the Rule 23 question and the stage of the proceeding. *Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1004–06 (9th Cir. 2018), rejects treating trial admissibility as mechanically dispositive while requiring consideration of *Daubert*. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 & n.7 (9th Cir. 2022) (en banc), recognizes reliability challenges and the separate need for rigorous Rule 23 analysis. *Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1011, 1019, 1023–24, 1030-1031 (9th Cir. 2024), permits a reliable, sufficiently developed but unexecuted damages model and explains why factors suited to completed results may be premature. *Id.*

The most recent authority Defendant invokes makes the symmetry explicit: "plaintiffs may not obtain class certification—nor may defendants block it—through the presentation of expert witnesses who lack reliability." *Rusoff v. The Happy Group, Inc.*, 2026 WL 2387098 at *6 (9th Cir. Aug. 17, 2026). *Rusoff* also acknowledges *Sali*'s treatment of admissibility and weight at certification. *Id*. Accordingly, Plaintiffs request exclusion of Botner's and Song's reports in their entirety or, alternatively, exclusion of their specific challenged opinions or nonreliance on them at certification. Parker's label-reading opinions are challenged as improper rebuttal, and her monograph-compliance opinions as impermissible legal conclusions.

Rule 704(a) permits otherwise admissible opinions on ultimate factual issues. It does not authorize expert legal instruction. *Hangarter v. Provident Life & Accident Insurance Co.*, 373 F.3d 998, 1015–18 (9th Cir. 2004), distinguishes permissible industry-practice testimony from legal conclusions and also recognizes broad, experience-based qualifications. *Nationwide Transport Finance v. Cass Information*

*Systems, Inc.*, 523 F.3d 1051, 1058–59 (9th Cir. 2008), approves exclusion of opinions applying governing law while allowing appropriate industry evidence. *Id*.

An expert's scientific criticism of another expert is not automatically an impermissible admissibility opinion. The line is between explaining a methodological defect and deciding what the rules of evidence or substantive law require. Likewise, Rule 703 permits reliance on facts or data supplied by others, including appropriate case materials. Counsel's transmission of a document is not itself disqualifying. But Rule 703 does not supply a missing method or transform an assumed premise into an independently established expert finding. Fed. R. Evid. 702(b)–(d), 703; *Joiner*, 522 U.S. at 146.

## IV. ARGUMENT

### A. Botner's Report Should be Excluded in Its Entirety

[redacted] ECF 106-1, Ex. B ¶ 83. The challenges below address the grounds assembled to support that conclusion, including the asserted survey prerequisite, complaint ratio, control requirement, and claimed bias and duplicate responses. *Id*. ¶¶ 4–5, 81–83. Plaintiffs seek exclusion of the report as a whole because its descriptions of data and design concerns do not establish the categorical invalidity asserted. If the Court determines that particular descriptive or methodological opinions have an independent reliable foundation, the limitations below are requested as alternative relief.

#### 1. Botner may critique Harper's foundation but may not impose a legal survey prerequisite

[redacted] should not become an expert ruling on admissibility. [redacted] ECF 106-1, Ex. B ¶ 26. Similar

formulations appear in paragraphs 25, 26, 30, and 32. *Id.* ¶¶ 25–26, 30, 32. To the extent Defendant offers those statements as a rule that experience-based packaging testimony is inadmissible without a survey, they exceed proper expert analysis.

[redacted] ECF 106-1, Ex. B ¶¶ 21–25. For purposes of the alternative request, those portions may assist the Court if Defendant establishes their independent foundation. But [redacted] *Id.* ¶¶ 26, 32. The Court must instead assess the relevant experience, identified principles, supporting materials, and application to the particular opinion. *Kumho Tire*, 526 U.S. at 150–52; *Hangarter*, 373 F.3d at 1017–18.

This request does not insulate Harper from scrutiny or prohibit Botner from explaining why a particular prediction needs empirical support. It prevents his preferred evidentiary form from becoming the legal standard. Defendant's own motion insists that legal conclusions belong to the Court. Dkt. 107 at 18:20–19:6. At a minimum, that principle warrants limiting paragraphs 25–26, 30, and 32, and the corresponding summaries in paragraphs 4(i), 81(i), and 83, only insofar as they pronounce a legal requirement or admissibility determination. ECF 106-1, Ex. B ¶¶ 4(i), 25–26, 30, 32, 81(i), 83; *Nationwide*, 523 F.3d at 1058–59.

