Thiago M. Coelho (SBN 324715)
*thiago.coelho@wilshirelawfirm.com*
Lauren Lendzion (SBN 239184)
*lauren.lendzion@wilshirelawfirm.com*
Chumahan B. Bowen (SBN 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach (SBN 281404)
*jennifer.leinbach@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARCADIA CONSUMER HEALTHCARE, INC. a Delaware corporation,<br><br>Defendant. | Case No.: 8:24-cv-02657-JDE<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE OR EXCLUDE REBUTTAL EXPERT REPORTS**<br><br>Date: October 22, 2026<br>Time: 10:00 a.m.<br>USDC Judge: John D. Early<br>Courtroom: 6A<br><br>Complaint Filed: 12/06/2024<br>Class Discovery Cutoff: 05/12/2026<br>Fact Discovery Cutoff: 12/28/2026<br>Pretrial Conf.: 05/21/2027<br>Trial Date: 06/02/2027 |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. Arcadia Improperly Reverses the Rule 702 Burden ..... 3

B. Botner's Report Should Be Excluded ..... 5

1. Botner's rebuttal to Harper should be excluded to the extent he opines on her admissibility. ..... 5

2. Botner's unsupported inferences derived from his complaints-per-unit calculation should be excluded. ..... 6

3. Botner's conclusions regarding survey controls, duplicate IP-addresses and bias should be excluded. ..... 7

C. Song's Report Should Be Excluded ..... 12

1. Song's report expressly announces a certification requirement ..... 12

2. Song lacks the qualifications or experience to offer her conjoint or Bayesian criticisms. ..... 13

3. Song's conclusion that Bell's analysis requires identifying a hypothetical effective product or a reformulation is without basis. ..... 14

4. Song's nonexecution characterizations are inappropriate ..... 15

D. Parker's Conclusions Regarding Consumer Label Interpretation and FDA Compliance Should be Excluded ..... 16

1. Parker's consumer prediction is outside the scope of rebuttal and her expertise. ..... 16

## TABLE OF CONTENTS

Page

2. Parker's FDA Monograph compliance opinion is an improper legal conclusion ........ 18

E. The Motion Should Be Considered on its Merits ........ 19

III. CONCLUSION ........ 22

CERTIFICATE OF COMPLIANCE ........ 23

# TABLE OF AUTHORITIES

Page

**Cases**

*Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*
2026 WL 2161197 (N.D. Cal. July 27, 2026) ............ 14

*BillFloat Inc. v. Collins Cash Inc.*
105 F.4th 1269 (9th Cir. 2024) ............ 9

*Blockchain Innovation, LLC v. Franklin Res., Inc.*
2024 WL 5483606 (N.D. Cal. Oct. 22, 2024) ............ 2, 14

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*
241 F. Supp. 3d 1084 (C.D. Cal. 2017) ............ 21

*Cahill v. Nike, Inc.*
2022 WL 19226181 (D. Or. Nov. 22, 2022) ............ 12

*CarMax Auto Superstores California LLC v. Hernandez*
94 F. Supp. 3d 1078 (C.D. Cal. 2015) ............ 19, 21

*Claudia Morales v. Kraft Foods Grp., Inc.*
2017 WL 2598556 (C.D. Cal. June 9, 2017) ............ 8

*Engilis v. Monsanto Co.*
151 F.4th 1040 (9th Cir. 2025) ............ 3

*Falcone v. Nestle USA, Inc.*
2026 WL 74510 (9th Cir. Jan. 9, 2026) ............ 9

*Freeman v. Time, Inc.*
68 F.3d 285 (9th Cir. 1995) ............ 8

# TABLE OF AUTHORITIES


Page

*General Electric Co. v. Joiner*
522 U.S. 136 (1997) .......... 7

*Hardeman v. Monsanto Co.*
997 F.3d 941 (9th Cir. 2021) .......... 7

*Hill v. Roll Internat. Corp.*
195 Cal. App. 4th 1295 (2011) .......... 8

*Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*
340 F. Supp. 3d 934 (N.D. Cal. 2018) .......... 16–17

*Icon Enters. Int'l, Inc. v. Am. Prods. Co.*
2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) .......... 9

*In re NJOY, Inc. Consumer Class Action Litig.*
120 F. Supp. 3d 1050 (C.D. Cal. 2015) .......... 10

*In re Roundup Prods. Liab. Litig.*
390 F. Supp. 3d 1102 (N.D. Cal. 2018) .......... 7

*Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.*
1995 WL 115421 (N.D. Cal. Mar. 15, 1995) .......... 16–17

