UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ERIC HAYDE and MEGAN WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARCADIA CONSUMER HEALTHCARE INC., a Delaware corporation,<br><br>Defendant. | Case No.: 8:24-cv-02657-JDE<br><br>ORDER RE: MOTION FOR CLASS CERTIFICATION [DKT. 113]; MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. 101]; AND RELATED CROSS-MOTIONS TO STRIKE/EXCLUDE EXPERT REPORTS [DKT. 107, 125] |

# I.

# INTRODUCTION

On December 6, 2024, Eric Hayde ("Hayde") filed a putative class action against Arcadia Consumer Healthcare Inc. ("Defendant") based on allegedly deceptive labeling on its Fungi-Nail products. Dkt. 1. On December 31, 2024, Hayde filed a "Corrected Complaint." Dkt. 9-1. On February 10, 2025, Defendant filed a Motion to Dismiss and Motion to Strike. Dkt. 14-15. On March 28, 2025, the Motion to Strike was denied and the Motion to Dismiss was denied in large part, but granted as to Hayde's request for injunctive relief

and unpurchased products, with leave to amend. Dkt. 31. On April 11, 2025, Hayde filed an Application seeking leave to amend to add a named plaintiff, Megan Wheeler ("Wheeler," with Hayde, "Plaintiffs"), with a proposed Second Amended Complaint ("SAC"). Dkt. 32 ("Ex Parte Application"). On April 15, 2025, the Court granted the Ex Parte Application (Dkt. 34), with the SAC docketed as the operative pleading (Dkt. 35). The SAC asserts claims for: (1) intentional misrepresentation; (2) negligent misrepresentation; (3) violation of California's False Advertising Law (Cal. Bus. & Professions Code § 17500, et seq.) ("FAL"); (4) violation of California's Unfair Competition Law (Cal. Bus. & Professions Code § 17200, et seq.) ("UCL"); (5) breach of express warranty; and (6) violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1770(a)(5)) ("CLRA"). Plaintiffs seek compensatory damages, restitution, injunctive relief mandating Defendant "remove the false advertisements from their product and product packaging"; and costs and litigation expenses on behalf of themselves and on behalf of California and Nationwide Classes. Defendant filed an Answer on May 7, 2025. Dkt. 36.

Several motions are currently pending before the Court:

- Wheeler's Motion for Class Certification (Dkt. 113, "Class Cert. Motion");
- Defendant's Motion for Partial Summary Judgment (Dkt. 101, "MSJ"), seeking summary judgment on Plaintiffs' request for injunctive relief and breach of express warranty claim;
- Defendant's Motion to Strike / Exclude Expert Reports (Dkt. 107, "Def. MTS"); and
- Plaintiffs' Motion to Strike / Exclude Rebuttal Expert Reports (Dkt. 125, "Pl. MTS").

Several applications to file documents under seal (see Dkt. 104, 116, 121, 126, 134) were previously granted. See Dkt. 136.

A hearing was held as to all four Motions, after which the Motions were taken under submission subject to Plaintiffs' Reply in support of their MTS, which was filed on October 8, 2026. Dkt. 143.

For the reasons discussed below, the Court rules as follows.

## II.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Defendant manufactures and sells consumer healthcare products, including Fungi-Nail products sold in pen, ointment, and liquid form. SAC ¶¶ 1-2. The Fungi-Nail products are sold by dozens of retailers in California and across the United States. Id. ¶ 2. Plaintiffs allege the Fungi-Nail product labels are materially misleading by giving the impression that the product treats nail fungus. Id. ¶ 6. Plaintiffs allege that, as a result of Defendant's "deceptive and misleading practices," consumers purchased Fungi-Nail products that do not perform as advertised, as they do not treat nail fungus. Id. ¶ 7.

Plaintiffs are consumers who purchased the liquid form of the Fungi-Nail product to treat nail fungus conditions. SAC ¶¶ 8-9. They bought the product based on the product's name and advertising that suggested the product is intended to treat, and is effective at treating nail fungus. Id. ¶ 3. They regularly applied the product to their toenails from the date of purchase with no improvement to their nail fungus conditions. Id. ¶¶ 8-9.

## III.

Wheeler seeks class certification of her claims for statutory violations of the FAL, UCL, and CLRA. Wheeler proposes a California Class defined as:

> All persons residing in the State of California who purchased the liquid, ointment, pen, or spray Fungi-Nail products from December 6, 2020 to present.
>
> Excluded from the class are those who received a full refund, [Defendant's] subsidiaries, affiliates, officers, directors, and

> employees; counsel and judicial personnel assigned to this action and their immediate families; governmental entities; and resellers.