**2. The complaints-per-unit calculation does not establish the prevalence of deception**

[redacted] Coelho Decl., Ex. A 58:23-59:14. [redacted] ECF 106-1, Ex. B ¶¶ 33–37. But he supplies no method converting

recorded manufacturer complaints per unit into a rate of consumer deception. *Id.*

The limitation is apparent from his own report. [redacted] ECF 106-1, Ex. B ¶ 31. [redacted] *Id.* ¶ 36 & nn.30–32. Those materials may support arithmetic about recorded complaints. They do not, without additional foundation, identify the number of unique purchasers, the proportion of dissatisfied purchasers who complained, or the rate at which deceived consumers would enter the complaint system. *Id.* ¶¶ 31, 33–37.

His testimony confirms why that use is unsupported. [redacted] Coelho Decl., Ex. A 38:11–39:21, 42:4–12. [redacted]*d.* at 58:14–59:6. Defendant nevertheless invokes the low complaint percentage against classwide deception. Dkt. 105 at 17:19–25. The low percentage does not establish a low rate of confusion; [redacted]

The defect is the unsupported inference from complaints per unit sold to the prevalence of consumer confusion. A low recorded complaint rate is not itself a measured rate of nondeception. Botner's sampling caution cannot disappear when the same self-selected source is used against Plaintiffs. ECF 106-1, Ex. B ¶¶ 31, 35–37. Under Rule 702(b)–(d) and *Joiner*, the Court should exclude the inference of little or no deception, or a population-level absence of confusion, in paragraphs 4(ii), 33–37, and 81(ii). Under the alternative request, the underlying counts and any independently supported descriptive calculation could remain available for their limited purpose.

**3. Controls must be connected to the inference the materiality survey makes**

Botner's controls discussion does not establish a categorical rule that every importance-rating survey is invalid without a control. [redacted] ECF 106-1, Ex. B ¶¶ 53–54. His cited Reference Guide heading addresses surveys designed to test a causal proposition, and [redacted] *Id.* ¶¶ 56–57 & n.59. The relevant question is whether he explains the causal inference for which that safeguard is necessary.

[redacted] ECF 106-1, Ex. B ¶¶ 38, 62. [redacted] *Id.* ¶¶ 52–57. That can support a criticism of an inference that the label caused a belief. It does not, without further explanation, establish that the responses cannot describe the reported importance of a benefit to the respondents.

[redacted] MCC Declaration, Ex. 13 (Haruvy Rpt.) ¶¶ 11, 53. [redacted] Coelho Decl. ¶ 11 (Haruvy Dep.), Ex. E 131:24–132:7. Botner must therefore explain why the absence of a control defeats that stated-importance use, rather than a different causal inference.

[redacted] Coelho Decl., Ex. A 95:3–96:9. [redacted] *Id.* That criticism may inform the survey's limits; it does not, without the required connection, establish the categorical absence

of any materiality evidence.

Alternatively, if the Court declines to exclude Botner's report in its entirety, Plaintiffs request that paragraphs 55–57 and the corresponding summaries not be used to declare the survey incapable of providing any materiality evidence solely because it lacks a control. ECF 106-1, Ex. B ¶¶ 55–57, 82(ii), 83. Defendant must connect the criticism to the use made of the survey. *Daubert*, 509 U.S. at 591–93; Fed. R. Evid. 702(a), (d). Under that alternative, the Court could consider independently supported concerns about the conclusions that the particular design can sustain.

**4. Repeated IP addresses do not by themselves establish an observed degree of distortion**

[redacted] His disclosed method does not establish the respondent duplication or effect on the final results necessary to support that unqualified conclusion under Rule 702(b) and (d). [redacted] ECF 106-1, Ex. B ¶¶ 73–75. [redacted] *Id.* ¶ 74, Table A & n.83. Plaintiffs acknowledge that Botner discloses this counting rule.