*Krueger v. Wyeth, Inc.*
396 F. Supp. 3d 931 (S.D. Cal. 2019) .......... 17–18

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*
2014 WL 572290 (N.D. Cal. Feb. 11, 2014) .......... 8–9

*Lytle v. Nutramax Laboratories, Inc.*
114 F.4th 1011 (9th Cir. 2024) .......... 8, 15

## TABLE OF AUTHORITIES

Page

*Masimo Corp. v. Apple Inc.*
2020 WL 5215385 (C.D. Cal. Aug. 4, 2020) .......... 20

*Melgar v. Zicam LLC*
2015 WL 5255391 (E.D. Cal. Sept. 9, 2015) .......... 10

*Meza v. Nissan N. Am., Inc.*
2025 WL 1543608 (C.D. Cal. Mar. 17, 2025) .......... 20–21

*Montera v. Premier Nutrition Corporation*
2022 WL 1225031 (N.D. Cal. Apr. 26, 2022) .......... 10

*Montoya v. Orange Cnty. Sheriff's Dep't*
987 F. Supp. 2d 981 (C.D. Cal. 2013) .......... 19

*Morris v. BNSF Ry. Co.*
790 F. Supp. 3d 1129 (W.D. Wash. 2025) .......... 1, 5–6, 12

*Nationwide Transp. Fin. v. Cass Info. Sys.*
523 F.3d 1051 (9th Cir. 2008) .......... 5, 12

*Oracle America, Inc. v. Google Inc.*
No. C 10-03561 WHA, ECF 1782 (N.D. Cal. May 2, 2016) .......... 9

*Padilla Ayala v. Teledyne Def. Elecs.*
533 F. Supp. 3d 920 (C.D. Cal. 2021) .......... 19–21

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*
648 F. App'x 609 (9th Cir. 2016) .......... 8–9

*United States v. Chang*
207 F.3d 1169 (9th Cir. 2000) .......... 16

## TABLE OF AUTHORITIES

Page

*Zeiger v. WellPet LLC*
526 F. Supp. 3d 652 (N.D. Cal. 2021) ..................................................... 3, 18–19

**Rules**

Federal Rule of Civil Procedure 23 ..................................................... 2, 12

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) ..................................................... 16

Federal Rule of Evidence 702 ..................................................... 1, 3–5, 7, 13

Federal Rule of Evidence 702, advisory committee's note to 2000 amendment ..................................................... 3

Local Rule 7-3 ..................................................... 19

Local Rule 11-6.1 ..................................................... 23

**Other Authorities**

FDA Monograph M005 ..................................................... 2–3, 18

FDA Food Safety Modernization Act ..................................................... 18

5 J. Thomas McCarthy, Trademarks and Unfair Competition § 32:162 (4th ed. 2001) ..................................................... 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs[1] seek the exclusion of Arcadia's experts' rebuttal reports to the extent that they are not the product of reliable principles or methods and will not assist a trier of fact. Instead of directly addressing Plaintiffs' requested relief, Arcadia's Opposition puts its weight on rhetoric. It repeatedly mischaracterizes Plaintiffs' Motion as an attempt to resolve mere disagreements between the Parties' experts or to bolster Plaintiffs' experts. *See* Opp. at 5. As explained below, each of the opinions Plaintiffs seeks to exclude falls short of Rule 702's requirements.

*First,* Botner's report should be excluded. His opinions about the reliability of Harper's testimony, including that she "cannot offer competent or reliable evidence" or that her opinions "are not backed by any reliable methodology," (ECF 106-1, Ex. B ¶¶25-26, 32) are clearly an improper attempt to instruct the court regarding Rule 702 admissibility. *Morris v. BNSF Ry. Co.*, 790 F. Supp. 3d 1129, 1141 (W.D. Wash. 2025) (an expert cannot interpret statutory language). Worse, he offers no basis or methodology to support his Harper or Haruvy rebuttals. As to Harper, he admits that his one-in-28,000 figure may not represent the actual marketplace for Arcadia's products and does not adequately

[1] Unless stated otherwise, all defined terms shall have the same meaning as set forth in Plaintiff's opening brief.

estimate the percentage of consumers misled by the Fungi-Nail label. Dkt. 106-1, Ex. B ¶31; Dkt. 125-1 ("Coelho Opening Decl."), Ex. A at 58:23-59:6. As to Haruvy, his criticisms amount to little more than reciting general survey principles without explaining how (or even if) they render his materiality findings unreliable, and he has already admitted that his 458 figure preceded Haruvy's final exclusions and did not identify duplicate participants retained at the final sample. Coelho Opening Decl., Ex. A at 112:9–16.