Class Cert. Motion at 8. In reply to Defendant's contentions regarding commercial purchasers, Wheeler proposes the following revised class definition in her Reply:

> All natural persons residing in the State of California who purchased the liquid, ointment, pen, or spray Fungi-Nail products from December 6, 2020 to the present for personal, family, or household purchase, and not for business, commercial or resale purposes.

Dkt. 120 ("Cert. Reply") at 3.

At the hearing, Wheeler's counsel proposed to narrow the proposed class to exclude purchasers who did not, at least in part, buy the Fungi-Nail products for its anti-nail fungus attributes, which Defendants opposed. Such request is denied as no formal motion has been filed with the Court. While such request is denied without prejudice, subject to the operative Scheduling Order, for the reasons explained below, a narrowed class definition based on purchase purpose would be futile, and would likely prejudice Defendant given that this case has been pending for nearly two years, the deadline to file a class certification motion expired two months ago, and substantial time and resources have already been expended based on the current proposed Class.

The Class Cert. Motion proposed a Class under Federal Rule of Civil Procedure ("Rule") 23(b)(3) for actual price-premium damages under the CLRA and under Rule 23(b)(2) for prospective relief under the UCL, FAL, and CLRA. If the Court declines to certify any claim in full, in the alternative, Wheeler requests certification under Rule 23(c)(4) of the following issues:

> (1) the objective net impression of the Challenged Front Labeling;

(2) whether the covered products can treat fungus in the nail;

(3) whether the challenged message is material to a reasonable purchaser;

(4) [Defendant's] knowledge and reasonable care under the FAL;

(5) whether the challenged message caused a positive EPP for any product and period; and

(6) the common conduct elements of the UCL, FAL, and Civil Code section 1770(a)(5).

Class Cert. Motion at 8-9.

Because Defendant moves for summary judgment on Plaintiffs' request for injunctive relief, the Court considers the MSJ first before proceeding to the Class Cert. Motion.

**A. Defendant's Motion for Summary Judgment**

As noted, Defendant moves for summary judgment on Plaintiffs' request for injunctive relief and breach of express warranty claim.

Rule 56 requires summary judgment to be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. Id. at

324; see also Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (per curiam). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citation omitted); see also Rule 56(c); Anderson, 477 U.S. at 257. Summary judgment cannot be avoided by relying solely on conclusory allegations or speculation unsupported by facts. See Loomis v. Cornish, 836 F.3d 991, 997 (9th Cir. 2016) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." (alteration in original) (citation omitted)). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The Court may not weigh evidence or make credibility determinations in ruling on a motion for summary judgment. Bator v. v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994). Inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., 475 U.S. at 587.

1. Request for Injunctive Relief

Defendant argues Plaintiffs lack Article III standing to assert a request for injunctive relief.

i. Applicable Law

Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy

requirement of Article III" and contains three elements: (1) the plaintiff must have suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the challenged conduct; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); see also DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006).

"[A] plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 185 (2000). For injunctive relief, the threat of injury must be "actual and imminent, not conjectural or hypothetical." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." Mayfield v. United States, 599 F.3d 964, 970 (9th Cir. 2010). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" Davidson, 889 F.3d at 967 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).

In Davidson, the Ninth Circuit held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." 889 F.3d at 969. The Ninth Circuit identified two situations where the consumer can show a threat of future harm: (1) "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the

product although she would like to"; and (2) "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." Id. at 969-70. The question is whether plaintiff's assertions "cross the line from an insufficient possible future injury to an actionable certainly impending injury." Rodriguez v. Just Brands USA, Inc., 2021 WL 1985031, at *4 (C.D. Cal. May 18, 2021) (citation omitted).

ii. Analysis

Defendant contends that the undisputed evidence establishes that Plaintiffs no longer suffer from the conditions that allegedly prompted their purchases of Fungi-Nail and neither identified any actual plan to purchase the products again. MSJ at 9.

As to Wheeler, it is undisputed that Wheeler no longer suffers from the nail condition that prompted her purchase of the Fungi-Nail product. She testified that after she stopped using Fungi-Nail, she applied bleach and hand sanitizer to her toenails. Dkt. 101-6 (Exh. C, "Wheeler Depo.") at 102:19-103:18. She did not start with bleach because it "gets on the carpet" and is "a harsh chemical," and she "wanted a name brand product." Id. at 105:3-13. She testified that the bleach and hand sanitizer worked; the nail condition is "not there anymore"; her "toes look fine now"; and it has been two years. Id. at 104:23-25, 106:5-11, 107:1-14. She never saw a doctor as the nail condition resolved. Id. at 106:2-4, 165:12-17.