[redacted]; it does not itself establish that the same person completed multiple responses retained in the analysis. Nevertheless, [redacted] ECF 106-1, Ex. B ¶ 75. Paragraphs 73–75 do not identify a respondent-level linkage method, distinguish repeated starts from repeated retained completions, or explain why the reported overlap necessarily invalidates the substantive findings. *Id.* ¶¶ 73–75 & n.83.

Botner also distinguishes the sample stages. [redacted] Coelho Decl., Ex. A 108:1–8, 109:10–111:25. [redacted] *Id*. 112:9–16, 132:7–20. Table A therefore cannot be described as showing that [redacted] of the final analyzed responses came from repeat participants.

[redacted] MCC Declaration, Ex. 13 (Haruvy Rpt.), App. D at 41. That disclosed sequence confirms why counts taken before cleaning cannot be treated as counts of invalid responses retained in the final analysis.

[redacted] Coelho Decl., Ex. A 134:4–22. [redacted] *Id*. 135:6–136:18, 138:8–139:5, 140:10–142:10. Those qualifications preserve a data-quality criticism while foreclosing treatment of Table A as proof of respondent identity or a measured effect on the final findings.

An IP overlap count can identify a data-quality concern. Defendant must still establish a reliable basis for the further conclusion that the survey's substantive findings are invalid. Applying Haruvy's cleaning criterion to a broader set of IP addresses does not, by itself, supply that connection. *Joiner*, 522 U.S. at 146; Fed. R. Evid. 702(b), (d). Alternatively, if the Court retains Table A as an independently supported IP-overlap analysis, it should exclude [redacted]

[redacted]

**5. General risks of leading questions do not establish an observed degree of distortion**

[redacted] ECF 106-1, Ex. B ¶¶ 58–69 & nn.62–78. Plaintiffs do not seek exclusion merely because he did not experimentally quantify those risks. But [redacted] *Id*. ¶ 65. [redacted] should therefore be confined to the foundation actually supplied; it is not an observed measurement of ineligible respondents or a quantified distortion of the importance ratings. *Id*. ¶¶ 60–65.

The Court should distinguish qualitative methodological criticism from an assertion that the record establishes an actual amount or direction of distortion. If the Court declines to exclude the report in its entirety, it should at least exclude the latter assertion where no reliable application supports it. Fed. R. Evid. 702(d). Under that alternative, independently supported qualitative criticism in paragraphs 58–69 would remain subject to its own foundation.

**B. Song's Report Should be Excluded in Its Entirety**

[redacted] ECF 106-2, Ex. C ¶¶ 9, 100. [redacted] *Id*. ¶¶ 10–14, 24–25, 90–100. Plaintiffs seek exclusion of the report in its entirety because the legal prescriptions and unsupported extensions identified below form part of that integrated rejection of Bell's methodology.

**1. Song cannot prescribe the legal requirements for class certification or define the pleaded claims**

Song's paragraph 90 is a legal instruction, not an economic analysis. [redacted] ECF 106-2, Ex. C ¶ 90. [redacted] *Id.* ¶ 18 n.6. Those propositions concern the governing certification standard and construction of the pleadings. They provide legal instruction rather than specialized factual assistance under Rule 702(a), and the Court should exclude them under *Nationwide* and *Hangarter*. *Nationwide*, 523 F.3d at 1058–59; *Hangarter*, 373 F.3d at 1016.

The pleading itself supplies the relevant context: paragraph 4 identifies "Maximum Strength" and cure-and-prevention language, paragraphs 15–17 describe the combined packaging message, and paragraph 28 incorporates the preceding allegations. SAC ¶¶ 4, 15–17, 28. Whether those allegations support a particular cause of action is for the Court; Song's economic expertise does not resolve that construction.

The division of tasks among perception evidence, materiality evidence, and a damages model is a legal question for the Court. *Lytle* rejects a categorical requirement that the otherwise reliable damages model already be executed at certification. 114 F.4th at 1019. An economist may explain whether a proposed model measures a specified injury; she cannot add [redacted]. ECF 106-2, Ex. C ¶ 90.

[redacted] ECF 106-2, Ex. C ¶ 86. That litigation outcome supplies neither a scientific validation criterion nor a binding checklist for this Court.

**2. Song's conjoint and Bayesian criticisms exceed her demonstrated expertise**

[redacted] Ex. B (Song Dep.) 34:12–36:20. [redacted] *Id*. 35:19–25, 36:21–37:13. [redacted] *Id*. 37:14–22.