*Second,* Song's report should be excluded. She not only offers improper legal conclusions as to Rule 23 class certification, but her deposition testimony makes clear that she lacks the requisite familiarity with economic price premiums or conjoint and Bayesian analyses to opine on those topics here. Coelho Opening Decl., Ex. B at 34:12-36:20; 78:4-6; 87:2-6; 107:13-22. Song's lack of relevant experience renders her rebuttal of Bell unreliable: her opinions cannot assist a trier of fact regardless of how credentialed or experienced she is in the field of economics generally. *See Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-TSH, 2024 WL 5483606, at *10 (N.D. Cal. Oct. 22, 2024) ("[E]xpertise in an industry, without more, does not qualify a witness to testify about valuation methodology.") (citation modified).

*Finally,* Parker's consumer behavior and FDA Monograph M005 conclusions should be excluded. As to the former, it is both outside the scope of Bogyo's report, which Parker purports to rebut, and outside the scope of

Parker's expertise as a medical expert. *See* Dkt. 127-4, Ex. C at 28:7-21 (admitting that Bogyo did not opine that consumers fail to read the Fungi-Nail disclaimer). As to the latter, Parker's conclusion that Fungi-Nail's packaging is in compliance with the FDA Monograph M005 is clearly an improper legal conclusion because it "require[s] an application of the standard set out in regulatory guidance or government-endorsed model regulations to particular facts." *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 680 (N.D. Cal. 2021). Plaintiffs' Motion should be granted.

## II. ARGUMENT

### A. Arcadia Improperly Reverses the Rule 702 Burden

As to the merits of the Motion, Arcadia asserts that Plaintiffs "fail to carry their burden under Rule 702 and *Daubert*." Opp. at 1. But it is Arcadia, not Plaintiffs, that bears the burden of establishing the admissibility of its own expert's opinions. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1048 (9th Cir. 2025) ("the proponent of expert testimony 'has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.'") (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). As such, it is Arcadia, not Plaintiffs, who must "demonstrate to the court that it is more likely than not" that Rule 702's requirements are satisfied. *Id.* at 1049.

Indeed, Arcadia's Opposition repeatedly retreats to the red herring characterization that Plaintiffs seek exclusion of Arcadia's expert reports merely because they disagree with them. *See* Opp. at 5. Plaintiffs' Motion makes no such request. *See, e.g.*, Mot. at 18 (identifying limited exclusions of specific, unreliable testimony). Instead, Plaintiffs dispute whether the particular conclusions of Arcadia's experts are relevant or helpful under Rule 702(a), have sufficient factual support under Rule 702(b), are based on reliable of principles and methods under Rule 702(c), and reflect a reliable application of those principles and methods under Rules 702(d).

Furthermore, while Arcadia accuses Plaintiffs of using the Motion to improperly "bolster" their own experts (See Opp. at 1, 5 n.1)[2], it is common sense that testing rebuttal opinions necessarily requires examining the opinions they purport to rebut. Comparing Arcadia's expert conclusions with Plaintiffs' experts' is a core foundation of the Rule 702 analysis.

---

[2] Further, the authorities Arcadia cites for this proposition concern the circumvention of page limits or the submission of additional evidence after motions *in limine* were already filed. They do not establish that a Rule 702 challenge becomes improper simply because it undermines an opponent's expert rebuttals.

**B. Botner's Report Should Be Excluded**

**1. Botner's rebuttal to Harper should be excluded to the extent he opines on her admissibility.**

Botner states that Harper "would need a survey to provide accurate, reliable opinions" and that, absent such a survey, "she cannot offer competent or reliable evidence about any of these assertions." ECF 106-1, Ex. B ¶26. He also states that her opinions "are not reliable evidence," (*id.* ¶25) and "are not backed by any reliable methodology," (*id.* ¶32). Plaintiffs seek exclusion of these conclusions to the extent they prescribe the legal requirements for admissibility.[3]

These conclusions go beyond permissible methodological objections; they instead seek to prescribe a categorical survey requirement using the language of Rule 702's expert admissibility inquiry. *See Nationwide Transp. Fin. v. Cass Info. Sys.,* 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to his legal conclusion, i.e., an opinion on an ultimate issue of law") (internal quotations omitted); *Morris*, 790 F. Supp. 3d at 1141 ("When an expert purports to interpret a statute…this testimony is a legal conclusion and is inappropriate for an expert to testify to.") (internal quotations