Defendant further maintains that Wheeler's deposition testimony forecloses any claim of future injury, citing her testimony that she wants her "money back" and failure to identify any circumstance under which she would purchase Fungi-Nail in the future. MSJ at 10 (citing Wheeler Depo. at 165:7-11). As Plaintiffs note, however, Defendant mischaracterizes this testimony.

Wheeler was asked, "Do you want your money back for the product?" to which she responded, "I want my money back. I want everybody in California's money back. I want everybody in the United States to get their money back. I want the product to be changed." Wheeler Depo. at 165:7-11. Plaintiffs contend that Wheeler "would like to use Fungi-Nail Products in the future should she fall into the substantial percentage of individuals whose nail fungus returns after their first infection." Dkt. 119 ("MSJ Opp.") at 6. But Plaintiffs do not cite any testimony in support of this assertion. In her declaration filed in support of the Class Cert. Motion, Wheeler attested that she "continue[s] to want an effective nail-fungus product"; she "**would consider** buying Fungi-Nail again if [Defendant] accurately labeled it or reformulated it to treat nail fungus"; and "[a]t present, [she] cannot rely on the Fungi-Nail package to tell [her] whether the product can treat nail fungus." Dkt. 113-1 (Declaration of Wheeler) ¶¶ 9-10 (emphasis added).

The Ninth Circuit and numerous district courts in the Ninth Circuit have found such assertions insufficient to confer standing. A "profession of an inten[t] . . . is simply not enough" to satisfy Article III standing. Lanovaz v. Twingings N. Am., Inc., 726 F. App'x 590, 591 (9th Cir. June 6, 2018) (finding statement that plaintiff "would 'consider'" buying products insufficient to establish standing); In re Coca-Cola Prods. Mktg. & Sales Practices Litig. v. Coca-Cola Refreshments USA, Inc., 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) ("the imminent injury requirement is not met by alleging that the plaintiffs would consider purchasing Coke"); Nelson v. Ford Motor Co., 2025 WL 2581611, at *5 (E.D. Cal. Sept. 5, 2025) ("vague allegations that a plaintiff 'would consider' purchasing a product in the future are insufficient to confer standing to seek injunctive relief"); Iglesias v. Az. Beverages USA, LLC, 2025 WL 2714143, at *7 (N.D. Cal. Aug. 14, 2025) (declaration that plaintiff "would 'consider' purchasing the beverages falls short of demonstrating an

ongoing injury"); Woulfe v. Universal City Studios LLC, 2022 WL 18216089, at *18 (C.D. Cal. Dec. 20, 2022) (plaintiffs' allegations that they would be "interested" in watching a version of movie was not concrete enough to establish an intention to watch the movie again); Venti v. Garmon Corp., 2022 WL 22980581, at *5 (C.D. Cal. Sept. 29, 2022) (plaintiff lacked standing where she alleged she "would consider purchasing" supplements again, but failed to plead facts showing that she "would like to" purchase them again); Wallace v. SharkNinja Operating, LLC, 2020 WL 1139649, at *14 (N.D. Cal. Mar. 9, 2020) (finding plaintiff's allegation that she "would consider" buying the product in the future insufficient to show a likelihood of future injury). A "'some day' intention[ ]—without any description of concrete plans, or indeed even any specification of when the some day will be—do[es] not support a finding of the 'actual or imminent' injury that" Article III requires. Lanovaz, 726 F. App'x at 591 (alterations in original).

Plaintiffs contend that courts interpreting Davidson "have declined to require a plaintiff to commit to a future purchase decision to have standing for injunctive relief." MSJ Opp. at 6. In Davidson, however, the court found plaintiff established Article III standing where she alleged she "**would purchase**" flushable wipes manufactured by defendant if it were possible where the plaintiff had a present desire to purchase wipes that were suitable for disposal in a household toilet. 889 F.3d at 970-71 (emphasis added). Several of the other cases cited by Plaintiffs are similarly distinguishable. In Levit v. Nature's Bakery, LLC, 767 F. Supp. 3d 955, 972 (N.D. Cal. 2025), the plaintiff alleged that he "would purchase" defendant's product in the future if the products were labeled truthfully, and in both Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools, 673 F. Supp. 3d 1083, 1091, 1093 (N.D. Cal. 2023) and Zeiger v. WellPet LLC, 526 F. Supp. 3d 652, 688 (N.D. Cal. 2021), the court found similar allegations sufficient to confer standing where

the plaintiffs regularly purchased the products. Such is not the case here. Wheeler purchased the Fungi-Nail product on a single occasion, has no present need for a fungal treatment, and has no evidence that she will need such treatment in the future, particularly given that she was never formally diagnosed with a nail fungus or other fungal condition and her condition resolved with bleach and hand sanitizer, not a nail fungus treatment.