[redacted] MCC Declaration, Ex. 15 (Bell Rpt.) ¶¶ 38–39, 48. MCMC—Markov chain Monte Carlo—is a long-established computational approach used in HB: repeated sampling estimates model parameters and the uncertainty in those estimates. *See* Richard M. Johnson, *Understanding HB: An Intuitive Approach* 5–9 (Sawtooth Software, Mar. 2000).

[redacted] Ex. B 78:4–6, 79:11–17, 84:3–8. [redacted] *Id*. 79:18–22. [redacted] *Id*. 87:2–6. [redacted] *Id*. 85:19–23. [redacted] ECF 106-2, Ex. C ¶¶ 13, 53, 62, 66, 79, 98. These admissions concern the computation and assessment of uncertainty underlying the very estimates she attacks. [redacted] MCC Declaration, Ex. 15 (Bell Rep.) ¶ 50. [redacted] does not establish why those measures would fail.

Bell's Equilibrium Price Premium ("EPP") measures alleged overpayment while accounting for competitive pricing. He defines it as "a measure of marketplace value for a feature that allows for competitive price reactions to changes to the features of a product." MCC Declaration, Ex. 15 (Bell Rpt.) ¶¶ 53, 59. [redacted] Coelho Decl., Ex. B 107:13–22. [redacted] *Id.* 96:16–21. She nevertheless attacks that measure's reliability. ECF 106-2, Ex. C ¶¶ 66–83. Her unfamiliarity with the measure she attacks reinforces the absence of a demonstrated foundation for those criticisms.

Song's admissions expose a missing foundation for her specialized HB and EPP conclusions. General economics credentials cannot substitute for the expertise and reliable application required by Rule 702.

[redacted] is equally unsupported. [redacted] Coelho Decl., Ex. B 144:14–145:6. That testimony supplies no empirical basis for treating bias as an established result of Bell's proposed design.

**3. [redacted] is an assumption, not Song's independent medical or market finding**

[redacted] ECF 106-2, Ex. C ¶ 24 & n.18. [redacted] *Id.* ¶ 25. Paragraphs 24–25 identify no separate medical assessment or market investigation establishing that premise.

*Id.*

Bell's disclosed comparison also matters. [redacted] MCC Declaration, Ex. 15 (Bell Rep.) ¶¶ 40, 44. Those provisions do not themselves require reformulating the product to cure nail fungus. [redacted] does not establish that this packaging comparison is impossible. [redacted] Coelho Decl. ¶ 12, Ex. F (Bell Dep.) 75:6–18, 76:7–17.

Song's testimony undermines that assumption. [redacted] Coelho Decl., Ex. B 38:5–9, 108:5–109:6. [redacted]; [redacted] ECF 106-2, Ex. C ¶ 73; Coelho Decl., Ex. B 110:18–24. [redacted], [redacted] ECF 106-2, Ex. C ¶ 74; Coelho Decl., Ex. B 141:6–142:25. [redacted] *Id.* 142:19–143:1. The premise that [redacted]—remains unestablished.

[redacted] Coelho Decl., Ex. B 136:14–137:25. [redacted] does not establish its impossibility. The Court should exclude the

resulting impossibility and cost conclusions because Song has not connected them to Bell's actual packaging comparison. Fed. R. Evid. 702(b), (d).

#### 4. Nonexecution cannot substitute for analysis under the correct certification standard

[redacted] ECF 106-2, Ex. C ¶¶ 11–14, 46, 91, 96–97. A reliable, sufficiently developed model may nevertheless establish the availability of common damages proof before execution. *Lytle*, 114 F.4th at 1019, 1023–24. The Court decides whether Bell's proposal meets that standard.

### C. Parker's Label-Reading and Monograph Compliance Opinions Should be Excluded

Parker was retained to rebut Bogyo, but her report goes beyond his scientific analysis to predict that consumers read the Drug Facts label and to conclude that the disclosures are adequate. ECF 105-02, Ex. A at 22–23. Plaintiffs challenge those opinions as improper rebuttal and separately challenge her legal conclusions about compliance with FDA Monograph M005. Her medical testimony—including her acknowledgment that tolnaftate does not penetrate the nail and cannot treat fungus infecting the nail plate—is not challenged here. *Id*. at 15.