[3] While Arcadia contends that Plaintiffs "do not, and cannot, actually quote from Dr. Botner's report," Opp. at 7, the Motion quotes the report and identifies the relevant paragraphs. *See* Mot. at 5–6; ECF 106-1, Ex. B ¶¶25–26, 32.

omitted). While Botner may disagree with Harper's methodology or conclusions, he may not instruct the court on what is or is not admissible. *Id.*

**2. Botner's unsupported inferences derived from his complaints-per-unit calculation should be excluded.**

Botner asserts that he calculated an approximate rate of one efficacy complaint per 28,000 units sold, which he contends disproves the notion that a significant number of consumers were confused about Fungi-Nail's efficacy. Dkt. 106-1, Ex. B ¶¶33-37. Botner, however, supplies no basis or methodology for which he converted this rate into a conclusion against consumer deception.

To be sure, dividing Arcadia's recorded complaints by units sold supplies neither the number of unique purchasers nor the likelihood that a confused purchaser would complain. Nor does it tend to prove that purchasers who did not complain were not confused. Indeed, Botner admitted at deposition that his one-in-28,000 figure does *not* estimate the percentage of consumers who misunderstood the Fungi-Nail product or packaging. Coelho Opening Decl., Ex. A at 58:23-59:6 ("Yeah, I don't claim that it does represent."). He also admitted in his report that the complaint sampling he used were self-selected and may not reflect the marketplace and instead are derived from sales materials provided by counsel. Dkt. 106-1, Ex. B ¶¶31, 33-34.

Put simply, Botner's proffered complaint-rate and his conclusions derived therefrom are not the product of scientific, technical or other specialized

knowledge or reliable principles or methods as required under Rule 702(a), (c) or (d). Without an explanation as to how his one-in-28,000 calculation refutes Harper's customer-complaint based conclusions, "[t]here is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). His complaint ratio and his unfounded extrapolation that it serves as evidence against consumer misunderstanding or deception should be excluded. *See In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018), *aff'd sub nom. Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) ("In short, both unsound methods and unjustified extrapolations from existing data can require the Court to exclude an expert").

**3. Botner's conclusions regarding survey controls, duplicate IP-addresses and bias should be excluded.**

Botner concludes that the Haruvy survey is overinclusive, lacks controls, and included leading and biased questions, all of which render it "unable to provide any valid and reliable evidence of consumer perceptions and materiality." Dkt. 106-1, Ex. B ¶83. But merely invoking general survey principles cannot establish the consequences Botner asserts in his report. Here again, Botner failed to proffer a sufficient basis and methodology supporting his sweeping conclusion that Haruvy's survey provides no valid materiality evidence.

Botner's contention that Haruvy's survey is overinclusive because it targeted consumers of OTC health products is without merit. Materiality, and therefore reliance, can be proved by the reasonable consumer standard. *Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1011, 1034–35 (9th Cir. 2024). Haruvy surveyed reasonable consumers, in this case potential purchasers of Fungi-Nail. That is in line with the California Court of Appeal, who have indicated that consumer studies seeking to uncover the mental states of a reasonable consumer should include a broad, and not narrow, survey population. *Hill v. Roll Internat. Corp.*, 195 Cal. App. 4th 1295, 1304, 128 Cal. Rptr. 3d 109, 116 (2011) ("California courts consistently have looked to the ordinary consumer within the larger population") (citation omitted). Likewise, the Ninth Circuit has held that "false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).[4] Accordingly, "materiality, and therefore

[4] *Kwan Software Eng'g, Inc. v. Foray Techs., LLC* is inapposite. Its court found a survey non-representative because it surveyed purchasers of a police software (*i.e.* police departments), rather than the intended end users (*i.e.* police officers). No. C 12-03762 SI, 2014 WL 572290, at *4 (N.D. Cal. Feb. 11, 2014). Here Plaintiffs (and the putative class) are both purchasers and users of Arcadia's products. "Moreover, there is no requirement that the universe of those surveyed overlap entirely with the class." *Claudia Morales, et al. v. Kraft Foods Grp., Inc., et al. Additional Party Names: Mocha Gunaratna*, No. LACV1404387JAKPJWX, 2017 WL 2598556, at *13 (C.D. Cal. June 9, 2017); *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613 (9th Cir. 2016) (reversing exclusion of materiality survey that included purchasers of other products in its

reliance, can be proved or disproved on a class-wide basis from consumer research and surveys without having to scrutinize materiality as to every single class member." *Falcone v. Nestle USA, Inc.*, No. 24-7707, 2026 WL 74510, at *2 (9th Cir. Jan. 9, 2026).