Plaintiffs also rely on Krommenhock v. Post Foods, LLC, 334 F.R.D. 552 (N.D. Cal. 2020). In Krommenhock, plaintiffs Krommenhock and Hadley admitted in their depositions that they would never buy the defendant cereals again; Hadley indicated it was "possible" he would purchase the cereals again in another case; and they both alleged in their operative complaint that if they could be assured the cereals were properly labelled, they would consider purchasing the cereals again. Krommenhock, 334 F.R.D. at 572. The district court concluded that "[c]onsidering Hadley's ambiguous testimony, his future intent can be explored at trial. Post-trial, on a full record, I can determine what injunctive relief might be appropriate and whether Hadley has standing to seek that relief." Id. at 573. The Court finds this case unpersuasive. The district court did not affirmatively find that plaintiffs have standing; provided no explanation for denying defendant's motion for summary judgment as to Krommenhock; and as a practical matter, deferring the ruling until post-trial would be inefficient, unnecessary, and a waste of judicial resources.

As to In re SanDisk SSDS Litig., 736 F. Supp. 3d 791, 791-92 (N.D. Cal. 2024), while the court in SanDisk found a claim that a plaintiff "may be interested in purchasing" products in the future so long as defendants fix the defects and properly labelled their products going forward sufficient to state a valid claim for injunctive relief, given the multitude of cases concluding otherwise, the Court adopts the majority view and finds Wheeler's vague, speculative assertions of future harm, coupled with the lack of evidence of

present need, isolated purchase of the Fungi-Nail product, and limited record regarding an affirmative diagnosis that she actually suffered from a fungal infection, insufficient to demonstrate standing. Wheeler has failed to show that her future harm is "actual or imminent" or that there is a "sufficient likelihood" that she will again be wronged in a similar way. As such, Defendant is entitled to summary judgment on Wheeler's request for injunctive relief.

Although it is a closer call with respect to Hayde, Defendant also is entitled to summary judgment on Hayde's request for injunctive relief. Unlike Wheeler, Hayde has a long history of suffering from nail fungus and continues to suffer from this condition. He testified at his deposition that he has had fungus under his toenails since at least 1998 and still has "residual [fungus] at the tips" of his toenails. Dkt. 119-3 (Exh. 1, Deposition of Hayde ["Hayde Depo."]) at 78:10-13, 83:7-14. He saw a physician, who prescribed medication, but he had to discontinue using the prescription medication because it was hard on his liver. See id. at 82:13-83:18. Further, although Defendant claims there is no evidence in the record that either Plaintiff would ever purchase Fungi-Nail again (MSJ at 10), Hayde's testimony is not as unequivocal as claimed. Hayde was asked whether he would buy the Fungi-Nail products ever again, to which he responded, "You know, if they change the way -- if they change the way that this is labeled and fix the way that it works, I might. If they -- if it's not so misleading, I might. I might. I would -- if I knew that it worked, I would -- if I needed it." Hayde Depo. at 147:19-148:4. He later clarified: "What I mean is if it actually kills toenail fungus and it's labeled -- if it's not so misleading, if I had toenail fungus, I would buy it again, yes, that's what I meant." Id. at 149:6-11. Yet, as Defendant points out, by his own account, Hayde's residual nail fungus can only be treated by prescription medication. See id. at 83:11-14. Together with his testimony that he would

only purchase the Fungi-Nail product if it was reformulated to treat nail fungus, which is outside of his control, the Court finds Hayde has not shown an actual and imminent threat of future injury sufficient to confer Article III standing.

Thus, Defendants are entitled to summary judgment as to Plaintiffs' request for injunctive relief.

2. Breach of Express Warranty Claim

"To prevail on a breach of express warranty claim under California law, a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (internal quotation marks and citation omitted). "Product advertisements, brochures, or packaging can serve to create part of an express warranty." Rosales v. FitFlop USA, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012).

Plaintiffs claim that Defendant "expressly warranted through its advertising, marketing materials, and product labeling that the Fungi-Nail products were intended to treat, and effect[ive] at treating nail fungus, including toenail fungus," which Plaintiffs relied upon in purchasing the Fungi-Nail products, but the products were not intended to treat and were not effective at treating nail fungus, including toenail fungus. SAC ¶¶ 74-76.