Rebuttal testimony must contradict or rebut evidence on the same subject matter identified by the opposing expert. Fed. R. Civ. P. 26(a)(2)(D)(ii). A rebuttal report is not a vehicle for new arguments merely because they concern the same lawsuit. *R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd*., 2011 WL 2923703, at *2 (D. Nev. July 18, 2011).

Parker's own admissions establish that her consumer-reading opinions exceed that scope. [redacted] Coelho Decl., Ex. C 18:4–6, 28:7–21. [redacted]

[redacted] *Id*. 28:22–29:4. [redacted] Coelho Decl. ¶ 13, Ex. G (Bogyo Dep.) 169:4–18. [redacted] Coelho Decl., Ex. C 26:4–20. That changes the subject. Whether the formulation can penetrate the nail is a scientific question; whether shoppers read and understand a disclaimer is a consumer-behavior question. [redacted] *Id.* 27:12–28:3. Labeling her opinion "rebuttal" does not supply an opinion to rebut. The consumer-reading and related disclosure-adequacy conclusions at pages 22–23 should be excluded as rebuttal to Bogyo.

Parker's monograph-compliance opinion independently crosses the line into legal instruction. She concludes that Fungi-Nail's labeling complies with FDA Monograph M005 and interprets the monograph to prohibit sale of a stronger OTC tolnaftate product. ECF 105-02, Ex. A at 4–5, 21–23. Those are conclusions about what the law permits and whether Defendant complies. Calling them medical opinions does not make them admissible. Expert testimony may not supply legal conclusions or instruct the Court on governing law. *Nationwide*, 523 F.3d at 1058–59; *Hangarter*, 373 F.3d at 1016. Rebuttal does not create an exception. The Court should exclude her legal interpretations of M005 and her conclusions that Defendant's labeling complies with it. Her medical testimony about skin treatment and nail penetration remains outside this request.

## V. REQUESTED RELIEF

Plaintiffs request an order striking or excluding in their entirety the rebuttal reports of Botner (ECF 106-1, Ex. B) and Song (ECF 106-2, Ex. C), and precluding reliance on those reports and opinions at class certification. If the Court declines to exclude either report in full, Plaintiffs request the limitations in items 1 and 2 below.

Plaintiffs separately request the limited exclusion of Parker's opinions described in item 3.

1. Botner (ECF 106-1, Ex. B): [redacted] Under this alternative, the limitations preserve the properly founded descriptive calculations and qualitative methodological criticism identified in Section IV.A.

2. Song (ECF 106-2, Ex. C): [redacted] ¶¶ 9, 11, 14, 91, 93, 96, 100.

3. Parker (ECF 105-02, Ex. A): exclude (a) the label-reading and related disclosure-adequacy opinions at pages 22–23 as improper rebuttal to Bogyo; and (b) her legal interpretations of FDA Monograph M005 and conclusions that Fungi-Nail's labeling complies with it, including at pages 4–5, 21, and 22–23. Preclude testimony presenting those opinions at class certification.

The proposed order excludes Botner's and Song's reports in their entirety and limits Parker's testimony only as specified above. The alternative limitations in items 1 and 2 apply to any Botner or Song report the Court declines to exclude in full.

## VI. CONCLUSION

For these reasons, the Court should strike or exclude Botner's and Song's rebuttal reports in their entirety and preclude reliance on those reports and opinions at class certification. Alternatively, it should exclude, or decline to rely on, the Botner and Song opinions identified in Section V. The Court should also exclude Parker's label-reading and related disclosure-adequacy opinions as improper rebuttal to Bogyo, and her legal interpretations of and compliance conclusions under FDA Monograph M005.

Dated: September 18, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach
*Attorneys for Plaintiffs and the Putative Classes*

## VII. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Megan Wheeler, certifies that the memorandum contains 5,697 words, including its headings, citations, and footnotes, and excluding the caption, tables of contents and authorities, signature block, and this certificate. The memorandum does not exceed the 7,000-word limit in Local Rule 11-6.1.

Dated: September 18, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho

*Attorneys for Plaintiffs and the Putative Classes*