Regardless, criticisms of the demographic of a consumer survey "go only to the weight, and not the admissibility, of the survey." *See ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.,* 648 F. App'x 609, 613-14 (9th Cir. 2016) (internal citation omitted). Indeed, the Ninth Circuit routinely finds survey issues such as "the over-and under-inclusiveness of the respondent universe," or the "failure to include a separate control group" are "are precisely the kind of claimed deficiencies that go to the weight of the evidence, not its admissibility." *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1276 (9th Cir. 2024); *Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, No. CV 04-1240 SVW PLAX, 2004 WL 5644805, at *26 (C.D. Cal. Oct. 7, 2004) ("selection of an inappropriate universe generally affects the weight of the resulting survey data, not its admissibility.") (citing 5 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 32:162 (4th ed.2001)).

---

universe); *Oracle America, Inc. v. Google Inc.,* No. C 10-03561 WHA, ECF 1782, at 8–11 (N.D. Cal. May 2, 2016) (survey "did not need to be limited to respondents from that population in order to produce reliable results") (distinguishing *Kwan*).

Botner states that "[s]urveys must have controls in order to rule out other explanations for survey responses" or else they are "fundamentally flawed," Dkt. 106-1, Ex. B ¶57. However, Botner offers no explanation connecting this generalized statement to any specific alleged inability of Haruvy's survey to provide evidence towards materiality. *See Melgar v. Zicam LLC*, No. 2:14-CV-0160 MCE AC, 2015 WL 5255391, at *2 (E.D. Cal. Sept. 9, 2015) ("rebuttal witnesses are only proper to the extent, and only to the extent, that they directly address and dispute matters raised…by the opposing party's witness"). Nor could he, as Haruvy confirmed at deposition that his survey measured the importance consumers placed on nail-fungus efficacy as a product feature, not causality. Coelho Opening Decl., Ex. E at 131:24-132:7. Further, Courts in this District have rejected similar categorical conclusions,[5] and Arcadia offers no basis to reach a different conclusion here. *See, e.g. In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1078 (C.D. Cal. 2015) (rejecting conclusion that a survey that did not use a control group was "inherently unreliable").

[5] While *Montera v. Premier Nutrition Corporation*, 2022 WL 1225031, at *11 (N.D. Cal. Apr. 26, 2022) admitted literature-supported rebuttal testimony, it does not stand for the proposition that Botner may declare Haruvy's materiality survey invalid through an appeal to general survey principles without addressing how those principles render his results unreliable.

Botner's duplicate IP-address conclusion fares even worse. His report claims to have identified 458 completed responses associated with IP addresses that appeared more than once, which he contends is "significant evidence of duplicate responses." Dkt. 106-1, Ex. B ¶¶74-75. He even goes as far as to state that "any opinions based on these data and findings are invalid and unreliable" based on this alleged duplication. *Id.* at ¶75.

Yet when questioned about this 458 figure at deposition, Botner admitted that it did not account for Haruvy's data cleaning exclusions that were described in his report, and which removed a significant portion of those allegedly duplicative responses. Coelho Opening Decl., Ex. A at 112:9–16; *see also* MCC Declaration, Ex. 13 (Haruvy Rpt.) at ¶¶17-18, 34, 31; App. D at 41. Botner further admitted that the figure included incomplete starts and counted multiple sessions even when only one was completed. Coelho Opening Decl., Ex. A at 132:7–20. As for the figures' usefulness as evidence of duplication specifically, Botner acknowledged that different individuals can share an IP and that repeated IP addresses alone do not establish that the same person completed multiple survey responses. *Id.* at 134:16-19. Put simply, neither Botner's duplication IP-address calculation or his resulting duplication conclusions are the product of reliable principles or methodology. Both should be excluded.

Finally, Botner's conclusion that Haruvy's survey was "almost certain to lead to more affirmative responses" directly conflicts with his following

conclusion that a researcher would be "unable to measure the direction and magnitude" of the survey's alleged bias. Dkt. 106-1, Ex. B ¶¶60, 65. Regardless, qualitative concerns do not themselves establish the presence of invalid respondents or that distortion occurred. This conclusion should also be excluded.

**C. Song's Report Should Be Excluded**

**1. Song's report expressly announces a certification requirement**

Arcadia denies that Song seeks to instruct the finder of fact on the Rule 23 certification requirements. Opp. at 12. Yet her report expressly states that "[i]t is my understanding that for class certification, Dr. Bell needs to present a methodology that can identify which class members were misled by the alleged misrepresentation and suffered damages as a result." Dkt. 106-2, Ex. C at ¶90.