Defendant contends it is entitled to summary judgment on Plaintiffs' breach of express warranty claim because Plaintiffs cannot identify an express warranty that they claim was breached, they used the product for a condition that was expressly disclaimed, and they cannot show the product failed for its intended use. MSJ at 12-14. Defendant argues that Plaintiffs have not identified any statement on the package, bottle, or labeling expressly stating that Fungi-Nail treats fungal infections within the nail plate or cures toenail

fungus, instead inferring such a promise from the product name, the phrase "kills fungus," and the product's appearance, which "is not enough." Id. at 13.

Plaintiffs counter that the affirmations on the front label of the Fungi-Nail products stating "FUNGI-NAIL," "ANTI-FUNGAL LIQUID," "Kills Fungus," "Clinically Proven to Cure and Prevent Fungal Infections," and prominent toenail imagery "together convey to a reasonable consumer that it can effectively kill toenail fungus," and form part of the basis of the bargain between Plaintiffs and Defendant, creating an express warranty that was breached when the product failed to live up to its broad antifungal promises. MSJ Opp. at 9. Plaintiffs argue that Defendant's "affirmations did not need to be literally false to create an express warranty"; "[a]ll that is required is that they are misleading to reasonable consumers." Id.

In Reply, Defendant argues that the "reasonable consumer" test is the test for California's consumer-protection statutes, not the test for breach of express warranty, which requires an actual "affirmation of fact or promise" by the seller. Dkt. 135 ("MSJ Reply") at 6 (citing Cal. Com. Code § 2313(1)(a)). Defendant maintains that "Plaintiffs must identify a specific statement that constituted a warranty." Id.

As Plaintiffs note, at the pleading stage, the Court found Hayde sufficiently stated a breach of warranty claim because he had sufficiently stated a claim under the reasonable consumer standard. Dkt. 31 at 19. Under Cal. Com. Code § 2313(1)(b), "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." "'[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty' under California Commercial Code section 2313." DiGiacinto v. RB Health (US) LLC, 668 F. Supp. 3d 950, 966 (N.D. Cal. 2023) (citation omitted) (finding plaintiff stated a breach of express

warranty claim where he sufficiently alleged a claim under the reasonable consumer standard); see also Sandoval v. PharmaCare US, Inc., 730 F. App'x 417, 419 (9th Cir. Apr. 5, 2018) (applying reasonable consumer standard to express warranty claim); Hurd v. G. Skill Int'l Enter. Co., 2025 WL 1096301, at *2 (C.D. Cal. Mar. 10, 2025) ("claims for breach of an express warranty . . . employ the reasonable consumer standard"). Defendant cites no authority to the contrary. The Court previously found Hayde plausibly alleged that the front label conveys a concrete and unambiguous meaning to a reasonable consumer that the product "[k]ills fungus," including nail fungus. Dkt. 31 at 11. Defendant has not provided a sufficient basis to reconsider that conclusion. Defendant does not dispute that Plaintiffs inferred that the product treated toenail fungus based on the product name, phrase "[k]ills fungus," and the product's appearance. See MSJ at 13. Wheeler may not ultimately prevail on this claim given that the product she purchased included additional information as discussed below; but, as Defendant has not raised that issue, as framed, Defendant is not entitled to summary judgment on Plaintiffs' express warranty claims.

**B. Wheeler's Motion for Class Certification**

As noted, Wheeler seeks class certification under Rule 23(b)(3) for actual price-premium damages under Cal. Civ. Code § 1770(a)(5) and under Rule 23(b)(2) for prospective injunctive relief under UCL, FAL, and Cal. Civ. Code § 1770(a)(5). Class Cert. Motion at 8. As Wheeler lacks Article III standing to seek injunctive relief, the request for an injunctive relief class is denied. As to the proposed class on damages under Cal. Civ. Code Section 1770(a)(5), the Court rules as follows.

1. Applicable Law

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart

Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (citation omitted). Before certifying a class, the court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23. Nolen v. PeopleConnect, Inc., -- F.4th --, 2026 WL 2871735, at *4 (9th Cir. Sept. 24, 2026); Zinser v. Accufix Rsch. Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001) (as amended). The party seeking class certification bears the burden of proving that the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been satisfied. Zinser, 253 F.3d at 1186; see also Nolen, 2026 WL 2871735, at *4.

Under Rule 23(a), a class action is only proper if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a). If the Rule 23(a) prerequisites are met, the court must decide if certification is appropriate under Rule 23(b). Rule 23(b)(3) authorizes certification if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the

controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Rule 23(b)(3).