This goes beyond a mere personal opinion; it expressly invokes Rule 23's class certification standard, raises questions of law and assigns a legal burden. Opp. at 12. Regardless of whatever Song's understanding of Rule 23's certification requirements are, it is not an economic methodology and she is not qualified to opine on it. *See Nationwide,* 523 F.3d at 1058; *Morris*, 790 F. Supp. 3d at 1141; *Cahill v. Nike, Inc.*, No. 3:18-CV-1477-JR, 2022 WL 19226181, at *17 (D. Or. Nov. 22, 2022) ("To the extent Dr. Saad offers his own legal analysis and conclusions on issues related to class certification, the Court should not consider those opinions").

**2. Song lacks the qualifications or experience to offer her conjoint or Bayesian criticisms.**

Song's testimony at deposition makes clear that she lacks the requisite Rule 702 knowledge and qualifications to critique Bell's proposed damages model. She has not designed any consumer choice-based conjoint study herself, has never personally run a Hierarchical Bayes estimation for conjoint data, and has never conducted research on equilibrium price premiums and has only rarely seen scientific authorities related to its calculation. Coelho Opening Decl., Ex. B at 34:12-36:20; 96:16-21. Indeed, she expressed total unfamiliarity with foundational terms underlying these concepts such as Markov chain Monte Carlo, Bayesian credible interval, or equilibrium price premium. Coelho Opening Decl., Ex. B at 79:18-22; 87:2-6; 107:13-22 ("I have not heard …equilibrium price premium. You have to define it for me."). Her clear unfamiliarity with the underlying science behind Bell's methodology renders her criticisms less than useful to trier of fact.

Faced with these unequivocal admissions, Arcadia can only tout Song's myriad of economics-related degrees, credentials and prior expert witness history. Opp. at 13-14. But whether Song is qualified to testify about other economic issues she is more familiar with is irrelevant: she is demonstrably ill-equipped to offer critiques about conjoint and Bayesian analyses given her admitted unfamiliarity with them. "[E]xpertise in one subject does not

necessarily mean that the expert will be qualified to testify on all issues that could arise from that subject." *Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*, No. 22-CV-05448-PCP, 2026 WL 2161197, at *5 (N.D. Cal. July 27, 2026) (citing cases). Here, Song's general expertise in economics, however extensive it may well be, "does not necessarily qualify [her] to opine" on Bell's conjoint and Bayesian analyses. *Id.*; *see also Blockchain Innovation*, 2024 WL 5483606, at *10 ("[E]xpertise in an industry, without more, does not qualify a witness to testify about valuation methodology.") (citation modified).

**3. Song's conclusion that Bell's analysis requires identifying a hypothetical effective product or a reformulation is without basis.**

Song's conclusion that a hypothetical alternative product that does kill nail fungus is an impossible alternative that leads to an overstatement of Plaintiffs' claim arises purely from her reading of Arcadia's corporate testimony, not her own independent medical assessment or market investigation. *See* Dkt. 106-2, Ex. C at ¶25. She also assumes, without basis, that the but-for comparison proposed by Bell would require a reformulation of Defendant's product, which would impose marginal costs that would impact his price premium calculation. *Id.* at ¶¶73-74; Coelho Opening Decl., Ex. B at 38:5-9, 108:5-109:6.

Bell's report makes clear that no such alternative product or reformulation would be required. His test will present the Fungi-Nail packaging with a legally

and scientifically accurate but-for disclaimer to isolate the brand name's effect while holding other features constant. MCC Declaration, Ex. 15 (Bell Rep.) ¶¶40, 44. Regardless, Song fails to establish any factual connection between this planned comparison and the reformulation that she claims would be required. Indeed, when asked about marginal costs at deposition, Song admitted that she saw no reason for her to calculate or obtain marginal cost-information to criticize Bell's calculation. Coelho Opening Decl., Ex. B at 142:19-143:1.

**4. Song's nonexecution characterizations are inappropriate**

Finally, Song repeatedly criticizes Bell's conclusions as lacking because he has not yet conducted his survey. Dkt. 106, Ex. C at ¶¶11, 96-97 (stating that "Dr. Bell's submission is incomplete because he has not conducted any survey or any empirical analysis"), 100 (stating that "the Bell Report is not helpful in evaluating whether damages can be estimated on a class wide basis" because "[t]here are no inputs in his proposed measures of economic price premium since he has not yet conducted a conjoint survey"). These opinions cut against Arcadia's contention that it "does not criticize Bell's proposed survey because it is unexecuted" (Opp. at 15) and runs contrary to Ninth Circuit law. *See Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1011, 1029–32 (9th Cir. 2024) (permitting unexecuted survey evidence at class certification). These opinions should be excluded as well.