2. Analysis

i. Commonality and Predominance

"To certify a class under Federal Rule of Civil Procedure 23, plaintiffs must first show that common questions exist, meaning that questions can be resolved using class-wide evidence" and "to certify a damages class under Rule 23(b)(3), plaintiffs have a higher burden of proving that common questions predominate over individual ones." Black Lives Matter Los Angeles v. City of Los Angeles, 113 F.4th 1249, 1254 (9th Cir. 2024). Claims "must depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution," such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, 564 U.S. at 350.

"The requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a): the plaintiffs must prove that there are 'questions of law or fact common to class members' that can be determined in one stroke, in order to prove that such common questions predominate over individualized ones." Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (internal citations omitted). It asks whether "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Nolen, 2026 WL 2871735, at *4 (citation omitted).

Plaintiffs allege that Defendant's conduct constitutes unfair or deceptive acts or practices in violation of the CLRA, as their actions "were intended to

and did result in the sale of the Fungi-Nail products to Plaintiffs and other consumers under false pretenses." SAC ¶¶ 79-80. CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer," including "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ." Cal. Civ. Code § 1770(a)(5). The elements of a CLRA claim are: "(1) a misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused by that misrepresentation." In re Sony PS3 Other OS Litig., 551 F. App'x 916, 920 (9th Cir. 2014). "[U]nder the CLRA, '[c]ausation, on a classwide basis, may be established by materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.'" Lytle v. Nutramax Laboratories, Inc., 114 F.4th 1011, 1034 (9th Cir. 2024) (as amended) (citation omitted). However, "while materiality can support an inference of reliance, that does not necessarily mean that the inference will hold as to the entire class, such that common questions predominate." Id. at 1034-35. "[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." In re Vioxx Class Cases, 180 Cal. App. 4th 116, 129 (2009).

Wheeler contends that "one set of answers resolves the central issues for everyone: what each Fungi-Nail package objectively communicates; whether the products can treat fungus in the nail; whether that capability is material; what [Defendant] knew; whether the common message violates . . . CLRA; whether it generated a price premium; and whether one injunction is warranted," which turns on the question "[t]hen why is this called Fungi-Nail?" Class Cert. Motion at 9-10. Wheeler maintains that exposure is uniform

here because the challenged representation is the "product packaging itself." Id. at 12.

Defendant responds that Wheeler cannot satisfy the commonality and predominance requirements because the alleged misrepresentations are not material as to all class members; the variety of disclosures destroys commonality and predominance; individualized standing inquiries predominate; and Wheeler's reliance on Dr. Bell's "equilibrium price premium" damages model is insufficient to demonstrate commonality or predominance for injury and damages. Dkt. 105 ("Cert. Opp.") at 9-18.

Because the Court finds Wheeler has failed to demonstrate classwide reliance on a uniform misrepresentation, it is unnecessary to address Defendant's other arguments. Wheeler contends that the front label of Defendant's Fungi-Nail products deceive reasonable consumers into believing that they effectively treat toenail fungus, which they do not. However, given that Wheeler seeks class certification for consumers who purchased the Fungi-Nail products in-store and online, Defendant contends that Wheeler has not demonstrated common proof of uniform deception exists classwide for both in-store and online purchases.

"[A] case may be unsuited for class treatment 'if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.'" Smith v. Shahidi, 2026 WL 852218, at *7 (C.D. Cal. Mar. 9, 2026) (quoting DZ Rsrv. v. Meta Platforms, Inc., 96 F.4th 1223, 1234 (9th Cir. 2024)). Defendant contends that the variety of disclosures online destroys commonality and predominance, arguing that "[t]he many websites and mobile applications for the 20-plus retailer platforms involve hundreds of iterations of product names, representations, disclosures, and videos—not to mention changes during the five-year plus class period." Cert. Opp. at 14. Contrary to Wheeler's assertions, online purchases were not