**D. Parker's Conclusions Regarding Consumer Label Interpretation and FDA Compliance Should be Excluded**

**1. Parker's consumer prediction is outside the scope of rebuttal and her expertise.**

Fed. R. Civ. P. 26(a)(2)(D)(ii) specifies that the role of a designated rebuttal expert is solely to contradict or rebut evidence on the same subject matter identified by the opposing party's expert witness. Importantly, "[r]ebuttal testimony cannot be used to advance new arguments or new evidence." *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) (citation and quotation marks omitted); *Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995) ("'Rebuttal' experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.").

Here, Parker opines that consumers would read Fungi-Nail's Drug Facts Label and would find the disclosures there adequate to avoid being misled. Dkt. 105-02, Ex. A at 22-23. As an initial matter, whether shoppers would read and understand a disclaimer is clearly a consumer behavior question that Parker cannot answer because it exceeds the scope of her medical expertise. *See United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (expert witnesses cannot testify on subjects beyond their expertise). But even if Parker were

qualified to opine on such matters (she is not), she cannot do so here through an alleged rebuttal of Bogyo, who offered no comparable consumer analysis.

Indeed, while Arcadia contends that "Plaintiffs opened the door to Dr. Parker's rebuttal testimony" (Opp. at 16), it cites no portion of Bogyo's report that offers a comparable opinion on consumer behavior.[6] Nor could it, as Parker herself admitted at deposition that Bogyo did not opine that consumers fail to read the Fungi-Nail labeling directions, disregarded the disclaimer, or lacked access to it prior to purchase. Dkt. 127-4, Ex. C at 28:7-21. She further acknowledged that Bogyo did not give an opinion about consumers' net impression of the labeling. *Id*. at 28:22-29:4. Her consumer opinions are neither qualified nor tied to a rebuttal of Bogyo and should thus be excluded. *Huawei Techs.*, 340 F. Supp. 3d at 995; *Int'l Bus. Machs. Corp.*, 1995 WL 115421, at *3.

Further, Parker's consumer opinions should also be excluded as irrelevant because they do not assist a trier of fact. Her conclusion that consumers read directions *before using* a product does not establish what shoppers will do *before purchasing* it. Dkt. 105-02, Ex. A at 22-23 (opining that consumers read the drug facts label prior to use); *see Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931,

---

[6] By contrast, Arcadia complains of a "wholesale lack of direct quotes or citations to Dr. Parker's actual report" in Plaintiffs' Motion. Opp. at 16. The very pages it cites contain direct citations to her report. *See* Mot. at 16–17.

941-42 (S.D. Cal. 2019) (expert testimony is "irrelevant and therefore inadmissible" when it lacks the tendency to "make the existence of any fact that is at consequence to the determination of the action more or less probable").

**2. Parker's FDA Monograph compliance opinion is an improper legal conclusion**

Parker also concludes that Fungi-Nail's labeling complies with FDA Monograph M005 and further asserts that drug manufacturers may not legally sell products with higher tolnaftate concentrations. ECF 105-02, Ex. A at 4-5, 21-23. This clearly goes beyond Bogyo's Monograph-based opinions, which merely constitute his medical and scientific opinions regarding the labeling language requirements (Dkt. 96-4 at 16-17), and rises to the level of an improper legal conclusion. *See Zeiger*, 526 F. Supp. 3d at 680.

*Zeiger* is instructive: its court struck undisclosed expert opinions that the packaging of the products in question complied with applicable FDA regulations and the standards set forth in the FDA Food Safety Modernization Act. 526 F. Supp. 3d at 680. It found that those opinions were improper legal conclusions because "they require an application of the standard set out in regulatory guidance or government-endorsed model regulations to particular facts." *Id*.

So too here: Parker should not be permitted to testify as to Fungi-Nail's FDA compliance. Whether Parker is "more qualified than Dr. Bogyo" or has

"directly relevant experience in practicing medicine" (Opp. at 17) does not render her capable of giving legal conclusions. *Zeiger*, 526 F. Supp. 3d at 680.