solely exposed to the product packaging. Defendant's evidence shows more than a "marginal" difference. See Cert. Reply at 13. Defendant has presented evidence that online consumers were not merely exposed to the front label but instead, exposed to a variety of information, including iterations of product names, descriptions, disclosures, item features, and responses to questions about the product. See Dkt. 105-11 to Dkt. 105-13 (Exh. J-L). The product Wheeler purchased is one such example. She purchased the Fungi-Nail product from Amazon, which was titled "Fungi-Nail Anti-Fungal Liquid Solution, Kills Fungus That Can Lead to Nail & Athlete's Foot with Tolnaftate & Clinically Proven to Cure and Prevent Fungal Infections." Dkt. 105-9 (Exh. H) & 105-12 (Exh. K). Wheeler claims different retailer headings do not change the brand name and toenail imagery consumers see on the Fungi-Nail products. Cert. Reply at 8. But it changes the overall product and accompanying information that the consumer is being exposed to. The title of this product is significantly different from the basic front label bearing the title "Fungi Nail," which the Court previously found was not ambiguous at the pleadings stage. See Dkt. 31 at 11. By contrast, the title of this Amazon product includes the description "Kills Fungus That Can Lead to Nail & Athlete's Foot," suggesting that the product does not, in fact, treat nail fungus, but rather fungus that may lead to nail fungus. Additional information was readily available and visible in the Amazon picture carousel, clarifying that "[t]oe fungus is a fungal skin infection that can affect the areas on or around your toes such as the skin around the nails and between the toes." Dkt. 105-12 (Exh. K).

Wheeler argues that the various statements or disclosures on certain retailer webpages does not show that they displaced the common front label message. Cert. Reply at 14. She maintains that "[j]ust as a reasonable consumer is not expected to 'look beyond misleading representations on the

front of the box' when purchasing a product in a physical store, a reasonable consumer would not be expected to go searching for those hidden disclaimers when presented with an unambiguous front label online." Id. at 15. The Court is not persuaded. Defendant presents evidence that additional information, including product descriptions clearly describing the type of fungal infections the products treat, was readily available in several online listings. Wheeler fails to provide evidence that the differences between the online and in-store experiences and the variations of listings among websites are immaterial, or that a reasonable online consumer would not look beyond the front label when purchasing the products online.

At the hearing on the Motions, Wheeler emphasized the expert report of Rhonda Harper, who opined that the "front-label" message "creates an overall impression that is misleading and confusing to a reasonable consumer." Dkt. 113-10 (Exh. 7, "Harper Report") ¶ 21. Defendant argues that Wheeler's reliance on Ms. Harper is misplaced as she does not address the online purchase experience, much less the multiple iterations of online statements, label images, disclosures, and website carousels. Cert. Opp. at 17. Wheeler responds that Ms. Harper's opinion "is equally applicable to all of [Defendant's] 'Fungi-Nail' products, regardless of whether they were sold in-store or online" because "each online retailer [Defendant] identifies used the exact same name, image, and efficacy claims that Harper already analyzes." Cert. Reply at 17.

However, it is readily apparent that Ms. Harper's conclusion is based on product packaging alone. Nothing in Ms. Harper's resume reflects that she was qualified to testify regarding a reasonable consumer's online experience. Harper Report, Exh. 1; see also id. ¶ 3 (explaining that she has been "directly responsible for evaluating and approving product packaging and label copy"). While Ms. Harper makes references to the "physical" and "digital"

environments (see, e.g., id. ¶¶ 9, 24, 37), Ms. Harper is clear that her opinion is confined to the product packaging only. She stated in her report that she was asked:

> to review the role product labeling plays in the consumer purchase decision for merchandise sold through retailers such as drug stores, supermarkets, mass merchants, and online retailers, and opinion as to: (a) whether a reasonable consumer would be mislead by Defendant's FUNGI-NAIL trademark and product packaging; (b) whether a reasonable consumer would rely on Defendant's FUNGI-NAIL trademark, package imagery, and front-label claims; (c) the materiality of Defendant's FUNGI-NAIL trademark, challenged front-label claims and package imagery; and (d) whether it is reasonable to expect a consumer to discover and process disclaimers regarding product efficacy on the back or side panels before purchase.

Id. ¶ 7. At her deposition, she testified that her "report talks to a packaging assessment." Dkt. 105-7 (Exh. F, Deposition of Harper) at 106:12. Ms. Harper was asked whether she looked at the "point of sale pages for the Fungi-Nail product, if a customer wants to purchase Fungi-Nail on a website," did she "review what would be -- what the customer would see?" She responded, "My report is limited to a packaging assessment as to whether or not consumers would be misled by the name Fungi-Nail and whether or not that would be material to their purchase. So a marketplace context is not within the scope of my assignment nor is it a pathway to purchase." Id. at 106:17-107:10. During her deposition, she later reiterates that her "assignment was to look at the packaging for Fungi-Nail and, again, determine whether or not consumers were misled into believing that because the name -- because of the name Fungi-Nail, one, if it was material to their purchase that it was important and,

number two, that they were misled thinking that it treated fungus on nails." Id. 108:1-7. Ms. Harper does not purport to opine on what impact the additional information available, across multiple platforms, would have on the alleged front label misrepresentations. Indeed, using her methodology in which purchasers "make quick decisions based on key cues," i.e., "the product name, the main claims, and the visual hierarchy" (a phrase she does not appear to define) (Harper Report ¶ 24), online consumers would have considered other readily available information in online listings, such as alternative product names and product descriptions. As the scope of Ms. Harper's opinion is limited to the product packaging alone, the Court finds Ms. Harper's opinion is not relevant to commonality and predominance across the entire proposed class.