**E. The Motion Should Be Considered on its Merits**

A court may exercise its discretion to consider the motion's merits even if the meet and confer was held belatedly. *See CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) (considering the merits of a motion despite counsel's failure to comply with Local Rule 7–3); *Padilla Ayala v. Teledyne Def. Elecs.*, 533 F. Supp. 3d 920, 924 n.2 (C.D. Cal. 2021) (same); *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 992 (C.D. Cal. 2013) (same). Here, the circumstances warrant the Motion's consideration.

As the opening declaration acknowledges, counsel requested the conference on September 14, 2026 because they in the midst of preparing the overlapping expert, summary-judgment, and class-certification briefs. Coelho Opening Decl. ¶6. Additionally, As Arcadia acknowledges, the Scheduling Order directs that challenges to experts relied upon in a class-certification motion "shall be raised with opposition/reply papers, subject to the cut-off dates for such filings." Opp. at 4 (quoting Dkt. 41 at 2). Plaintiffs' counsel initially understood that to be a direction to raise expert challenges in the class certification briefing (i.e., the reply briefing), rather than through a separately

referenced motion, which caused the delay in Plaintiffs' counsel's request. Coelho Reply Decl., ¶2.

Arcadia offered September 21 or 24, 2026 for the conference, both after the September 18 class-certification reply deadline. Coelho Opening Decl. ¶7, Ex. D; Dkt. 87 at 2. Plaintiffs' counsel accepted September 21 and proposed a stipulation to extend both Plaintiffs' deadline to file this Motion and Arcadia's deadline to file a reply supporting its motion to strike Plaintiffs' experts, subject to Court approval. Coelho Opening Decl. ¶14, Ex. H. Arcadia declined the proposed extension, and Plaintiffs filed this Motion by the existing deadline before the conference.[7]

Counsel for the parties subsequently met and conferred regarding Plaintiffs' Motion on September 24, 2026. Declaration of Thiago M. Coelho in Support of Plaintiffs' Reply ("Coelho Reply Decl."), ¶3. During that meet and confer, Arcadia stated its intent to oppose the Motion in full, refusing to stipulate to any of the relief it requested. *Id.*

Arcadia's post meet and confer position (and its Opposition) confirms that "it seems unlikely that conferring would have avoided this Motion."[8] *Padilla*

---

[7] Unlike the defendant in *Masimo Corp. v. Apple Inc.*, Plaintiffs do not take the position that no meet and confer was required. No. 820CV00048JVSJDEX, 2020 WL 5215385, at *2 (C.D. Cal. Aug. 4, 2020).

[8] This renders *Meza v. Nissan N. Am., Inc.* inapposite, as there this court declined to consider the merits of a motion after determining that a prior meet and confer

*Ayala*, 533 F. Supp. 3d at 924 n.2 (declining to automatically deny a motion on this basis). Further, because the Parties met and conferred shortly after the Motion was filed, and because Arcadia does not identify any prejudice[9] it suffered because Plaintiffs' Motion was filed before the conference, the circumstances here warrant considering the Motion on its merits. *See id.*; *CarMax Auto Superstores*, 94 F. Supp. 3d at 1088 (exercising discretion to consider the merits despite noncompliance where the nonmoving party suffered no apparent prejudice); *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1088 n.2 (C.D. Cal. 2017) (same).

---

would have prevented certain issues from being included in the briefing. No. 2:24-CV-06624-JDE, 2025 WL 1543608, at *2 (C.D. Cal. Mar. 17, 2025).

[9] Arcadia incorrectly states that Plaintiffs' counsel also did not meet and confer previously to identify the confidential materials to be used in their motion for class certification. Opp. at 4. To the contrary, Plaintiffs' counsel not only met and conferred with Arcadia's counsel regarding those materials, but also sent follow-up correspondence by email memorializing that call and specifically identifying the materials subject to inclusion in the final brief in list format. Coelho Reply Decl., ¶4. There is no recurring theme of Plaintiffs' counsel failing to meet and confer in this action.

## III. CONCLUSION

For the foregoing reasons and those set forth in their opening papers, Plaintiffs' Motion should be granted in its entirety.

Dated: October 8, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach
*Attorneys for Plaintiffs and the Putative Classes*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Eric Hayde and Megan Wheeler, certifies that the memorandum contains 4,858 words, including its headings, citations, and footnotes, and excluding the caption, tables of contents and authorities, signature block, and this certificate. The memorandum does not exceed the 7,000-word limit in Local Rule 11-6.1.

Dated: October 8, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*

Thiago M. Coelho
Lauren Lendzion
Chumahan B. Bowen
Jennifer M. Leinbach
*Attorneys for Plaintiffs and the Putative Classes*