In sum, the variety of representations and disclosures among in-store and online products raises individualized issues as to what statements were reasonably relied on at the time of purchase and precludes any finding of commonality and predominance.

ii. Typicality

Wheeler also has not demonstrated typicality here. Rule 23(a)(3) requires that the claims of the representative plaintiff be typical of the claims of the class. Rule 23(a)(3). To be considered "typical," the plaintiff's claims must be "reasonably co-extensive with those of absent class members" but "need not be substantially identical." Castillo v. Bank of Am., NA, 980 F.3d 723, 729 (9th Cir. 2020). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Small v. Allianz Ins. Co. of N.A., 122 F.4th 1182, 1202 (9th Cir. 2024) (citation omitted). "A court should not certify a class if 'there is a danger that absent class members will suffer if their

representative is preoccupied with defenses unique to it.'" Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation omitted).

As noted, Wheeler seeks to represent consumers who purchased the Fungi-Nail products in-store and online. Wheeler purchased the Fungi-Nail product through Amazon on her iPhone. Dkt. 105-5 (Exh. D, "Wheeler Depo. 2") at 132:20-23; Dkt. 105-9 (Exh. H). Wheeler read only the front label, ignoring all other information on the website. See Wheeler Depo. 2 at 58:18-23. Defendant argues that "[t]he information Wheeler was presented with, reviewed, and relied on when purchasing is atypical for class members who purchased: (a) in-store, because she did not even purchase based on the same packaging; and (b) online, because the various iterations of representations and disclosures among websites, between website/app formats, and over time disparately affected purchase reasons." Cert. Opp. at 20. The Court agrees.

Wheeler has failed to sufficiently demonstrate she is typical of a proposed class member who purchased a Fungi-Nail product. As Defendant notes, online consumers, including Wheeler, were exposed to additional information that in-store purchasers were not. Wheeler's online experience is not the same as the experience as those who purchased the Fungi-Nail products in store with only the product packaging available. As noted, Wheeler purchased a product called "Fungi-Nail Anti-Fungal Liquid Solution, Kills Fungus That Can Lead to Nail & Athlete's Foot with Tolnaftate & Clinically Proven to Cure and Prevent Fungal Infections" (Dkt. 105-9 (Exh. H) & 105-12 (Exh. K)), the listing of which included a readily available picture that expressly explained that "[t]oe fungus is a fungal skin infection that can affect the areas on or around your toes such as the skin around the nails and between the toes." Dkt. 105-12 (Exh. K). Nor has Wheeler demonstrated that she is typical of online consumers given the variety of descriptions and disclaimers among online retailers.

Accordingly, Wheeler has not shown her experience is typical of the prospective class. Therefore, Wheeler's motion for class certification is denied.

iii. Certification of Individual Issues

Wheeler argues in the alternative that the Court should certify defined issues under Rule 23(c)(4). Class Cert. Motion at 23. Because Plaintiff must still meet the requirements of Rule 23(a) (Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc., 308 F.R.D. 630, 633 (N.D. Cal. 2015); see also Black Lives Matter, 113 F.4th at 1265 n.2), Rule 23(c)(4) certification is inappropriate.

**C. Cross-Motions to Strike**

Both parties filed motions to strike and exclude experts. As to Defendant's MTS Ms. Harper's report, as explained, the Court has considered her report and found it does not assist Wheeler as to the issues upon which the Court rules herein. As such, Defendant's motion to strike her report is denied as moot. Likewise, as the Court does not substantively rely on the remaining expert opinions in reaching its decision, Plaintiff's MTS and the remaining portions of Defendant's MTS are denied as moot.

**IV.**

**CONCLUSION AND ORDER**

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Dkt. 101) is GRANTED as to Plaintiffs' request for injunctive relief and DENIED as to Plaintiffs' breach of express warranty claims; Wheeler's Motion for Class Certification (Dkt. 113) is DENIED; and the Cross-Motions to Strike and Exclude Experts (Dkt. 107, 125) are DENIED.

Dated: October 19, 2026

JOHN D. EARLY
United States Magistrate Judge